UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTER,  :
LLC, LONG-LINE LEASING, LLC,  :
HELOG AG and HELI-AIR ZAGEL  :
LUFTTRANSPORT AG,  :
   Plaintiffs,  :
     :
vs.  : Civil No. 3:01CV1746(AVC)
     :
KAMAN AEROSPACE CORP. and  :
JOHN DOES I THROUGH V,  :
   Defendants.  :

### RULING ON DEFENDANT'S MOTION TO DISMISS

This is an action for damages in which the plaintiffs, Mountain West Helicopter, LLC ("Mountain West"), Long-Line Leasing, LLC ("Long Line"), Helog AG ("Helog"), and Heli-Air Zangel Lufttransport AG ("Heli-Air"), (collectively the "logging companies"), allege that a defendant, Kaman Aerospace Corporation ("Kaman"), designed, manufactured and sold a defective helicopter clutch to the Logging companies that caused two helicopters to crash. It is brought pursuant to the Connecticut Unfair Trade Practice Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), and common law tenets concerning strict liability, negligence, breach of warranty, and misrepresentation.[1] Kaman has filed the within motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

---

[1] The complaint does not specifically cite the CUTPA statute, but asserts only that Kaman's actions constitute unfair trade practice. The court is not aware of any Connecticut common law cause of action for unfair trade practices. Cf. Associated Inv. Co. v. Williams Associates IV, 230 Conn. 148, 159-61 (1994) (concluding that there was no right to a jury in a CUTPA case because, in part, there was no such cause of action at common law). The court therefore assumes that the complaint alleges a CUTPA cause of action regardless of the plaintiffs' failure to invoke the relevant statute.

contending that the logging companies have failed to state a claim upon which relief can be granted.

The issues presented are: (1) whether the causes of action brought pursuant to CUTPA, strict liability, negligence, breach of warranty, and misrepresentation are governed by the Connecticut Product Liability Act, Conn. Gen. Stat. §52-572m ("CPLA"); (2) if so, whether the CPLA's provision that commercial parties may not seek recovery for commercial losses requires that the complaint be dismissed; (3) to the extent that the logging companies allege common law tort causes of action, whether those causes of action are barred under the so-called economic loss rule; and (4) does the language of the respective contracts under which the clutches were sold bar the logging companies' cause of action for breach of warranty.

For the reasons hereinafter set forth, the court concludes that: (1) the causes of action brought pursuant to CUTPA, strict liability, negligence, breach of warranty, and misrepresentation complaint are governed by the Connecticut Product Liability Act ("CPLA"); (2) the CPLA's prohibition against recovering commercial losses does not require that the complaint be dismissed; (3) to the extent that the logging companies have alleged common law tort causes of action, those causes of action are not barred under the so-called economic loss rule; and (4) because there is a dispute as to the contents of the contracts under which the clutches were sold, the court cannot dismiss the

cause of action for breach of warranty.  Accordingly, Kaman's motion to dismiss (document no. 26) is DENIED.

## FACTS

The complaint alleges the following relevant facts.  On May 2, 1997, the defendant, Kaman Aerospace Corporation ("Kaman"), sold a model K-1200 helicopter ("Heli-Air helicopter") to Helog AG, ("Helog").  Heli-Air Zagel Lufttransport AG ("Heli-Air") operated this helicopter.  On or about July 24, 1999, at the urging of Kaman, Heli-Air removed the free-wheeling sprag clutch assembly in the Heli-Air helicopter and replaced it with a new free-wheeling sprag clutch assembly ("Heli-Air clutch"), that was designed and manufactured by Kaman.

On September 13, 1999, during logging operations near Flirsch, Austria, the Heli-Air helicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Heli-Air clutch.  Following the power failure, the Heli-Air helicopter entered a steep descent and crashed.  The crash resulted in minor personal injuries to the pilot and a total loss of the Heli-Air helicopter.

