# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:
LONG-LINE LEASING, LLC,               :
HELOG AG and HELI-AIR ZAGEL           :
LUFTTRANSPORT AG,                     :
                                      :
             Plaintiffs,        :
                                      :
vs.                                   :
                                      :       CASE NO. 3:01-CV-1746 (AVC)
KAMAN AEROSPACE CORPORATION  :
and JOHN DOES I THROUGH V,            :       September 10, 2004
                                      :
Defendants.                           :

## KAMAN AEROSPACE CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON THE ISSUE OF DAMAGES

Shaun S. Sullivan (ct 04883)
Timothy A. Diemand (ct 18075)
Wiggin and Dana, LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail ssullivan@wiggin.com
          tdiemand@wiggin.com

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS..................................................... 2

ARGUMENT ............................................................................................................ 4

    I.    **The Connecticut Product Liability Act Bars Plaintiffs Tort Claims For Economic Damages.** .............................................................................................. 5

    II.   **Plaintiffs Cannot Recover Economic Damages Under Their Warranty Claims.**......................................................................................................... 7

    III. **Plaintiffs Subrogated Their Claims For Damage to the Helicopters to Their Insurers, and Cannot Recover a Second Time for These Losses.**...................... 9

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Commercial Union Ins. Co. v. Alatalia Airlines, S.p.a., 347 F.3d 448 (2d Cir. 2003)..... 10

Conn. Gen'l Life Ins. Co. v. Grodsky, 781 F. Supp. 897 (D. Conn. 1991) ................... 5, 6

Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101 (2d Cir. 1992)...................................... 10

Icelandic Coast Guard v. United Technologies Corp., 722 F. Supp. 942 (D. Conn. 1989) 6

Jute v. Hamilton Sunstrand Corp., 321 F. Supp.2d 408 (D. Conn. 2004) (Covello, J.) ..... 4

Londrini v. Brito Enterprises, No. 100226, 1993 WL 328573 (Conn. Sup. Ct. Aug. 24, 1993) ................................................................................................................................... 5

Mack Financial Corp. v. Crossley, 209 Conn. 163, 550 A.2d 303 (1988) ........................ 8

McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341 (8th Cir. 1985)....... 9

McKernan v. United Technologies Corp., 717 F. Supp. 60 (D. Conn. 1989) ................... 6

Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft, 849 F. Supp. 666 (E.D. Wis.), aff'd, 42 F.3d 1391 (7th Cir. 1994)................................................................................... 4

Miller v. United States Steel Corp., 902 F.2d 573 (7th Cir. 1990) ................................... 6

New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 564 A.2d 919 (1989) .............................................................................................................. 8

Orselet v. DeMatteo, 206 Conn. 542, 539 A.2d 95 (Conn. 1988) ................................... 10

Silent Stalker, Inc. v. Vickers Eng., No. CV020078923S, 2003 WL 22006299 (Conn. Super. Ct. July 25, 2003) ................................................................................................ 6

Wasko v. Manella, 74 Conn. App. 32, 811 A.2d 727 (Conn. App. Ct. 2002)................. 10

Winslow v. Lewis Shepard, Inc., 212 Conn. 462, 562 A.2d 517 (Conn. 1989) ................ 5

**Statutes**

Conn. Gen. Stat. § 52-572(m)(d) ........................................................................................ 5

Conn. Gen. Stat. § 42a-2-719............................................................................................. 8

## INTRODUCTION

In ruling on Kaman's Renewed Motion to Dismiss, this Court held that plaintiffs assert two claims cognizable under Connecticut law: (1) a claim under the Connecticut Products Liability Act ("CPLA") and (2) a contractual warranty claim.  See March 9, 2004 Ruling on Defendant's Motion to Dismiss ("March 9 Ruling") at 2, 9.  While noting that some of the damages claimed by plaintiffs are not recoverable, see id. at 14, n.4, the Court indicated that it will not "pick through the complaint" to determine what claims for damages are and are not recoverable, as such an exercise was "for another day."  Id. Accordingly, with the Court's permission, the parties conducted limited discovery solely on the issue of damages and Kaman now moves for partial summary judgment for a determination of what damages are and are not recoverable.

As confirmed by plaintiffs' responses to Kaman's damage discovery, most if not all of the damages sought by plaintiffs are "economic losses" that are not recoverable under the CPLA or the applicable warranties.  Moreover, plaintiffs' attempt to "double dip" and recover for losses that plaintiffs' insurers already paid them is improper and should be rejected.

