design defects or, alternatively, due to Kaman's failure to give adequate warning with respect thereto, in a defective and unreasonably dangerous condition for their anticipated or reasonably foreseeable use.

37.    Alternatively, at the time Kaman placed the Helicopters and/or their component and/or spare/replacement parts into the stream of commerce or at subsequent times, following Kaman's discovery of conditions affecting the continued airworthiness thereof, the Helicopters and/or their component and/or spare/replacement parts were in a defective and unreasonably dangerous condition for their anticipated or reasonably foreseeable use, in that they involved substantial dangers not readily recognized by ordinary users thereof and Kaman failed to adequately warn users of such danger either at the time of placing the Helicopters and/or their component and/or spare/replacement parts in the stream of commerce or after discovering conditions materially affecting the continued airworthiness thereof.

38.    The defective conditions of the Helicopters and/or their component and/or spare/replacement parts and/or Kaman's failure to adequately warn of the same proximately caused plaintiffs to suffer the damages and losses described above.

39.    Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at the time of trial.

## COUNT II
## (NEGLIGENCE AGAINST KAMAN)

40.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

8

41.    Kaman negligently designed and/or manufactured the Helicopters and/or negligently designed and/or manufactured and/or selected for use the Helicopters' component and/or spare/replacement parts.

42.    Kaman negligently supplied accompanying product support, product support materials and/or continuing airworthiness directions and/or materials regarding the Helicopters and/or their component and/or spare/replacement parts, including, among other things, service bulletins, letters, instructions and manuals.

43.    Kaman negligently failed to disclose defective and dangerous conditions in the Helicopters and/or their component and/or spare/replacement parts to the public at large, to owners and operators or to the FAA and other regulatory authorities.

44.    Kaman negligently, unreasonably, improperly and contrary to federal aviation regulations certified to the FAA and other regulatory authorities, the airworthiness of the Helicopters and/or their component and/or spare/replacement parts, when in fact they were not.

45.    Kaman engaged in such other acts of negligence as will appear, during the course of discovery, to be conduct giving rise to Kaman's liability herein.

46.    Kaman's negligence, described above, proximately caused plaintiffs to suffer the damages and losses described above.

47.    Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at the time of trial.

## COUNT III
### (BREACH OF WARRANTY AGAINST KAMAN)

48.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

49.    Kaman expressly and/or impliedly warranted the Helicopters and/or their component and/or spare/replacement parts to be free from defects, fit for the ordinary and particular purposes for which such helicopters and/or their component and/or spare/replacement parts are used and further warranted the Helicopters and/or their component and/or spare/replacement parts were airworthy and safe for operation in their ordinary, foreseeable and anticipated use.

50.    The failure of the Helicopters and/or their component and/or spare/replacement parts, while engaged in their ordinary, foreseeable and anticipated use, constitutes a breach of the foregoing warranties.

51.    Kaman's breach of the foregoing warranties proximately caused plaintiffs to suffer damages and losses as described above.

52.    Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at trial.

## COUNT IV
### (MISREPRESENTATION AGAINST KAMAN)

53.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

54.     Kaman, in the course of its business, fraudulently, intentionally, negligently and/or innocently misrepresented the Helicopters and/or their component and/or spare/replacement parts were fit, when they were not, for the ordinary and particular purposes for which such helicopters and/or their component and/or spare/replacement parts are used and further misrepresented the Helicopters and/or their component and/or spare/replacement parts were airworthy and safe for their ordinary, foreseeable and anticipated use.

55.     At the time of Kaman's misrepresentations, described above, Kaman knew, had the means of knowing, ought to have known or was under a duty to know the true nature of the facts misrepresented, but failed to exercise reasonable care or competence in obtaining or communicating those facts.

56.     The plaintiffs were entitled to rely and, in fact, did rely upon Kaman's misrepresentations, described above, to their detriment.

57.     As a direct and proximate result of Kaman's misrepresentations and plaintiffs' reasonable reliance upon the same, plaintiffs suffered damages and losses as described above.

58.     Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at trial.

