FILED

2004 SEP 13  A II: 32

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>        Defendants. | Case No. 301 CV 1746 (AVC)<br><br>September 10, 2004 |

## PLAINTIFFS' MEMORANDUM SUPPORTING THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DAMAGES ISSUES

Plaintiffs, Mountain West Helicopters, LLC ("Mountain West"), Long-Line Leasing, LLC ("Long-Line"), Helog AG ("Helog") and Heli-Air Zagel Lufttransport AG ("Heli-Air"), hereinafter collectively referred to as "Plaintiffs" and/or the "Helicopter Logging Companies," through counsel, submit this memorandum supporting their September 10, 2004 Cross-Motion for Partial Summary Judgment on the Damages Issue. Though largely unnecessary, this memorandum is supported, factually, by the January 31, 2002-affidavit of Bryan J. Burr, on behalf of Mountain West and Long-Line, and the March 8, 2002-affidavit of Wolfgang Zagel, on behalf of Helog and Heli-Air, both previously filed herein.

## I. TABLE OF CONTENTS

I. TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

II. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

III. STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . iii

IV. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    a.    Under Connecticut Law, and the Collateral Source Rule Adopted and
Followed by Connecticut Courts, the Helicopter Logging Companies
May Recover, for Their "Property Losses," the Fair Market Value of the
Heli-Air Helicopter, as of September 13, 1999 When it Became a Total
Loss, and the Actual Cost to Repair the Mountain West Helicopter,
Following its November 4, 1999 Crash, with Interest Thereon from the
Date(s) of Loss, less Any Amount Paid by Kaman (and/or Kaman's
Insurance Carrier) as a Result of the Helicopter Accidents . . . . . . . . . . 1

        1.    The Helicopter Logging Companies' Measure of Damages,
Under Connecticut Law, Is the Difference in Value Between
the Helicopters Before and after the Loss, with Interest
Thereon from the Date of Loss . . . . . . . . . . . . . . . . . . . . 1

        2.    Against the Helicopter Logging Companies' Measure of
Damages, Kaman Is Entitled to No Credit for Amounts Paid
to the Helicopter Logging Companies' by Their Own Insurers
(i.e., Payments from Collateral Sources), but Only for Amounts
Paid to the Helicopter Logging Companies (Or Their Insurers)
by Kaman or Kaman's Insurers . . . . . . . . . . . . . . . . . . . 3

    b.    In Addition to Recovering Damages for Their Personal Property Losses,
the Helicopter Logging Companies Are Entitled to Recover All Other
Damages Available, in Tort or Contract, under Connecticut Law . . . . . . . 9

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## II. INTRODUCTION

These cross-motions for summary judgment follow the parties' initial efforts to settle the disputes existing among them. Those efforts revealed disagreements, with respect to the recoverable damages herein, resulting in a joint motion seeking reverse bifurcation in order to obtain the court's perspective on the issue of the damages.

The issues giving rise to the disputes, regarding damages, are twofold. Under Connecticut law[1]: (1) what "property loss" damages may plaintiffs recover for the clutch-failure caused total loss of the Heli-Air helicopter and the clutch-failure caused substantial damage suffered by the Mountain West helicopter; and (2) in addition to the "property loss" damages, what other damages may plaintiffs recover herein?

## III. STATEMENT OF MATERIAL FACTS

The court relied upon the following facts, also material to these cross-motions for summary judgment on the damages issues, in its March 9, 2004 "Ruling on Defendant's [Second] Motion to Dismiss."

> This is an action for damages in which the plaintiffs, Mountain West. . . , Long-Line . . . , Helog . . . , and Heli-Air . . . , (collectively the "[Helicopter] [L]ogging [C]ompanies"), allege that a defendant, Kaman Aerospace Corporation ("Kaman"), designed, manufactured and sold a defective helicopter clutch to the [Helicopter] Logging companies that caused two helicopters to crash. It is brought pursuant to the Connecticut Unfair Trade Practice Act, Conn.Stat. § 42-110b ("CUTPA"), and common law tenets concerning strict liability, negligence, breach of warranty, and misrepresentation.

*Mountain West Helicopter v. Kaman Aerospace, Corp.*, 310 F.Supp.2d 459, 460 (D.Conn. 2004).

> On May 2, 1997, the defendant, Kaman. . . , sold a model K-1200 helicopter ("Heli-Air [H]elicopter") to Helog. . . . Heli-Air . . . operated

---

[1] By Order dated March 28, 2003, the court ruled "Connecticut law governs this case."

this helicopter. On or about July 24, 1999, at the urging of Kaman, Heli-Air removed the free-wheeling sprag clutch assembly in the Heli-Air helicopter and replaced it with a new free-wheeling sprag clutch assembly ("Heli-Air [C]lutch"), that was designed and manufactured by Kaman.

On September 13, 1999, during logging operations near Flirsch, Austria, the Heli-Air [H]elicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Heli-Air [C]lutch. Following the power failure, the Heli-Air [H]elicopter entered a steep descent and crashed. The crash resulted in minor personal injuries to the pilot and a total loss of the Heli-Air [H]elicopter.

