UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC,<br>LONG-LINE LEASING, LLC,<br>HELOG AG and HELI-AIR ZAGEL<br>LUFTTRANSPORT AG,<br><br>        Plaintiffs,<br><br>vs.<br><br>KAMAN AEROSPACE CORPORATION<br>and JOHN DOES I THROUGH V,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  CASE NO. 3:01-CV-1746 (AVC)<br>:<br>:  October 4, 2004<br>:<br>: |

**KAMAN AEROSPACE CORPORATION'S OPPOSITION TO
PLAINTIFFS' "CROSS-MOTION" FOR SUMMARY JUDGMENT**

Plaintiffs cannot recover twice for the same property damage – once from their insurers and then again from Kaman. Plaintiffs also are wrong to claim that they can recover consequential damages from Kaman on a contract theory. This is because the warranty provisions governing the helicopter and replacement parts at issue in this case unequivocally bar the recovery of consequential damages. Both of the arguments raised by plaintiffs in their "cross-motion" for summary judgment were addressed in Kaman's September 10, 2004 Motion for Partial Summary Judgment on the Issue of Damages ("Kaman's Sept. 10 Mem."). Kaman therefore just briefly addresses below the legal and factual flaws in plaintiffs' arguments – flaws that are fatal to plaintiffs' cross-motion.

I.  **The Doctrine of Subrogation and Plaintiffs' Assignment of Their Hull Claims Preclude Plaintiffs From Recovering Twice for the Same Harm.**

Black-letter subrogation law prevents the windfall plaintiffs seek: "Subrogation eliminates the possibility that the insured might obtain a duplicative recovery and prevents unjust enrichment. The policy underlying subrogation is to prevent an unwarranted windfall to the insured. Subrogation also prevents a windfall to the tortfeasor because, if the insured only received payment from the insurer and no action was brought against the responsible party, the tortfeasor would not suffer any detriment." Holmes' Appleman on Ins. § 141(D)(2) (2002). Couch on Insurance similarly notes: "[S]ubrogation has the objective of preventing the insured from recovering twice for one harm, as would be the case if he or she could recover from both the insurer and from a third person who caused the harm .... The concept of unjust enrichment can best describe the reasoning of some courts, as well as the legislative history behind the doctrine of subrogation (i.e., the insured should not be unjustly enriched by receipt of double payment and the third party should not be unjustly enriched by avoiding responsibility for losses caused by his or her own conduct)." 16 Couch on Ins. § 222:8 (2004).[1]

These bedrock principles are followed in the Second Circuit: "[Subrogation] seeks, first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from the third person who caused the harm, and second, to require the party

---

[1] In support of their position that they are entitled to be paid twice for the same damages, plaintiffs rely on a partial quote from Couch – which plaintiffs describe as the "authoritative treatise on the law of insurance." See Plaintiffs' Mem. at 5. Viewed in its entirety, the sentence from Couch actually *supports* Kaman's position: "From the perspective of the tortfeasor, it has been stated that a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had the foresight to obtain, and had paid the expense of procuring, insurance for his or her protection; since the insured has already been paid for his or her harm, the liability of the third person should now inure for the benefit of the insurer." 16 Couch on Ins. § 222:8 (2004).

2

who has caused the damage to reimburse the insurer for the payment the insurer has made." Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999) (internal citation omitted).

A brief overview of the uncontested facts demonstrates that the position plaintiffs advocate is contrary to the basic principles of subrogation. Here, plaintiffs' helicopters were involved in accidents in 1999. See Kaman's Local Rule 56(a) Statement at ¶¶ 7-8. Following these accidents, plaintiffs each submitted claims to their insurers for damage sustained to the helicopters. Helog's insurer reimbursed Helog $2,591,908, and Mountain West's insurer paid $1,030,000 to Mountain West. Id. ¶¶ 9-10. By settling their claims with their insurers, plaintiffs' hull claims against Kaman became subrogated to the insurers by operation of law. See, e.g., Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) ("The general rule is that an insurer's right to subrogation attaches, by operation of law, on paying an insured's loss. At that time, the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and the insurer succeeds to all the procedural rights and remedies possessed by the insured").

Moreover, in settling their claims with their insurers, plaintiffs contractually assigned and subrogated their rights to assert hull claims against Kaman to their insurers. See Kaman's Supplemental Local Rule 56(a)(1)[2] Statement ¶ 1, Exhibit B: Mountain West Subrogation Receipt (Mountain West released "all of the rights I (we) now have or which I (we) may hereafter have against anyone whomsoever, with respect to said loss and damage"); Id. ¶ 2, Exhibit D: Helog's Interim Hull Release and Discharge (Helog agreed ". . . to assign, transfer and subrogate to insurers all rights, interest, or causes of action against any third party, who may

---

[2] Plaintiffs failed to file a Local Rule 56(a)(1) statement with their cross-motion, making it impossible for Kaman to file a Local Rule 56(a)(2) statement. Kaman has filed a Supplemental 56(a)(1) Statement citing additional facts and evidence relevant to the issue before the Court.

