# EXHIBIT
# A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>   Plaintiffs,<br><br> v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>   Defendants. | Case No. 301 CV 1746 (AVC)<br><br>August 6, 2004 |

## PLAINTIFFS', MOUNTAIN WEST HELICOPTERS, LLC AND LONG-LINE LEASING, LLC, RESPONSE TO DEFENDANT'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

Plaintiffs, Mountain West Helicopters, LLC ("Mountain West") and Long-Line Leasing, LLC ("Long-Line"), hereinafter collectively referred to as "Plaintiffs," through counsel, submit this response to Defendant's First Set of Interrogatories, Requests for Production and Requests for Admission dated June 30, 2004 ("First Discovery Requests"). Plaintiffs object to the "Definitions" section of Defendant's First Discovery Requests to the extent it seeks to impose duties and/or obligations upon Plaintiffs that exceed the duties and/or obligations imposed upon Plaintiffs by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this court.

## I. RESPONSE TO INTERROGATORIES

1.    What is the total amount (in U.S. dollars) that Mountain West is claiming as damages in this case?

**Response:**    Mountain West and its related entities claim total damages of approximately $1,633,000.00, less any payment(s) made by Kaman and/or its liability insurance carrier to Mountain West and/or its aircraft hull insurance carrier as compensation, partial or otherwise, for losses suffered as a result of the November 4, 1999 crash of a Kaman Aerospace model K-1200 helicopter bearing serial number A94-0014 and Federal Aviation Administration ("FAA") registration number N164KA (the "Mountain West Helicopter").

2.    What is the amount of your damage claim (in U.S. dollars) attributable to each of the following categories of damages set forth in ¶ 30 of Plaintiffs' September 11, 2001 complaint?

   a.    Lost profits and revenues for helicopter logging operations;

   b.    Ongoing expenses in the form of excess salaried personnel unable to generate revenue in the absence of the helicopter;

   c.    Loss of the benefit of pilot training expenses;

   d.    Loss of the benefit of a portion of the annual premium paid to insure the helicopter;

   e.    Increase in hull and liability and/or workers' compensation insurance premiums;

   f.    The expense of the deductible for the portion of the insurance risk assumed by Mountain West;

   g.    Interest expenses incurred between the time of the accident and the settlement of your hull claim with your insurer; and

h.    The costs of investigating the accident.

**Response:**    In order of the subcategories listed above, Mountain West and its related entities claim damages of: a) approximately $30,000.00; b) approximately $25,000.00; c) approximately $40,000.00; d) approximately $18,700.00; e) approximately $117,000.00; f) $125,000.00; g) approximately $207,500.00; and h) no claim for damages.

3.    Describe how each of the dollar amounts listed in Interrogatory 2 was calculated.

**Response:**    For each of the subcategories identified in interrogatory no. 2 above, Mountain West and its related entities calculated their damages as follows: a) Bryan J. Burr ("Mr. Burr"), Mountain West's President, calculates lost profits of approximately $30,000.00, a calculation confirmed by Tom Woody whose company finished the logging contract Mountain West could not complete following the crash of the Mountain West Helicopter; b) Mr. Burr calculates approximately $25,000.00 paid to salaried personnel unable to generate revenue in the absence of the helicopter; c) Mr. Burr calculates approximately $40,000.00 spent to give two Mountain West pilots Kaman factory training, an amount that Kaman could confirm based upon the rates it then charged for such training; d) Mr. Burr calculates approximately $18,700.00 for loss of the benefit of a portion of the annual premium based upon the following formula – the annual premium divided by 365 days (to obtain a daily premium); the daily premium multiplied by the number of days the aircraft was unavailable due to the accident; e) Mr. Burr calculates the increase in hull and liability insurance premium (and claims no damages for an increase in workers' compensation insurance premium) at approximately $117,000.00 based upon a post-accident increase in premium from 4.85% to 6.85% of the aircraft hull value; f) Mr. Burr's aviation hull and liability policy set the deductible applicable to this accident at 5% of the aircraft hull value, but not to exceed $125,000.00; g) Mr. Burr

3

calculates the interest expenses his company incurred, between the time of the accident and the settlement of the insurance claim, at approximately $207,500.00 based upon a loan amortization schedule (the actual amount will be higher because loan payments were not made during the repair period) ; and h) nothing for costs associated with investigating the accident.

