95.   As a direct, substantial, and proximate result thereof, Defendant K-Max Corp. is liable to Plaintiff for monetary damages in excess of the jurisdictional limit of this Court, in a sum to be established at trial.

## COUNT NINE

### AS AND FOR A NINTH CAUSE OF ACTION OF BREACH OF WARRANTY AGAINST DEFENDANT KAMAN AEROSPACE INTERNATIONAL, INC.

96.   Paragraphs 1 through 95 of Count Eight of this Complaint are hereby incorporated and realleged as paragraphs 1 through 95 of this Count.

97.   At all times relevant hereto and presently, Defendant Kaman Aerospace International, Inc. is and was a "seller" as defined in § 42a-2-103(d) of the Connecticut General Statutes.

98.   At all times relevant to this Complaint, Defendant Kaman Aerospace International, Inc. is and was a "merchant" as defined in in § 42a-2-104(1) of the Connecticut General Statutes.

99.   At all times relevant to this Complaint, Helog was a "Buyer" as defined in § 42a-2-103(a) of the Connecticut General Statutes.

100.   The Kaman K-1200 and D-HFZA are/were goods as defined in § 42a-2-105(1) of the Connecticut General Statutes.

101.   Defendant Kaman Aerospace International, Inc. negligently misrepresented and expressly and impliedly warranted that D-HFZA and its component parts,

including, but not limited to, the engine adapter, the drive shaft, and the free wheeling clutch, were airworthy, reasonably safe, free from defects, of merchantable quality and fit for their intended use as aforesaid.

102.  Defendant Kaman Aerospace International, Inc. negligently misrepresented and expressly and impliedly warranted that after the sale of D-HFZA that they would notify and warn buyers and operators of the Kaman K-1200, including Helog, of information concerning the safety of such aircraft.

103.  Defendant Kaman Aerospace International, Inc. negligently misrepresented and breached these express and implied warranties in the following ways:

a.    D-HFZA was not airworthy, reasonably safe, free from defects, of merchantable quality and not fit for its intended use as aforesaid;

b.    it failed to notify and warn buyers and operators of the Kaman K-1200, including Helog, of power loss problems associated with the slipping of the free wheeling clutch;

c.    component parts of D-HFZA, including, but not limited to, the engine adapter, the free wheeling clutch and the drive shaft were not airworthy, reasonably safe, free from defects and of merchantable quality fit for their intended use; and

d.    it failed to notify and warn buyers and operators of the Kaman K-1200, including Helog, of defects in the component parts installed into D-

-26-

HFZA, including, but not limited to, the engine adapter, the free wheeling clutch and the drive shaft.

104. As a direct, substantial, and proximate result of the acts and omissions aforesaid, the aircraft was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

105. The foregoing misrepresentations and breaches of warranties were substantial factors in causing the crash of D-HFZA and the losses to Plaintiff as aforesaid.

106. The foregoing misrepresentations and breaches of warranties were violations of §§ 42a-1-101 *et seq.* of the Connecticut General Statutes, namely the Uniform Commercial Code.

107. As a direct, substantial, and proximate result thereof, Defendant Kaman Aerospace International, Inc. is liable to Plaintiff for monetary damages in excess of the jurisdictional limit of this Court, in a sum to be established at trial.

## COUNT TEN

### AS AND FOR A TENTH CAUSE OF ACTION OF BREACH OF WARRANTY AGAINST DEFENDANT KAMAN AEROSPACE GROUP, INC.

108. Paragraphs 1 through 107 of Count Nine of this Complaint are hereby incorporated and realleged as paragraphs 1 through 107 of this Count.

109. At all times relevant hereto and presently, Defendant Kaman Aerospace Group, Inc. is and was a "seller" as defined in § 42a-2-103(d) of the Connecticut General Statutes.

110. At all times relevant to this Complaint, Defendant Kaman Aerospace Group, Inc. is and was a "merchant" as defined in in § 42a-2-104(1) of the Connecticut General Statutes.

111. At all times relevant to this Complaint, Helog was a "Buyer" as defined in § 42a-2-103(a) of the Connecticut General Statutes.

