IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>Defendants. | <br><br><br><br><br><br><br><br><br>Case No. 301 CV 1746 (A 006XV<br><br>October 4, 2004 |

**PLAINTIFFS' MEMORANDUM OPPOSING KAMAN'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DAMAGES ISSUES**

Plaintiffs, Mountain West Helicopters, LLC ("Mountain West"), Long-Line Leasing, LLC ("Long-Line"), Helog AG ("Helog") and Heli-Air Zagel Lufttransport AG ("Heli-Air"), hereinafter collectively referred to as "Plaintiffs" and/or the "Helicopter Logging Companies," through counsel, submit this memorandum opposing Kaman Aerospace Corporation's ("Kaman") September 10, 2004 Cross Motion for Partial Summary Judgment on the Damages Issue. This memorandum is supported by the Local Rule 56(a)(2) Statement filed contemporaneously herewith, the affidavits and responses to discovery requests attached thereto and, as necessary, the January 31, 2002-affidavit of Bryan J. Burr, on behalf of Mountain West and Long-Line, and the March 8, 2002-affidavit of Wolfgang Zagel, on behalf of Helog and Heli-Air, both previously filed herein.

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

II. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

III. STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

IV. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    a.    The Court Already Rejected Kaman's Arguments That Connecticut Common Law Proscribes Plaintiffs' Tort Claims for "Economic" or "Commercial" Damages and Need Not Address the Issue Whether the CPLA Bars Plaintiffs' Tort Claims under Circumstances Where Connecticut Law Expressly Recognizes Plaintiffs' Contract Claims for the Selfsame "Economic" or "Commercial" Damages . . . . . . . . . . . 1
    b.    Disputed Facts and Unresolved Questions of Fact, Regarding the Very Existence and/or the Terms and Conditions of the "Agreement" Governing the Sales of the Defective Clutches, Are Not Resolved on Summary Judgment and Preclude the Court's Entry of Summary Judgement in Kaman's Favor and Denying the Helicopter Logging Companies' Recovery of "Consequential" Breach of Contract Damages . . 2
    c.    Plaintiffs Have Not "Assigned" Their Claims Against Kaman to Their Helicopter Hull Insurers and, under Connecticut Law, the Insurers' Rights of Subrogation Do Not Preclude the Claims Plaintiffs Assert Herein, but Expressly Recognize Them . . . . . . . . . . . . . . . . . . . . . . . 11

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## II. INTRODUCTION

As noted in the Helicopter Logging Companies' September 10, 2004-Opening Memorandum ("Plaintiffs' Opening Memo") at page iii, these cross-motions for summary judgment follow the parties' initial efforts to settle the disputes existing among them. Those efforts revealed disagreements, regarding the damages recoverable herein, resulting in a joint motion seeking reverse bifurcation to obtain the court's perspective on the damages issues.

The issues giving rise to the disputes, regarding damages, are twofold. Under Connecticut law: (1) what "property loss" damages may plaintiffs recover for the clutch-failure caused total loss of the Heli-Air helicopter and the clutch-failure caused substantial damage suffered by the Mountain West helicopter; and (2) in addition to the "property loss" damages, what other damages may plaintiffs recover herein?

## III. STATEMENT OF MATERIAL FACTS

The Plaintiffs' Opening Memo supplied a Statement of Material Facts, but did not supply a Local Rule 56(a)(1) Statement.[1] With their Local Rule 56(a)(2) Statement, filed contemporaneously herewith, plaintiffs now supply the court with copies of the discovery responses upon which they rely (and cite by paragraph number in Plaintiffs' Opening Memo) and additional new affidavits from Mr. Burr and Mr. Zagel.[2]

---

[1] The Court's Web Page indicates the Rule 56(a)(1) and (2) Statements are "proposed" changes in the local rules and, accordingly, Plaintiffs, apparently erroneously, did not follow the "proposed" procedure in Plaintiffs' Opening Memo.

[2] Many of the facts relevant to these cross-motions for partial summary judgment were already established in the court's Ruling on Defendant's Motion to Dismiss. See *Mountain West Helicopter v. Kaman Aerospace Corp.*, 310 F.Supp.2d 459 (D.Conn. 2004). The Helicopter Logging Companies, therefore, merely recited the facts contained therein, with no citations to the record other than the court's reported decision.

