UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,: 
LONG-LINE LEASING, LLC,
HELOG AG and HELI-AIR ZAGEL
LUFTTRANSPORT AG,

        Plaintiffs,

vs.

        CASE NO. 3:01-CV-1746 (AVC)

KAMAN AEROSPACE CORPORATION
and JOHN DOES I THROUGH V,

        October 21, 2004

        Defendants.

**REPLY IN SUPPORT OF KAMAN AEROSPACE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES**

In ruling on Kaman's Renewed Motion to Dismiss, the Court explained that the Connecticut Product Liability Act ("CPLA") governs *every* claim asserted by plaintiffs except for their contractual warranty claim. Mountain West Helicopter v. Kaman Aerospace Corp., 310 F. Supp. 2d 459, 464 (D. Conn. 2004). The Court further held that the CPLA bars the recovery of economic damages. Id. In their Opposition, plaintiffs finally seem ready to accept that the economic damages they seek are not recoverable under the CPLA: "at least insofar as this controversy is concerned, scarce judicial resources would be better spent on matters other than determining whether the CPLA allows the recovery of [economic] damages." Opp. at 2. Kaman agrees and, given plaintiffs' concession and the Court's prior ruling, Kaman respectfully requests that the Court grant summary judgment in Kaman's favor on this issue. See Kaman's September 10, 2004 Mem. at 5-7.

Although the CPLA permits plaintiffs to recover property damage (i.e., the damage to the helicopters), plaintiffs cannot escape the fact that their insurance carriers substantially compensated them for this property damage. Nor can plaintiffs escape the fact that their property damage claims were subrogated and assigned to their insurers. Both the law and common sense dictate that plaintiffs cannot recover twice for the same harm – once from their insurance carriers and again from Kaman.

Finally, plaintiffs cannot credibly claim that they are "not sure" what, if any, warranty applies to the replacement clutches. The uncontroverted evidence shows that the clutches were sold subject to Kaman's standard limited warranty which expressly disclaims any liability for the economic damages plaintiffs seek.

### I. Plaintiffs' Assignment of Their Hull Claims and the Doctrine of Subrogation Preclude Plaintiffs From Recovering Twice for the Same Harm.[1]

The double recovery plaintiffs seek is precluded by both plaintiffs' contractual assignment of their hull claims to their insurers and bedrock principles of subrogation. Plaintiffs acknowledge in their Opposition (at 14) that "an assignment transfers the entire cause of action to the insurer" and that "a contractually lawful 'assignment' could transfer ownership of claims against a third-party tortfeasor." These admissions are fatal to plaintiffs' argument. When plaintiffs accepted payment from their insurers, plaintiffs assigned to their insurers the right to pursue any claim for damage to the helicopters.

A brief overview of the uncontested facts demonstrates that plaintiffs cannot now claim that they "own" any right to recover from Kaman some or all of the amounts plaintiffs already received from their insurers. Plaintiffs' helicopters were involved in accidents in 1999. See

---

[1] As the arguments in plaintiffs' opposition are similar to the arguments raised in their September 10, 2004 "cross-motion" for summary judgment, Kaman reproduces here some of the arguments made in its October 4, 2004 opposition to plaintiffs' cross-motion.

2

Kaman's Local Rule 56(a) Statement at ¶¶ 7-8 (admitted in plaintiffs' Local Rule 56(a)(2) Statement). Following these accidents, plaintiffs each submitted claims to their insurers for damage sustained to the helicopters. Helog's insurer reimbursed Helog $2,591,908, and Mountain West's insurer paid $1,030,000 to Mountain West. Id. ¶¶ 9-10 (admitted in plaintiffs' Local Rule 56(a)(2) Statement). When settling their claims with their insurers, plaintiffs contractually assigned to their insurers plaintiffs' rights to assert claims against Kaman for the damage to the helicopters. See Kaman's Supplemental Local Rule 56(a)(1) Statement ¶ 1, Exhibit B: Mountain West Subrogation Receipt (Mountain West released "all of the rights I (we) now have or which I (we) may hereafter have against anyone whomsoever, with respect to said loss and damage"); Id. ¶ 2, Exhibit D: Helog's Interim Hull Release and Discharge (Helog agreed ". . . to assign, transfer and subrogate to insurers all rights, interest, or causes of action against any third party, who may be liable for this loss, so that any such action, right or interest may be exerted by the said company in lieu of [Helog], to the extent of the payment aforesaid").[2]