On or about May 20, 1997, Kaman sold a helicopter ("Mountain West helicopter") to Long Line Leasing, LLC ("Long Line").  Mountain West Helicopter, LLC ("Mountain West") operated this helicopter.  On or about September 24, 1999, at the urging of

Kaman, Mountain West removed the free-wheeling sprag clutch assembly in the Mountain West helicopter and replaced it with a new free-wheeling sprag clutch assembly ("Mountain West clutch"), that was designed and manufactured by Kaman.

On November 4, 1999, during logging operations near Emida, Idaho, the Mountain West helicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Mountain West clutch. Following the power failure, the Mountain West helicopter entered a steep descent and crashed. The crash resulted in minor personal injuries to the pilot and substantial damages to the Mountain West helicopter requiring repairs of approximately $1,500,000.

On September 11, 2001, the logging companies filed this complaint. The complaint alleges that, in addition to the "total loss of or substantial damage" to the Heli-Air and Mountain West helicopters, the crash caused plaintiffs to: (1) "lose revenues and profits form their logging operations"; (2) "incur ongoing expense in the form of excess salaried personnel unable to generate revenue in the absence of the Helicopters"; (3) "lose the benefit of pilot training expense paid by plaintiff to Kaman for pilots trained in the Helicopters and unable to generate revenue in the absence thereof"; (4) "lose the benefit of a portion of the annual premium paid to insure the Helicopters"; (5) "incur increased hull and liabilities and/or workers compensation insurance premiums during the years following the

4

crashes"; (6) "incur the expense of a deductible for the portion of the insurance risk assumed by plaintiffs"; (7) "incur the expense of ongoing interest charged, with no corresponding revenue generated, during the period between the crashes and settlement of the hull claims"; (8) "incur the expense associated with investigating the crashes"; and (9) "in the case of Hellog and/or Heli-Air, incur the expense associated with replacing the Helicopter at the exchange rate that had significantly worsened and cost Helog and/or Heli-Air approximately $1,000,000 more than originally paid for the Heli-Air Helicopter." On May 30, 2003, Kaman filed the within motion to dismiss.

## STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. Fischman v. Blue Cross Blue Shield, 755 F. Supp. 528 (D. Conn. 1990). The motion must be decided solely on the facts alleged. Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985). A court must assume all factual allegations in the complaint to be true and must draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Such a motion should be granted only when no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41,

5

45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The issue is not whether the plaintiff will prevail, but whether he should have the opportunity to prove his claims.  Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

## DISCUSSION

1. The Connecticut Products Liability Act

Kaman's central argument for dismissal requires a two-step analysis.  First, Kaman contends that, although the complaint does not invoke the CPLA, it is, in fact, a CPLA cause of action and therefore is governed by the CPLA.  Second, Kaman contends that, to the extent that the CPLA governs, the cause of action is barred under the commercial loss rule contained within the CPLA.

   A. Whether the Complaint is Governed by the CPLA

Kaman first contends that the causes of action for strict liability, negligence, breach of warranty, misrepresentation and unfair trade practices, "undisputably seek recovery under the Connecticut Product Liability Act."  Therefore, the "complaint must be deemed to allege a single cause of action under the" CPLA.  The logging companies do not respond to this argument.

"A product liability claim as provided [for in the CPLA] . . . may be asserted and *shall be in lieu* of all other claims against product sellers, including actions of negligence, strict

liability and warranty, for harm caused by a product."[2]  Conn. Gen. Stat. § 52-572n(a) (emphasis added).  According to the Connecticut supreme court, this statutory language, generally referred to as the "exclusivity provision," "makes the CPLA the *exclusive means* by which a party may secure a remedy for an injury caused by a defective product."  Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 126 (2003) (emphasis added).  In other words, "[t]he legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope."  Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471 (1989).

Claims falling within the CPLA's scope include "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product."  Conn. Gen. Stat. § 52-572m(b).  More specifically:

> 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

Conn Gen Stat. 52-572m(b).

In Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 126

---

[2] Harm is defined by the CPLA as: "damage to property, including the product itself, and personal injuries including wrongful death."  Conn. Gen. Stat. 52-572m(d).