By this motion, Kaman seeks to narrow the scope of this case significantly, in the hope of speeding its resolution.  The Argument section of this memorandum contains three parts.  Part I explains why the CPLA bars plaintiffs from recovering economic damages.  Part II addresses the unambiguous warranty provisions which plainly exclude incidental and consequential economic damages of the sort plaintiffs seek.  Finally, Part III examines the plaintiffs' subrogation to their insurers of their claims for damage to the

helicopters and explains why plaintiffs are not entitled to be paid twice for the same claims.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts of this case are well-known to the Court and quite simple. Plaintiffs each purchased a helicopter from Kaman in 1997 to use in logging operations (the "Helog helicopter" and the "Mountain West helicopter," or, collectively, "the helicopters").[1]   Local Rule 56(a)(1) Statement at ¶¶ 1-2.  Kaman's standard warranty provisions, contained in the purchase agreements for plaintiffs' helicopters, expressly excluded recovery for incidental and consequential economic damages.  Id. at ¶¶ 3-4.  In 1999, the free wheeling sprag clutches of both helicopters were replaced and the warranty provisions applicable to these replacement parts mirrored those contained in the helicopter purchase agreements.  Id. at ¶¶ 5-6.  Both helicopters were involved in accidents in 1999.  Id. at ¶¶ 7-8.  Plaintiffs allege that the accidents resulted from failure of the replacement sprag clutches, which they allege were defectively designed and/or manufactured.  See Compl. at ¶¶ 36-38, 41.

Both plaintiffs submitted claims to their insurance carriers in connection with the accidents.  Helog's insurer reimbursed Helog $2,591,908 for the loss of the helicopter. See Local Rule 56(a)(1) Statement at ¶ 9.  Mountain West's insurer paid $1,030,000 to repair the Mountain West helicopter.  Id. at ¶ 10.  Plaintiffs' insurance carriers brought

---

[1]  Kaman refers to plaintiffs Helog AG and Heli-Air Zagel Lufttransport AG collectively as "Helog" and refers to plaintiffs Mountain West Helicopters, LLC and Long-Line Leasing, LLC collectively as "Mountain West."

subrogation actions against Kaman to recover the insurance proceeds paid in connection with the accidents and these subrogation actions have been settled.  Id. at ¶ 11.

Plaintiffs in this case seek to recover from Kaman the amounts they have already received from their insurers.  Local Rule 56(a)(1) Statement at ¶ 12.  Plaintiffs also seek recovery for a laundry list of purely economic losses.  Specifically, Mountain West and Helog claim the following damages:

### *Mountain West*

(a)    Lost profits and revenues for helicopter logging operations -- $30,000;

(b)    Ongoing expenses in the form of excess salaried personnel unable to generate revenue in the absence of the helicopter -- $25,000;

(c)    Loss of the benefit of pilot training expenses -- $40,000;

(d)    Loss of the benefit of a portion of the annual premium paid to insure the helicopter -- $18,700;

(e)    Increase in hull and liability insurance premiums -- $117,000,

(f)    Interest expenses -- $207,500; and

(g)    Loss of a "no claims bonus on renewal" for aviation hull insurance premium -- $40,000.

See id. at ¶ 13.

### *Helog*

(a)    Lost profits and revenues for helicopter logging operations -- $250,000;

(b)    Ongoing expenses in the form of excess salaried personnel unable to generate revenue in the absence of the helicopter -- $101,371;

(c)    Loss of the benefit of a portion of the annual premium paid to insure the helicopter -- $57,486;

(d)    Increase in hull and liability insurance premiums -- $893,424; and

(e) The expense of replacing the helicopter at a less favorable currency exchange rate -- $2,992,752.

See id. at ¶ 14.[2]

Finally, plaintiffs make claims for "property damage" to the helicopters caused by the allegedly defective replacement sprag clutches. Mountain West's property damage claim is the $125,000 insurance deductible paid toward the repair of the helicopter. See Local Rule 56(a)(1) Statement at ¶ 15. Helog's property damage claim is between approximately $400,000 and $600,000. (Helog's alleged fair market value of the helicopter at the time of the accident minus the amount Helog recovered from its insurer). Id. at ¶ 16.[3]

## ARGUMENT

The standard for summary judgment is well settled. Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Jute v. Hamilton Sunstrand Corp., 321 F. Supp. 2d 408, 413-14 (D. Conn. 2004) (Covello, J.) As detailed below, there is no dispute that, as a matter of law, plaintiffs cannot recover for many of the categories of damages they seek.

---

[2] Kaman does not concede that any of the damage figures provided by plaintiffs are accurate and disputes many of the figures. However, the correctness of plaintiffs' damage figures is not before the Court at this time. Kaman's motion focuses solely on the issue of what *categories* of damages are or are not recoverable.

[3] Kaman recognizes that, in ruling on its Motion to Dismiss, the Court indicated that these property damage claims are recoverable. Therefore, Kaman is not moving for summary judgment in connection with these damage categories. Kaman, however, respectfully notes, as set forth in its Motion to Dismiss, that there is authority for the position that even these damage claims are "economic" and not recoverable. See Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft, 849 F. Supp. 666 (E.D. Wis.), aff'd, 42 F.3d 1391 (7th Cir. 1994) (helicopter operator barred from recovering, among other claimed damages, cost of insurance policy deductible).

I.    **The Connecticut Product Liability Act Bars Plaintiffs' Tort Claims For Economic Damages.**

As the Court held in its ruling on Kaman's motion to dismiss, the CPLA provides the exclusive means by which a party may seek to recover for damages caused by a defective product.    March 9 Ruling at 9 (the CPLA encompasses plaintiffs' claims "brought pursuant to common law tenants concerning strict liability, negligence, breach of warranty, and misrepresentation," as well as plaintiffs' "CUTPA cause of action"). See also Winslow v. Lewis Shepard, Inc., 212 Conn. 462, 471, 562 A.2d 517 (Conn. 1989) (CPLA is the exclusive remedy for product liability claims in Connecticut); Londrini v. Brito Enterprises, No. 100226, 1993 WL 328573 at *2 (Conn. Sup. Ct. Aug. 27, 1993) ("The purpose of the [CPLA] was to merge the numerous causes of action that have been asserted in common law product liability actions and to create one statutory cause of action, embracing the various theories of liability.") (Attached as Exhibit A).