## COUNT V
### (UNFAIR TRADE PRACTICES AGAINST KAMAN)

59.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

60.    Kaman's breach of warranty and misrepresentation that the Helicopters, the Clutches and/or their spare/replacement parts were airworthy, reasonably safe, free from defects, fit for their intended, ordinary and/or known particular uses and of merchantable quality (1) constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce; (2) offend public policy as it has been established by statutes, the common law or other established concepts of unfairness; (3) were immoral, unethical, oppressive or unscrupulous; or (4) caused substantial and unjustified consumer injury to plaintiffs that plaintiffs could not reasonably have avoided and that was not outweighed by any countervailing benefits to consumers or competition that Kaman's conduct produced.

61.    As a direct and proximate result of Kaman's unfair trade practices described above, plaintiffs suffered damages and losses as described above.

62.    Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at trial.

## COUNT VI
## (STRICT PRODUCTS LIABILITY AGAINST JOHN DOES I THROUGH V)

63.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

64.    Upon information and belief, John Does I through V or their predecessors in interest designed and manufactured the Helicopters or any of their various component and/or spare/replacement parts.

65.    John Does I through V or their predecessors in interest are engaged in the

business of designing, developing, manufacturing, supplying and selling such component and/or spare/replacement parts, thereby, placing such component and/or spare/replacement parts into the stream of commerce.

66.    John Does I through V expect the various component and/or spare/replacement parts they design, develop, manufacture, supply and sell, to reach ultimate users or consumers without substantial change in the condition in which they are placed into the stream of commerce.

67.    In addition to designing and manufacturing the various component and/or spare/replacement parts, John Does I through V also provide accompanying product support, product support materials and continuing airworthiness directions and materials with respect thereto, including, among other things, service bulletins, service letters, service instructions and service manuals.

68.    At the time John Does I through V placed the various component and/or spare/replacement parts into the stream of commerce, they were, due to a manufacturing and/or design defect or, alternatively, due to the failure of John Does I through V to give adequate warning with respect thereto, in a defective and unreasonably dangerous condition for their anticipated or reasonably foreseeable use.

69.    Alternatively, at the time John Does I through V placed the various component and/or spare/replacement parts into the stream of commerce or at subsequent times, following the discovery by John Does I through V of conditions affecting the continued airworthiness

thereof, the component and/or spare/replacement parts were in a defective and unreasonably dangerous condition for their anticipated or reasonably foreseeable use, in that they involved substantial dangers not readily recognized by ordinary users thereof and John Does I through V failed to adequately warn users of such danger either at the time of placing the component and/or spare/replacement parts in the stream of commerce or after discovering conditions materially affecting the continued airworthiness thereof.

70.    The defective condition of the component and/or spare/replacement parts and/or the failure of John Does I through V to adequately warn of the same proximately caused plaintiffs to suffer the damages and losses described above.

71.    Accordingly, John Does I through V are liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at the time of trial.

## COUNT VII
## (NEGLIGENCE AGAINST JOHN DOES I THROUGH V)

72.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

73.    John Does I through V negligently designed, manufactured and/or overhauled the Helicopters, Clutches, or any of the various component and/or spare/replacement parts thereof.

74.    John Does I through V negligently supplied accompanying product support, product support materials and/or continuing airworthiness directions and/or materials regarding the Helicopters, Clutches, or any of the various component and/or spare/replacement parts thereof, including, among other things, service bulletins, letters, instructions and manuals.

14

75.    John Does I through V negligently failed to disclose defective and dangerous conditions in the Helicopters, Clutches or any of the various component and/or spare/replacement parts thereof, to the public at large, to owners and operators or to the FAA and other regulatory authorities.

76.    John Does I through V negligently, unreasonably, improperly and contrary to federal aviation regulations certified to the FAA and other regulatory authorities, the airworthiness of the Helicopters, Clutches or any of the component and/or spare/replacement parts thereof, when in fact they were not.

77.    John Does I through V engaged in such other acts of negligence as will appear, during the course of discovery, to be conduct giving rise to the liability of John Does I through V herein.

78.    The negligence of John Does I through V, described above, proximately caused plaintiffs to suffer the damages and losses also described above.

79.    Accordingly, John Does I through V are liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at the time of trial.

### COUNT VIII
### (BREACH OF WARRANTY AGAINST JOHN DOES I THROUGH V)

80.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

81.    John Does I through V expressly and/or impliedly warranted the Helicopters, the Clutches or any of the component and/or spare/replacement parts thereof, were fit for the

ordinary and particular purposes for which such helicopters, Clutches or component and/or spare/replacement parts thereof, are used and further warranted the Helicopters, Clutches or any of the component and/or spare/replacement parts thereof, were airworthy and safe for operation in their ordinary, foreseeable and anticipated use.