On or about May 20, 1997, Kaman sold a helicopter ("Mountain West [H]elicopter") to Long Line. . . . Mountain West . . . operated this helicopter. On or about September 24, 1999, at the urging of Kaman, Mountain West removed the free-wheeling sprag clutch assembly in the Mountain West [H]elicopter and replaced it with a new free-wheeling sprag clutch assembly ("Mountain West [C]lutch"), that was designed and manufactured by Kaman.

On November 4, 1999, during logging operations near Emida, Idaho, the Mountain West [H]elicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Mountain West [C]lutch. Following the power failure, the Mountain West [H]elicopter entered a steep descent and crashed. The crash resulted in minor personal injuries to the pilot and substantial damages to the Mountain West [H]elicopter requiring repairs of approximately $1,500,000.[2]

*Id.* at 461-462 (footnote supplied).

The complaint alleges that, in addition to the "total loss of or substantial damage" to the Heli-Air and Mountain West [H]elicopters, the crash[es] caused plaintiffs to: (1) "lose revenues and profits form their logging operations"; (2) "incur ongoing expense in the form of excess salaried personnel unable to generate revenue in the absence of the Helicopters"; (3) "lose the benefit of pilot training expense paid by plaintiff[s] to Kaman for pilots trained in the Helicopters and unable to generate revenue in the absence thereof"; (4) "lose the benefit of a portion of the annual premium paid to insure the Helicopters"; (5) "incur increased hull and liabilities and/or workers compensation insurance premiums during the years following the crashes"; (6) "incur the expense of a deductible for the

---

[2] As noted in footnote 4 below, the actual cost of repair, for purposes of these cross-motions for summary judgment, was approximately $1,155,000.00.

iv

portion of the insurance risk assumed by plaintiffs"; (7) "incur the expense of ongoing interest charged, with no corresponding revenue generated, during the period between the crashes and settlement of the hull claims"; (8) "incur the expense associated with investigating the crashes"; and (9) "in the case of Helog and/or Heli-Air, incur the expense associated with replacing the Helicopter at the exchange rate that had significantly worsened and cost Helog and/or Heli-Air approximately $1,000,000 more than originally paid for the Heli-Air Helicopter."

*Id.* at 462.

There are only a few additional facts the court should know to rule on these cross-motions for summary judgment. First, as a result of the September 13, 1999 crash of the Heli-Air Helicopter, Kaman (or an insurance carrier obligated, under an insurance contract with Kaman, to pay Kaman's liabilities) has paid the total sum of $1,120,000.00. (See Kaman's response to plaintiffs' interrogatory no. 10). Second, as a result of the November 4, 1999 crash of the Mountain West Helicopter, Kaman (or an insurance carrier obligated, under an insurance contract with Kaman, to pay Kaman's liabilities) has paid the total sum of $285,000.00. (See Kaman's response to plaintiffs' interrogatory no. 11). Third, while acknowledging the fair market value of the Heli-Air Helicopter, on the day of the accident, is undoubtedly the subject of expert testimony, Helog has opined that the fair market value of the Helicopter, on that day, "is in the range of $3,000,000 to $3,200,000." (See Helog's response to Kaman's interrogatory no. 7).[3] And finally, the amount Kaman received to repair the

---

[3] A "like-kind" or "similar" replacement for the Model K-1200 Helicopter is not available at your standard "used helicopter lot." Kaman has manufactured only 38 such helicopters and, as of July 19, 2004, only 28 are currently in operation. (See Kaman's responses to plaintiffs' interrogatories no. 19 and 20). Under these unique circumstances, Helog's true measure of damages may well be the cost to replace the destroyed helicopter, which it did in March 2000 by purchasing a replacement from Kaman at a cost $3,900,000. (See Helog's response to plaintiffs' interrogatory no. 3(i)). See also, for example, *Alemany v. Commissioner of Transportation*, 215 Conn. 437, 444, 576 A.2d 503, 507 (1990) ("Although the market value of the . . . property is ordinarily the most appropriate measure of fair compensation (citations omitted); we have long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner"). Moreover, Kaman

Mountain West Helicopter, following the crash of November 4, 1999, was approximately $1,155,000.00.  (See Kaman's response to plaintiffs' interrogatory no. 8).[4]

## IV. SUMMARY OF ARGUMENT

The various memoranda submitted by Kaman, in conjunction with its two motions to dismiss, assert that "Plaintiffs (owners and operators of helicopters used in commercial logging operations) are <u>not</u> seeking to recover any amount for the repair to and/or replacement of the damaged [and destroyed] helicopters (as all property damage was covered by [Plaintiffs' own] insurance)."  See, for example, Kaman's May 30, 2003 Memorandum of Law in Support of the Renewed Motion to Dismiss at 1 (emphasis supplied).  The Helicopter Logging Companies acknowledge partial reimbursement, from their own helicopter hull insurance providers, for

---

offers no opinion regarding the value of either helicopter because, in addition to having no expert opinion regarding the matter, it has not performed "a valuation analysis of the Mountain West Helicopter as of November 4, 1999 . . . [or] of the Heli-Air Helicopter as of September 13, 1999." (See Kaman's response to plaintiffs' interrogatory no. 21).  Notwithstanding Kaman's disinclination to opine regarding the fair market values of the helicopters, the December 28, 1999 Aircraft Repair Agreement, between Mountain West and Kaman **and drafted by Kaman**, initially required Mountain West to insure the Mountain West Helicopter hull, during the time it was undergoing repair, for $3,500,000.  The parties ultimately agreed Mountain West could insure the hull for $3,000,000.