3

be liable for this loss, so that any such action, right or interest may be exerted by the said company in lieu of [Helog], to the extent of the payment aforesaid").

Plaintiffs' insurers enforced these rights, filing claims against Kaman for the damage to the helicopters. See Kaman's Local Rule 56(a)(1) Statement at ¶ 11, Kaman's Supplemental Local Rule 56(a)(1) Statement ¶¶ 3-4, Exhibits E and F. Kaman settled these hull claims and the settlement agreements confirm that the insurers owned plaintiffs' hull claims and had full authority to settle them. See Kaman's Supplemental Local Rule 56(a)(1) Statement ¶ 5, Exhibit G: Global Settlement Agreement and Release § 2.4 ("[Insurer] represents and warrants that it has provided notification of this settlement and release to [Mountain West] . . . and [Insurer] further represents and warrants that it has full authority to act on their behalf in executing this settlement and release"); Id. ¶ 6, Exhibit H: Polygon Settlement Agreement and Release at § 2.4 (same). Simply stated, plaintiffs cannot now assert claims which have already been subrogated and settled, and plaintiffs cannot recover twice for the same harm.

Plaintiffs' reliance on the collateral source rule is misplaced. The collateral source rule seeks to prevent a tortfeasor from being unjustly enriched by having its liability reduced by independent payments to the plaintiff. As the Connecticut Supreme Court said in a case cited by plaintiffs: "The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source." Gurliacci v. Mayer, 218 Conn. 531, 556-57, 590 A.2d 914 (1991) (internal citations omitted). This case simply does not raise the concern addressed by the collateral source rule – there is no conceivable way Kaman will be rewarded

and reap a windfall from plaintiffs' insurance recoveries, because the insurers have already asserted and settled plaintiffs' hull claims against Kaman.[3]

## II. The Controlling Warranty Provisions Preclude the Recovery of Consequential Damages.

As detailed in Kaman's Sept. 10 Mem. (at 7-9), plaintiffs' warranty claims relate to the helicopters' replacement sprag clutches. It is undisputed that the replacement clutches are subject to the warranty provisions in Kaman's parts catalogue – provisions which clearly bar any claim for consequential damages:

> <u>EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY</u>. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

Kaman's Local Rule 56(a)(1) Statement at Exhibit F. Plaintiffs' cross-motion makes no mention of this unambiguous and binding language.

Although plaintiffs correctly note that the default warranty provisions of the Uniform Commercial Code allow for the recovery of consequential damages, these provisions are irrelevant here as the terms governing the sale of the replacement clutches unequivocally bar any

---

[3] Plaintiffs offer no explanation for their rather bizarre contention that their recovery should be reduced by the amounts Kaman paid in settlement to plaintiffs' insurers, rather than the amounts plaintiffs received in insurance proceeds. This seems based on a notion that Kaman should pay the whole of the loss (should it be found liable), regardless of any compromise of the insurers' claims. Plaintiffs cite no authority for this novel proposition, and Kaman has found none. This is unsurprising. There is no such law. The sole case cited by plaintiffs is an unreported trial court opinion providing no support for plaintiffs' position. In <u>Sylvan Piling Corp. v. Harbor Petroleum Corp.</u>, 1990 WL 269364 (Conn. Sup. Ct. July 5, 1990), defendant conceded liability and made partial payment to the plaintiff; thus, plaintiff's damages were offset by the amount paid by the defendant *to the plaintiff*.

5

consequential damages. Under Connecticut law, contracting parties are free to limit the nature of damages recoverable in the event the warranty is breached. See Conn. Gen. Stat. § 42a-2-719(3).

Plaintiffs have no basis in law or fact to avoid the plainly enforceable terms of Kaman's standard warranty provisions. Having offered no evidence of any other warranty provision which governs their transactions with Kaman, plaintiffs offer no reason why they should not be held to the terms of the parties' commercial agreements.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Kaman's Sept. 10 Mem., Kaman respectfully requests that plaintiffs' cross-motion be denied in its entirety.

Respectfully submitted,

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: _____
Shaun S. Sullivan (ct 04883)
Timothy A. Diemand (ct 18075)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail ssullivan@wiggin.com
            tdiemand@wiggin.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed this 4th day of October 2004, by first class mail, postage prepaid, to:

Robert S. Young, Esq.
Law Offices of Robert S. Young
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand

\14658\2\478978.2