4.     Identify all documents supporting the each (sic) category of damages claimed by Mountain West.

**Response:**    Mr. Burr has maintained documents relevant to the claims his company asserts, arising out of the crash of the Mountain West Helicopter, in a binder, of approximately three to four inches in thickness, and a file. However, because Mr. Burr is currently moving both his home and office, he has only just recently located the binder, and delivered the same to counsel, while the file remains stored in a 53 foot trailer scheduled to be unloaded on or about August 25, 2004 as part of the move.

As contemplated by Rule 34 Fed.R.Civ.P. and subject to a prior review by counsel for purposes of determining any applicable privileges, Mr. Burr will permit inspection and related activities, with respect to these items, at a mutually agreed time and place.

5.     Are there any other categories of damages claimed by you in this action other than those identified in response to Interrogatories 2,3, and 4? If yes, for each additional category of damages, please: (a) describe the category and the dollar amount sought for the category of damages; (b) indicate the dollar amount sought for each category; (c) describe how the dollar amount was calculated; and (d) identify all documents supporting the damage claim.

**Response:**    In addition to the damages identified in response to Interrogatories 1, 2,3, and 4 above, Mountain West and its related entities in this action claim the loss of a "no-claims bonus on renewal" of 15% of the hull premium or approximately $40,000.00.

4

6.     If you contend that you acquired the replacement free-wheeling sprag clutch on terms different than those contained in the parts catalog referred to in paragraph 9 of the affidavit of Brian Burr, dated January 31, 2002, please identify all evidence, including documentation and testimony, supporting such a claim.

**Response:**     While Mountain West is generally aware of the warranty period applicable to new spare parts for the Mountain West Helicopter, as outlined in the Kaman parts catalog referred to in paragraph 9 of the affidavit of Bryan Burr, Mountain West is aware of no written agreements setting forth the terms under which it acquired the replacement free-wheeling sprag clutch assembly. Moreover, Mountain West has asked Kaman to produce any documents that Kaman believes set forth the terms under which it sold the sprag clutch assembly to Mountain West. Until Kaman responds to Mountain West's discovery requests, Mountain West cannot specify the terms and conditions under which it believes it purchased the sprag clutch assembly.

7.     Please identify all materials documenting the repairs done to the helicopter as a result of the accident.

**Response:**     See response to interrogatory number 4 above.

8.     Please indicate the amount received (in U.S. dollars) from Mountain West's insurer for this accident.

**Response:**     According to records Mr. Burr has maintained, Mountain West's aviation hull insurance carrier paid a total of approximately $1,030,000 to Mountain West and/or to Kaman Aerospace Corporation, in Mountain West's behalf, to repair the helicopter.

9.     (No Interrogatory no. 9 appears in defendant's discovery requests).

**Response:**     Not Applicable.

10.    Please identify every person who participated in the determination of any category of damages claimed by Mountain West.

**Response:**    Mr. Burr, with the assistance of counsel, determined the categories of damages claimed by Mountain West herein.

## II. RESPONSE TO REQUESTS FOR PRODUCTION

1.    All documents supporting the damage figure claimed in response to interrogatory 1.

**Response:**    See response to interrogatory number 4 above.

2.    All documents supporting the amount of each category of damages identified in interrogatory 2.

**Response:**    See response to interrogatory number 4 above.

3.    All documents supporting the damage claims made in response to interrogatory 3.

**Response:**    See response to interrogatory number 4 above.

4.    All documents identified in response to interrogatory 4.

**Response:**    See response to interrogatory number 4 above.

5.    All documents supporting each category of damages identified in interrogatory 5.

**Response:**    See response to interrogatory number 4 above.

6.    All documents identified in response to interrogatory 6.

**Response:**    See response to interrogatory number 4 above.

7.    All documents regarding repairs done on the helicopter as a result of the accident.

**Response:**    See response to interrogatory number 4 above.

6

8.   All documents related to any recovery by and/or amounts received by Mountain West from any source (including any insurer) related to this accident.

**Response:**   See response to interrogatory number 4 above.

### III. RESPONSE TO REQUESTS FOR ADMISSION

1.   The Mountain West Helicopter, a Kaman Aerospace model K–1200, A94-0014, was purchased by you under an Aircraft Sale Agreement dated May 20, 1997 ("Aircraft Sale Agreement"), a true and correct copy of which is attached hereto as exhibit A.