112. The Kaman K-1200 and D-HFZA are/were goods as defined in § 42a-2-105(1) of the Connecticut General Statutes.

113. Defendant Kaman Aerospace Group, Inc. negligently misrepresented and expressly and impliedly warranted that D-HFZA and its component parts, including, but not limited to, the engine adapter, the drive shaft, and the free wheeling clutch, were airworthy, reasonably safe, free from defects, of merchantable quality and fit for their intended use as aforesaid.

114.  Defendant Kaman Aerospace Group, Inc. negligently misrepresented and expressly and impliedly warranted that after the sale of D-HFZA that they would notify and warn buyers and operators of the Kaman K-1200, including Helog, of information concerning the safety of such aircraft.

115.  Defendant Kaman Aerospace Group, Inc. negligently misrepresented and breached these express and implied warranties in the following ways:

    a.  D-HFZA was not airworthy, reasonably safe, free from defects, of merchantable quality and not fit for its intended use as aforesaid;

    b.  it failed to notify and warn buyers and operators of the Kaman K-1200, including Helog, of power loss problems associated with the slipping of the free wheeling clutch;

    c.  component parts of D-HFZA, including, but not limited to, the engine adapter, the free wheeling clutch and the drive shaft were not airworthy, reasonably safe, free from defects and of merchantable quality fit for their intended use; and

    d.  it failed to notify and warn buyers and operators of the Kaman K-1200, including Helog, of defects in the component parts installed into D-HFZA, including, but not limited to, the engine adapter, the free wheeling clutch and the drive shaft.

116.   As a direct, substantial, and proximate result of the acts and omissions aforesaid, the aircraft was destroyed and Helog suffered certain damages pursuant to  which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog  the sum of £1,626,633.

117.   The foregoing misrepresentations and breaches of warranties were substantial factors in causing the crash of D-HFZA and the losses to Plaintiff as aforesaid.

118.   The foregoing misrepresentations and breaches of warranties were violations of §§ 42a-1-101 *et seq.* of the Connecticut General Statutes, namely the Uniform Commercial Code.

119.   As a direct, substantial, and proximate result thereof, Defendant Kaman Aerospace Group, Inc. is liable to Plaintiff for monetary damages in excess of the jurisdictional limit of this Court, in a sum to be established at trial.

### COUNT ELEVEN

### AS AND FOR AN ELEVENTH CAUSE OF ACTION OF UNFAIR TRADE PRACTICES AGAINST DEFENDANT KAMAN CORPORATION

120.   Paragraphs 1 through 119 of Count Ten of this Complaint are hereby incorporated and realleged as paragraphs 1 through 119 of this Count.

121.   At all times relevant to this Complaint, Defendant Kaman Corporation was engaged in "trade" and "commerce" as defined in § 42-110a of the Connecticut General Statutes.

122.   The actions of Defendant Kaman Corporation in misrepresenting and warranting that D-HFZA was airworthy, reasonably safe, free from defects, of merchantable quality and fit for its intended use was immoral, unethical, oppressive and unscrupulous conduct.

123.   As a direct, substantial, and proximate result of negligent misrepresentations and breaches of warranties as aforesaid, D-HFZA was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

124.   The foregoing misrepresentations and breach of warranties were substantial factors in causing the crash of D-HFZA and substantial injury to Plaintiffs as aforesaid.

125.   As a direct, substantial, and proximate result thereof, Defendant Kaman Corporation is liable to Plaintiff for money damages in a sum to be established at trial.

126.   Defendant Kaman Corporation's actions in misrepresenting and warranting as aforesaid demonstrates a reckless indifference to the rights of Helog and Polygon, and/or intentional and wanton violation of their rights.

-31-

127.  As a direct, substantial and proximate result thereof, Defendant Kaman Corporation is liable to Plaintiff for punitive damages pursuant to § 42-110g(a) of the Connecticut General Statutes.

### COUNT TWELVE

### AS AND FOR AN ELEVENTH CAUSE OF ACTION OF UNFAIR TRADE PRACTICES AGAINST DEFENDANT KAMAN AEROSPACE CORPORATION

128.  Paragraphs 1 through 127 of Count Eleven of this Complaint are hereby incorporated and realleged as paragraphs 1 through 127 of this Count.

129.  At all times relevant to this Complaint, Defendant Kaman Aerospace Corporation was engaged in "trade" and "commerce" as defined in § 42-110a of the Connecticut General Statutes.