As noted in the Helicopter Logging Companies' Local Rule 56(a)(2) Statement, the only significant disputed facts recited in Kaman's Local Rule 56(a)(1) Statement are those asserted in paragraphs 5, 6, 15 and 16 thereof. Specifically, the Helicopter Logging Companies, as more fully articulated herein, dispute: (1) that portion of ¶¶ 5 and 6 asserting that "the warranty provisions applicable to the replacement clutch[es] mirrored those contained in the helicopter purchase agreement"; (2) the assertion of ¶ 15 that "Mountain West's property damage claim is [limited to] the $125,000 insurance deductible paid toward the repair of the helicopter"; and (3) the assertion of ¶ 16 that "Helog's property damage claim is [limited to] between $400,000 and $600,000, representing Helog's assessment of the helicopter's fair market value at the time of the accident minus the amount Helog recovered from its insurer." The Helicopter Logging Companies submit, as articulated below, that while the dispute pertaining to paragraphs 5 and 6 of Kaman's Local Rule 56(a)(1) Statement (i.e., whether the warranty provisions applicable to the replacement clutches mirrored those contained in the helicopter purchase agreement) involves questions of fact that cannot be decided on summary judgment, the disputes pertaining to paragraphs 15 and 16 involve questions of law that can and should be decided on these cross-motions for partial summary judgment.

## IV. SUMMARY OF ARGUMENT

As more fully articulated in subsections a, b, and c of the Argument section below, the Helicopter Logging Companies contend: First, the question whether Connecticut tort law allows plaintiffs to recover "economic losses," "commercial losses," or the like, is essentially rendered moot (and the court's devotion of judicial resources to the issue is probably inappropriate) since clear Connecticut law allows the Helicopter Companies to recover all such damages for Kaman's breach of warranty; Second, (a) Connecticut law is clear that consequential damages, including "economic losses," "commercial losses" or the like, are part

of the remedy for breach of warranty and (b) disputed facts and unresolved questions of fact prevent the court from dismissing the Helicopter Logging Companies' claims for such damages at this stage of the proceeding; and, finally, Third, Kaman's confusion between the concepts of "assignment" and "subrogation" does not justify the court's entry of an order, on summary judgment, limiting Kaman's liability to approximately 47% of the damages caused by its violations of the Connecticut Product Liability Act ("CPLA"), its strict liability, negligence, breach of warranty and/or misrepresentation.

## V. ARGUMENT

a. **The Court Already Rejected Kaman's Arguments That Connecticut Common Law Proscribes Plaintiffs' Tort Claims for "Economic" or "Commercial" Damages and Need Not Address the Issue Whether the CPLA Bars Plaintiffs' Tort Claims under Circumstances Where Connecticut Law Expressly Recognizes Plaintiffs' Contract Claims for the Selfsame "Economic" or "Commercial" Damages**

Consistent with the law of most other states, Connecticut law provides that "[u]nless a particular conflict between the rules of contract and tort requires otherwise, a plaintiff may choose to proceed in contract, tort, or both." *Stowe v. Smith*, 184 Conn. 194, 199, 441 A.2d 81, 84 (1981)(footnote omitted). The Helicopter Logging Companies, of course, have taken the "both" route. Moreover, the court already ruled that "because the complaint alleges damages based on the loss of the helicopters, the economic loss rule does not bar the common law tort claims." *Mountain West Helicopter v. Kaman Aerospace Corp.*, 310 F.Supp.2d 459, 467 (D.Conn. 2004). The same ruling also recognizes "[t]he economic loss rule, *similar to the commercial loss rule of the CPLA*, generally bars a plaintiff from seeking so-called economic damages, i.e., lost profits, by way of tort law. (Citations omitted). . . . Nevertheless, when the plaintiff alleges other property damage, the economic loss rule does not apply." *Id.*

1

Based upon the foregoing, plaintiffs have suggested "[i]f the allegations of 'other property damage' vitiate the economic loss rule, for purposes of common law tort claims, then the question arises whether those same allegations vitiate the similar commercial loss rule, for purposes of the CPLA." See Plaintiffs' Opening Memo at 9. While the question raises an interesting curiosity, the arguments that follow, particularly the law of Connecticut allowing plaintiffs those same damages for breach of warranty, strongly suggest, at least insofar as this controversy is concerned, scarce judicial resources would be better spent on matters other than determining whether the CPLA allows the recovery of such damages.