Plaintiffs' insurers enforced these assigned rights, filing claims against Kaman for the damage to the helicopters. See Kaman's Local Rule 56(a)(1) Statement at ¶ 11 (admitted in plaintiffs' Local Rule 56(a)(2) Statement); Kaman's Supplemental Local Rule 56(a)(1) Statement ¶¶ 3-4, Exhibits E and F. Kaman settled these hull claims and the settlement agreements confirm that the insurers owned plaintiffs' hull claims and had full authority to settle them. See Kaman's Supplemental Local Rule 56(a)(1) Statement ¶ 5, Exhibit G: Global Settlement Agreement and Release § 2.4 ("[Insurer] represents and warrants that it has provided notification of this settlement and release to [Mountain West] . . . and [Insurer] further represents and warrants that it has full authority to act on their behalf in executing this settlement and

---

[2] Kaman's Supplemental Local Rule 56(a)(1) Statement was filed with Kaman's October 4, 2004 Opposition to Plaintiff's Cross-Motion for Summary Judgment.

3

release"); Id. ¶ 6, Exhibit H: Polygon Settlement Agreement and Release at § 2.4 (same). Simply stated, plaintiffs cannot now assert claims which were assigned and settled.

Even absent such clear contractual assignments, by settling their claims with their insurers, plaintiffs' hull claims against Kaman became subrogated to the insurers by operation of law. See, e.g., Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) ("The general rule is that an insurer's right to subrogation attaches, by operation of law, on paying an insured's loss. At that time, the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and the insurer succeeds to all the procedural rights and remedies possessed by the insured") (internal citations omitted). Subrogation prevents the windfall plaintiffs seek: "Subrogation eliminates the possibility that the insured might obtain a duplicative recovery and prevents unjust enrichment. The policy underlying subrogation is to prevent an unwarranted windfall to the insured. Subrogation also prevents a windfall to the tortfeasor because, if the insured only received payment from the insurer and no action was brought against the responsible party, the tortfeasor would not suffer any detriment." Holmes' Appleman on Ins. § 141(D)(2) (2002); see also Couch on Insurance § 222:8 (2004): "[S]ubrogation has the objective of preventing the insured from recovering twice for one harm, as would be the case if he or she could recover from both the insurer and from a third person who caused the harm." These bedrock principles are followed in the Second Circuit: "[Subrogation] seeks, first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from the third person who caused the harm, and second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made." Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999) (internal citation omitted).

4

Contrary to plaintiffs' argument, Kaman is in no way "unjustly enriched" – plaintiffs' insurers asserted (and settled) the claims related to the damages to the helicopters. In fact, if the Court were to adopt plaintiffs' approach, plaintiffs would reap a windfall – receiving full compensation for the damage to the helicopters from both their insurers and Kaman. Neither the law nor logic sanctions such a result.[3]

## II. Plaintiffs Cannot Recover Economic Damages on Their Warranty Claims.

### A. The Controlling Warranty Provisions Exclude Economic Damages.

Contrary to plaintiffs' assertion, there is no "fact dispute" regarding the warranty provisions that apply to the replacement clutches at issue in this case. As stated in their Opposition (at 3-4), plaintiffs "do not dispute that the purchase agreement under which Mountain West and Helog purchased their respective helicopters contained warranty provisions . . . excluding recovery of incidental and consequential damages." Plaintiffs however fail to tell the Court that the helicopter sales agreements also provide that replacement parts for the helicopters would be subject to "Kaman's then standard terms and conditions" when purchased. See Helog Sales Agreement Paragraph 16.1 (Exhibit D to Kaman's Local Rule 56(a)(1) Statement), Mountain West Sales Agreement Paragraph 10.1 (Exhibit B to Kaman's Local Rule 56(a)(1) Statement). Therefore, plaintiffs clearly understood and agreed that subsequent purchases of replacement parts for the helicopters (such as the clutches) would be subject to Kaman's standard

---

[3] Plaintiffs' reliance on Wasko v. Manella, 269 Conn. 527, 849 A.2d 777 (Conn. 2004) is misplaced. At issue in Wasko was whether the homeowner's insurer could recover the payment made to the homeowner from the houseguest who burned the house down. The court found that the insurer could sue the houseguest under equitable theories of subrogation. In Wasko, the homeowner sued the houseguest in negligence. The insurer replaced the homeowner as the plaintiff after it paid the homeowner's property damage claims. Therefore, in Wasko, as here, the homeowner could not continue to press the tort claim against the houseguest as it had been subrogated to the insurer and the insurer "stepped into the shoes" of the homeowner.

terms and conditions – including Kaman's limited warranty that disclaims any liability for incidental and consequential damages.