(2003), the Connecticut supreme court held that, in determining whether a specific cause of action falls within the scope of the CPLA, a court must examine the nature of the injury alleged, as well as the alleged act that caused the harm. In Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, (2003), the plaintiff brought both a CPLA and CUTPA cause of action against a manufacturer of cigarettes. By way of its CUPTA cause of action, the plaintiff claimed, in part, that as a result of the manufacturer's wrongful course of conduct, it was required to pay a higher price for the manufacturer's cigarettes. Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 129-30 (2003). The manufacturer contended that the CUTPA claim was barred under the exclusivity provision of the CPLA. Gerrity, 263 Conn. 120, 124. The court disagreed.

The court concluded that "[t]he language of the exclusivity provision . . . suggests that it was not designed to serve as a bar to additional claims, including one brought under CUTPA, either for an injury not caused by the defective product, or if the party is not pursuing a claim for personal injury, death or property damage." Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 128 (2003). Thus, according to Gerrity, the determinative inquiry in any exclusivity provision analysis is not only whether the sale of a product resulted in injury to the plaintiff, but also, whether the plaintiff has alleged damages that the CPLA is intended to compensate for, namely damages that

8

are "regarded as part of the traditional tort remedy for harm caused by a defective product." See <u>Gerrity v. R.J. Reynolds Tobacco Co.</u>, 263 Conn. 120, 128 (2003).

Applying these principles, the court concludes that the CUTPA cause of action and those brought pursuant to common law tenets concerning strict liability, negligence, breach of warranty, and misrepresentation are governed by the CPLA. The complaint seeks damages for, <u>inter alia</u>, "the total loss of or substantial damage to the Helicopters," and, therefore, the plaintiffs seek damages for injury to their property. Additionally, these counts seeks damages that allegedly resulted from, <u>inter alia</u>, the manufacture, design, testing, warnings, instructions, or marketing of the clutch. The court therefore concludes that the CPLA governs the CUTPA cause of action and the strict liability, negligence, breach of warranty, and misrepresentation causes of action.

    B.   <u>Whether the Commercial Loss Rule of the CPLA Requires Dismissal of the Plaintiffs' CPLA Claim</u>

Kaman next contends that the CPLA cause of action should be dismissed because it seeks recovery of commercial losses, which are not recoverable under the CPLA. Specifically, Kaman contends that "even assuming plaintiffs suffered the injuries alleged, the complaint fails to state a claim under the CPLA because plaintiffs seek to recover commercial losses."

The logging companies respond, in part, that the damages

they seek include, among other things, the loss of the helicopters. According to the plaintiffs, because they seek damages to "other property," namely, the helicopters, "tort rules permit recovery."

As previously indicated, under the CPLA, a product liability claim may be asserted "for *harm* caused by a product." Conn Gen Stat. § 52-572n(a) (emphasis added). Harm is defined by the CPLA as, "damage to property, including the product itself, and personal injuries including wrongful death." Conn. Gen. Stat. § 52-572m(d). The CPLA, however, also provides that "[a]s between commercial parties, 'harm' does not include commercial loss." Conn Gen Stat. § 52-572m(d). The CPLA further states that, "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code." Conn. Gen. Stat. 52-572n(c).

The CPLA, however, does not define what is meant by the term "commercial loss" and the Connecticut appellate courts have yet to address the issue. There is therefore no relevant authority governing the definition of the term commercial loss. More importantly, there is no relevant authority for whether the term commercial loss includes damage to property other than the

product itself, as alleged in this case. Nevertheless, based on the following reasons, the court concludes that the term does not include damage to property other than the product itself.

First, the text of the statute indicates that the term commercial loss was not intended to include damage to property other than the product itself. The relevant statutory subsection states:

> "Harm" includes damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, "harm" does not include commercial loss.

Conn. Gen. Stat. § 52-572m(d). Thus, the second sentence excludes from the broad first sentence so-called commercial losses. In other words, the second sentence serves as a limitation of the first sentence. Consequently, it would be counterintuitive to conclude that the limiting sentence is intended to exclude an explicit harm provided for in the first sentence, property damage, but that it employs a completely different term, commercial loss, to do so. Rather, the usage of two different terms in the same subsection militates in favor of the conclusion that the two terms have different meanings. See Plourde v. Liburdi, 207 Conn. 412, 416 (1988) ("[t]he use of different words . . . in the context of the same subject matter must indicate a difference in legislative intention").