By its unambiguous terms, the CPLA precludes the recovery of "commercial loss" in product liability actions between "commercial parties." See Conn. Gen. Stat. § 52-572(m)(d).    Courts are in agreement that the term "commercial loss" includes "direct or consequential damages between commercial parties."    Silent Stalker, Inc. v. Vickers Eng., No. CV020078923S, 2003 WL 22006299, *2 (Conn. Super. Ct. July 25, 2003) (*citing* Conn. Gen'l Life Ins. Co. v. Grodsky, 781 F. Supp. 897 (D. Conn. 1991); see also March 9 Ruling at 14, n.4 ("The plaintiffs also seek damages for various consequential economic losses.    There generally is no dispute among the Connecticut superior courts that such claims are not permitted under the CPLA.") (Attached as Exhibit B).

Aside from the claims for damage to the helicopters themselves, all other damages sought by plaintiffs constitute commercial losses, and are thus precluded by the plain language of the CPLA.  See Local Rule 56(a)(1) Statement at ¶¶ 9-10 (plaintiffs seek:   (a) lost profits;  (b) downtime expenses while the helicopters were being repaired/replaced; (c) pilot training expenses; (d) increased insurance premiums; and (e) interest and exchange rate expenses).  In interpreting the CPLA, courts have repeatedly and consistently held that the very damages sought in this case – i.e., lost profits, increased operating expenses, lost opportunities, etc. – constitute "commercial losses" and cannot be recovered.  See, e.g. McKernan v. United Technologies Corp., 717 F. Supp. 60 (D. Conn. 1989) (granting summary judgment against helicopter owner's tort claim alleging losses due to defective engine, as diminished proceeds from resale of helicopter and lost revenue during repair downtime "were solely commercial losses" unrecoverable under the CPLA); Grodsky, 781 F. Supp. at 899-901 (lost rent, salaries, taxes and benefits were direct or consequential economic damages that could not be recovered under the CPLA); Icelandic Coast Guard v. United Technologies Corp., 722 F. Supp. 942, 948 (D. Conn. 1989) ("In this case, this plaintiff's claims for replacement of the aircraft, recovery of the wreck, loss of use of the aircraft, and training of replacement flight crews are commercial economic losses resulting from damage to the helicopter itself.  The mere existence of separate claims for wrongful death does not make those claims for commercial economic loss cognizable . . ., and summary judgment as to plaintiff's claims for purely commercial economic losses therefore is appropriate.")  See also Miller v. United States Steel Corp., 902 F.2d 573, 574-75 (7th Cir. 1990) (rejecting

plaintiff's "attempt[] to use tort law to recover the cost of replacing a defective product sold to them for use in their business.").

Therefore, as a matter of law, plaintiffs cannot recover in tort for any of the economic losses they claim to have suffered.

## II.    Plaintiffs Cannot Recover Economic Damages Under Their Warranty Claims.

As discussed in Part I, all common-law warranty claims in a products liability case are subsumed within the CPLA. Therefore, plaintiffs' warranty claims must proceed in contract. The contractual warranty provisions governing the sale of the helicopters and the replacement clutches expressly exclude liability for the economic losses plaintiffs seek. Therefore, as a matter of law, plaintiffs' potential damage recovery is no broader under their warranty claims than under their CPLA claims.

Plaintiffs assert that their warranty claim relates to the replacement sprag clutches and does not arise under any warranty governing the original sale of the helicopters. See Local Rule 56(a)(1) Statement at ¶¶ 5-6. The replacement clutches are subject to the warranty provisions in Kaman's parts catalogue from 1999 which clearly disclaims any coverage for incidental or consequential economic damages:

> **EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .**

See id. at Exhibit F. (Standard Parts Warranty at Section 6B). Additionally, the Standard Parts Warranty disclaims any implied warranties and limits plaintiffs to the express warranty provisions of repair or replacement. Id.

These warranty provisions are unremarkable, and plainly enforceable. By statute, Connecticut law permits contracting parties to limit their liabilities and remedies. See Conn. Gen. Stat. § 42a-2-719. Section 42a-2-719(3) of Connecticut's version of the Uniform Commercial Code ("UCC") makes clear, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The Connecticut Supreme Court has explained, "[c]ommercial contracting parties have considerable freedom to determine the remedial rights that will ensue upon breach . . . [and] [a]bsent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made." Mack Financial Corp. v. Crossley, 209 Conn. 163, 550 A.2d 303, 305 (1988).