82.    The failure of the Helicopters, Clutches or the component and/or spare/replacement parts thereof, while engaged in their ordinary, foreseeable and anticipated use, constitutes a breach of the foregoing warranties.

83.    The breach by John Does I through V of the foregoing warranties proximately caused plaintiffs to suffer damages and losses as described above.

84.    Accordingly, John Does I through V are liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at trial.

## COUNT IX
## (MISREPRESENTATION AGAINST JOHN DOES I THROUGH V)

85.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30 above as though fully set forth herein.

86.    John Does I through V, in the course of their business, fraudulently, intentionally, negligently and/or innocently misrepresented the Helicopters, Clutches or the component and/or spare/replacement parts thereof, were fit for the ordinary and particular purposes for which such helicopters, clutches or the component and/or spare/replacement parts thereof are used and further misrepresented the Helicopters, Clutches or the component and/or spare/replacement parts thereof, were airworthy and safe for operation in their ordinary,

foreseeable and anticipated use when they were not.

87.     At the time of the misrepresentations of John Does I through V, described above,
John Does I through V knew, had the means of knowing, ought to have known or were under a
duty to know the true nature of the facts misrepresented, but failed to exercise reasonable care
or competence in obtaining or communicating those facts.

88.     Plaintiffs were entitled to rely and, in fact, did rely upon the misrepresentations
of John Does I through V, described above, to their detriment.

89.     As a direct and proximate result of the misrepresentations of John Does I through
V and plaintiffs' reasonable reliance upon the same, plaintiffs suffered damages and losses as
described above.

90.     Accordingly, John Does I through V are liable to plaintiffs for damages in excess
of $75,000, the exact amount to be established at trial.

## COUNT X
### (UNFAIR TRADE PRACTICES AGAINST JOHN DOES I THROUGH V)

91.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 30
above as though fully set forth herein.

92.     The breach of warranty and misrepresentation, by John Does I through V, that
the Helicopters, the Clutches and/or their spare/replacement parts were airworthy, reasonably
safe, free from defects, fit for their intended, ordinary and/or known particular uses and of
merchantable quality (1) constitute unfair methods of competition and unfair or deceptive acts
or practices in the conduct of any trade or commerce; (2) offend public policy as it has been

established by statutes, the common law or other established concepts of unfairness; (3) were immoral, unethical, oppressive or unscrupulous; or (4) caused substantial and unjustified consumer injury to plaintiffs that plaintiffs could not reasonably have avoided and that was not outweighed by any countervailing benefits to consumers or competition that the conduct of John Does I through V produced.

93.    As a direct and proximate result of the unfair trade practices, by John Does I through V, described above, plaintiffs suffered damages and losses as described above.

94.    Accordingly, Kaman is liable to plaintiffs for damages in excess of $75,000, the exact amount to be established at trial.

## COUNT XI
## (PUNITIVE DAMAGES)

95.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 94 above as though fully set forth herein.

96.    The acts or omissions of one or more of the defendants named above, causing or contributing to cause the damages plaintiffs or any one of them sustained, were engaged in willfully and maliciously or, in the alternative, manifested a knowing and reckless indifference toward, and a disregard of, the rights of plaintiffs or any one of them.

97.    Accordingly, plaintiffs or any one of them are entitled to an award of punitive damages, against one or more of the above-named defendants, in an amount to be determined at the time of trial.

**WHEREFORE**, plaintiffs pray for judgment against Defendants as follows:

1.    Against Defendant, Kaman Aerospace, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count I above.

2.    Against Defendant, Kaman Aerospace, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count II above.

3.    Against Defendant, Kaman Aerospace, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count III above.

4.    Against Defendant, Kaman Aerospace, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count IV above.

5.    Against Defendant, Kaman Aerospace, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count V above.

6.    Against Defendants, John Does I through V, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count VI above.

7.    Against Defendants, John Does I through V, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count VII above.

8.    Against Defendants, John Does I through V, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count VIII above.

9.    Against Defendants, John Does I through V, in an amount exceeding $75,000, the exact amount to be established at the time of trial, as outlined in Count IX above.