[4] The Helicopter Logging Companies' interrogatory no. 8 asked Kaman to "state the amount of the total compensation you received to repair the damages to the Mountain West Helicopter caused by its November 4, 1999 crash near Emida, Idaho." Kaman responded "*see documents* regarding the repair of the Mountain West Helicopter produced herewith." Plaintiffs' counsel has reviewed those documents, which are somewhat voluminous, and is unable to determine the amount of the total compensation Kaman received to repair the damages to the Mountain West Helicopter.  Accordingly, for purposes of these cross-motions for summary judgment, plaintiffs calculate the total cost of repair to be the sum of $1,030,000.00, which Mountain West's records indicate its Helicopter hull insurance carrier paid (see Mountain West's response to Kaman's interrogatory no. 8), plus a $125,000 deductible under Mountain West's hull insurance policy (see Mountain West's response to Kaman's interrogatory no. 2(f), for a total of approximately $1,155,000.00.

some of the losses they suffered in the Helicopter crashes.[5]  Nevertheless, these partial

reimbursements are entirely irrelevant to this dispute.  The law permits the Helicopter Logging

Companies to pursue these claims, against Kaman, even if the payments from their own hull

insurance providers fully reimburse them for all losses suffered in the Helicopter crashes and, *a

fortiori*, when those payments constitute only partial reimbursement.  The claims for damage to

or destruction of the helicopters, in addition to all other claims for damages caused by the

accidents, belong to plaintiffs subject to a right of subrogation in favor of their Helicopter hull

insurance carriers, not only because that is how the law[6] resolves these issues, but also because,

were it not so, Plaintiffs would have no recourse to recover their significant deductibles, or

other uninsured losses, arising out of the accidents.

In addition to the property losses Plaintiffs suffered in the Helicopter crashes, as

noted above, Plaintiffs suffered other "non property" losses such as, for example, lost profits

from their helicopter logging operations, increased insurance premiums and, in Helog's case, a

dramatic increase in the cost to replace the Heli-Air Helicopter due to the interim devaluation

of the Swiss Frank against the U.S. Dollar.  Kaman, in the motions to dismiss and settlement

discussions, has asserted that, under Connecticut law, plaintiffs may not recover such damages

because they represent "commercial" losses.  Rather than anticipate, and argue against, the

---

[5] Responding to interrogatories they believe to be entirely irrelevant to this dispute, the
Helicopter Logging Companies acknowledge they received (from their own Helicopter hull insurance
carriers): (1) approximately $2,591,908 as a result of the crash of the Heli-Air Helicopter (see Helog's
response to Kaman's interrogatory no. 8); and (2) approximately $1,030,000 as a result of the crash of
the Mountain West Helicopter (see Mountain West's response to Kaman's interrogatory no. 8).

[6] Kaman has never cited any law supporting the proposition that a tortfeasor (such as Kaman), if
its strict liability, negligence, breach of warranty or misrepresentation caused or contributed to cause
the helicopter crashes, would have no liability to Plaintiffs because Plaintiffs had the foresight to insure
the helicopters.  The Helicopter Logging Companies respectfully submit Kaman has cited no such
authority because no such authority exists.  Indeed, as noted below, the law is to the contrary.

positions Kaman may take in these cross-motions for summary judgment (with respect to these non property losses), the Helicopter Logging Companies, in this opening memorandum, will argue the law generally as it applies to their tort and contract remedies (and/or the appropriate measure(s) of damages) and, in subsequent memoranda, address Kaman's specific arguments opposing the recovery of damages for these non property losses.

### V. ARGUMENT

**a.** **Under Connecticut Law, and the Collateral Source Rule Adopted and Followed by Connecticut Courts, the Helicopter Logging Companies May Recover, for Their "Property Losses," the Fair Market Value of the Heli-Air Helicopter, as of September 13, 1999 When it Became a Total Loss, and the Actual Cost to Repair the Mountain West Helicopter, Following its November 4, 1999 Crash, with Interest Thereon from the Date(s) of Loss, less Any Amount Paid by Kaman (and/or Kaman's Insurance Carrier) as a Result of the Helicopter Accidents**

**1.** **The Helicopter Logging Companies' Measure of Damages, Under Connecticut Law, Is the Difference in Value Between the Helicopters Before and after the Loss, with Interest Thereon from the Date of Loss**

An analysis of the "property loss" damages to which the Helicopter Logging Companies are entitled must begin, of course, with an analysis of the appropriate measure of damages. With decisions, over the last seventy years, in analogous automobile crash cases, the Connecticut Supreme Court has articulated the measure of damages.