**Response:**   Other than the Aircraft Sale Agreement dated May 20, 1997, Mountain West is presently aware of no document under which it purchased the Mountain West Helicopter and, on that premise, admits request for admission number 1.

2.   A true and correct copy of the warranty provisions contained in Kaman's parts catalog that are referred to in paragraph 9 of the affidavit of Bryan Burr, sworn to on January 31, 2002 are attached hereto as exhibit B.

**Response:**   Mountain West cannot admit or deny request for admission number 2. Pages 14 and 15 of the 2004 Kaman Parts Catalog possessed by Mountain West do not contain warranty provisions.

3.   Aside from the warranty provisions of the aircraft sale agreement referenced in Request 1 and the parts catalog referenced in Request 2, Kaman did not provide Mountain West with any other warranties concerning the helicopter.

**Response:**   Deny.

4.   Mountain West received compensation from its insurance carrier for the repair of the Mountain West helicopter, and subrogated its claim to the insurer up to the amount paid by the insurer to Mountain West.

**Response:**    Mountain West admits it received compensation from its own aviation hull insurance carrier. Mountain West objects to the second half of request for admission number 4, since it seeks the admission or denial of a question of law to be addressed in the upcoming cross-motions for summary judgment. Notwithstanding the foregoing objection, Mountain West acknowledges the payment(s) by its hull insurance carrier gave rise to a right of subrogation, either by agreement or operation of law, in favor of the carrier, but denies that the right of subrogation precludes Mountain West's claims herein.

DATED:   August _6_, 2004.

The Law Offices of Robert S. Young, L.C.

Robert S. Young (ct 21933)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax (801) 359-7233
rsyav8rlaw@hotmail.com

**VERIFICATION**

STATE OF UTAH        )
                              : ss:
COUNTY OF UTAH     )

Pursuant to Rules 33(a) and (b) Fed.R.Civ.P., I, Bryan J. Burr, being first duly sworn on oath, depose and say that I am the President of Plaintiff named above, I have read the foregoing responses to interrogatories no. 1 through 10 and know the contents thereof, and I affirm and verify they are true and correct to the best of my knowledge, information and belief.

Bryan J. Burr

SUBSCRIBED AND SWORN to before me this _6th_ day of August 2004.

Notary Public


NATALIE MARCHELLO
NOTARY PUBLIC • STATE OF UTAH
1676 NORTH 200 WEST
PROVO, UTAH 84603
COMM. EXPIRES 12-2-2007

8

# EXHIBIT
# B

Policy/Certificate
OM05266/CV07312/10574.015
CLAIM NO:
12055

**SWORN STATEMENT IN
PROOF OF LOSS**

TO

AMOUNT OF POLICY
**$3,500,000**
Issued
December 14, 1998
Expires
December 14, 1999

Interested Underwriters at Lloyds and Others

## BY YOUR POLICY OF INSURANCE ABOVE DESCRIBED, YOU INSURED

Mountain West Helicopters LLC

By the Above Numbered Policy of Insurance you insured against loss, from the perils specified therein, to the following described aircraft:

| Make and Type Airplane, Seaplane or Flying Boat | FAA Identification No. | Mfrs. Serial No. | When Constructed | Seating Capacity including Pilot | ENGINE | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | H.P. and Make | Type | ID No. or Marks | When Constructed |
| Kaman KMAX K1200 | N164KA | A94-0014 | 1994 | 1 | A.S. | T-53 | LEE1014 | |
| Helicopter | | | | | | | | |

(1) TIME AND ORIGIN: A loss occurred on the _____4th_____ day of ___November___ 19_99_ about the hour of __10:00__ o'clock _A_. M., at near ___Emida, Idaho___
The cause and origin of the said loss or damages was ___transmission failure resulting in emergency landing___. At the time of the loss or damage the said aircraft was operated solely by ___Randal D. Mason___, who then held pilot's certificate number ___373503386___ which authorized him to operate the aforementioned aircraft and the said pilot was operating the aircraft for a purpose permitted by the policy.
(2) TITLE AND INTEREST: The above described aircraft was purchased from ___Kaman Aerospace Corporation___ for $_____ on _____ 19___ at _____ and when this policy was acquired, during the currency thereof and at the time of the loss, the interest of your insured in the said aircraft was sole and unconditional ownership, and no other person, firm or corporation had any interest therein. (Give exceptions, if any) Owner: Long Line Leasing, LLC