130.  The actions of Defendant Kaman Aerospace Corporation in misrepresenting and warranting that D-HFZA was airworthy, reasonably safe, free from defects, of merchantable quality and fit for its intended use was immoral, unethical, oppressive and unscrupulous conduct.

131.  As a direct, substantial, and proximate result of negligent misrepresentations and breaches of warranties as aforesaid, D-HFZA was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

-32-

132.  The foregoing misrepresentations and breach of warranties were substantial factors in causing the crash of D-HFZA and substantial injury to Plaintiffs as aforesaid.

133.  As a direct, substantial, and proximate result thereof, Defendant Kaman Aerospace Corporation is liable to Plaintiff for money damages in a sum to be established at trial.

134.  Defendant Kaman Aerospace Corporation's actions in misrepresenting and warranting as aforesaid demonstrates a reckless indifference to the rights of Helog and Polygon, and/or intentional and wanton violation of their rights.

135.  As a direct, substantial and proximate result thereof, Defendant Kaman Aerospace Corporation is liable to Plaintiff for punitive damages pursuant to § 42-110g(a) of the Connecticut General Statutes

### COUNT THIRTEEN

### AS AND FOR A THIRTEENTH CAUSE OF ACTION OF UNFAIR TRADE PRACTICES AGAINST DEFENDANT K-MAX CORP

136.  Paragraphs 1 through 135 of Count Twelve of this Complaint are hereby incorporated and realleged as paragraphs 1 through 135 of this Count.

137.  At all times relevant to this Complaint, Defendant K-Max Corp. was engaged in "trade" and "commerce" as defined in § 42-110a of the Connecticut General Statutes.

-33-

138.   The actions of Defendant K-Max Corp. in misrepresenting and warranting that D-HFZA was airworthy, reasonably safe, free from defects, of merchantable quality and fit for its intended use was immoral, unethical, oppressive and unscrupulous conduct.

139.   As a direct, substantial, and proximate result of negligent misrepresentations and breaches of warranties as aforesaid, D-HFZA was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

140.   The foregoing misrepresentations and breach of warranties were substantial factors in causing the crash of D-HFZA and substantial injury to Plaintiffs as aforesaid.

141.   As a direct, substantial, and proximate result thereof, Defendant K-Max Corp. is liable to Plaintiff for money damages in a sum to be established at trial.

142.   Defendant K-Max Corp.'s actions in misrepresenting and warranting as aforesaid demonstrates a reckless indifference to the rights of Helog and Polygon, and/or intentional and wanton violation of their rights.

143.   As a direct, substantial and proximate result thereof, Defendant K-Max Corp. is liable to Plaintiff for punitive damages pursuant to § 42-110g(a) of the Connecticut General Statutes.

## COUNT FOURTEEN

### AS AND FOR A FOURTEENTH CAUSE OF ACTION OF UNFAIR TRADE PRACTICES AGAINST DEFENDANT KAMAN AEROSPACE INTERNATIONAL, INC.

144.   Paragraphs 1 through 143 of Count Thirteen of this Complaint are hereby incorporated and realleged as paragraphs 1 through 143 of this Count.

145.   At all times relevant to this Complaint, Defendant Kaman Aerospace International, Inc. was engaged in "trade" and "commerce" as defined in § 42-110a of the Connecticut General Statutes.

146.   The actions of Defendant Kaman Aerospace International, Inc. in misrepresenting and warranting that D-HFZA was airworthy, reasonably safe, free from defects, of merchantable quality and fit for its intended use was immoral, unethical, oppressive and unscrupulous conduct.

147.   As a direct, substantial, and proximate result of negligent misrepresentations and breaches of warranties as aforesaid, D-HFZA was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

148.   The foregoing misrepresentations and breach of warranties were substantial factors in causing the crash of D-HFZA and substantial injury to Plaintiffs as aforesaid.

149.  As a direct, substantial, and proximate result thereof, Defendant Kaman Aerospace International, Inc. is liable to Plaintiff for money damages in a sum to be established at trial.

150.  Defendant Kaman Aerospace International, Inc.'s actions in misrepresenting and warranting as aforesaid demonstrates a reckless indifference to the rights of Helog and Polygon, and/or intentional and wanton violation of their rights.