> b. **Disputed Facts and Unresolved Questions of Fact, Regarding the Very Existence and/or the Terms and Conditions of the "Agreement" Governing the Sales of the Defective Clutches, Are Not Resolved on Summary Judgment and Preclude the Court's Entry of Summary Judgement in Kaman's Favor and Denying the Helicopter Logging Companies' Recovery of "Consequential" Breach of Contract Damages**

Plaintiffs' Opening Memo, they respectfully submit, adequately addresses the issues pertaining to whether Connecticut law allows the recovery of consequential damages for breach of warranty, i.e., breach of contract. Therefore, plaintiffs will not reargue those issues here. This memo, instead, focuses on the issues relating to whether the existing state of the facts precludes the court's entry of summary judgement in Kaman's favor, denying the Helicopter Logging Companies their recovery of "consequential" damages for Kaman's breach of contract. Plaintiffs, of course, respectfully submit the current state of the facts does just that.

In its March decision denying Kaman's motion to dismiss, the court recognized the dispute, i.e., the question of fact, pertaining to whether the warranty provisions, exclusions and limitations of the 1997 Aircraft Sale Agreements (or some other set of warranty provisions, exclusions and limitations) applied to the 1999 sales of the replacement spare-part clutches.

> Kaman contends that "any contract based breach of warranty claim must be dismissed because . . . the helicopter sales agreements expressly limit

2

> the remedies for any alleged breach to repair or replacement, and disclaim liability for any commercial losses. Moreover, to the extent that any breach of warranty claim is based on the initial sale of either helicopter, such claim is time-barred."
>
> The plaintiffs respond that "the clutches that caused plaintiffs' damages were not sold under the terms and conditions of the 1997 helicopter sales agreements." Rather, "Kaman sold the clutches to [the plaintiffs], as new spare parts, in 1999." Thus, because "Kaman offers no evidence of the terms and conditions governing" the 1999 sales, the motion should be denied.
>
> Consequently, there appears to be a dispute regarding what contracts governed the sales of the clutches, as well as the contents of those contracts. Kaman claims that this dispute is irrelevant because both contracts contain the same language. In support of this contention, Kaman points to affidavits submitted by the logging companies which purportedly indicate that the 1999 sales were governed by the 1997 sales agreement. Such affidavits, however, are outside the scope of the court's review at this stage. Further, *even assuming the court could review the affidavits, the affidavits plainly state that there "were no written agreements executed governing the terms and conditions of [the clutch] sale."*

*Mountain West Helicopter v. Kaman Aerospace Corp.*, 310 F.Supp.2d at 467 (alterations in original and emphasis *in italics* supplied). Although the parties have conducted some limited damages discovery, since the court's March 2004 decision, on this issue nothing has really changed. Kaman still offers no evidence that there were, indeed, written agreements governing the terms and conditions of the clutch sales. Nevertheless, Kaman now contends:

> Kaman's standard warranty provisions, contained in the purchase agreements for plaintiffs' helicopters, expressly excluded recovery for incidental and consequential damages. (Citations omitted). In 1999, the free wheeling sprag clutches of both helicopters were replaced and the warranty provisions applicable to these replacement parts mirrored those contained in the helicopter purchase agreements. (Citations omitted).

See Kaman's September 10, 2004-Opening Memorandum ("Defendant's Opening Memo") at 2, citing Kaman's Local Rule 56(a)(1) Statement at ¶¶ 3-4 and ¶¶ 5-6. The Helicopter Logging Companies do not dispute that the purchase agreements under which Mountain West and Helog purchased their respective helicopters contained warranty provisions limiting

3

Kaman's obligations to repair or replacement of defective parts and excluding recovery of incidental and consequential damages.  They do not dispute these facts because, as reflected in exhibits B and D attached to Kaman's Rule 56(a)(1) Statement, plaintiffs' representatives affixed their signatures to aircraft sale agreements that (irrespective of the contracts of adhesion issues, see generally 63 Am Jur 2d, Products Liability § 222) reflect plaintiffs' agreements to those terms.  However, **plaintiffs vigorously dispute** that the warranty provisions applicable to the 1999 sales of the clutches mirror those contained in the helicopter purchase agreements.

Kaman contends "[t]he replacement clutches are subject to the warranty provisions in Kaman's parts catalog from 1999. . . ." Defendant's Opening Memo at 7.  Kaman also attaches exhibit F, to its Rule 56(a)(1) Statement, and (notably, with no supporting affidavit from any Kaman employee) asserts, through counsel, that exhibit F "is a true and correct copy of the relevant warranty provisions of Kaman's 1999 parts catalog." See Kaman's Rule 56(a)(1) Statement at page 2, ¶ 5.  The deficiency of Kaman's reliance upon exhibit F is, among other things, that exhibit F contains no signature from any representative of the plaintiffs evidencing plaintiffs' agreement to the terms of exhibit F!  Moreover, Kaman offers no other explanation as to what plaintiffs did to manifest their assent to be bound by the warranty provisions of exhibit F, i.e., the warranty provisions of the 1999 parts catalog.