More important, when the replacement clutches were sold to plaintiffs in 1999, the documents governing the transactions state that the clutches were sold subject to Kaman's limited warranties. As explained in the accompanying affidavit of G. Roger Wassmuth (Exh. 1 hereto), in June of 1999 Kaman sold Helog a replacement transmission assembly that contained the clutch at issue. Wassmuth Aff. at ¶ 3. In accepting the new transmission, Helog agreed that the transmission was subject to Kaman's "terms and conditions of sale, a copy of which you have received as part of the Kaman 1999 Commercial Price List." Id. at ¶ 4. The 1999 Commercial Price List contains Kaman's standard terms and conditions and, at Section 6, contains the limited warranty disclaiming liability for "any indirect, incidental, consequential, special or exemplary damages . . ." Id. at ¶ 5. Similarly, in October 1999, Mountain West purchased the clutch at issue. Id. at ¶ 6. The "pick ticket" documenting this sale states that the transaction is subject to Kaman's standard "terms and conditions of sale . . ." Id. at ¶ 7. Before the clutch was sold to Mountain West in October of 1999, Kaman provided Mountain West with its 1999 Commercial Price List. Id. at ¶ 8. As noted above, the 1999 Commercial Price List contains Kaman's standard terms and conditions of sale for replacement parts (including the limitation of liability provision quoted above). Id.[4]

Finally, having based their warranty claims on the limited warranty provisions in Kaman's parts catalogue, and having contended that these terms govern the purchases of the

---

[4] The documents attached to Mr. Wassmuth's affidavit verifying that the clutches were sold subject to Kaman's limited warranties should be known to plaintiffs (and, in any event, were produced by Kaman to plaintiffs several months ago). It is therefore incredible for plaintiffs to state in their affidavits that they are "aware of no written documents outlining the terms and conditions governing Kaman's sale and our purchase of the [clutches] in 1999." See October 4, 2004 affidavits of Wolfgang Zagel (at ¶ 10) and Bryan Burr (at ¶ 10).

replacement clutches, plaintiffs cannot now change their story. As Bryan Burr, Mountain West's owner, stated in an affidavit submitted in this case: "The Kaman parts catalogue we possess, notes that Kaman's standard warranty . . . applies to spare parts such as the Clutch." (Exhibit G to Kaman's Local Rule 56(a)(1) Statement). Wolfgang Zagel made the identical representation on behalf of Helog. (Exhibit E to Kaman's Local Rule 56(a)(1) Statement). Based on the record, it is just not credible for plaintiffs (in unsworn/unsigned affidavits) to now claim that they presently do not recall the warranty terms governing the clutches.

    B.    **Even If, As Plaintiffs Assert, Kaman's Warranty Fails Its "Essential Purpose," Plaintiffs Still Cannot Recover Economic Damages.**

As plaintiffs correctly note, Conn. Gen. Stat. § 42a-2-719(2) contains a narrow exception to the parties' ability to contractually limit breach of warranty remedies: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Plaintiffs fail to inform the Court, however, that this Court has predicted that the Connecticut Supreme Court would follow the "current trend" and the "better reasoned approach" that even if an exclusive remedy fails its essential purpose, a clause excluding consequential damages will remain enforceable unless the limitation is unconscionable. See McKernan v. United Technologies Corp., 717 F.Supp. 60, 69-72 (D. Conn. 1989); see also Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1087 (3d Cir. 1980) ("It appears to us that the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable"); Kaplan v. RCA Corp., 783 F.2d 463, 467 (4th Cir. 1986) (same); Lewis Refrig. Co. v. Sawyer Fruit, Vegetable & Cold Storage, 709 F.2d 427 (6th Cir. 1983) (same); Smith v. Navistar Int'l Transportation Corp., 957 F.2d 1439, 1443-44 (7th Cir. 1992) (same); cf. McNally Wellman Co. v. New York Electric & Gas Corp., 63 F.3d 1188, 1197-98 (2d Cir. 1995) (same); Roneker v. Kenworth Trucking Co., 944 F. Supp. 179,