Second, although the Connecticut supreme court has yet to address the term commercial loss as it is employed in the CPLA,

11

the court has, in the context of other statutes, distinguished between the statutory term "damage to property" and what it considers "purely commercial losses unaccompanied by damages to or loss of the use of some tangible property." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 581 (1995) (interpreting term "damage to property" as employed in Conn. Gen. Stat. § 52-572h(b)). More specifically, where the legislature has employed the term "damage to property," the Connecticut supreme court has held that it does not intend to let parties recover for purely financial losses unaccompanied by damages to some tangible property. Williams Ford, Inc. V. Hartford Courant Co., 232 Conn. 559, 581 (1995). In other words, the Connecticut supreme court has, in the context of other statutes, recognized a categorical distinction between commercial losses and damage to property. Therefore, to treat the terms "property damage" and "commercial loss" as distinct concepts would be consistent with the Connecticut supreme court's treatment of the terms as they are used in other statutes.

Third, permitting the logging companies to maintain a product liability action for damage to property other than the product itself is consistent with how the majority of the courts addressing the issue have resolved the issue, albeit not under the specific statute at issue in this case. See, e.g., Saratoga Fishing Co. v. J. M. Martinac & Co., 520 U.S. 875, 877 (1997)

12

(plaintiff could not recover for the damage that a defective product causes to the product itself, *but* could recover for damage that the defective product caused to *other* property); Nicor Supply Ships v. General Motors Corp., 876 F.2d 501 (5th Cir. 1989) (permitting recovery where defective product damaged other property); A.J. Decoster Co. V. Westinghouse Electric Corp., 634 A.2d 1330, 1333-4 (Md. 1994) (same); Flex-O-Vit USA, Inc. v. Niagara Mohawk Power Corp., 292 A.D.2d 764, 767 (N.Y. App. Div. 2002) (same); Irish Venture, Inc. v. Fleetguard, Inc., 270 F. Supp. 2d 84 (D. Mass 2003) (same); see also Restatement (Third) of Torts: Products Liability § 21 (same).[3]

Fourth, the generally accepted rational for barring recovery of so-called purely economic losses does not support barring a plaintiff from recovering damage caused to other property. Generally speaking, economic losses resulting from a product failure are barred because they do not implicate the safety concerns of tort law, see East River S.S. Corp. v. Transamerica Deleval Inc., 476 U.S. 858, 871 (1986), and because they are more akin to expectation damages traditionally recoverable in a contract claim, see East River, 476 U.S. 858, 873-4. On the

---

[3]The Connecticut superior courts that have addressed the issue, however, are, generally speaking, divided on the matter. See Zurich Ins. Co. V. Let There Be Neon City, Inc., No. CV020463606, 2002 WL 31762010, at *3 (Conn. Super. Ct. Nov. 21, 2002) (reviewing and identifying current state of law in Connecticut superior courts with regard to Conn. Gen. Stat. § 52-572n(c)).

other hand, damage to other property implicates the safety concerns of tort law, see East River, 476 U.S. 858, 871, and raises damages issues beyond that of traditional contract law. Accordingly, the court concludes that the so-called commercial loss rule of the CPLA does not bar a plaintiff from recovering damages to property other than the product itself.

Applying these principles, the court concludes that the CPLA's provision against recovery of commercial losses does not bar the plaintiffs CPLA cause of action. As previously noted, the plaintiff seeks, inter alia, damages based on "the total loss of or substantial damage to the Helicopters" caused by the defective clutch. The plaintiffs therefore seek damages for an injury to property other than the alleged defective product.[4] Kaman does not challenge the logging companies' characterization of the helicopters as other property, but claims that the plaintiffs "have no right to recover such damages . . . [because] plaintiffs [were] reimbursed for those damages by their insurers, [and because the] plaintiffs assigned the right to pursue such