Courts have no difficulty enforcing liability limitation provisions similar to the warranty provisions of Kaman's parts catalogue. For example, in New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 564 A.2d 919 (1989), the buyer of a turbine generator brought suit against the seller for the recovery of lost profits and the cost of purchasing replacement energy when the generator was down for repairs. Id. at 539-44. The sales agreement contained language that limited the seller's liability, which language was incorporated by reference into subsequent maintenance agreements. Id. at 541-43. The Pennsylvania Supreme Court upheld the lower court's granting of summary judgment in favor of the engine manufacturer, holding that "contractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy

for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable." Id. at 548.  See also McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 348 (8th Cir. 1985), cert. denied, 106 S.Ct. 347 (1985) (consequential damages sought by purchaser of military aircraft parts were precluded because provision in the agreement for the supply of the aircraft parts limited seller's liability to repair or replacement of defective parts and specifically excluded liability for consequential damages).

Both in their responses to Kaman's discovery and in affidavits submitted in opposition to Kaman's Renewed Motion to Dismiss, plaintiffs contend that the replacement sprag clutches were purchased pursuant to the warranty provisions contained in Kaman's parts catalogue.  See Local Rule 56(a)(1) Statement at ¶¶ 5-6.  With no evidence suggesting that the replacement clutches were purchased under different terms, there is no basis for departing from the express provisions of Kaman's warranty – and these provisions preclude plaintiffs' recovery of economic damages in this case.

**III.    Plaintiffs Subrogated Their Claims For Damage to the Helicopters to Their Insurers, and Cannot Recover a Second Time for These Losses.**

Plaintiffs attempt to "double dip" and recover from Kaman amounts plaintiffs have been paid by their insurers is improper and should be rejected.  After the accidents, plaintiffs' insurers paid them for the damage to the helicopters.  In Mountain West's case, the insurer paid to have the helicopter repaired.  See Local Rule 56(a)(1) Statement at ¶ 10.  In Helog's case, the insurer made a lump sum payment, as the helicopter was declared a total loss.  Id. at ¶ 9.  Having been reimbursed by their insurers for the damage to the helicopters, it is the insurers, not plaintiffs, that "own" any claim related to the

amount paid toward the repair or replacement of the helicopters.[4]  As the Connecticut

Court of Appeals succinctly held:

> The right of subrogation, though it originates from principles of equity,
> can arise out of statute, the common law or contract.  R. Keeton & A.
> Widiss, INSURANCE LAW (1988) § 3.10(a)(1), p. 220.  In its simplest form,
> subrogation allows a party who has paid a debt to "step into the shoes" of
> another (usually the debtee) to assume his or her legal rights against a
> third party to prevent that party's unjust enrichment.  *Id.,* at 219.  In that
> way, an insurance company, for example, can be substituted for the
> insured in an action against a third party tortfeasor.  The insured, having
> been paid by the insurer, in essence, transfers his rights against the
> tortfeasor to the insurer.  The insurer, thus, can attempt to collect from the
> party that caused the loss to the extent expended by the insurer in
> satisfying the claim.

Wasko v. Manella, 74 Conn. App. 32, 35-36, 811 A.2d 727 (Conn. App. Ct. 2002).  See

also Orselet v. DeMatteo, 206 Conn. 542, 547, 539 A.2d 95 (Conn. 1988) ("[T]he insurer

as subrogee, in contemplation of law, stands in the place of the insured and *succeeds to*

*whatever rights he may have in the matter.*") (emphasis added.)  This is also true in

Second Circuit jurisprudence.  See, e.g., Commercial Union Ins. Co. v. Alatalia Airlines,

S.p.a., 347 F.3d 448, 457 (2d Cir. 2003); Gibbs v. Hawaiian Eugenia Corp., 966 F.2d

101, 106 (2d Cir. 1992) ("The general rule is that an insurer's right to subrogation

attaches, *by operation of law*, on paying an insured's loss.  At that time, the insurer is

subrogated in a corresponding amount to the insured's right of action against any other

person responsible for the loss, *and the insurer succeeds to all the procedural rights and*

*remedies possessed by the insured.*") (emphasis added) (citations omitted).

---

[4] Both insurers did in fact pursue claims against Kaman, and these claims have settled.
Id. at ¶ 11.

10

Such is the case here. Plaintiffs have been compensated by their insurers, and their insurers in turn brought subrogation actions against Kaman. No principle of law or equity allows plaintiffs to collect twice for the same harm.

## CONCLUSION

For the foregoing reasons, Kaman submits that, as a matter of law, plaintiffs are barred from recovering any of the economic losses they seek (under either the CPLA or the applicable warranties).

Respectfully submitted,

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: _____
Shaun S. Sullivan (ct 04883)
Timothy A. Diemand (ct 18075)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail ssullivan@wiggin.com
        tdiemand@wiggin.com

11

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed this 10th day of September,

2004, by first class mail, postage prepaid, to:


Robert S. Young, Esq.
Law Offices of Robert S. Young
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

Timothy A. Diemand

\14658\2\483861.4

# EXHIBIT
# A

**\*328573**    UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of New London, at Norwich.

**Albert Carl LONDRINI**
v.
**BRITO ENTERPRISES, et al.**

**No. 100226.**
Aug. 24, 1993.

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE

HENDEL, Judge.

**\*\*1**    The plaintiff has filed a nineteen count complaint against several defendants arising from the alleged negligent construction and installation of sewer works on the plaintiff's property. Various causes of action are set forth in the complaint, including nuisance, negligence, trespass, breach of warranty, strict liability for ultrahazardous activities and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and various Environmental Protection Act ("EPA") statutes.