10.    Against Defendants, John Does I through V, in an amount exceeding $75,000,

the exact amount to be established at the time of trial, as outlined in Count X above.

11. For an award of punitive damages against one or more of the defendants named above, as deemed appropriate by the trier of fact, as outlined in Count XI above.

12. For costs and a reasonable attorney fee incurred by Plaintiffs as allowed under applicable law.

13. For prejudgment and post judgment interest as allowed under applicable law.

14. For such other and further legal and equitable relief as the Court deems just and appropriate.

BISHOP & JACKSON, LLC

By: ______________________
TIMOTHY A. BISHOP, ESQ.(ct05774)
Attorneys for Plaintiff

DATED: September ___, 2001.
Plaintiffs' Addresses:

Mountain West and Long-Line:
73 West 620 South
Orem, UT 84058

Helog:
Heliport Haltikon
CH-6403 Küssnacht
Switzerland

Heli-Air:
Sägewerkstraße 3
D-83404 Hammerau-Ainring
Germany

# EXHIBIT
# I



COPY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:
LONG-LINE LEASING, LLC,          :
HELOG AG and HELI-AIR ZAGEL      :
LUFTTRANSPORT AG,                :
                                 :
            Plaintiffs,          :
                                 :
vs.                              :
                                 :      CASE NO. 3:01CV1746 (AVC)
KAMAN AEROSPACE CORPORATION      :
and JOHN DOES I THROUGH V,       :      April 16, 2004
                                 :
Defendants.                      :

### ANSWER AND DEFENSES OF KAMAN AEROSPACE CORPORATION

Defendant Kaman Aerospace Corporation ("Kaman"), by and through its undersigned attorneys, responds to plaintiffs' complaint dated September 11, 2001 (the "Complaint") as follows:

1.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 1 and so leaves plaintiff to its proof.

2.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 2 and so leaves plaintiff to its proof.

3.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 3 and so leaves plaintiff to its proof.

4.      Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 4 and so leaves plaintiff to its proof.

5.      Kaman admits that it is a Delaware corporation with a principal place of business in Connecticut.

6.      Kaman admits that it participated in the design, manufacture, and sale of the model K-1200 helicopters bearing serial number A94-0014 (registered as N164KA) and serial number A94-0018 (registered as D-HFZA).    Kaman denies the remaining allegations in paragraph no. 6.

7.      Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 7 and so leaves plaintiff to its proof.

8.      Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 8 and so leaves plaintiff to its proof.

9.      Kaman does not plead in response to paragraph no. 9 as it is addressed to other "defendants" (i.e., "John Does I through V").

10.     The allegations in paragraph no. 10 state a legal conclusion to which no response is required.

11.     Kaman neither admits nor denies the allegations in paragraph no. 11 and refers to the agreements which speak for themselves.

12.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 12 and so leaves plaintiffs to their proof.

-2-

13.    The allegations in paragraph no. 13 state a legal conclusion to which no response is required.

14.    The allegations in paragraph no. 14 state a legal conclusion to which no response is required.

15.    Admit.

16.    Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 16 and so leaves plaintiff to its proof.

17.    Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 17 and so leaves plaintiff to its proof.

18.    Kaman admits that Kaman K-1200 model helicopters are designed, manufactured, marketed and sold for use in external lift operations. Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 18 and so leaves plaintiff to its proof.

19.    Kaman denies the allegations contained in paragraph no. 19, except to admit that on September 13, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0018 and registered as D-HFZA was involved in an accident in or near Flirsch, Austria.

20.    Kaman denies the allegations contained in paragraph no. 20, except to admit that on September 13, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0018 and registered as D-HFZA performed an emergency landing with subsequent damage to the helicopter.

21.     Kaman admits that on September 13, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0018 and registered as D-HFZA performed an emergency landing with subsequent damage to the helicopter.  Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 21 and so leaves plaintiff to its proof.

22.     Admit.

23.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 23 and so leaves plaintiff to its proof.

24.     Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 24 and so leaves plaintiff to its proof.

25.     Kaman admits that Kaman K-1200 model helicopters are designed, manufactured, marketed and sold for use in external lift operations.  Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 25 and so leaves plaintiff to its proof.

26.     Kaman denies the allegations contained in paragraph no. 26, except to admit that on November 4, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0014 and registered as N164KA was involved in an accident in or near Emida, Idaho.