> [T]he court instructed the jury that the measure of damages was the difference in value between the fair market value of the automobile before the collision and its fair market value after the collision, with interest at the rate of 6 per cent from the date thereof. The defendant claims error in this instruction, and claims that the measure of damages was the cost of repair. This claim is without merit in such a situation as existed in this case under the claims of the parties. "Our rule is that, when the injury is less than a complete loss, as was the instant case, the measure of damages is the difference in value between the property before and after the loss, with interest from date of loss." *Hawkings v. Garford Trucking Co.*, 96 Conn. 337, 341, 114 A. 94, 96; *Wofsey v. New York & Stamford Ry. Co.*, 106 Conn. 254, 259, 138 A. 136; *Doolittle v. Otis Elevator Co.*, 98 Conn. 248, 250, 118 A. 818. Evidence of the cost of repairs of the

1

> automobile was admissible as proof of the difference between the value of the automobile before the accident and after it. *Kiely v. Ragali*, 93 Conn. 454, 459, 106 A. 502.

*Bullard v. De Cordova*, 119 Conn. 262, 175 A. 673, 675 (Conn. 1934). Twenty years after

*Bullard*, the Connecticut Supreme Court reaffirmed the measure of damages.

> The true rule is that the measure of damages is the difference between the fair market value of the car before the collision and its fair market value afterwards, plus interest from the date of loss. However, if the automobile damage may be repaired and the repairs will restore the car to substantially its former condition, the cost of repair will ordinarily furnish proper proof of the loss. *Littlejohn v. Elionsky*, 130 Conn. 541, 543, 36 A.2d 52.

*Stults v. Palmer*, 141 Conn. 709, 712, 109 A.2d 592, 594 (Conn. 1954). Compare *Holmes v.*

*Freeman*, 1 Conn.Cir.Ct. 336, 340-341, 23 Conn.Sup. 504, 509, 185 A.2d 88, 91 (1962)

("Where total loss of personal property has occurred, damages are measured by the fair value

of the property at the time that it was destroyed. *Stoll v. Almon C. Judd Co.*, 106 Conn. 551,

560, 138 A. 479, 53 A.L.R. 1042. Where the injury is reparable, damages are generally

proximated by the cost of repairs to restore the article to its former condition. *Bullard v.*

*DeCordova*, 119 Conn. 262, 268, 175 A. 673"). And finally, as noted in *Sylvan Piling Corp.*

*v. Harbor Petroleum Corp.*, 1990 WL 269364, *1-*2 (Conn.Super. 1990), and with particular

relevance to this dispute (with emphasis supplied in **bold**):

> The issue presented at trial is the claim for some of the items of damages. "The basic aim in awarding damages is to compensate a plaintiff for his loss so far as money can do so." *Youngest Inc. v. Fire City Plaza Inc.*, 156 Conn. 22, 27. "Moreover in a negligence action the cost of repairs is admissible as proof of the difference of value of the property before and after the damage caused by the negligent breach of duty." *Scribner v. O'Brien Inc.*, 169 Conn. 389, 405. "The true rule is that the measure of damages is the difference between the fair market value of the car before collision and its fair market value afterwards, plus interest from the date of loss. However, if the automobile damage may be repaired and the repairs will restore the car to substantially its former condition, the cost of repairs will ordinarily furnish proper proof of the loss. *Stalts v. Palmer*, 141 Conn. 709, 712; *Littlejohn v. Elionsky*, 130 Conn. 541, 543. The

plaintiff is entitled to recover for lost gear located on the tug in the amount of $636.20 **of which the defendant has already paid the amount of $161.93 leaving a balance due of $474.27.**

Helog and Heli-Air Zagel (for convenience, hereinafter collectively identified as "Helog"), calculate, as noted above, that Kaman's defective clutch caused them to lose a helicopter with a fair market value, on the date of the crash, of approximately $3,000,000 to $3,200,000 (for convenience, hereinafter identified simply as a "$3,000,000" fair market value). Mountain West and Long-Line (for convenience, hereinafter collectively identified as "Mountain West"), who, in contrast to Helog, did not suffer a total loss, paid Kaman approximately $1,155,000.00 to have the Mountain West Helicopter repaired (for convenience, hereinafter identified simply as a "$1,155,000.00 loss"). Consistent with Connecticut law, Helog claims property damages for its $3,000,000 loss (i.e., the fair market value of the Heli-Air Helicopter on September 13, 1999), plus interest thereon from the date of loss. Mountain West claims property damages for its $1,155,000.00 loss (i.e., the actual cost of repair following the loss), plus interest thereon from the date of loss.