3) TOTAL INSURANCE: There was no other insurance (whether valid and/or collectible or not) on the above described aircraft and/or equipment.
the exceptions, if any).    **NO EXCEPTIONS**

(4) USE: At time of loss, the said aircraft was not rented or leased, or used for purposes not covered under conditions of this insurance.
(State exceptions, if any).
(5) INSURED VALUE of said aircraft at the time of the loss .............................................................. $ 3,500,000
(6) THE WHOLE LOSS AND DAMAGE as stated under schedule "A" was .................................... $ 135,387.00
(7) LESS DEDUCTIBLE ................................................................... Prior deduction .................. $ -0-
INSURED HEREBY CLAIMS OF THIS COMPANY ................................................................ $ 135,387.00

Upon payment of claim for total loss of aircraft above described the insured does hereby transfer, assign and set over unto the insurer all rights, title and interest in said aircraft, and further, if stolen, agrees to help the said insurer, or proper authorities to identify said aircraft, should it be found, and will render all assistance possible in recovering the said aircraft and to apprehend the thieves in any prudent and lawful manner.

The said loss or damage did not originate by any act, design, or procurement on the part of your insured; nothing has been done by or with the privity or consent of your insured, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were lost or damaged at time of said loss and belonging to insured at time of said loss; no property not has in any manner been concealed, and no attempt to deceive the said company as to extent of said loss has been made; and any other information that may be required will be furnished on call, and considered a part of these proofs.

It is agreed that the furnishing of this blank to the insured or its preparation or aid to the preparing of proofs by or in behalf or on account of the insurer are not a waiver of any rights of said insurer.

State of _____    §
County of _____    §

before me this ___10th___ day of ___October___ 2000.

X Mountain West Helicopter LLC                    (Insured)
Per _____, President                    (title)

_____
Notary Public

J. RYAN NIELSEN
NOTARY PUBLIC • STATE of UTAH
BONNEVILLE BANK
1675 NORTH 200 WEST
PROVO, UTAH 84604
Commission Expires COMM. EXP. 2-27-2002

## INSURED'S REQUEST FOR PAYMENT OF PROCEEDS OF ADJUSTMENT

Caledonian Insurance Group, Inc.   , is hereby requested, authorized and empowered to pay, at its option, as follows:

| to | Mountain West Helicopters, LLC | the sum of | $ 135,385.34 |
| to | | the sum of | $ |
| to | | the sum of | $ |

in full settlement and satisfaction for all loss and damage for which claims is made in this *Proof of Loss*. In consideration of such payments, said company is hereby discharged and forever released from any and all further claim, demand or liability whatsoever for said loss and damage, under and/or by reason of said policy.

Witness: _____

Insured: ___ Mountain West Helicopters, LLC ___

Address: 724 East Scenic    By: _____ President
Sp. Fork, Utah 84660.                    (Title)

### SUBROGATION RECEIPT

In consideration of the payment by ___ Interested Underwriters ___ the sum of ___ One hundred and thirty-five thousand and three hundred and eighty-five and 34/100 ___ dollars ($ 135,385.34 ) under Policy Number CM05266/CY07313/010574-015. as a result of accident occurring on ___ 4th ___ day of ___ November ___ 19 ___ 98 ___ . I (we) hereby release and subrogate to the said ___ Interested Underwriters ___ all of the rights I (we) now have or which I (we) hereafter may have against anyone whomsoever, with respect to the said loss and damage.

In witness whereof I (we) have hereunto my (our) hand and seal at ___ OREM, UTAH ___ this 10th day of October 2000.

Insured: ___ Mountain West Helicopters, LLC ___

By: _____ President
             (Title)

Witness: _____

### SCHEDULE "A" - STATEMENT OF LOSS AND DAMAGE

| | |
|---|---|
| Kaman Aerospace, final assembly support | $ 11,732.00 |
| Insured's Invoice for the final parts | $ 8,604.94 |
| Insured's Invoice for the final assembly and delivery | $ 99,505.67 |
| Excluded items adjustment (clutch and adapter) | $ 15,542.73 |
| | |
| Total | $ 135,385.34 |

Adjuster

# EXHIBIT
# C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT, HARTFORD

MOUNTAIN WEST HELICOPTERS, LLC,
a Utah Limited Liability Company; LONG-
LINE LEASING, LLC, a Utah Limited
Liability Company; HELOG AG, a Foreign
Corporation; and HELI-AIR ZAGEL
LUFTTRANSPORT AG, a foreign
corporation,

        Plaintiffs,

    v.