151.  As a direct, substantial and proximate result thereof, Defendant Kaman Aerospace International, Inc. is liable to Plaintiff for punitive damages pursuant to § 42-110g(a) of the Connecticut General Statutes.

### COUNT FIFTEEN

**AS AND FOR A FIFTEENTH CAUSE OF ACTION OF UNFAIR TRADE PRACTICES AGAINST DEFENDANT KAMAN AEROSPACE GROUP, INC.**

152.  Paragraphs 1 through 151 of Count Fourteen of this Complaint are hereby incorporated and realleged as paragraphs 1 through 152 of this Count.

153.  At all times relevant to this Complaint, Defendant Kaman Aerospace Group, Inc. was engaged in "trade" and "commerce" as defined in § 42-110a of the Connecticut General Statutes.

154.  The actions of Defendant Kaman Aerospace Group, Inc. in misrepresenting and warranting that D-HFZA was airworthy, reasonably safe, free from

-36-

defects, of merchantable quality and fit for its intended use was immoral, unethical, oppressive and unscrupulous conduct.

155. As a direct, substantial, and proximate result of negligent misrepresentations and breaches of warranties as aforesaid, D-HFZA was destroyed and Helog suffered certain damages pursuant to which Plaintiff Polygon and other interested Underwriters as aforesaid paid Helog the sum of £1,626,633.

156. The foregoing misrepresentations and breach of warranties were substantial factors in causing the crash of D-HFZA and substantial injury to Plaintiffs as aforesaid.

157. As a direct, substantial, and proximate result thereof, Defendant Kaman Aerospace Group, Inc. is liable to Plaintiff for money damages in a sum to be established at trial.

158. Defendant Kaman Aerospace Group, Inc..'s actions in misrepresenting and warranting as aforesaid demonstrates a reckless indifference to the rights of Helog and Polygon, and/or intentional and wanton violation of their rights.

159.  As a direct, substantial and proximate result thereof, Defendant Kaman Aerospace Group, Inc. is liable to Plaintiff for punitive damages pursuant to § 42-110g(a) of the Connecticut General Statutes.

PLAINTIFF, POLYGON INSURANCE COMPANY LTD. as Subrogee of Helog A.G., and on behalf of other interested Underwriters as Subrogees of Helog.

By:

Paul A. Lange
Alison L. McKay
Law Offices of Paul A. Lange
2296 Main Street, Suite 2000
Stratford, CT 06615
(203) 375-7724
(203) 375-9397 (Fax)
Juris No. 411181

RETURN DATE: OCTOBER 2, 2001

```
-------------------------------------------------------X     SUPERIOR COURT
POLYGON INSURANCE COMPANY LTD. as             :
Subrogee of HELOG A.G., and on behalf of other   :     JUDICIAL DISTRICT OF
interested Underwriters as Subrogees of Helog,    :     HARTFORD
                                                  :
              Plaintiffs,                         :     AT HARTFORD
                                                  :
v.                                                :
                                                  :
KAMAN CORPORATION, KAMAN AEROSPACE   :
CORPORATION, K-MAX CORP.,KAMAN               :     SEPTEMBER 11, 2001
AEROSPACE INTERNATIONAL, Inc., and KAMAN  :
AEROSPACE GROUP, Inc.                            :
                                                  :
              Defendants.                         :
-------------------------------------------------------X
```

## STATEMENT OF AMOUNT IN DEMAND

As to Counts One through Fifteen, Plaintiff Polygon claims the following damages

in an amount in excess of $15,000, exclusive of interest and costs:

      1.    Money damages;

      2.    Pre-judgment interest;

      3.    Costs;

      4.    Punitive damages;

      5.    Attorneys fees; and

6.    Such other and further relief as the Court deems just and proper.

PLAINTIFF, POLYGON INSURANCE
COMPANY LTD. as Subrogee of Helog A.G.,
and on behalf of other interested Underwriters
as Subrogees of Helog.

By:

Paul A. Lange
Alison L. McKay
Law Offices of Paul A. Lange
2296 Main Street, Suite 2000
Stratford, CT 06615
(203) 375-7724
(203) 375-9397 (Fax)
Juris No. 411181

-40-

# EXHIBIT G

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is executed this 5TH day of NOVEMBER , 2002, by **Global Aerospace Underwriting Managers, Ltd.,** as subrogee of Mountain West Helicopters, LLC, and on behalf of all other interested Underwriters and co-insurers that are subrogees of Mountain West Helicopters, LLC (collectively, "Global").