Moreover, without quoting either (1) plaintiffs' responses to Kaman's discovery or (2) the language found in plaintiffs' affidavits opposing Kaman's renewed motion to dismiss, Kaman simply proclaims that "[b]oth in their responses to Kaman's discovery and in affidavits submitted in opposition to Kaman's Renewed Motion to Dismiss, plaintiffs contend that the replacement sprag clutches were purchased pursuant to the warranty provisions contained in Kaman's parts catalog." Defendant's Opening Memo at 9.  In support of this position, Kaman relies upon its Local Rule 56(a)(1) Statement at ¶¶ 5-6.  *Id.*

4

Kaman's statement, at ¶¶ 5-6, cites three items of evidence in support of the foregoing argument as it relates to plaintiff Helog: (1) "Exhibit C, Helog Response at 8, ¶ 2 (Helog's response to Kaman's request for admission number 2); (2) Exhibit E, Affidavit of Wolfgang Zagel, sworn to March 22, 2002 at ¶ 10; and (3) Exhibit F. As noted above, exhibit F does nothing to demonstrate the parties' agreement to be bound by the warranty provisions, limitations and exclusions of Kaman's 1999 parts catalog. The other two items of evidence similarly fall short of Kaman's objective. Helog's response to Kaman's Request for admission number 2 reads:

> 2. [Admit that a] true and correct copy of the warranty provisions contained in Kaman's parts catalog that are referred to in paragraph 10 of the affidavit of Wolfgang Zagel, sworn to on March 22, 2002 are attached hereto as exhibit B.
>
> **Response:** The warranty provisions appear to be the same and, accordingly, Helog admits request for admission number 2.

The foregoing response, of course, can only be understood in the context of the language of paragraph 10 of Mr. Zagel's March 22, 2002-affidavit, the second item of evidence Kaman relies upon. It reads: "The Kaman parts catalogue we possess notes that Kaman's standard warranty of 500 flight hours or one year, whichever occurs first, applies to spare parts such as the clutch." Notably, Mr. Zagel's affidavit does not establish whether his company, in March 2002 when he executed the affidavit, possessed Kaman's 1999 parts catalog containing the language Kaman now asserts Helog and Kaman agreed to at the time of the 1999 clutch purchase![3] Moreover, Mr. Zagel's affidavit does not, by any stretch of the imagination,

---

[3] The affidavits Mr. Burr and Mr. Zagel now submit, with the Local Rule 56(a)(2) Statement, clarify, on behalf of both parties plaintiff, "I believe the Kaman parts catalog we possessed, at the time of preparing my January 2002 affidavit [in Mr. Zagel's case, the March 2002 affidavit] was Kaman's 2002 parts catalog. We may not have yet received the Kaman 2002 parts catalog and, if not, we likely possessed the Kaman 2001 parts catalog."

5

establish that the claims of Helog (or Mountain West or both) depend upon the warranty provisions of Kaman's parts catalog or reflect Helog's assent to the limitations and exclusions Kaman now asserts, but only that the parts catalog says what it says.[4]

Kaman's citation to Helog's response to Kaman's request for admission number 2 and subsequent citation of Mountain West's response to the same request for admission (see Kaman's Rule 56(a)(1) Statement at 2, ¶ 6), conveniently neglects to inform the court that Mountain West's response to the same request was quite different from Helog's response.

> 2.   [Admit that a] true and correct copy of the warranty provisions contained in Kaman's parts catalog that are referred to in paragraph 9 of the affidavit of Bryan Burr, sworn to on January 31, 2002 are attached hereto as exhibit B.
>
> **Response:**   Mountain West cannot admit or deny request for admission number 2. Pages 14 and 15 of the 2004 Kaman Parts Catalog possessed by Mountain West do not contain warranty provisions.[5]

Paragraph 9 of Bryan Burr's affidavit, filed on behalf of Mountain West and also opposing Kaman's renewed motion to dismiss, reads identically to Helog's affidavit: "The Kaman parts catalogue we possess notes that Kaman's standard warranty of 500 flight hours or one year, whichever occurs first, applies to spare parts such as the clutch." None of the evidence Kaman relies upon, in this motion for summary judgment, changes the fact that, as

---

[4] As argued below, whether the parties agreed on a warranty or limitations on the remedies for breach of that warranty are unresolved questions of fact. The factfinder could ultimately conclude that plaintiffs and Kaman never reached any agreement as to the warranty applicable to the clutches and/or whether the remedies available for breach of that warranty should be limited. Such a finding would not, however, leave plaintiffs without a claim for Kaman's breach of warranty. In those circumstances plaintiffs could still rely upon the warranties of merchantability and/or fitness for a particular purpose under the Uniform Commercial Code ("UCC"), as adopted in Connecticut (see Conn.Gen.Stat. §§ 42a-2-313 and 42a-2-314), and the remedies for breach of those warranties also available under the UCC.