7

185-86 (W.D.N.Y. 1996) (granting partial summary judgment because "even if plaintiff succeeds in establishing that the repair and replacement warranty failed of its essential purpose, the exclusion of consequential damages will remain in effect unless the exclusion is unconscionable"); Providence & Worcester RR Co. v. Sargent and Greenleaf, Inc., 802 F. Supp. 680, 691 (D.R.I. 1992) (finding that "in a 'sophisticated commercial setting' an exclusion of liability for consequential damages was valid and enforceable even though circumstances caused the limited remedy . . . to fail of its essential purpose") (citations omitted). As the McKernan Court recognized, Conn. Gen. Stat. § 42a-2-719(3) "places no restrictions on the allocation of risk for absorption of commercial loss, except that such allocation must not be unconscionable. . . . . The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The Code, moreover, tests each by a different standard. The former survives unless it fails its essential purpose, while the latter is valid unless it is unconscionable." 717 F. Supp. at 70 (internal citations and quotation marks omitted).

  Therefore, even if the Court determines that the question of whether the limited warranty failed its essential purpose raises issues of material fact, plaintiffs cannot recover the economic damages they seek unless the clause excluding such damages is unconscionable. Whether a contractual provision is unconscionable is a matter of law to be determined by the court. See Conn. Gen. Stat. § 42a-2-302 (finding of unconscionability left to "the court as a matter of law . . ."); see also, Family Financial Services, Inc. v. Spencer, 41 Conn. App. 754, 677 A.2d 479, 485 (Conn. App. Ct. 1996). Plaintiffs present no facts suggesting that the exclusion of consequential damages is, or ever was, unconscionable. In similar circumstances, Judge Cabranes, before his elevation to the Second Circuit, granted summary judgment in favor of a manufacturer where

plaintiff alleged that the failure of a limited repair or replace remedy's essential purpose rendered the exclusion of consequential damages provision unconscionable, but presented no evidence of unconscionability:

> The plaintiff next suggests that a factual issue exists as to whether the limitation of liability for consequential damages is unconscionable. The plaintiff, however, puts forth no specific facts to support such a finding. Where the parties are sophisticated business entities, and the plaintiff offers no facts to support its contention of unconscionability, the court can find no genuine issue of material fact to warrant a denial of summary judgment.

Int'l Connectors Indus., Ltd. v. Litton Sys. Inc., Civ. A. No. B-88-505, 1995 WL 253089 (D. Conn. April 25, 1995) (Exh. 2 hereto); see also Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170, 177 (D. Conn. 1989) (upholding exclusion of consequential damages clause in helicopter sales agreement and granting summary judgment where plaintiff failed to produce evidence of unconscionability: "Courts have rarely found limitations of consequential damages in commercial transaction to be unconscionable").

Here, neither Mountain West nor Helog (both sophisticated commercial entities) offer *any* facts rebutting the presumption of legitimacy surrounding the exclusion of consequential damages. Such exclusions are "a reasonable allocation of risk between two commercial parties." Winter Panel Corp. v. Reichold Chem., Inc., 823 F. Supp. 963, 973 (D. Mass. 1993). Such an allocation of risk is especially pertinent where potential consequential losses can, and most likely will, exceed the value of the goods by an unknown amount. See, e.g., Kaplan, 783 F.2d at 467 ("[Defendant] did not have to subject itself to multi-million dollar liability for consequential losses by supplying a [product] for $12,000. It could, as it did, properly allocate that risk to [plaintiff]."). Here, there is absolutely no basis to find Kaman's limited warranty unconscionable.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Kaman's September 10, 2004 Motion (and supporting papers), Kaman respectfully requests that its Motion for Partial Summary Judgment on the Issue of Damages be granted in its entirety.

DEFENDANT
KAMAN AEROSPACE CORPORATION

By: _____
Shaun S. Sullivan (ct 04883)
Timothy A. Diemand (ct 18075)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail ssullivan@wiggin.com
          tdiemand@wiggin.com

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Reply in Support of Kaman Aerospace Corporation's Motion for Partial Summary Judgment on the Issue of Economic Damages was sent by first class mail, postage prepaid, on this 21st day of October, 2004 to:

Robert S. Young, Esq.
Law Offices of Robert S. Young, L.C.
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand

\14658\2\494159.7