---

[4]The plaintiffs also seek damages for various consequential economic losses. There generally is no dispute among the Connecticut superior courts that such claims are not permitted under the CPLA. Nevertheless, a Fed. R. Civ. P. 12(b)(6) motion asks only whether there is *any* set of facts consistent with the allegations that could be proven which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Consequently, the court need not pick through the complaint and identify which claims for damages are proper and which are not. Rather, that issue is for another day.

claims to their insurers."[5]  The reasonable inference from the complaint, however, is that they have a right to such a claim. All such inferences are to be drawn in the plaintiffs' favor. Moreover, insofar as the logging companies were required to pay the deductible for the damage to the helicopter, as they allege in the complaint, they suffered an injury to their property not compensated by insurance.  Accordingly, the court concludes that, inasmuch as the plaintiffs seek damages based on the loss of their helicopters, the commercial loss rule of the CPLA does not bar the CPLA cause of action.

2. The Economic Loss Rule

Kaman also claims that, to the extent that the plaintiffs seek recovery under traditional tort law and not the CPLA, the economic loss rule bars those claims as well.  Kaman's argument in this regard fails because the plaintiffs have alleged damages based on injury to other property.  The economic loss rule, similar to the commercial loss rule of the CPLA, generally bars a plaintiff from seeking so-called economic damages, i.e., lost profits, by way of tort law.  See Reynolds, Pearson & Company, LLC v. Miglietta, No. CV000801247, 2001 WL 418574, at *3 (Conn.

---

[5]In support of this contention Kaman cites to various pending actions and documents which purportedly indicate that the plaintiffs' insurers have rights to these claims.  Without converting the motion into a motion for summary judgment, the court's review at this stage of the litigation is limited to the allegations in the complaint and only those documents specifically relied upon in the complaint.  The court therefore does not consider these other matters.

Super. Ct. March 27, 2001) ("[t]he economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic"). Nevertheless, when the plaintiff alleges other property damage, the economic loss rule does not apply. See Shoreline Care LP v. Jansen & Rogan Consulting Engineers, P.C., No. X06CV940155982S, 2002 WL 173155, at *8-9 (Conn. Super. Ct. January 9, 2002) (where plaintiff alleges property damage beyond purely economic loss, the economic loss rule is inapplicable). Accordingly, because the complaint alleges damages based on the loss of the helicopters, the economic loss rule does not bar the common law tort claims.

3.  The Warranty Cause of Action

Kaman's last contention is that, to the extent that the plaintiffs have alleged a cause of action based on contract, that cause of action should be dismissed. Specifically, Kaman contends that "any contract based breach of warranty claim must be dismissed because . . . the helicopter sales agreements expressly limit the remedies for any alleged breach to repair or replacement, and disclaim liability for any commercial losses. Moreover, to the extent that any breach of warranty claim is based on the initial sale of either helicopter, such claim is time-barred."

The plaintiffs respond that "the clutches that caused

plaintiffs' damages were not sold under the terms and conditions of the 1997 helicopter sales agreements." Rather, "Kaman sold the clutches to [the plaintiffs] as new spare parts, in 1999." Thus, because "Kaman offers no evidence of the terms and conditions governing" the 1999 sales, the motion should be denied.

Consequently, there appears to be a dispute regarding what contracts governed the sales of the clutches, as well as the contents of those contracts. Kaman claims that this dispute is irrelevant because both contracts contain the same language. In support of this contention, Kaman points to affidavits submitted by the logging companies which purportedly indicate that the 1999 sales were governed by the 1997 sales agreement. Such affidavits, however, are outside the scope of the court's review at this stage. Further, even assuming the court could review the affidavits, the affidavits plainly state that there "were no written agreements executed governing the terms and conditions of [the clutch] sale." Based solely on these affidavits, the court cannot conclude that the 1997 and 1999 contracts contained the same language. Accordingly, there is a dispute as to whether the contract language relied on by Kaman as grounds for dismissal is applicable. Kaman's motion to dismiss on the ground that the relevant contracts bar this action is therefore DENIED.

17

## CONCLUSION

Based on the foregoing reasons, the motion to dismiss (document no. 26) is DENIED.

It is so ordered, this  9TH  day of March, 2004, at Hartford, Connecticut.

*Alfred V. Covello*
Alfred V. Covello
United States District Judge