The plaintiff alleges that defendant Price Brothers Company ("Price") is a supplier of products. Price has filed a motion to strike counts one through nine and eleven through seventeen and nineteen on the ground that the claims asserted therein are barred by the exclusivity provision of the Product Liability Act ("PLA"), General Statutes § 52-572m et seq. Price also moves to strike count eleven on the grounds that plaintiff's environmental claims do not state a private cause of action.

The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170 (1988). In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. *King v. Board of Education,* 195 Conn. 90, 93 (1985). The court must construe the facts most favorably to the pleader. *Blancato v. Feldspar,* 203 Conn. 34, 36 (1987). The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them and if facts provable under the allegations would support a defense or cause of action, the motion to strike must fail. *Alarm Applications Co. v. Simsbury*

*Volunteer Fire Co.,* 179 Conn. 541, 545 (1980).

I. *Counts One through Nine and Twelve through Seventeen*

Although the plaintiff did not cite to the PLA in her complaint, the plaintiff's allegations sound in product liability and the court will read the plaintiff's cause of action as a PLA claim. See *Mongillo v. AMF, Inc.,* 3 Conn.L.Rptr. 434 (April 6, 1987, Berdon, J.).

General Statutes § 52-572n(a) provides:

A product liability claim ... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

General Statutes § 52-572m(b) defines a "product liability claim" as follows:

"Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, expressed or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

**\*\*2**    The PLA is "an exclusive remedy for claims falling within the scope." *Winslow v. Lewis-Shepard, Inc.,* 212 Conn. 462, 471 (1989). The purpose behind the act was to merge the numerous causes of action that have been asserted in common law product liability actions and to create one statutory cause of action, embracing the various theories of liability. *Id.,* 470.

A party can plead alternative common law theories of liability to support a PLA cause of action. In *Skerritt v. Sandoz Nutrition Corporation,* 3 Conn.L.Rptr. 433 (March 26, 1991 Berdon, J.), the defendant moved to strike counts sounding in fraud and negligence from a PLA claim and, in denying the motion, the court stated:

Surely the plaintiff may plead in the alternative.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Stephenson, E., Conn.Civil Procedure, § 92. Furthermore, it is clear that although under the Act the claimant may only assert a product liability claim, there was no intention on the part of the framers to eliminate the various theories of liability under the common law. *Mongillo v. AMF, Inc.,* memorandum of decision dated April 6, 1987.... Finally, the plaintiffs may be able to prove facts under the broad allegations of this complaint which would set out a cause of action not within the scope of the Product Liability Act.

In the present case, in counts one through nine and twelve through seventeen, the plaintiff has alleged common law theories of liability for which the PLA is the exclusive remedy. In *Hoboken Wood Flooring Corporation v. Torrington Supply Co.,* 42 Conn.Sup. 153, 157 (1992), the court noted that:

It is clear from the legislative history set forth in *Winslow* that the legislature intended all product liability claims to constitute a single cause of action; and a complaint setting forth a single cause of action "should be confined to a single count." The fact that a product liability claim can comprehend a number of distinct theories does not preclude a single count complaint.

(Citations omitted.)

Because Price has not raised this issue and because the rules of pleading are to be liberally applied; *DeFelippi v. DeFelippi,* 23 Conn.Sup. 352, 353 (1962); counts one through nine and twelve through seventeen should be read as one count. The allegations in these counts are legally sufficient to support the plaintiff's cause of action against Price, a product supplier, pursuant to the PLA.

Therefore, the court must deny the defendant's motion to strike counts one through nine and twelve through seventeen.

II. *Counts Eleven and Nineteen*

In count eleven, the plaintiff cites several sections of the Connecticut EPA which the plaintiff alleges Price violated. In count nineteen, the plaintiff alleges that the Price's actions violated CUTPA.

Both of these counts assert statutory causes of action. Various courts have decided generally, in the context of CUTPA, that a statutory claim arising out of the same transaction or occurrence as the PLA claim may be pled as a separate count in an action under the PLA. *See Notman v. Ford Motor Company,* 6 Conn.L.Rptr. 117 (March 4, 1992, Burns, J.). These courts have reasoned that the product liability statutes only preclude claims which are "basically co-extensive with" or "functionally identical to" a simultaneously pled product liability claim. *West Haven School District v. Owens-Corning Fiberglass Corp.,* 14 Conn.L.Trib., No. 44, p. 23 (D.Conn., July 21, 1988, Nevas, J.). *See also Howell v. Capitol Chemical Ind. Inc.,* 7 Conn.L.Rptr. 88 (July 14, 1992, Katz, J.); *Jaconski v. Harley-Davidson Co. Inc.,* 4 CSCR 413 (April 21, 1989, Koletsky, J.).

**3.** The plaintiff incorporates the product liability allegations pled in the first count in support of his EPA and CUTPA claims. The plaintiff's EPA and CUTPA claims are "basically co-extensive with" and "functionally identical to" the product liability claim and, therefore, these claims are barred by the exclusivity provision of the PLA.

Therefore, the court must grant Price's motion to strike counts eleven and nineteen of the plaintiff's complaint.

III.