27.     Kaman denies the allegations contained in paragraph no. 27, except to admit that on November 4, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0014 and registered as N164KA performed a hard landing resulting in some damage to the helicopter.

-4-

28.    Kaman admits that on November 4, 1999, a Kaman K-1200 model helicopter bearing serial number A94-0014 and registered as N164KA performed a hard landing resulting in some damage to the helicopter. Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 28 and so leaves plaintiff to its proof.

29.    Deny.

30.    Kaman denies that it is liable to plaintiffs for any damages related to the helicopter accidents. Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 30 and so leaves plaintiffs to their proof.

31.    Kaman incorporates herein its responses to paragraph nos. 1 through 30 above.

32.    Kaman admits that it participated in the design, manufacture, and sale of model K-1200 helicopters; one bearing serial number A94-0014 and registered as N164KA and one bearing serial number A94-0018 and registered as D-HFZA. Because the remaining allegations are vague and ambiguous, Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 32 and so leaves plaintiffs to their proof.

33.    Kaman admits that it participated in the design, manufacture, and sale of model K-1200 helicopters; one bearing serial number A94-0014 and registered as N164KA and one bearing serial number A94-0018 and registered as D-HFZA. Kaman denies the remainder of the allegations contained in paragraph no. 33. Because the remaining allegations are vague and

ambiguous, Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 33 and so leaves plaintiffs to their proof.

34.    Because the allegations are vague and ambiguous, Kaman is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph no. 34 and so leaves plaintiffs to their proof.

35.    Kaman admits that it participated in providing certain product support and product support materials for model K-1200 helicopters. Because the remaining allegations are vague and ambiguous, Kaman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph no. 35 and so leaves plaintiffs to their proof.

36.    Deny.

37.    Deny.

38.    Deny.

39.    Deny.

40.    Kaman incorporates herein its responses to paragraph nos. 1 through 30 above.

41.    Deny.

42.    Deny.

43.    Deny.

44.    Deny.

45.    Deny.

46.    Deny.

47.    Deny.

48.    Kaman incorporates herein its responses to paragraph nos. 1 through 30 above.

49.    Kaman admits that it provided certain limited warranties in connection with model K-1200 helicopters and refers to the terms of the warranties which speak for themselves. Kaman denies the remaining allegations in paragraph no. 49.

50.    Deny.

51.    Deny.

52.    Deny.

53.    Kaman incorporates herein its responses to paragraph nos. 1 through 30 above.

54.    Deny.

55.    Deny.

56.    Deny.

57.    Deny.

58.    Deny.

59.    Kaman incorporates herein its responses to paragraph nos. 1 through 30 above.

60.    Deny.

61.    Deny.

62.    Deny.

63. – 94.    Kaman does not plead in response to paragraph nos. 63-94 as they are addressed to other "defendants" (i.e., "John Does I through V").

95.    Kaman incorporates herein its responses to paragraph nos. 1 through 94 above.

96.    Deny.

97.    Deny.

Prayer for Relief.    Kaman denies that it is liable for any of the amounts set forth in plaintiffs' prayer for relief.

## SPECIAL DEFENSES OF KAMAN AEROSPACE CORPORATION

### FIRST SPECIAL DEFENSE

The Complaint and each of the counts in it fail to state a claim against upon which relief may be granted.

### SECOND SPECIAL DEFENSE

Plaintiffs' damages, if any, were caused or contributed to by plaintiffs' negligence or fault, or by the fault or negligence of persons or entities in privity with plaintiffs, and plaintiffs recovery, if any, should therefore be barred or diminished in accordance with applicable law.

### THIRD SPECIAL DEFENSE

Plaintiffs' claims are barred by plaintiffs' conduct in voluntarily assuming an unreasonable risk with knowledge of that risk.

### FOURTH SPECIAL DEFENSE

Plaintiffs' claims are barred or reduced by plaintiffs' failure to mitigate damages.

### FIFTH SPECIAL DEFENSE

Plaintiffs' claims are barred because its damages were proximately caused by the negligent acts or omissions of third persons over whom Kaman exercised no control and for

-8-

whose conduct Kaman bears no responsibility. Said acts or omissions intervened between the acts or omissions of Kaman, if any, and the occurrence of the incident, and were the sole, direct and proximate cause of plaintiffs' damages.