    **2.**      **Against the Helicopter Logging Companies' Measure of Damages, Kaman Is Entitled to No Credit for Amounts Paid to the Helicopter Logging Companies' by Their Own Insurers (i.e., Payments from Collateral Sources), but Only for Amounts Paid to the Helicopter Logging Companies (Or Their Insurers) by Kaman or Kaman's Insurers**

Kaman asserts (both in the motions to dismiss and in the settlement discussions) it has no obligation to reimburse the Helicopter Logging Companies for losses already reimbursed by their own hull insurance carriers. To do so, Kaman argues, would give the Helicopter Logging Companies a "double recovery." In other words, Kaman contends its tort liability is subject to an offset or credit for amounts Plaintiffs already received from their own

3

Helicopter hull insurers.  The law is clear that Kaman's liability is <u>not</u> reduced by amounts Plaintiffs received because of their foresight in obtaining hull insurance for their helicopters.

Plaintiffs first turn to the United States Supreme Court for authority regarding this issue.  Relying upon (1) 4 F. Harper, F. James, & O. Gray, Law of Torts § 25.22 (2d ed. 1986) and (2) Restatement (Second) of Torts § 920A(2) (1971), the United States Supreme Court, in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), notes an "injured person can recover full damages from [a] tortfeasor, even when he has already been made whole by insurance or other compensatory payment. . . ." *Id.* at 219, n. 30.  "Several doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Id.* at 219 (footnote omitted).

The Restatement (Second) of Torts § 920A, upon which the U.S. Supreme Court relied, is quite enlightening.  Section 920A(1) of the 1977 edition notes "A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability. . . ."  Section 920A(2), of the same edition, recognizes (with emphasis supplied) "Payments made to or benefits conferred on the injured party from other sources are <u>not</u> credited against the tortfeasor's liability. . . ."  Thus, payments made to the Helicopter Logging Companies by Kaman or its insurer (i.e., "by a person acting for [Kaman]") are credited against Kaman's liability.  Payments made to Plaintiffs by their own insurers are not.  Comments a, b and c to § 920A (with emphasis in **bold** and <u>underline</u> supplied) note:

> a. *Payments by or for defendant*.  If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability.  **This is also true of payments made under an insurance policy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical payments clause.** . . .
>
> b. *Benefits from collateral sources*.  Payments made or benefits conferred by other sources are known as collateral-source benefits.  They **do not**

4

**have the effect of reducing the recovery against the defendant.** The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. **But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, <u>as by maintaining his own insurance</u> . . . , the law allows him to keep it for himself.**

c. The rule that collateral benefits are not subtracted from the plaintiff's recovery applies to the following types of benefits:

> (1) **Insurance policies, whether maintained by the plaintiff** or a third party. . . .

The authoritative treatise on the law of insurance puts it this way: "[A] wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had the foresight to obtain, and had paid the expense of procuring, insurance for his protection. . . ." 16 Couch on Insurance § 61:18 (2d ed. 1983) at 93.[7]  (In the West Group 2000 edition, see 16 Couch on Insurance § 222:8 at 222-31 and 222-32).

Within the past 90 days, the Connecticut Supreme Court adopted this same reasoning.

> The tortfeasor . . . , primarily liable for the losses sustained by the insured, benefitted by the insurer's payment of a debt truly owed by the tortfeasor. We see no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage. . . .

*Wasko v. Manella*, 269 Conn. 527, 548, 849 A.2d 777, 790 (2004). Similarly, this court should find "no logical reason to permit a tortfeasor [such as Kaman] to be unjustly enriched by virtue of having its debt paid by the insurance company of a party [such as the Helicopter Logging Companies] who had the foresight to obtain insurance coverage. . . ."

---

[7] Couch also recognizes "the insured may sue the tortfeasor as the real party in interest despite the fact that the insured may be required to reimburse the insurer if the ultimate recovery makes the insured whole and has an excess to cover payments previously made by the insurer." 16 Couch on Insurance § 61:64 (2d ed. 1983) at 145-147.

5

One-hundred fifty years ago, the United States Supreme Court recognized what subsequently came to be known as the collateral source rule in *Propeller Monticello v. Mollison*, 58 U.S. (17 How.) 152 (1854). In *Mollison*, the owner of a schooner, which sank after colliding with a steamship, received insurance proceeds from his own insurer and also brought a negligence action against the steamship for damages to the schooner and its cargo. The court held that "[t]he defense set up in the answer, that the [owner of the schooner has] received satisfaction from the insurers, cannot avail the [steamship]. The contract with the insurer is in the nature of a wager between third parties, with which the [steamship] has no concern. The insurer does not stand in the relation of a joint [tortfeasor], so that satisfaction accepted from [it] shall be a release of others. This is a doctrine well established at common law and received in courts of admiralty." See *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 43, 699 A.2d 964, 977, n.7 (1997) explaining the Supreme Court's decision in *Propeller Monticello v. Mollison*.[8] Connecticut has faithfully followed the collateral source rule since 1891. *Haynes*, 243 Conn. at 43-44, 699 A.2d at 977. Thus, it is no defense to Plaintiffs' claims against Kaman, that Plaintiffs' insurers paid some or even all of their losses.