KAMAN AEROSPACE CORPORATION, a
Delaware corporation and JOHN DOES I
through V,

        Defendants.

Case No. 301 CV 1746 (AVC)

September 7, 2004

## PLAINTIFFS', HELOG AG AND HELI-AIR ZAGEL LUFTRANSPORT AG, RESPONSE TO DEFENDANT'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

Plaintiffs, Helog AG ("Helog") and Heli-Air Zagel Luftransport AG ("Heli-Air"), hereinafter collectively referred to as "Plaintiffs," through counsel, submit this response to Defendant's First Set of Interrogatories, Requests for Production and Requests for Admission dated June 30, 2004 ("First Discovery Requests"). Plaintiffs object to the "Definitions" section of Defendant's First Discovery Requests to the extent it seeks to impose duties and/or obligations upon Plaintiffs that exceed the duties and/or obligations imposed upon Plaintiffs by the Federal Rules of Civil Procedure and/or the Local Civil Rules of this court.

## I. RESPONSE TO INTERROGATORIES

1.   What is the total amount (in U.S. dollars) that Helog is claiming as damages in this case?

**Response:**   Helog and its related entities claim total damages of approximately $7,670,000.00, less any payment(s) made by Kaman and/or its liability insurance carrier to Helog and/or its aircraft hull insurance carrier as compensation, partial or otherwise, for losses suffered as a result of the September 13, 1999 crash of a Kaman Aerospace model K-1200 helicopter bearing serial number A94-0018 and German registration number D-HFZA (the "Heli-Air Helicopter").

2.   What is the amount of your claim (in U.S. dollars) attributable to each of the following categories of damages set forth in ¶ 30 of Plaintiffs' September 11, 2001 complaint?

    a.   Lost profits and revenues for helicopter logging operations;

    b.   Ongoing expenses in the form of excess salaried personnel unable to generate revenue in the absence of the helicopter;

    c.   Loss of the benefit of pilot training expenses;

    d.   Loss of the benefit of a portion of the annual premium paid to insure the helicopter;

    e.   Increase in hull and liability and/or workers' compensation insurance premiums;

    f.   The expense of a deductible for the portion of the insurance risk assumed by Helog;

    g.   Interest expenses incurred between the time of the accident and the settlement of your hull claim with your insurer;

    h.   The costs of investigating the accident; and

2

i.      The expense of replacing the helicopter at a less favorable currency exchange rate than the exchange rate at the time the helicopter was purchased.

**Response:**    In order of the subcategories listed above, based on an exchange rate of 1 Swiss Franc ("CHF") = U.S. Dollars 0.7549, Helog and its related entities calculate damages of: a) approximately $250,000.00; b) approximately $101,371.00; c) $0.00; d) $57,486.00; e) approximately $893,424.00; f) $188,725.00; g) $0.00; h) $0.00; and i) approximately $2,992,752.00.

3.      Describe how each of the dollar amounts listed in response to Interrogatory 2 was calculated.

**Response:**    For each of the subcategories identified in interrogatory no. 2 above, Helog and its related entities calculated their damages as follows: a) Through the combined efforts of Wolfgang Zagel, CEO Helog Lufttransport; Beat Ruckli, CEO Helog AG; Rudolf Kettel, CPA; Erich Zülig, CPA; and Dr. Oliver Felfernig, Attorney ("Helog Representatives"), Helog Representatives calculate lost profits of approximately $250,000.00; b) Helog Representatives calculate approximately $101,371.00 paid to salaried personnel unable to generate revenue in the absence of the helicopter; c) Helog Representatives calculate no damages for Kaman factory pilot training fees lost; d) Helog Representatives calculate approximately $57,486.00 for loss of the benefit of a portion of the annual premium; e) Helog Representatives calculate the increase in hull and liability insurance premium and workers' compensation insurance premium at approximately $893,424.00 based upon a post-accident increase in hull premium from 5.1% to 10% of the aircraft hull value; f) Helog's aviation hull and liability policy set the deductible applicable to this accident at approximately $188,725.00; g) Helog Representatives calculate no damages for interest expenses incurred, between the time of the accident and the settlement of the insurance claim; h) Helog Representatives calculate no

damages for costs associated with investigating the accident; and i) Helog Representatives calculate $2,992,752.00 for the expense of replacing the helicopter at a less favorable currency exchange rate than the exchange rate at the time the helicopter was purchased as follows:

1) Purchase of serial number A94-0018, on or about 5/20/97, for $3,500,000 = CHF 4,928,700 (or an exchange rate of 1.4082).

2) Partial Insurance proceeds received, on or about 12/15/99, CHF 2,063,000 = $1,294,716 (or an exchange rate of 0.62579).

3) Partial Insurance proceeds received, on or about 12/23/99, CHF 896,147 = $566,511 (or an exchange rate of 0.63076).

4) Remaining Insurance proceeds received, on or about 12/29/99, CHF 1,164,852 = $730,681 (or an exchange rate of 0.62727).

5) Total Insurance Proceeds Received = CHF 4,126,000 = $2,591,908.

6) Purchase of replacement aircraft serial number A94-0026, 3/22/00, for $3,900,000 = CHF 6,521,073 (or an exchange rate of 1.6541).

7) Difference (Purchase Price of Replacement Aircraft less Insurance Proceeds Received) = CHF 2,395,073 financed at 7.5% over 14 years = CHF 3,820,259 = $2,992,752.

4.    Identify all documents supporting the each (sic) category of damages claimed by Helog.

**Response:**    Helog Representatives report they have forwarded the documents supporting these calculations to U.S. counsel, however, counsel has not yet received them.

As contemplated by Rule 34 Fed.R.Civ.P. and subject to a prior review by counsel for purposes of determining any applicable privileges, Helog will permit inspection and related activities, with respect to these items, at a mutually agreed time and place.

5.    Are there any other categories of damages claimed by you in this action other than those identified in response to Interrogatories 2,3, and 4? If yes, for each additional category of damages, please: (a) describe the category of damages; (b) indicate the dollar

4

amount sought for each category; (c) describe how the dollar amount was calculated; and (d) identify all documents supporting the damage claim.

**Response:**    Other than those damages identified in response to Interrogatories 1, 2,3, and 4 above, there are no other categories of damages claimed by Helog and its related entities in this action.

6.    If you contend that you acquired the replacement free-wheeling sprag clutch on terms different than those contained in the parts catalog referred to in paragraph 10 of the affidavit of Wolfgang Zagel, sworn to on March 22, 2002, please identify all evidence, including documentation and testimony, supporting such a claim.

**Response:**    While Helog is generally aware of the warranty period applicable to new spare parts for the Heli Air Helicopter, as outlined in the Kaman parts catalog referred to in paragraph 10 of the affidavit of Wolfgang Zagel, sworn to on March 22, 2002, Helog is aware of no written agreements setting forth the terms under which it acquired the replacement free-wheeling sprag clutch assembly. Moreover, Helog has asked Kaman to produce any documents that Kaman believes set forth the terms under which it sold the sprag clutch assembly to Helog. Until Kaman responds to Helog's discovery requests, Helog cannot specify the terms and conditions under which it believes it purchased the sprag clutch assembly.

7.    Please indicate the fair market value of the helicopter on the day of the accident and describe how the fair market value calculation was determined.

**Response:**    Helog objects to interrogatory number 7 as the fair market value of the helicopter on the day of the accident is undoubtedly the subject of expert testimony in addition to whatever opinions Helog or Kaman may have regarding the issue. At this stage of the litigation, Helog has not yet retained an expert to offer an opinion. Notwithstanding the foregoing objection, Helog is of the opinion that the helicopter's fair market value on the day

of the accident is in the range of $3,000,000 to $3,200,000. This opinion is based upon the market and Kaman's increase in the price of new aircraft at the time.

8.      Please indicate the amount (in U.S. dollars) recieved (sic) from Helog's insurer for this accident.

**Response:**    Records maintained by Helog Representatives indicate Helog received approximately $2,591,908 from its aviation hull insurance carrier following the accident.