**1.0     RECITALS**

**1.1**     Global is the Plaintiff in an action filed in the Superior Court, Judicial District of Hartford at Hartford captioned <u>Global Aerospace v. Kaman Corp., et al.,</u> Docket No. CV 01 0811945-S (the "Action").

**1.2**     The defendants named in the Action are (1) Kaman Corporation; (2) Kaman Aerospace Corporation; (3) K-Max Corp., (4) Kaman Aerospace International, Inc.; and (5) Kaman Aerospace Group, Inc. (collectively, the "Kaman Defendants").

**1.3**     The Action arises from the November 4, 1999 damage to a Kaman K-1200 model helicopter, serial number A94-0014, registered as N164KA (the "Incident").

**14.**     It is acknowledged and agreed that the Kaman Defendants do not admit any liability with respect to any matters alleged in the Action or arising out of the Incident, and that the settlement evidenced by this Agreement is not to be construed as an admission of liability, since liability is expressly denied.

**1.5**     In consideration of the foregoing and the mutual covenants and agreements provided for in this Agreement, Global agrees as follows:

**2.0     RELEASE AND DISCHARGE**

**2.1**     In consideration of the payments set forth in Section 3 herein, Global hereby completely releases and forever discharges the Kaman Defendants and their respective officers, directors, employees, stockholders and agents (collectively, "Releasees") from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, debts, liens, costs, expenses and compensation of any nature whatsoever, whether arising in a tort, contract or other theory of recovery, which Global now has, or which may hereafter accrue or otherwise be acquired, related to the Action, including, without limitation, any and all known or unknown claims that arise in any way from the Incident.

**2.2**     Global recognizes that there may exist against Releasees, or one or more of them, some claim, demand or cause of action that Global is totally unaware of and is giving up by execution of this Release.  It is the intention of Global in executing this Release that it will terminate any such claim, demand or cause of action and will prevent Global from asserting them against Releasees, and that Global will never seek further compensation from the Releasees for any losses arising in any way from the Incident or the Action.  Global expressly waives any and all rights and benefits conferred upon Global by any provisions under the law of any jurisdiction

that holds that a general release does not extend to claims that a releasing party does not know or suspect to exist at the time of executing a release, which if known by such person may have materially affected the agreement to settle.

    **2.3**    This release and discharge shall also apply to the Kaman Defendants' insurers, past, present and future officers, directors, commissioners, stockholders, underwriters, reinsurers, co-insurers, following insurers, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former may have, are now, or may hereafter be affiliated.

    **2.4**    This release on the part of Global shall be a fully binding and complete settlement among Global and the Kaman Defendants. Global represents and warrants that it has provided notification of this settlement and release to Mountain West Helicopters LLC and all interested insurers, co-insurers and underwriters – including all insurers, co-insurers and underwriters that had an interest in the aircraft hull or otherwise contributed to the payment of the hull – and Global further represents and warrants that it has full authority to act on their behalf in executing this settlement and release.

## 3.0    PAYMENTS

    In consideration of the release, discharge, dismissal and other consideration set forth in this Agreement, United States Aviation Underwriters, Inc. on behalf of the Kaman Defendants agrees to pay Global Two Hundred and Eighty Five Thousand and 00/100 dollars ($285,000).

## 4.0    DELIVERY OF WITHDRAWAL WITH PREJUDICE

    Concurrently with the execution of this Agreement, counsel for Global shall deliver to counsel for the Kaman Defendants an executed Withdrawal with Prejudice of all of its claims in the Action. Global hereby authorizes counsel for the Kaman Defendants to file said Withdrawal with the Court and enter it as a matter of record after receipt of the funds as provided for in Section 3.0 of this Agreement.