[5] The court will note that exhibit F attached to Kaman's Rule 56(a)(1) Statement contains two pages numbered 14 and 15.

6

the court noted in denying the motion to dismiss, there were no written agreements executed governing the terms and conditions of the clutch sales.

Since it remains undisputed that no writing contains the terms and conditions of the agreement governing the 1999 clutch sales, the questions of fact surrounding the terms of that agreement, or whether any such agreement even exists, preclude this court from answering those questions on summary judgment. "Whether such conduct took place so as to create a contract is a question of fact." *Sandella v. Dick Corp.*, 53 Conn.App. 213, 220, 729 A.2d 813, 818 (Conn.App. 1999), citing *John J. Brennan Construction Corp., Inc. v. Shelton*, 187 Conn. 695, 710, 448 A.2d 180 (1982). "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . ." *Cheverie v. Ashcraft & Gerel*, 65 Conn.App. 425, 439, 783 A.2d 474 (Conn.App. 2001). "Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact. . . ." *Sandella v. Dick Corp.*, 53 Conn.App. 213, 219, 729 A.2d 813, 818 (Conn.App. 1999) citing *Homecare, Inc., v. Acquarulo*, 38 Conn.App. 772, 775, 663 A.2d 412 (1995). These questions of fact become questions of law only when they involve the court's interpretation of contract language the parties have undisputedly agreed upon. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . ." *Pesino v. Atlantic Bank of New York*, 244 Conn. 85, 92, 709 A.2d 540, 545 (1998).

Moreover, assuming *arguendo*, as Kaman asserts, the warranty provisions, exclusions and limitations of the 1999 parts catalog apply, a question of fact remains as to whether plaintiffs' limited rights and remedies, under those warranties, failed of their essential purpose, thus allowing plaintiffs the remedies contemplated by the UCC. The decision of the

United States District Court for the District of Connecticut, in *McKernan v. United Technologies Corp.*, 717 F.Supp. 60 (D.Conn. 1989), explains and then distinguishes the decision in *Damin Aviation Corp. v. Sikorsky Aircraft*, 705 F.Supp. 170 (S.D.N.Y.1989) and enlightens us on these issues.

> The *Damin* court held, in a summary judgment context, that the plaintiff's commercial losses were precluded by the disclaimers in the warranty provisions. *Id.* at 178-79. Specifically, the court found that the limited warranty of repair or replacement did not fail because the plaintiff had been reimbursed the helicopter's full price, which the plaintiff then used to purchase another S-76A equipped with the same model Allison engines as present in the original helicopter.[6] *Id.* The court applied Connecticut law on the warranty issue and concluded:
>
>> Since the defendants were able to replace the [first] [h]elicopter within a reasonable time, [the plaintiff] has not lost a substantial benefit of its bargain. A limited remedy fails of its essential purpose only where, because of circumstances that develop after the formation of the contract, the limited remedy operates to deprive a party of a substantial benefit of the bargain. . . .
>
> *Id.* at 178-79 (citing Conn.Gen.Stat. Section 42a-2-719, comment 1). In Allison's view, the facts in Damin are indistinguishable from those before the court in this proceeding. In each instance, the helicopter owner received the substantial benefit of its bargain--in Damin, a new helicopter; here, a modified S-76A in which the engine overheating problem had been corrected. Allison's argument is not thoroughly persuasive, however. The plaintiff in Damin received a dollar amount exceeding the purchase price of the original helicopter; this amount constituted full replacement value. . . . Conversely, the plaintiffs here did not have the option afforded the Damin helicopter owner. Allison never offered the

---

[6] In contrast to the actions taken by the respective insurance companies in this controversy, in *Damin Aviation*, "[s]oon after the crash, Damin's [own helicopter hull] insurer paid Damin $3,495,000 for the loss of the Helicopter. In November of 1984, the [liability] insurer[s] for Sikorsky [the airframe manufacturer] and Allison [the engine manufacturer] reimbursed Damin's insurer for the entire amount which entirely covered the purchase of another S76A helicopter. . . ." 705 F.Supp. at 171. Here, in contrast, it is undisputed that: (1) Helog's cost to replace the destroyed helicopter was $3,900,000.00; (2) Helog's helicopter hull insurer paid only $2,591,908.00 for the destroyed helicopter (or $1,308,092.00 less than the cost of replacement); and (3) Kaman, through its liability insurer, reimbursed Helog (via payment to Helog's helicopter hull insurer) the sum of only $1,120,000.00 (or $2,780,000.00 less than the cost of replacement).