For the reason stated above the court denies Price's motion to strike counts one through nine and twelve through seventeen and grants Price's motion to strike counts eleven and nineteen.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

# EXHIBIT
# B

**\*22006299**        UNPUBLISHED OPINION.
CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Ansonia-Milford.

**SILENT STALKER, INC.,**
v.
**VICKERS ENGINEERING et al.**

No. CV020078923S.
July 25, 2003.

Nuzzo & Roberts LLC, Cheshire, for Silent Stalker Inc.

Kenny & Brimmer, Hartford, for Vickers Engineering.

Kernan & Henry LLP, Waterbury, for Production Fabricators and Stamping.

JON M. ALANDER, Judge.

**\*\*1**    The plaintiff Silent Stalker, Inc. ("Silent Stalker") has brought this action asserting claims for contribution and indemnity against the defendant Vickers Engineering and the defendant Production Fabricators and Stamping ("Production Fabricators") arising out of the settlement by the plaintiff of a prior product liability action. The defendant Production Fabricators has moved to strike the contribution and indemnity claims against it. Specifically, Production Fabricators argues that the fourth and fifth counts of the plaintiff's amended complaint, which purport to assert claims of contribution and indemnification under the product liability statute, constitute claims for commercial loss which are barred by the product liability statute. Production Fabricators also contends that the sixth count of the plaintiff's amended complaint which asserts a claim of common-law indemnity should be stricken because it fails to sufficiently allege that Production Fabricators was in exclusive control of the situation giving rise to the injury.

"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations and internal quotation marks omitted.) *Novametrix Medical Systems v. BOC Group, Inc.,* 224 Conn. 210, 214 (1992). A motion to strike admits all facts well pleaded, but it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108 (1985).

In its amended complaint, the plaintiff Silent Stalker alleges that Leslie Warren previously commenced a product liability action against it in which he claimed he was injured while using defective tree pegs sold by the plaintiff. Silent Stalker further alleges that a stipulated judgment in the amount of $650,000 was entered in that action on October 17, 2002 in favor of Leslie Warren and that it paid the judgment on December 1, 2002. Silent Stalker then brought the subject action against the defendants Vickers Engineering and Production Fabricators for contribution and indemnification. With respect to the defendant Production Fabricators, Silent Stalker alleges in its amended complaint that Production Fabricators assembled, installed or manufactured the tree pegs in a defective manner, proximately causing the injuries to Leslie Warren.

I

Product Liability Claims

Production Fabricators maintains that the fourth and fifth counts of the plaintiff's amended complaint, which purport to assert claims of contribution and indemnification under the product liability statute, fail to state claims upon which relief can be granted because they seek to recover commercial loss which is not allowed in a product liability action. (FN1) The plaintiff contends that the bar to the recovery of commercial loss contained in the product liability statute does not apply to claims for indemnification or contribution. For the following reasons, I conclude that Production Fabricators has not established, under the facts alleged in the amended complaint, that the fourth and fifth counts fail to state a claim upon which relief can be granted.

**\*\*2**    The product liability statute defines "harm" for purposes of a product liability action as follows: "'Harm' includes damage to property, including the product itself and personal injuries including wrongful death. As between commercial parties, 'harm' does not include commercial loss." General Statutes § 52-572m(d). The product liability statute further provides that: "As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

only under, and shall be governed by, title 42a, the Uniform Commercial Code." General Statutes § 52-572n(c).

The defendant maintains that the plaintiff's claims for full or partial reimbursement of the money it paid to settle the product liability action filed by Leslie Warren constitute claims between commercial parties to recover a commercial loss and that the above quoted statutory language prohibits such claims. I do not agree.

The product liability statute fails to define the term "commercial parties" or the term "commercial loss." Our appellate courts have not yet had an opportunity to put a judicial gloss on those terms. Trial courts have been thrust into this void. The result has been considerable disagreement both as to the scope of the definition of these terms and the applicability of the statute's commercial loss prohibition to contribution and indemnity claims.

The dispute among trial courts concerning the definition of "commercial loss" has revolved primarily around whether it includes property damage suffered by a commercial party as a result of a defective product. Compare *Producto Machine Co. v. Ajax Magnethermic Cor* p., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 23 60 05 (November 10, 1987) (Burns, J.) (in which the court equated commercial loss to "economic injury, whether direct, incidental, or consequential, including property damage and damage to the product itself"), with *American Manufacturers Mutual Ins. Co. v. Harrington Hoist, Inc.,* Superior Court, judicial district of New Haven at New Haven, Docket No. 26 23 69 (June 13, 1989) (Berdon, J.) (in which the court defined commercial loss as including loss of profits or consequential economic losses but not property damage and personal injuries). Whatever the propriety of including property damage in the product liability statue's definition of commercial loss, it was generally agreed that the term includes direct or consequential economic damages between commercial parties. See *Connecticut General Life Ins. Co. v. Grodsky,* 781 F.Supp. 897 (D.Conn.1991).