<div align="center">SIXTH SPECIAL DEFENSE</div>

Plaintiffs' claims are barred because plaintiffs' damages, if any, were caused by the misuse or abuse and/or the failure to properly repair or maintain the helicopters or their component parts, and such misuse contributed to the incident, for which recovery against Kaman should be barred or reduced, in accordance with applicable law.

<div align="center">SEVENTH SPECIAL DEFENSE</div>

Plaintiffs' damages, if any, were caused or contributed to by the negligence or fault of other individuals, firms, corporations, or entities over whom Kaman have or had no control or right of control, and for whom it is not responsible. Kaman places in issue the negligence, fault, and responsibility, if any, of all persons or entities who contributed in any degree to the damages and/or losses alleged to have been sustained by plaintiffs, in proportion to each person's or entity's negligence, fault or responsibility. Judgment, if any, against Kaman should be diminished to an amount that represents its degree of negligence, fault, or responsibility, if any.

## EIGHTH SPECIAL DEFENSE

Plaintiffs' breach of warranty claim is barred, in whole or in part, by the warranty exclusions and/or remedy limitations applicable to any warranty given.


**DEFENDANT**
KAMAN AEROSPACE CORPORATION

By:

Shaun S. Sullivan
Timothy A. Diemand
Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508
(203) 498-4400
(203) 782-2889 fax
Juris No. 67700

-10-

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent this 16th day of April 2004, by first class mail, postage prepaid, to:

Robert S. Young, Esq.
Law Offices of Robert S. Young
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615


Timothy A. Diemand

\14658\2\458586.3

# EXHIBIT
# J

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:
LONG-LINE LEASING, LLC,  :
HELOG AG and HELI-AIR ZAGEL  :
LUFTTRANSPORT AG,  :
                               :
          Plaintiffs,  :
                               :
vs.  :
                               :       CASE NO. 3:01-CV-1746 (AVC)
KAMAN AEROSPACE CORPORATION  :
and JOHN DOES I THROUGH V,  :       August 6, 2004
                               :
Defendants.  :

## KAMAN AEROSPACE CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Kaman Aerospace Corporation ("Kaman") hereby objects and responds to Plaintiffs' First Set of Interrogatories (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

1.     Kaman objects generally to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. To the extent that Kaman discloses any information that is protected by an applicable privilege, such production will be inadvertent, shall not be deemed a waiver of privilege, and Plaintiffs will be barred from introducing such privileged information into evidence or relying on or using such privileged information in any way.

2.     Kaman objects to the Interrogatories to the extent that they seek to impose on Kaman any obligations different from, or in addition to, those imposed by the Federal

Rules of Civil Procedure and/or the rules of this Court. In responding to the Interrogatories, Kaman will comply with those rules.

3.    Each of the foregoing General Objections is incorporated into each of the responses set forth below. Any response below is made subject to, and without waiving, the foregoing General Objections.

## INTERROGATORIES

1.    For each request for admission served contemporaneously herewith that you do not admit, please describe the factual basis supporting your denial or partial denial.

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous and as it seeks to impose obligations on Kaman different from, or in addition to, those imposed by the Federal Rules of Civil Procedure and/or the rules of this Court. *See also* Kaman's August 6, 2004 Objections and Responses to Plaintiffs' Requests for Admission.**

2.    Please state the amount of the total compensation you received for the 1997 sale of a Kaman Aerospace model K-1200 helicopter bearing serial number A94-0014 and Federal Aviation Administration ("FAA") registration number N164KA (the "Mountain West Helicopter").

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous, in particular the term "total compensation" is undefined. Subject to and without waiving these objections, Kaman sold the Mountain West Helicopter to Long-Line Leasing, L.L.C. for a base purchase price of $2,996,790.87 pursuant to a May 20, 1997 Aircraft Sale Agreement. A copy of this agreement is produced herewith.**

9

3.      Please state the amount of the total compensation you received for the 1997 sale of a Kaman Aerospace model K-1200 helicopter bearing serial number A94-0018 and German registration number D-HFZA (the "Heli-Air Helicopter").

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous, in particular the term "total compensation" is undefined. Subject to and without waiving these objections, Kaman sold the Heli-Air Helicopter to Helog, A.G. for a base price of $3,500,000 pursuant to a May 2, 1997 Aircraft Installment Sale Agreement. A copy of this agreement (with amendments) is produced herewith.**

4.      If you contend that any document, other than the May 2, 1997 and the May 20, 1997 Aircraft Sale Agreements executed by you and one or more of the Plaintiffs herein, governs the terms and conditions of the sale of the Mountain West Helicopter and/or the Heli-Air Helicopter, please identify any such document.