---

[8] The concurring and dissenting opinion of Associate Justice Berdon, joined by Associate Justices Katz and McDonald, also notes the collateral source rule stands for the proposition that "the tortfeasor is not entitled to take advantage of the benefits received by the tort victim as a result of his or her injuries when the benefits come from a source independent of the tortfeasor" such as the tort victim's insurer. See *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 39, 699 A.2d 964, 975. Moreover, "a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him. . . ." *Haynes*, 243 Conn. 17, 41, 699 A.2d 964, 975. Kaman, the alleged tortfeasor, is not entitled to take advantage of the benefits received by Plaintiffs, i.e., the tort victims, when the benefits come from a source independent of Kaman such as Plaintiffs' insurers. Plaintiffs' insurers are wholly independent of Kaman. Accordingly, a payment to Plaintiffs by their insurers, does not entitle Kaman "to be relieved from paying any part of the compensation due for injuries proximately resulting from [Kaman's] act. . . ."

> The collateral source rule provides that "'a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him.' *Lashin v. Corcoran*, 146 Conn. 512, 515, 152 A.2d 639 (1959). . . ." (Citation omitted.) *Rametta v. Stella*, 214 Conn. 484, 489, 572 A.2d 978 (1990). "'The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source. That rule is applicable . . . in any tort case.' *United Aircraft Corporation v. International Assn. of Machinists*, 161 Conn. 79, 101-102, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016 (1972)."

*Gurliacci v. Mayer*, 218 Conn. 531, 556-557, 590 A.2d 914, 928 (1991) (alterations in original). The law does not prevent an injured person from recovering full damages from a tortfeasor even if that injured person has already been made whole by his or her own insurance or other compensatory payments. Consistent with the collateral source rule, Plaintiffs are entitled to recover all damages suffered in the helicopter accidents and Kaman, who allegedly caused those damages, is precluded from introducing evidence of "payment [for such injuries or damages] . . . from a collateral source" such as Plaintiffs' insurers.

    The fact of the matter is, this dispute will, in part, resolve the question whether Kaman should suffer the consequences of Plaintiffs' losses, in the form of a sizable claim under its liability policy and the consequential increased insurance premiums, etc., or Plaintiffs' should suffer those consequences, in the form of a sizable claim under their helicopter hull insurance policies and the consequential increased insurance premiums, etc. In a case involving worker's compensation insurance, the Connecticut Supreme Court noted one of the objectives of the doctrine of subrogation is to avoid increases in insurance premiums which, at this stage, the Helicopter Logging Companies, rather than Kaman, have had to absorb.

> . . . [T]he statutory remedy provided by the legislature should prevent an employer's workers' compensation premiums from increasing. The statutory remedy, in essence, allows the employer to recover amounts it has paid or will become obligated to pay to the employee as a result of the injury caused by the liable third party tortfeasor. If the employer, and the

7

employer's insurer as a result of its subrogation rights, are thereby made whole for the workers' compensation benefits it paid out, the employer should not experience any change in its workers' compensation loss ratio. As a result, the employer should not suffer any significant increases in its workers' compensation premiums or costs.

*RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 391, 650 A.2d 153, 158 (1994) (Justice

Berdon concurring). The objective here, if Kaman is to blame for the Helicopter Logging

Companies' losses, is to make the Helicopter Logging Companies and their helicopter hull

insurers whole so the Helicopter Logging Companies will not suffer, among other things,

increases in their aircraft hull and workers' compensation insurance premiums. That objective

is met only by resolving this controversy independent of the existence of the Helicopter

Logging Companies' collateral insurance benefits.

In summary, the Helicopter Logging Companies see their total combined claims for

damages as outlined in the following table:

| DESCRIPTION | MOUNTAIN WEST | HELOG | TOTAL |
|---|---|---|---|
| Claims for Total Loss of or Substantial Damage to the Helicopters | $ 1,155,000.00 | $ 3,000,000.00 | $ 4,155,000.00 |
| Amounts Already Paid by Kaman or its Products Liability Insurer | $ 285,000.00 | $ 1,120,000.00 | $ 1,405,000.00 |
| Net Remaining Claim | $ 870,000.00 | $ 1,880,000.00 | $ 2,750,000.00 |

Thus, in conclusion, and to paraphrase the Connecticut Superior Court's decision in

*Sylvan Piling Corp. v. Harbor Petroleum Corp.*, cited at page 2 above, "The [Helicopter

Logging Companies are] . . . entitled to recover for lost [and damaged helicopters] . . . the

amount of $4,155,000.00 of which the defendant has already paid the amount of $1,405,000.00

leaving a balance due of $2,750,000.00," plus interest thereon from the dates of loss.