9.      (No Interrogatory no. 9 appears in defendant's discovery requests).

**Response:**    Not Applicable.

10.     Please identify every person who participated in the determination of any category of damages claimed by Helog.

**Response:**    Helog Representatives Wolfgang Zagel, CEO Helog Lufttransport; Beat Ruckli, CEO Helog AG; Rudolf Kettel, CPA; Erich Zülig, CPA; and Dr. Oliver Felfernig, Attorney, with the assistance of their U.S. counsel, determined the categories of damages claimed by Helog herein.

## II. RESPONSE TO REQUESTS FOR PRODUCTION

1.      All documents supporting the damage figure claimed in response to interrogatory 1.

**Response:**    See response to interrogatory number 4 above.

2.      All documents supporting the amount of each category of damages identified in interrogatory 2.

**Response:**    See response to interrogatory number 4 above.

3.      All documents supporting the calculations described in response to interrogatory 3.

**Response:**    See response to interrogatory number 4 above.

4.    All documents identified in response to interrogatory 4.

**Response:**    See response to interrogatory number 4 above.

5.    All documents supporting each category of damages identified in interrogatory 5.

**Response:**    See response to interrogatory number 4 above.

6.    All documents identified in response to interrogatory 6.

**Response:**    See response to interrogatory number 4 above.

7.    All documents supporting Helog's calculation of the helicopter's fair market value on the day of the accident.

**Response:**    See response to interrogatory number 4 above.

8.    All documents related to any recovery by and/or amounts received by Helog from any source (including any insurer) related to this accident.

**Response:**    See response to interrogatory number 4 above.

### III.   RESPONSE TO REQUESTS FOR ADMISSION

1.    The Heli-Air Helicopter, a Kaman Aerospace model K-1200, A94-0018, was purchased by Helog under an Aircraft Sale Agreement dated May 2, 1997 ("Aircraft Sale Agreement"), a true and correct copy of which is attached hereto as exhibit A.

**Response:**    Other than the Aircraft Sale Agreement dated May 2, 1997, Helog is presently aware of no document under which it purchased the Heli Air Helicopter and, on that premise, admits request for admission number 1.

2.    A true and correct copy of the warranty provisions contained in Kaman's parts catalog that are referred to in paragraph 10 of the affidavit of Wolfgang Zagel, sworn to on March 22, 2002 are attached hereto as exhibit B.

**Response:**    The warranty provisions appear to be the same and, accordingly, Helog admits request for admission number 2.

3.    Aside from the warranty provisions of the aircraft sale agreement referenced in Request 1 and the parts catalog referenced in Request 2, Kaman did not provide Helog with any other warranties concerning the helicopter.

**Response:**    Deny.

4.    Helog received compensation from its insurance carrier for the total loss of the helicopter, and subrogated its claim to the insurer up to the amount paid by the insurer to Helog.

**Response:**    Helog, as noted above, admits it received approximately $2,591,908 compensation from its own aviation hull insurance carrier for the loss of the Heli Air Helicopter.  Helog objects to the second half of request for admission number 4, since it seeks the admission or denial of a question of law to be addressed in the upcoming cross-motions for summary judgment.  Notwithstanding the foregoing objection, Helog acknowledges the payment(s) by its hull insurance carrier gave rise to a right of subrogation, either by agreement or operation of law, in favor of the carrier, but denies that the right of subrogation precludes Helog's claims herein.

5.    Helog transferred the helicopter's title to its insurer as part of the settlement of its claim.

**Response:**    The standard "Institute of London Underwriters" aviation hull insurance policy, in the event of total loss, provides:

> If Insurers pay the market value or the amount insured, less the applicable deductible, the Aircraft will no longer be insured hereunder.  The Aircraft shall not become the property of Insurers unless they elect to take the Aircraft as salvage, together with the documents of title, registration and record.

Helog has no knowledge that its aviation hull insurer elected to take the Aircraft as salvage, together with the documents of title, registration and record and therefore denies request for admission number 5.

      6.    A true and correct copy of the October 28, 1998 Release and Discharge between Helog AG and Underwriters is attached hereto as Exhibit C.

      **Response:**    The October 28, 1998 Release and Discharge attached as exhibit C predates the accident that is the subject of this dispute by nearly one full year. Accordingly, it has no relevance to this proceeding and Helog denies request for admission number 6.