## 5.0    INDEMNIFICATION

    5.1    Global agrees to indemnify, defend and hold harmless the Kaman Defendants from and against any and all claims, costs, damages, liabilities, penalties and expenses whatsoever (including without limitation reasonable attorneys fees) suffered or incurred by the Kaman Defendants as a result of any claims related to this Agreement, including without limitation, any claims brought by Mountain West Helicopters LLC against the Kaman Defendants that relate to this Agreement and/or the settlement between the Kaman Defendants and Global. However, nothing in this paragraph shall require Global to defend, indemnify and hold harmless the Kaman Defendants from any claim by Mountain West Helicopters LLC to damages for which Mountain West Helicopters LLC has already been indemnified by Global.

2

5.2    The indemnification provisions of this Agreement shall also apply to the Kaman Defendants' insurers, past, present and future officers, directors, commissioners, stockholders, underwriters, reinsurers, co-insurers, following insurers, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former may have, are now, or may hereafter be affiliated.

## 6.0    VOLUNTARY DISCLOSURE

Global agrees to provide to counsel for the Kaman Defendants proof of all payments that it made to Mountain West Helicopter, LLC arising in any way from the Incident.

## 7.0    ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement contains the entire agreement between Global and the Kaman Defendants with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

## 8.0    GOVERNING LAW

This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Connecticut, exclusive of its choice of law rules.  In the event that any action is commenced to enforce or interpret the terms of this Agreement, or any portion thereof, the prevailing party shall be entitled to recover attorneys' fees in such amount as shall be determined to be reasonable by the court.  If any provision or part of a provision of this release is found to be invalid or unenforceable, then the remainder shall have full force and effect, and the invalid provision shall be modified or partially enforced to the maximum extent permitted by law.

**Global Aerospace Underwriting Managers, Ltd.,**

By _____
        (Officer of Global)

Its _____
        (Title)

Notary/Commissioner of the Court:

3

GLOBAL AEROSPACE UNDERWRITING
MANAGERS LTD. as Subrogee of
MOUNTAIN WEST HELICOPTERS, LLC,
a Utah Limited Liability Company and on
behalf of other interested Underwriters as
Subrogees of Mountain West,

                                         Plaintiff,

               V.

KAMAN CORPORATION, KAMAN
AEROSPACE CORPORATION, K-MAX
CORP.,KAMAN AEROSPACE
INTERNATIONAL, INC., and KAMAN
AEROSPACE GROUP, INC.

                                 Defendants

Superior Court

Judicial District of Hartford

Docket No. CV-01-00811945-S

**Attorney's Certification**

Frederick Alimonti, an attorney at law duly admitted to practice in the state of New York and

counsel for GLOBAL AEROSPACE UNDERWRITING MANAGERS LTD., affirms under

penalty of perjury that the accompanying *Settlement Agreement and Release* was duly executed

by an authorized officer of GLOBAL AEROSPACE UNDERWRITING MANAGERS LTD.

having authority to bind the company.

Dated: White Plains, New York

       November 11, 2002

                                                      Frederick Alimonti

1

# EXHIBIT H

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is executed this _24th_ day of _JUNE_, 2003, by **Polygon Insurance Company, Ltd.,** as subrogee of Helog A.G., and on behalf of all other interested Underwriters and co-insurers that are subrogees of Helog A.G. (collectively, "Polygon").

## 1.0    RECITALS

**1.1**    Polygon is the Plaintiff in an action pending in the Superior Court, Complex Litigation Docket, Judicial District of Waterbury at Waterbury captioned <u>Polygon Insurance Company, Ltd. v. Kaman Corp., et al.,</u> Docket No. CV 01-0172275-S (X02) (the "Action").

**1.2**    The defendants named in the Action are (1) Kaman Corporation; (2) Kaman Aerospace Corporation; (3) K-Max Corp., (4) Kaman Aerospace International, Inc.; and (5) Kaman Aerospace Group, Inc. (collectively, the "Kaman Defendants").

**1.3**    The Action arises from the September 13, 1999 damage to a Kaman K-1200 model helicopter, serial number A94-0018, registered as D-HFZA (the "Incident").

**1.4**    It is acknowledged and agreed that the Kaman Defendants do not admit any liability with respect to any matters alleged in the Action or arising out of the Incident, and that the settlement evidenced by this Agreement is not to be construed as an admission of liability, since liability is expressly denied.