> *McKernans the full replacement value of the aircraft or the engines. The modifications were the only remedy offered. The alterations allegedly removed safety and performance concerns by ensuring that if an overheated engine exploded, the explosion would be contained away from other engines and steering and control mechanisms. According to the plaintiffs, the modifications removed some risks emanating from the underlying defect but did not correct the defect. If true, the plaintiffs received a remedy but possibly not the substantial benefit of their bargain. Whether the modifications made by Allison were truly adequate to restore such benefit to the plaintiffs is a genuine issue of material fact not resolvable on the undeveloped record now before the court. Whether a limited remedy failed of its essential purpose is, in most instances, a fact-laden issue inappropriate for determination on summary judgment.*
> Citations omitted.

*McKernan v. United Technologies Corp., Sikorsky Aircraft Div.*, 717 F.Supp. 60, 68-69 (D.Conn. 1989) (footnote and emphasis supplied). Here too, "[Kaman] never offered [Helog] the full replacement value of the aircraft. . . ." Nor has Kaman ever offered Mountain West the full repair cost of the Mountain West Helicopter. Accordingly, "plaintiffs received a remedy but possibly not the substantial benefit of their bargain. Whether the [offers] made by [Kaman] were truly adequate to restore such benefit to the plaintiffs is a genuine issue of material fact not resolvable on the undeveloped record now before the court. Whether a limited remedy failed of its essential purpose is, in most instances, a fact-laden issue inappropriate for determination on summary judgment."

Relying upon *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 564 A.2d 919 (1989), Kaman argues "contractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable." Defendant's Opening Memo at 8-9. Does Kaman sincerely contend that its only responsibility, after designing, manufacturing and/or simply placing into the stream of commerce defective clutches that caused the total loss of a

9

$3,000,000.00 helicopter and in excess of $1,000,000.00 damage to another, is to repair or replace those defective clutches for Helog and Mountain West?  The UCC recognizes the absurdity of Kaman's position.  "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."  Conn.Gen.Stat. § 42a-2-719.  The comments to § 42a-2-719 make this even more clear.

> . . . [I]t is of the very essence of a sales contract that at least minimum adequate remedies be available.  If the parties intend to conclude a contract for sale within this Article, they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.  Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed.  Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

Conn.Gen.Stat. § 42a-2-719, comment 1.  More important, for purposes of Kaman's pending motion for summary judgment and as the court recognized in *McKernan*, "[w]hether a limited remedy failed of its essential purpose is, in most instances, a fact-laden issue inappropriate for determination on summary judgment."

Finally, the Connecticut United States District Court has also recognized that if, because of changed circumstances, the repair or replacement remedy leaves a party without adequate remedy, then a separate consequential damages' clause, otherwise conscionable, may become unconscionable and unenforceable.  See *McKernan*, 717 F.Supp. at 69-73.

Plaintiffs respectfully submit the continued existence of disputed facts and unresolved questions of fact entitle them to this court's order denying Kaman's cross-motion for summary judgment on the breach of warranty claim and the damages available for the same.

10

      **c.**      **Plaintiffs Have Not "Assigned" Their Claims Against Kaman to Their Helicopter Hull Insurers and, under Connecticut Law, the Insurers' Rights of Subrogation Do Not Preclude the Claims Plaintiffs Assert Herein, but Expressly Recognize Them**

Kaman argues, without any supporting authority, that "Plaintiffs attempt to 'double dip' and recover from Kaman amounts plaintiffs have been paid by their insurers is improper and should be rejected." Defendant's Opening Memo at 9. The reality is that Kaman asks this court, with language obviously quite different from that which follows, to enter a pretrial order, in the midst of settlement efforts, that limits Kaman's liability to something substantially less than the full amount of the property damages caused (as alleged in plaintiffs' complaint) by Kaman's violations of the CPLA, its strict liability, negligence, breach of warranty and/or misrepresentation. In fact, Kaman casually asks the court to enter an order limiting its property damage liability to just less than 47% of the damages caused by its conduct.[7] Even the decision Kaman cites, in support of its argument that the court should deny plaintiffs the opportunity to go forward with claims for which their insurers have partially reimbursed them, recognizes the fundamental purpose of the doctrine of subrogation is to prevent a third-party tortfeasor, such as Kaman, from unjust enrichment. "[S]ubrogation allows a party who has paid a debt 'to step