A number of courts have seized upon this definition of commercial loss to strike third-party indemnity claims by defendants in product liability actions. The seminal case in this area is *Smith v. Yankee Motor Inn,* Superior Court, judicial district of New London at New London, Docket No. 523560 (July 22, 1994) (Leuba, J.). In *Yankee Motor Inn,* the plaintiff Dale Smith commenced an action against

Yankee Motor Inn for injuries he received when a paper dispenser in a restroom at the Inn fell out of the wall when he attempted to pull paper out of it. Yankee Motor Inn subsequently brought a third-party complaint against Allston Supply Co. claiming that the paper dispenser was defectively designed, assembled, manufactured or distributed by Allston and seeking indemnification for all of Yankee Motor Inn's potential liability to the plaintiff. The court, at Allston's request, struck the indemnification claim finding that Yankee Motor Inn and Allston were commercial parties and that Yankee Motor Inn's claim for payment of any judgment against it constituted a claim for economic losses barred by the commercial loss prohibition of the product liability statute.

**\*\*3** A significant number of other trial courts have followed Judge Leuba's lead. See e.g., *Gelormino v. J.C. Penney Company, Inc.,* Superior Court, judicial district of Litchfield, Docket No. CV960067840 (May 22, 1997) (Dranginis, J.); *Amati v. Nallainathan,* Superior Court, judicial district of Bridgeport, Docket No. CV 298653S (Sep. 4, 1996) (Ballen, J.), 17 Conn. L. Rptr. 679; *Gurgino v. Castrogiovanni,* Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. CV 9304580715 (Jun. 6, 1995) (Goldberg, J.), 14 Conn. L. Rptr. 417; and *Kofkoff Feed, Inc. v. Agway, Inc.,* Superior Court, judicial district of New London at New London, Docket No. 522748 (Jan. 6, 1995) (Austin, J.), 13 Conn. L. Rptr. 247.

A contrary position has recently been taken in *Johnson v. Chalmers,* Superior Court, complex litigation docket at Tolland, Docket No. X07 CV99 0074165S (Nov. 30, 2000) (Bishop, J.), 29 Conn. L. Rptr. 43. In *Chalmers,* the plaintiff Lemond Johnson brought a product liability action against a number of defendants including Tri-Lift, Inc. ("Tri-Lift") for personal injuries he sustained while using a forklift. Tri-Lift brought a third-party complaint against NYK seeking indemnification for any judgment rendered in favor of Johnson. NYK filed a motion to strike the third-party complaint claiming that an adverse judgment is a commercial loss that is not within the scope of harm compensable under the product liability statute. The court denied the motion to strike the third-party complaint seeking indemnification. The court determined that the potential payment of monies to satisfy a product liability claim, rather than comprising commercial loss outside the scope of the product liability statute, constituted property damage compensable under the product liability act.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

The court in *Chalmers* further ruled that the commercial loss exclusion was limited to economic loss arising from commercial transactions involving the buying and selling of goods and not to economic loss stemming from an underlying personal injury claim. In reaching this conclusion, the court relied on the analysis of the commercial loss provision of the product liability statute, § 52-572n(c) ("the commercial loss statute"), contained in *Hartt v.. Schwartz,* Superior Court, judicial district of New Haven at New Haven, Docket No. 331912, (December 3, 1997) (Blue, J.), 21 Conn. L. Rptr. 52. In *Hartt,* the court eschewed the broad definition of commercial loss established in prior cases in favor of an interpretation of the commercial loss statute that establishes a dichotomy between two categories of cases: product liability cases governed by the product liability act and commercial cases governed by the Uniform Commercial Code (UCC). Under this view, the ban on the recovery of commercial losses between commercial parties is limited to those claims involving commercial parties who had contractual relations regarding the defective product and who have contractual remedies under the UCC. See also *Stop & Shop v. ABCD Refrigeration,* Superior Court, complex litigation docket at Waterbury, Docket No. X01 CV000163760S (August 2, 2002) (Hodgson, J.), 33 Conn. L. Rptr. 20.

**4** I agree with the result reached in *Chalmers* that the ban on the recovery of commercial losses between commercial parties contained in the product liability statute does not prevent the plaintiff in this case from asserting claims of contribution and indemnity for the reimbursement of monies paid to compensate a product user for personal injuries incurred from his use of a defective product. As the court did in *Chalmers,* I find persuasive the line of cases that limits the product liability statute's bar to the recovery of commercial losses between commercial parties to claims involving commercial parties with contractual relations concerning the product at issue who have remedies under the UCC. (FN2) See *Hart v. Schwartz, supra* and *Stop & Shop v. ABCD Refrigeration, supra.*

The view espoused in *Smith v. Yankee Motor Inn* and its progeny is attractive for its simplicity: commercial loss encompasses economic loss and payment of a product liability judgment constitutes economic loss; ergo, contribution and indemnity claims seeking reimbursement for such payments are claims for commercial loss outside the parameters of a product liability action. The fundamental flaw with this analysis is that it sweeps too broadly and whisks

away contribution and indemnity claims that are clearly authorized by the provisions of the product liability statute. Section 52-572o(e) expressly authorizes an independent action for contribution and § 52-577a(b) has been interpreted to allow third-party contribution and indemnification claims, *Malerba v. Cessna Aircraft Co.,* 210 Conn. 189, 196 (1989). Under the *Yankee Motor Inn* analysis, such actions for contribution or indemnity could never be brought by a party who paid to resolve a prior product liability action against other product sellers involved in the design, assembly or manufacture of the defective product.