**RESPONSE**:

**N/A**

5.      Please state the amount of the total compensation you received for the 1999 sale of the new, spare-part/replacement freewheeling sprag clutch assembly, including part number K974110-005 and serial number 014, (the "Heli-Air Clutch").

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous, in particular the term "total compensation" is undefined. Subject to and without**

waiving these objections, *see* documents regarding the sale of a transmission assembly, of which the Heli-Air Clutch was a part, produced herewith.

6.    Please state the amount of the total compensation you received for the 1999 sale of the new spare-part/replacement freewheeling sprag clutch assembly, including part number K974110-005 and serial number 032, (the "Mountain West Clutch").

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous, in particular the term "total compensation" is undefined. Subject to and without waiving these objections, *see* documents regarding the sale of the Mountain West Clutch produced herewith. While the documents do not specify a price, the 1999 K-Max Price Catalog (excerpt produced herewith) lists the cost for a Clutch Assembly as $8,892.00.**

7.    If you contend that any document, executed by you and one or more of the Plaintiffs herein, governs the terms and conditions of the sale of the Mountain West Clutch and/or the Heli-Air Clutch, please identify any such document.

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous. Subject to and without waiving these objections, *see* the documents produced in response to Interrogatory Nos. 5-6 and K-Max Corporation Products and Services Standard Terms and Conditions of Sale (effective date January 1, 1999) produced herewith.**

11

8.    Please state the amount of the total compensation you received to repair the damages to the Mountain West Helicopter caused by its November 4, 1999 crash near Emida, Idaho.

**RESPONSE**:

**Kaman objects to this interrogatory as it is vague and ambiguous, in particular the term "total compensation" is undefined. Subject to and without waiving these objections,** *see* **documents regarding the repair of the Mountain West Helicopter produced herewith.**

9.    Please identify any documents describing the amount estimated to repair, the services actually rendered, the amount you charged, the amount you received in payment for and/or the sources from which you received payment in connection with the above-described repair of the Mountain West Helicopter.

**RESPONSE**:

*See* **documents produced in response to Interrogatory No. 8.**

10.    Please state and itemize the amount of the compensation paid by you, or any insurance carrier with whom you had any contract to pay for your liabilities, to any person or entity due to the September 13, 1999 crash of the Heli-Air Helicopter near Flirsch, Austria.

**RESPONSE**:

**Kaman's insurer paid $1,120,000 to settle** <u>**Polygon Insurance Co. v. Kaman Corporation**</u>**, Superior Court, J.D. Hartford, CV-01-0810775-S, a subrogation action seeking reimbursement of the insurance proceeds paid to Helog AG and/or Heli-Air Zagel Lufttransport AG.** *See* **Settlement Agreement and Release produced herewith.**

12

11.    Please state and itemize the amount of the compensation paid by you, or any insurance carrier with whom you had any contract to pay for your liabilities, to any person or entity due to the November 4, 1999 crash of the Mountain West Helicopter near Emida, Idaho.

**RESPONSE**:

**Kaman's insurer paid $285,000 to settle <u>Global Aerospace Underwriting</u> <u>Managers, Ltd. v. Kaman Corporation</u>, Superior Court, J.D. Hartford, CV-01-0811945-S, a subrogation action seeking reimbursement of the insurance proceeds paid to Mountain West Helicopters and/or Long-Line Leasing, L.L.C. *See* Settlement Agreement and Release produced herewith.**

12.    Please state both the manufacture established hour and cycle-life limits on the Mountain West Clutch and the Heli-Air Clutch.

**RESPONSE**:

**Kaman objects to this interrogatory as it seeks information related to the merits of the case in violation of the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages."**

13.    Please state the manufacture-established warranty period, both in (a) flight hours and cycles and (b) calendar days, months or years, applicable to the Mountain West Clutch and the Heli-Air Clutch.

**RESPONSE**:

**Kaman objects to this interrogatory as it seeks an admission going to the merits of the case in violation of the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages."**

14.    Please state the total hours and cycles, according to your records, on the Heli-Air Clutch at the time of the September 13, 1999 crash of the Heli-Air Helicopter near Flirsch, Austria.