8

**b.    In Addition to Recovering Damages for Their Personal Property Losses, the Helicopter Logging Companies Are Entitled to Recover All Other Damages Available, in Tort or Contract, under Connecticut Law**

This court's ruling on Kaman's second Motion to Dismiss recognizes "[t]he economic loss rule, *similar to the commercial loss rule of the CPLA*, generally bars a plaintiff from seeking so-called economic damages, i.e., lost profits, by way of tort law. (Citations omitted). . . . Nevertheless, when the plaintiff alleges other property damage, the economic loss rule does not apply." *Mountain West Helicopter v. Kaman*, 310 F.Supp.2d at 467 (emphasis supplied). The ruling acknowledges the Helicopter Logging Companies' complaint alleges "other property damage," and concludes that "because the complaint alleges damages based on the loss of the helicopters, the economic loss rule does not bar the common law tort claims." *Id.* If the allegations of "other property damage" vitiate the economic loss rule, for purposes of common law tort claims, then the question arises whether those same allegations vitiate the *similar* commercial loss rule, for purposes of the CPLA.

The court's opinion does not specifically answer that question, however, it does note "[t]here generally is no dispute among the Connecticut Superior Courts that . . . [tort] claims [for various consequential economic losses] are not permitted under the CPLA." *Id.* at 466, n. 4. Connecticut General Statutes § 52-572n(c) establishes that "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."

Whether the Helicopter Logging Companies' allegations of "other property damage" vitiate the commercial loss rule, for purposes of the CPLA, is an issue the court need not address. Both the tort and contract claims of the Helicopter Logging Companies remain viable

9

and the contract claims clearly contemplate the recovery of the commercial losses the

Helicopter Logging Companies seek.  Connecticut's Supreme Court and legislature have

articulated the measure of damages under title 42a of the Uniform Commercial Code.

> [General Statutes] Sec. 42a-2-714.  BUYER'S DAMAGES FOR
> BREACH IN REGARD TO ACCEPTED GOODS. (1) Where the buyer
> has accepted goods and given notification as provided in subsection (3) of
> section 42a-2-607 he may recover as damages for any nonconformity of
> tender the loss resulting in the ordinary course of events from the seller's
> breach as determined in any manner which is reasonable.
>
> (2) The measure of damages for breach of warranty is the difference at the
> time and place of acceptance between the value of the goods accepted and
> the value they would have had if they had been as warranted, unless
> special circumstances show proximate damages of a different amount.
>
> (3) In a proper case any *incidental and consequential damages* under the
> next section may also be recovered.

*Superior Wire and Paper v. Talcott Tool and Mach., Inc.*, 184 Conn. 10, 14, 441 A.2d 43, 45,

n.2 (1981)(emphasis supplied).  Connecticut law recognizes "[a] buyer may be entitled to

incidental damages for a seller's breach of warranty."  *Omega Engineering, Inc. v. Eastman*

*Kodak Co.*, 908 F.Supp. 1084, 1094 (D.Conn. 1995), citing Conn.Gen.Stat. § 42a-2-715(1).

Moreover, "[lost] profits are a proper element of damages which can be recovered for breach

of warranty under the Uniform Commercial Code.  Recovery, however, is permitted only if, at

the time of contracting, the seller had reason to foresee that the buyer would probably lose

profits as a result of breach of warranty."  *Omega Engineering Inc.* at 1092, citing

Conn.Gen.Stat. § 42a-2-715(2).[9]

---

[9] Sections 42a-2-715(1) and (2) read:

(1) Incidental damages resulting from the seller's breach include expenses
reasonably incurred in inspection, receipt, transportation and care and custody of goods
rightfully rejected, any commercially reasonable charges, expenses or commissions in
connection with effecting cover and any other reasonable expense incident to the delay

More important, for purposes of these cross-motions for summary judgment, *Omega Engineering* recognized: "There is a genuine issue [of fact] as to whether Kodak, at the time of contracting, had reason to foresee, that Omega would probably lose profits if the Ultralife was defective as alleged." *Id*. Likewise, there is also an issue of fact whether Kaman, at the time of contracting, had reason to foresee that the Helicopter Logging Companies would probably lose profits if the clutch was defective as alleged.[10] Such questions of fact are, of course, resolved at trial, not on summary judgment, and caused the court to deny Eastman Kodak's motion for summary judgment seeking the dismissal of Omega Engineering's claims to recover consequential damages, i.e., lost profits, for breach of warranty. *Id*. at 1092 and 1100.

Other Connecticut Supreme Court decisions confirm that plaintiffs may recover consequential lost profits for the defendant's breach of contract.

> With regard to consequential damages generally, [the Connecticut Supreme] court cited 1 Restatement, Contracts § 346(1)(b) (1932) and 11 S. Williston, Contracts (3d Ed. Jaeger 1968) § 1363, both of which support damage awards encompassing lost profits for breach of contracts generally . . . depending on the facts of the case. *Levesque v. D & M*

---

or other breach.

    (2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty.

[10] Similar unresolved issues of fact include: (1) whether Kaman, at the time of contracting, had reason to foresee, that the Helicopter Logging Companies would probably incur insurance deductibles if the clutch was defective as alleged; (2) whether Kaman, at the time of contracting, had reason to foresee, that the Helicopter Logging Companies would probably incur increased hull and liabilities and/or workers compensation insurance premiums during the years following the crashes if the clutch was defective as alleged; (3) whether Kaman, at the time of contracting, had reason to foresee, that the Helicopter Logging Companies would probably incur the expense associated with investigating the crashes if the clutch was defective as alleged; and similar unresolved issues of fact pertaining to every other consequential loss the Helicopter Logging Companies seek to recover herein.