      DATED:  September _7_, 2004.

                         The Law Offices of Robert S. Young, L.C.

                         Robert S. Young (ct 21935)
                         800 McIntyre Building
                         68 South Main Street
                         Salt Lake City, UT 84101
                         Tel. (801) 531-8300
                         Fax  (801) 359-7233
                         rsyav8rlaw@hotmail.com

## VERIFICATION

      Pursuant to Rules 33(a) and (b) Fed.R.Civ.P., I, Wolfgang Zagel state that I am the President of Helog Lufttransport, I have read the foregoing responses to interrogatories no. 1 through 10 and know the contents thereof, and I affirm and verify they are true and correct to the best of my knowledge, information and belief.

                         Wolfgang Zagel

9

Helog has no knowledge that its aviation hull insurer elected to take the Aircraft as salvage, together with the documents of title, registration and record and therefore denies request for admission number 5.

6.    A true and correct copy of the October 28, 1998 Release and Discharge between Helog AG and Underwriters is attached hereto as Exhibit C.

**Response:**    The October 28, 1998 Release and Discharge attached as exhibit C predates the accident that is the subject of this dispute by nearly one full year. Accordingly, it has no relevance to this proceeding and Helog denies request for admission number 6.

DATED:  September 7, 2004.

The Law Offices of Robert S. Young, L.C.

Robert S. Young (ct 21935)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax (801) 359-7233
rsyavsrlaw@hotmail.com

## VERIFICATION

Pursuant to Rules 33(a) and (b) Fed.R.Civ.P., I, Wolfgang Zagel state that I am the President of Helog Lufttransport, I have read the foregoing responses to interrogatories no. 1 through 10 and know the contents thereof, and I affirm and verify they are true and correct to the best of my knowledge, information and belief.

Wolfgang Zagel

# EXHIBIT
# D

# C&P

## INTERIM HULL RELEASE AND DISCHARGE

**CLAIM REF:** 6332
**AIRCRAFT:** K-MAX, D-HFZA
**ASSURED:** Helog AG
**ACCIDENT:** Fliersch, Austria, 13th September 1999

The final claim cost of to K-Max helicopter, registration D-HFZA, serial no. A94-001A, which forms the subject of a claim by Helog AG on their insurance policy No. GC98M75600 having not yet been finally established as the engine repairs are still outstanding, the Insurers of the Policy have agreed to make an interim, on account, payment in respect of this claim.

I/WE the undersigned therefore hereby acknowledges acceptance of the sums as follows:-

Agreed Hull Vaue                                                    CHF 5'000'000.00

Less Policy Deductible                                        CHF    250'000.00
Less Value of the loaner Engine (Allied Signal)      USD    400'000.00

I/WE aknowledge that accident related engine repair costs and recovery charges are still outstanding.

I/We declare that, other than the undersigned▾, no party has any financial interest in the helicopter and it is not insured in whole or part under any other policy of insurance.

I/WE the undersigned, also agree to assign, transfer and subrogate to insurers, all right, interest, or causes of action against any third party, who may be liable for this loss, so that any such action, right or interest may be exerted by the said company in lieu of the undersigned, to the extent of the payment aforesaid.

It is further agreed that upon payment the remains of helicopter K-Max, registration D-HFZA shall become the proerty of Underwriters, and all original aircraft documentation shall be supplied to Underwriters immediately upon demand.

I/WE agree that all monies should be paid direct to brokers for onward transmission to the assured.

DATED THIS _____15_____ DAY OF _____November_____ 1999 .

FULL NAME _____Beat Ruckli_____   SIGNATURE _____
_____Alois Christen_____
DULY AUTHORISED TO SIGN FOR AND ON BEHALF OF Helog AG and /or Kiwag Lufttransporte AG and/or Heli Air Zagel Lufttransport AG

Witness to Signature:

FULL NAME _____Zuellig Erich_____   SIGNATURE _____
Address
of Witness: _____Bahnhofpark 8,  CH 6340  Baar_____

* Lienholder(s)
NAME                    SIGNATURE                WITNESS TO SIGNATURE

_____Walter Huber_____ _____ _____
DULY AUTHORISED TO SIGN FOR AND ON BEHALF OF Hubyr Walter AG

031