**1.5**    In consideration of the foregoing and the mutual covenants and agreements provided for in this Agreement, Polygon agrees as follows:

## 2.0    RELEASE AND DISCHARGE

**2.1**    In consideration of the payments set forth in Section 3 herein, Polygon hereby completely releases and forever discharges the Kaman Defendants and their respective officers, directors, employees, stockholders and agents (collectively, "Releasees") from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, debts, liens, costs, expenses and compensation of any nature whatsoever, whether arising in a tort, contract or other theory of recovery, which Polygon now has, or which may hereafter accrue or otherwise be acquired, related to the Action, including, without limitation, any and all known or unknown claims that arise in any way from the Incident.

**2.2**    Polygon recognizes that there may exist against Releasees, or one or more of them, some claim, demand or cause of action that Polygon is totally unaware of and is giving up by execution of this Release. It is the intention of Polygon in executing this Release that it will terminate any such claim, demand or cause of action and will prevent Polygon from asserting them against Releasees, and that Polygon will never seek further compensation from the Releasees for any losses arising in any way from the Incident or the Action. Polygon expressly

waives any and all rights and benefits conferred upon Polygon by any provisions under the law of any jurisdiction that holds that a general release does not extend to claims that a releasing party does not know or suspect to exist at the time of executing a release, which if known by such person may have materially affected the agreement to settle.

    **2.3**    This release and discharge shall also apply to the Kaman Defendants' insurers, past, present and future officers, directors, commissioners, stockholders, underwriters, reinsurers, co-insurers, following insurers, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former may have, are now, or may hereafter be affiliated.

    **2.4**    This release on the part of Polygon shall be a fully binding and complete settlement among Polygon and the Kaman Defendants. Polygon represents and warrants that it has provided notification of this settlement and release to Helog A.G. and all interested insurers, co-insurers and underwriters – including all insurers, co-insurers and underwriters that had an interest in the aircraft hull or otherwise contributed to the payment of the hull. Polygon further represents and warrants that it has full authority to act on behalf of all interested insurers, co-insurers and underwriters – including all insurers, co-insurers and underwriters that had an interest in the aircraft hull or otherwise contributed to the payment of the hull -- in executing this settlement and release.

## 3.0    PAYMENTS

    In consideration of the release, discharge, dismissal and other consideration set forth in this Agreement, United States Aviation Underwriters, Inc. on behalf of the Kaman Defendants agrees to pay Polygon One Million, One Hundred Twenty Thousand and 00/100 dollars ($1,120,000.00).

## 4.0    DELIVERY OF WITHDRAWAL WITH PREJUDICE

    Concurrently with the execution of this Agreement, counsel for Polygon shall deliver to counsel for the Kaman Defendants an executed Withdrawal with Prejudice of all of its claims in the Action. Polygon hereby authorizes counsel for the Kaman Defendants to file said Withdrawal with the Court and enter it as a matter of record after receipt of the funds as provided for in Section 3.0 of this Agreement.

## 5.0    RETURN OF DOCUMENTS

    Pursuant to a stipulated protective order entered into between Polygon and the Kaman Defendants, Polygon agrees to make all Information and Materials designated as Confidential available for Kaman to pick up within thirty (30) days following the closing of this settlement agreement, and notify the Kaman Defendants in writing that all such Information and Material designated as Confidential have been returned.

## 6.0   ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement contains the entire agreement between Polygon and the Kaman Defendants with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

## 7.0   GOVERNING LAW

This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Connecticut, exclusive of its choice of law rules. In the event that any action is commenced to enforce or interpret the terms of this Agreement, or any portion thereof, the prevailing party shall be entitled to recover attorneys' fees in such amount as shall be determined to be reasonable by the court. If any provision or part of a provision of this release is found to be invalid or unenforceable, then the remainder shall have full force and effect, and the invalid provision shall be modified or partially enforced to the maximum extent permitted by law.

## 8.0   BINDING AUTHORITY

Polygon represents that the individual signing on its behalf has full legal authority to enter this Agreement and bind Polygon in this matter.


**Polygon Insurance Company, Ltd.**

By _____
        (Officer of Polygon Insurance Company, Ltd.)

Its _____ *CLAIMS   MANAGER*
        (Title)


Notary/Commissioner of the Court:

Certified true signature

Notary Public

Davey G Le Marquand
Advocate and Notary Public
7 New Street
St Peter Port
Guernsey GY1 4BZ

3