---

[7] Plaintiffs calculate the property loss limitation on liability Kaman seeks as follows. First, Kaman caused Helog to lose a $3,000,000.00 helicopter and Mountain West to incur repair costs of $1,155,000.00 or total damages of $4,155,000.00. Second, Kaman asks the court to give it credit for, by entering an order preventing plaintiffs from recovering from Kaman, the insurance proceeds paid to plaintiffs by their own insurers, i.e., (a) $2,591,908.00 paid to Helog and (b) $1,030,000.00 paid to Mountain West or a total of $3,621,908.00. Third, if the court enters the order Kaman seeks, then the maximum recovery plaintiffs could obtain is $533,092.00 (i.e, $4,155,00.00 - $3,621,908.00 = $533,092.00. Fourth, it is undisputed that, to date, Kaman (through its liability insurance carrier) has paid only $1,120,000.00, as a result of the Helog helicopter crash, and only $285,000.00, as a result of the Mountain West helicopter crash or a total of $1,405,000.00. And finally, if the court enters the order Kaman seeks, then Kaman's maximum exposure, for property damages, is $1,938,092.00 (i.e., $1,405,000.00 + $533,092.00 = $1,938,092.00) or 46.64% of the $4,155,000.00 in damages caused. Moreover, if Helog is entitled to the replacement cost of its helicopter, the percentage is even less.

11

into the shoes' of another (usually the debtee) to assume his or her legal rights against a third party *to prevent that party's unjust enrichment.*" *Wasko v. Manella*, 74 Conn.App. 32, 35, 811 A.2d 727, 730 (Conn.App. 2002)(emphasis supplied). When it reversed the Connecticut Court of Appeals' *Wasko* decision, the Connecticut Supreme Court, nevertheless, reaffirmed the notion of this fundamental purpose (or object) of subrogation.

> The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience should pay it.

*Wasko v. Manella*, 269 Conn. 527, 532, 849 A.2d 777, 781 (Conn. 2004)(alterations in original). Having caused plaintiffs, as they allege, to suffer $4,155,000.00 in property losses, Kaman is the party "who in justice, equity and good conscience should pay [that debt]." And Kaman should pay that debt in full, not just 47% of it! To rule otherwise would sanction, rather than "prevent, that party's unjust enrichment." Despite this clear language, Kaman calmly asks the court, with a rather unique soft-shoe, to sanction its unjust enrichment by limiting its liability to less than 47% of the damages caused by its defective clutch!

The Helicopter Logging Companies remind the court, as noted in their opening memo, the Connecticut Supreme Court's version of *Wasko v. Manella* recognizes there is "no logical reason to permit a tortfeasor to be unjustly enriched by virtue of having its debt paid by the insurance company of a party who had the foresight to obtain insurance coverage. . . ." 269 Conn. at 548, 849 A.2d at 790. Similarly, the United States Supreme Court concludes an "injured person can recover full damages from [a] tortfeasor, even when he has already been made whole by insurance or other compensatory payment. . . ." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 219, n. 30 (1994). This is so because "[s]everal doctrines, such as the collateral

12

benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Id.* at 219 (footnote omitted).

Kaman also argues, again with no supporting authority, "it is [plaintiffs'] insurers, not plaintiffs, that "own" any claim related to the amount paid toward the repair or replacement of the helicopters." Defendant's Opening Memo at 9-10. This unsupported statement of the law reveals Kaman's misunderstanding of the distinction between "subrogation" and "assignment." If Kaman asserted that plaintiffs had "assigned" their claims against Kaman to their insurers, then Kaman's argument that plaintiffs' insurers "owned" those claims might have some merit. However, Kaman makes no such assertion.

Again, the Connecticut Supreme Court decision in *Wasko v. Manella* sheds light on the issue of who "owns" the claim against the third-party tortfeasor. In *Wasko*, Middlesex Mutual Assurance Company ("Middlesex"), the Waskos' insurer, argued "[t]he [Connecticut] legislature, in the context of fire insurance policies, has specifically granted a right of **subrogation** to a fire insurance company for all rights of recovery that the insured has against the tortfeasor." See 269 Conn. at 534 and 849 A.2d at 782 (emphasis in **bold** supplied).[8] Moreover, "this 'statutory right of **assignment** for its loss is *inviolate*. . . ." *Id.* (emphasis in **bold** supplied and in *italics* in original). In other words, just as Kaman does here, Middlesex similarly contended the statutory right of subrogation was, in fact, an assignment that transferred the insured's (i.e., the Wasko's) ownership of the claims against the third-party

---

[8] The statute at issue, in *Wasko*, was Conn.Gen.Stat. ¶ 38a-307 reading, in relevant part:

> Subrogation. This [Insurance] Company may require from the
> insured an assignment of all rights of recovery against any party for loss
> to the extent that payment therefor is made by this Company.