"A statute should be read as a whole and interpreted so as to give effect to all of its provisions." *Pintavalle v. Valkanos,* 216 Conn. 412, 418, 581 A.2d 1050 (1990). The purpose of this rule is to avoid construing the statutes in such a way as to create a conflict between statutes; "[s]uch ... reconciliation is especially important in dealing with provisions that are enacted as part of the same legislation. *Malerba v. Cessna Aircraft Co.,* 210 Conn. 189, 195, 554 A.2d 287 (1989)." *Elliot v. Sears, Roebuck & Co.,* 229 Conn. 500, 512 (1994). By adopting the construction of the commercial loss section of the product liability statute, § 52-572n(c), suggested in *Hartt v. Schwartz* and followed in *Johnson v. Chalmers,* its provisions can be harmonized with the provisions of the product liability statute which authorize actions for contribution, § 52-572o(e), and actions for indemnity, § 52-577a(b).

In this case, the allegations of the plaintiff's complaint do not reveal whether Silent Stalker, Inc. and Production Fabricators had a contractual relationship with respect to the tree pegs at issue or whether Silent Stalker has any remedy for its claims under the UCC. (FN3) As a result, the factual allegations of the complaint do not establish, as Production Fabricators urges in its motion to strike, that the plaintiff's claims for contribution and indemnification constitute claims for commercial loss between commercial parties unrecoverable in the context of a product liability claim. See *Stop & Shop v. ABCD Refrigeration, supra.* Accordingly, the motion to strike the fourth and fifth counts is denied.

II

Common-Law Indemnity Claim

**5.** Production Fabricators has also moved to strike the sixth count of the plaintiff's amended

complaint which asserts a common-law indemnity claim. Production Fabricators contends that no reasonable juror could find that it was in exclusive control of the situation that caused injury to Leslie Warren.

"Ordinarily there is no right of indemnity or contribution between joint tortfeasors. Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. Under the circumstances described, we have distinguished between 'active or primary negligence,' and 'passive or secondary negligence.' Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." (Citations omitted; internal quotation marks omitted.) *Skuzinski v. Bouchard Fuels, Inc.,* 240 Conn. 694, 697 (1997).

Silent Stalker's amended complaint must allege facts sufficient to establish at least four separate elements in order to maintain a common-law action for indemnity. These elements are:

(1) that the other tortfeasor was negligent; (2) that such negligence, rather than the plaintiff's, was the direct, immediate cause of the accident and injuries; (3) that the other tortfeasor was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent. *Id.* at 698.

Ordinarily, the issue of whether the tortfeasor was in exclusive control of the situation is a question of fact to be resolved by the jury. *Id.* at 704. In special circumstances, a court may find that, given the facts alleged in the complaint, no reasonable juror could find that the plaintiff had met its burden of establishing that defendant was in exclusive control of the situation causing the injury and grant a motion to strike the common-law indemnity claim. *Id.* at 704-06.

Despite Production Fabricator's contention, this is not one of those special cases. In the sixth count of its amended complaint, Silent Stalker has alleged that Leslie Warren was injured when one of the tree pegs he was using broke, due to its being defective. It further alleges that Production Fabricators assembled, installed and/or manufactured the tree peg and did so

in a defective manner. Given the nature of these allegations, it is for a jury to determine whether Production Fabricators was in exclusive control of the situation that gave rise to Leslie Warren's injuries.

### III

### Conclusion

In light of the above, the motion to strike the fourth, fifth and sixth counts of the plaintiff's amended complaint is denied.

(FN1.) It is not clear that the plaintiff may appropriately assert indemnity claims under both the product liability act and the common law. "[A] party is entitled to indemnification, in the absence of a contract to indemnify, *only* upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct ... [I]f a claim for indemnification is grounded in tort, reimbursement is warranted *only* upon proof that the injury resulted from the 'active or primary negligence' of the party against whom reimbursement is sought." (Emphasis supplied. Citations omitted.) *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 74 (1990). Arguably, the product liability act, rather than establishing an independent indemnity right, may simply allow an indemnity claim to be asserted under the common law. The defendant here however has not raised this issue in its motion to strike and I leave its determination to another day.

(FN2.) I do not share the court's view in *Chalmers* that monies paid to satisfy an underlying judgment constitute property damage compensable under the product liability statute. The traditional meaning of property damage is damage to or the loss of use of tangible property. *Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559, 583 (1995). There is nothing in the legislative language or legislative history of the product liability statute that justifies stretching the meaning of "damage to property," to include satisfaction of a judgment. See *Williams Ford, Inc. v. Hartford Courant Co., supra,* 232 Conn. at 584 in which the court declined to include purely commercial losses in the term "damage to property" as used in General Statutes § 52-572h.

**\*\*5**  (FN3.) It is uncertain whether Silent Stalker could claim recompense for the damages it paid to Leslie Warren for the personal injuries he received

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

from using the defective product. Although the consequential damages that a buyer may claim under the UCC includes injury to persons, General Statutes § 42a-2-715, it does not ordinarily encompass such losses as pain and suffering. *Gazo v. Stamford,* 255 Conn. 245, 265-66 (2001).

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.