**RESPONSE**:

**Kaman objects to this interrogatory as it seeks information related to the merits of the case in violation of the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages."**

15.    Please state the total hours and cycles, according to your records, on the Mountain West Clutch at the time of the November 4, 1999 crash of the Mountain West Helicopter near Emida, Idaho.

**RESPONSE**:

**Kaman objects to this interrogatory as it seeks an admission going to the merits of the case in violation of the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages."**

16.    Do you contend that any Plaintiff herein has assigned to any other person or entity any claim asserted against you herein?

14

**RESPONSE**:

**Kaman objects to this interrogatory as it is premature as Plaintiffs have yet to specifically identify the damage claims asserted against Kaman (in violation of the Court's June 29, 2004 Order). Kaman therefore reserves the right to supplement this response once it receives Plaintiffs' FRCP 26(a)(1)(C) damage analysis.**

17.    If you contend that any Plaintiff herein has assigned to any other person or entity any claim asserted against you herein, please identify all documents upon which you rely in making that assertion.

**RESPONSE**:

*See* **objections to Interrogatory No. 16.**

18.    If you contend that any Plaintiff herein has assigned to any other person or entity any claim asserted against you herein, please identify the consideration given to any such Plaintiff in return for the assignment.

**RESPONSE**:

*See* **objections to Interrogatory No. 16.**

19.    Please state the total number of Kaman Aerospace model K-1200 helicopters you have manufactured.

**RESPONSE**:

**Kaman objects to this interrogatory as it violates the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages." Subject to and without waiving these objections, Kaman states that thirty-eight model K-1200**

helicopters have been manufactured (including three prototypes and/or test helicopters).

20.    Please state the total number of Kaman Aerospace model K-1200 helicopters currently in operation.

**RESPONSE**:

**Kaman objects to this interrogatory as it violates the Court's June 29, 2004 Order that limits discovery at this time to "the issue of damages." Subject to and without waiving these objections, Kaman states that as of July 19, 2004, twenty-eight model K-1200 helicopters were in operation.**

21.    Please identify any documents in your possession pertaining to the fair market value of the Mountain West Helicopter, as of November 4, 1999, and the Heli-Air Helicopter as of September 13, 1999.

**RESPONSE**:

**Kaman objects to this interrogatory as it is overbroad, vague and ambiguous, particularly the term "pertaining to the fair market value" is undefined. Subject to and without waiving these objections, Kaman states that it did not perform a valuation analysis of the Mountain West Helicopter as of November 4, 1999 and that it did not perform a valuation analysis of the Heli-Air Helicopter as of September 13, 1999.**

Respectfully submitted,

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: _____
       Shaun S. Sullivan (ct 04883)
       Timothy A. Diemand (ct 18075)
       Wiggin and Dana LLP
       One CityPlace
       Hartford, CT 06103-3402
       ph. (860) 297-3700
       fax (860) 525-9380
e-mail ssullivan@wiggin.com
       tdiemand@wiggin.com

17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:      :
LONG-LINE LEASING, LLC,           :
HELOG AG and HELI-AIR ZAGEL    :
LUFTTRANSPORT AG,            :
                          :
           Plaintiffs,        :
                          :
vs.                            :
                          :     CASE NO. 3:01-CV-1746 (AVC)
KAMAN AEROSPACE CORPORATION   :
and JOHN DOES I THROUGH V,     :
                          :
Defendants.             :

**STATE OF CONNECTICUT**
                 **ss.:**
**COUNTY OF HARTFORD**

      G. Roger Wassmuth, being sworn, says:

      I am the Director of K-Max Marketing and Business Development for Kaman Aerospace Corporation and have read the foregoing Objections and Responses to Plaintiffs' First Set of Interrogatories and know the contents thereof. The statements contained in these responses are true to the best of my knowledge, information and belief.

_____
G. Roger Wassmuth

Sworn to before me this
_l6_ day of August, 2004.

_____
Notary Public

          **CYNDRA S. LEWIS**
           NOTARY PUBLIC
My Commission Expires March 31, 2008

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed this 6th day of August

2004, by first class mail, postage prepaid, to:


Robert S. Young, Esq.
Law Offices of Robert S. Young
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615


Timothy A. Diemand