> *Builders, Inc.*, supra, 170 Conn. at 180, n. 2, 365 A.2d 1216. We
> therefore conclude that the Appellate Court properly determined that the
> plaintiff was not precluded, as a matter of law, from recovering lost
> profits for the defendant's breach of the construction contract.

*Ambrogio v. Beaver Road Associates*, 267 Conn. 148, 159, 836 A.2d 1183, 1189 (2003).

The Restatement (Second) of Contracts describes a plaintiff's measure of damages,

in general, to include the recovery of: (1) direct damages, composed of "the loss in value to

him of the other party's performance caused by its failure or deficiency"; 3 Restatement

(Second), Contracts § 347(a) (1981); plus, (2) "any other loss, including incidental or

consequential loss, caused by the breach. . . ." *Id.*, at § 347(b).

Furthermore, as to the breach of warranty damages, this court noted "there appears

to be a dispute regarding what contracts governed the sales of the clutches, as well as the

contents of those contracts." *Mountain West Helicopter v. Kaman*, 310 F.Supp.2d at 467.

Accordingly, the court denied "Kaman's motion to dismiss on the ground that the relevant

contracts bar this action. . . ." *Id.* Indeed, as the West reporters note: "fact issues remained

as to whether parties' agreements disclaimed liability for commercial losses." *Id.* at 459. The

fact issues remaining regarding the contracts that governed the sales of the clutches and the

contents of those contracts cannot be resolved on summary judgment. Therefore, the

Helicopter Logging Companies claims for breach of contract (i.e., breach of warranty) remain

viable and Plaintiffs may recover the measure of damages to which they are entitled, under

Connecticut law, for the alleged breach of contract.

And finally, another Connecticut Supreme Court decision, *Gordon v. Indusco

Management Corp.*, 164 Conn. 262, 320 A.2d 811 (1973), recognizes "[i]n an action for

breach of contract, the general rule is that the award of damages is designed to place the

12

injured party, so far as it can be done by money, in the same position as he would have been in had the contract been performed." *Id.* at 272-273 and 818.

If Kaman, as warranted, had delivered to the Helicopter Logging Companies a defect-free clutch (or, if the UCC warranties apply, a merchantable clutch or a clutch fit for the particular purposes this clutch was designed and manufactured for), not only would the Helicopter Logging Companies have avoided the total loss of or substantial damage to their helicopters, but they also would have avoided the increases in insurance premiums, the lost profits in their helicopter logging operations and the other losses they have described as the direct result of the helicopter crashes. Moreover, Helog would not have had to replace its destroyed helicopter at an exchange rate that had substantially worsened and cost it literally millions of dollars more. In order to place the Helicopter Logging Companies "in the same position as [t]he[y] would have been in had the contract been performed," they are entitled, under Connecticut law, to recover these consequential losses for Kaman's breach of contract.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs seek the court's order granting partial summary judgement in their favor, ruling that the Helicopter Logging Companies are entitled to recover: (1) for their "Property Losses," the fair market value of (or, if the facts and circumstances warrant, the cost to replace) the Heli-Air Helicopter, as of September 13, 1999 when it became a total loss, and the actual cost to repair the Mountain West Helicopter, following its November 4, 1999 crash, with interest thereon from the date(s) of loss (less any amount paid by Kaman (and/or its insurance carrier) as a result of the helicopter accidents); and (2) following resolution (in Plaintiffs' favor), at trial, of existing questions of fact, their incidental, consequential and/or commercial losses for Kaman's breach of contract or, at the very least,

that at this stage of the litigation, the Helicopter Logging Companies' claims for incidental,

consequential and/or commercial losses, are not foreclosed by Connecticut law.

DATED:   September _10_, 2004.

The Law Offices of Robert S. Young, L.C.


Robert S. Young (ct 21935)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax  (801) 359-7233
rsyav8rlaw@hotmail.com

14

## VII. CERTIFICATE OF SERVICE

I certify that on September 10, 2004, I caused to be filed with the court and served upon the individuals identified below, in the manner stated, the foregoing PLAINTIFFS' MEMORANDUM SUPPORTING THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DAMAGES ISSUES. The original, via overnight courier, all expenses prepaid, to "be filed with the court within a reasonable time after service," as contemplated by Rule 5(d) Fed.R.Civ.P., and addressed to:

> Clerk of the Court
> 450 Main Street
> Hartford, CT 06103

And one copy each, via first class mail, postage prepaid addressed to:

Tim Bishop, Esq.
BISHOP & JACKSON
80 Ferry Blvd.
Stratford, CT 06615

Timothy A. Diemand, Esq.
Aaron Singer, Esq.
WIGGIN & DANA
One City Place
185 Asylum Street
Hartford, CT 06103-3402

C:\Documents and Settings\Robert S. Young\My Documents\My Files\Mt. West v. Kaman\Memo Supporting Cross-MSJ re Damages.910.wpd

15