13

tortfeasor (i.e, defendant Manella) to the insurer (i.e., Middlesex). The Supreme Court disagreed.

> The subrogation clause set forth in § 38a-307 fails to provide an insurer with a direct, and inviolate, right of subrogation. To the contrary, it merely provides that an insurer "may require" an insured to assign any rights *he or she* has to the insurer. Thus, under this clear language, **the right of recovery belongs to the insured**, and the insurer only obtains that right when the insured grants it.

*Wasko v. Manella*, 269 Conn. at 536 and 849 A.2d at 783 (emphasis in *italics* in original and emphasis in **bold** supplied). Compare *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 861 (2d Cir. 1985) (While "the amount paid by an insurer under an insurance policy acts as a limit on the insurer's recovery . . . the underlying claim is still that of the insured"). If the right of recovery "belongs" to the insured there can be no question that plaintiffs "own" the claims against Kaman. Moreover, Kaman not only fails to produce any evidence that plaintiffs "assigned" their ownership of the claims to their insurers, but also fails to produce a contract or cite a statute evidencing any such assignment.

The authoritative treatise on insurance law explains the distinction between "subrogation" and "assignment." "In essence, while subrogation is a designation of proceeds recovered from a wrongdoer, an assignment transfers the entire cause of action to the insurer." See 16 Couch on Insurance § 222:53 at 222-92 (West Group edition 2000). "Assignment also differs from equitable subrogation in that equitable subrogation is an act of the law growing out of the relation of the parties to the original contract of insurance . . . whereas an assignment is the act of the parties to the assignment, dependent upon actual intention." *Id.*

While a contractually lawful "assignment" could transfer ownership of claims against a third-party tortfeasor, "subrogation" is primarily involved with determining (or, as Couch describes it, "designating") the recipient of the proceeds once a successful claim has, in

14

fact, generated proceeds. Kaman offers no evidence of plaintiffs' "intent" to transfer ownership of their claims to their insurers but only of their insurers' payments to them and the consequential right of subrogation. Accordingly, plaintiffs continue to "own" the claims against Kaman subject to their insurers' rights of subrogation.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs continue to seek the court's order granting partial summary judgement in their favor, ruling that the Helicopter Logging Companies are entitled to recover: (1) for their "Property Losses," the fair market value of (or, if the facts and circumstances warrant, the cost to replace) the Heli-Air Helicopter, as of September 13, 1999 when it became a total loss, and the actual cost to repair the Mountain West Helicopter, following its November 4, 1999 crash, with interest thereon from the date(s) of loss (less any amount paid by Kaman (and/or its insurance carrier) as a result of the helicopter accidents); and (2) following resolution (in Plaintiffs' favor), at trial, of existing questions of fact, their incidental, consequential and/or commercial losses for Kaman's breach of contract or, at the very least, that at this stage of the litigation, the Helicopter Logging Companies' claims for incidental, consequential and/or commercial losses, are not foreclosed by Connecticut law.

DATED: October 4, 2004.

The Law Offices of Robert S. Young, L.C.

_____
Robert S. Young (ct 21935)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax (801) 359-7233
rsyav8rlaw@hotmail.com

15

## VII. CERTIFICATE OF SERVICE

I certify that on October 4th, 2004, I caused to be filed with the court and served upon the individuals identified below, in the manner stated, the foregoing PLAINTIFFS' MEMORANDUM OPPOSING KAMAN'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DAMAGES ISSUES. The original, via United States Postal Service Priority Mail, all expenses prepaid, to "be filed with the court within a reasonable time after service," as contemplated by Rule 5(d) Fed.R.Civ.P., and addressed to:

> Clerk of the Court
> 450 Main Street
> Hartford, CT  06103

And one copy each, via first class mail, postage prepaid addressed to:

Tim Bishop, Esq.
BISHOP & JACKSON
80 Ferry Blvd.
Stratford, CT  06615

Timothy A. Diemand, Esq.
Aaron Singer, Esq.
WIGGIN & DANA
One City Place
185 Asylum Street
Hartford, CT  06103-3402

_____

C:\Documents and Settings\Robert S. Young\My Documents\My Files\Mt. West v. Kaman\Memo Opposing Kaman's Cross-MSJ re Damages.004.wpd

16