# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:
LONG-LINE LEASING, LLC,
HELOG AG and HELI-AIR ZAGEL
LUFTTRANSPORT AG,

        Plaintiffs,

vs.

        CASE NO. 3:01-CV-1746 (AVC)

KAMAN AEROSPACE CORPORATION
and JOHN DOES I THROUGH V,

Defendants.

## AFFIDAVIT OF G. ROGER WASSMUTH

G. Roger Wassmuth, being duly sworn, deposes and says:

1. I am over the age of eighteen and believe in the obligation of an oath.

2. I am the Director of K-Max Marketing and Business Development for Kaman Aerospace Corporation. I am familiar with the facts of this case and can personally attest to the facts contained in this affidavit.

3. In June of 1999 Kaman sold Helog a replacement transmission assembly that contained the clutch at issue in this case.

4. Attached hereto as Exhibit A is a true and accurate copy of my June 21, 1999 letter (including Schedule A) to Helog, wherein Helog acknowledged that the replacement

transmission assembly was subject to Kaman's "terms and conditions of sale, a copy of which you have received as part of the Kaman 1999 Commercial Price List." This letter is countersigned by Helog's representative Jurg Wyss.

5. Attached hereto as Exhibit B is a copy of the portion of Kaman's 1999 Commercial Price List containing the standard terms and conditions governing the sale of the replacement transmission assembly to Helog. Section 6 contains a limitation of liability provision which states in relevant part:

> EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

6. In October of 1999, Mountain West purchased from Kaman the clutch at issue in this case.

7. Attached hereto as Exhibit C is a true and accurate copy of the "pick ticket" documenting the sale of the clutch to Mountain West. The pick ticket states that the transaction is subject to Kaman's standard "terms and conditions of sale."

8. Before the clutch was sold to Mountain West in October of 1999, Kaman provided Mountain West with its 1999 Commercial Price List. See Exhibit B hereto. As noted

above, the 1999 Commercial Price List contains Kaman's standard terms and conditions of sale for replacement parts (including the limitation of liability provision quoted above).

*G. Roger Wassmuth*

STATE OF CONNECTICUT )
                              ) ss. Bloomfield, October 21, 2004
COUNTY OF HARTFORD )

Personally appeared G. Roger Wassmuth, signer and sealer of the foregoing instrument, and he acknowledged the same to be his free act and deed, before me.

Sworn to before me
this 21st day of October, 2004

*Cyndra S. Lewis*
Notary Public

My Commission Expires: 3/31/2008

\1465\8\2\495019.1

# EXHIBIT A

22-JUN-1999 08:06   HELOG AG, HALTIKON   0041+41+8540855   P.01

K-MAX Corporation
1332 Blue Hills Ave
Bloomfield, CT 06002
(860) 243-7547

# KAMAN

June 21, 1999

TRK: A940018-5E

Via Facsimile

Mr. Jurg Wyss
Helog AG
Haltikon
CH-6403
Kusenacht, Switzerland

Dear Jurg:

As per your request, this letter confirms K-MAX Corporation's agreement to transfer to you the component(s) described on Schedule A to this letter, in exchange for your current component(s).

If shown on the attached Schedule A, you will also be charged an exchange price representing the charge for life-limited components of the item that is being removed. This exchange is subject to K-MAX Corporation's terms and conditions of sale, a copy of which you have received as part of the Kaman 1999 Commercial Price List.

If shown on the attached Schedule B, you will be required to send by wire, one half of the exchange overhaul price. Component shipments will be made when the wire transfer has cleared through Fleet bank. Schedule B also provides you the necessary information for wire transfers to K-MAX Corporation.

For our records, please indicate your agreement with the above by signing and dating this letter and returning it to me via facsimile.

If you have any questions, please call.

Sincerely,

R. Wassmuth

Roger Wassmuth
Field Service Manager, K-MAX Programs

Accepted and Agreed this
22 day of June, 1999:
Helog AG.

By Jurg Wyss
   (title)

KAMAN – 0051

TOTAL P.01

RECEIVED DATE : 06/22/99  02:09  FROM :0041+41+8540855

K-MAX Corporation
P.O Box 2
Bloomfield, CT 06002
(860) 243-7547

# KAMAN

**SCHEDULE A**  TRK: A940018-5E

**Customer:** Helog AG

**Aircraft Number:** A94-0018

**Date of Exchange Letter Agreement :** June 21, 1999

### REMOVED COMPONENT INFORMATION

| Part Number | S/N | Component | TSN | TSO |
|---|---|---|---|---|
| K974002-101 | A18-23 | Transmission | | |

### EXCHANGE COMPONENT INFORMATION

| Part Number | S/N | Component | TSN | TSO |
|---|---|---|---|---|
| K974002-101 | A18-7 | Transmission | 1778.1 | 0.0 |

### PRICING INFORMATION

|  | Transmission |
|---|---|
| Overhaul Price | 96,050.00 |
| Exchange Price | 13,722.50 |
| Subtotal | $109,772.50 |
| Exchange Component Price | $109,772.50 |

**TOTAL EXCHANGE COMPONENT(S) PRICE *** $109,772.50

* Pricing based on 2500 hours
* All amounts are stated in US dollars.
* Additional damage as determined by Kaman not included.
* All shipping and handling will be invoiced separately.

KAMAN – 0055

# EXHIBIT B

K-MAX CORPORATION ("K-MAX")
PRODUCTS AND SERVICES
STANDARD TERMS AND CONDITIONS OF SALE

K-MAX and you, the Customer, agree that the following terms and conditions (the "Terms") will govern your order for parts and equipment distributed by K-MAX not of its manufacture ("Products") and K-MAX aircraft related services ("Services") stated on the front of this form. *These Standard Terms and Conditions of Sale shall not apply to sales of a K-MAX aircraft (herein referred to as K-MAX aircraft or the "Aircraft"), such sales being exclusively governed by the terms and conditions of the standard K-MAX Aircraft Sale Agreement, then currently in effect.*

1. ACCEPTANCE: Notwithstanding any contradictory terms and conditions which may appear on Customer's forms, the shipment and/or delivery of the Products or Services which are the subject of this invoice and the mailing and/or delivery of this invoice shall not constitute an acceptance by K-MAX of any prior written or oral offer by Customer containing terms and conditions different from or additional to, the Terms contained in this form. K-MAX's acceptance of any such offer is expressly conditioned on Customer's assent to the Terms set forth herein, and Customer's acceptance of the Products or Services which are the subject of this invoice shall constitute Customer's acceptance of the Terms set forth herein.

2. PRICES, TAXES: Prices listed are quotation prices and are subject to change without notice prior to acceptance of Customer's order notwithstanding any other provision herein. All prices and deliveries for Products are FOB shipping point. All excise, sales or use taxes, any duties, fees and/or other charges imposed by any governmental authority upon the manufacture, sale, transportation, export or import of the Products or Services sold hereunder shall be paid by Customer, or if required to be paid by K-MAX shall be reimbursed to K-MAX by Customer. The price of the individual Products which is the subject of Customer's order is for the specific Product only and does not include intellectual or proprietary rights of any nature whatsoever.

3. PAYMENT: Unless otherwise indicated on the face of this form or agreed to in writing by K-MAX, payment terms are net 30 days from the invoice date in United States of America currency. Payments are subject to a late payment charge equal to the lower of one and one-half percent (1.5 %) per month, or the maximum permitted by applicable law. Customer agrees to reimburse K-MAX for reasonable attorneys' fees and any other costs associated with collecting delinquent accounts. In the event of any delinquency on the part of Buyer in making any payments hereunder, K-MAX shall have the right at any time, and without Buyer's consent, to withhold, delay or defer any performance or deliveries hereunder until such payments are brought current or adequate security or alternative arrangements have been agreed upon which are satisfactory to K-MAX in its sole discretion.

4. SHIPMENT, FORCE MAJEURE: Unless otherwise indicated on the face of this form all orders will be shipped FOB Bloomfield, Connecticut. Customer may request a specific carrier and, if available, K-MAX will accommodate Customer's request. However, K-MAX shall have discretion to use a carrier of its choice in all cases. Any shipping

**KAMAN – 0058**

dates included on the face of this form are approximate and are subject to timely receipt of all Products from K-MAX's vendors and are further based on the assumption that there will be no other delays or contingencies beyond K-MAX's reasonable control. K-MAX shall have no liability whatsoever for delays, failure of performance or damages due to: fire, explosion, power failures, strikes or labor disputes, acts of God, the elements, war, civil disturbances, inability to secure materials, lack of transportation facilities, fuel or energy shortages, or other causes beyond K-MAX's reasonable control whether or not similar to the foregoing. In the event of delay, K-MAX may, but shall not be required to allocate production and delivery among its customers.

5. <u>RISK OF LOSS: SECURITY</u>: Customer shall bear all risk of loss of, or damage to Products sold hereunder from and after delivery of such Products by K-MAX to the carrier or the FOB point specified on the face of this form. K-MAX shall have a purchase money security interest in the Products to secure payment of the purchase price until payment in full is received by K-MAX. Customer agrees to execute and deliver all documents requested by K-MAX to perfect and maintain K-MAX's security interest and agrees that K-MAX shall have the right to execute such documents in Customer's name and stead in the event Customer shall refuse to do so.

6. <u>WARRANTY</u>:

   A.   *Disclaimer of Warranty For Products or Services*:   Customer acknowledges that all Products sold or loaned by K-MAX are manufactured by third parties and that all Services for which K-MAX makes arrangements hereunder are provided by third parties. K-MAX will, to the extent allowed by the manufacturer of the Product or provider of the Service, assign the benefit of any available manufacturer's or service provider's warranty to Customer. K-MAX IS NOT RESPONSIBLE FOR, AND EXPRESSLY DISCLAIMS AND EXCLUDES ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO: (i) WARRANTIES PERTAINING TO THE CONDITION, OPERATION, FITNESS FOR USE OR MERCHANTABILITY OF THE PRODUCTS OR SERVICES; (ii) WARRANTIES PERTAINING TO THE FITNESS OF THE PRODUCTS FOR ANY PARTICULAR PURPOSE; (iii) OR ANY OTHER WARRANTIES OF ANY NATURE WHATSOEVER. IN NO EVENT WILL ANY DEFECT IN OR FAILURE OF ANY PRODUCT OR SERVICE PROVIDED HEREUNDER AFFECT CUSTOMER'S OBLIGATIONS TO K-MAX. NO VERBAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY K-MAX, ITS AGENTS AND/OR EMPLOYEES OR ANY THIRD PARTY SHALL CREATE A WARRANTY AND CUSTOMER MAY NOT RELY UPON ANY SUCH INFORMATION OR ADVICE AS A WARRANTY.

   B.   *Exclusive Remedy; Limitations of Liability*: K-MAX'S SOLE OBLIGATION AND CUSTOMER'S EXCLUSIVE REMEDY IN THE EVENT OF ANY CLAIM BY CUSTOMER IN CONNECTION WITH ANY PRODUCTS OR SERVICES SHALL BE LIMITED TO MAKING AVAILABLE TO CUSTOMER ANY EXISTING APPLICABLE WARRANTY OF THE MANUFACTURER OF SUCH PRODUCTS OR THE PROVIDER OF SUCH SERVICES, TO THE EXTENT K-MAX CAN DO SO. K-MAX SHALL NOT BE LIABLE FOR ANY DEFECTS IN THE PRODUCTS OR SERVICES (AND AS TO SERVICES, INCLUDING BUT NOT LIMITED TO, ANY SUPPLIES, COMPONENTS, PRODUCTS OR DEVICES UTILIZED OR FURNISHED AS PART OF THE SERVICES). IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR

ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER, ARISING OUT OF OR RELATING TO THE SALE WHICH IS THE SUBJECT OF THIS INVOICE FORM, INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER, EVEN IF K-MAX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES. K-MAX SHALL NOT BE LIABLE FOR ANY DAMAGES CLAIMED BY CUSTOMER OR ANY OTHER PERSON OR ENTITY WHETHER BASED IN CONTRACT OR IN TORT. THIS PARAGRAPH SHALL SURVIVE FAILURE OF THE EXCLUSIVE REMEDY.

C.   *Warranties by Affiliated Companies*:   In the event that this Customer order consists of a Product that is manufactured by, or a Service that is provided by, an affiliated company of K-MAX, K-MAX hereby assigns all of its right, title and interest in and to any written warranty made by such affiliated company for such Product or Service, effective upon the date of this invoice. Customer hereby accepts and agrees to be bound by the terms of any such warranty.   For the purposes of this provision, "affiliated company" shall mean any company which controls, is controlled by, or which is under common control with, K-MAX.

7.   RETURNED GOODS: Products may not be returned to K-MAX without prior authorization. K-MAX will charge a handling fee equal to the higher of: (i) ten percent (10%) of the price or (ii) $10.00, for each Product returned for credit. Products returned for credit must be returned within ten (10) days of delivery at Customer's sole cost and expense to K-MAX's Bloomfield, CT facility and must be accompanied by K-MAX's invoice number and the date of delivery. Credit for returned Products will be based on original invoice unit price and all returned Products will be subject to K-MAX Corporation's quality control acceptance. Products having an expired shelf life cure date are not returnable and all Products being returned must be of the same configuration as that published in the price listing in effect at the same time of return.

8.   EXPORT SALES:

A.   *Applicable Laws, Export Regulations*:   Customer shall comply with all applicable laws including the export regulations of the U.S. Department of Commerce and all other appropriate governmental authorities, as necessary, in connection with the export and/or re-export of Products (including the obtaining of a valid export license as appropriate prior to shipment).   In addition, Customer shall be responsible for complying with all regulations in connection with the importation of Products to the country of destination. Before shipment can be made Customer shall have a valid export license on file with K-MAX and will designate a reputable U.S. freight forwarder.

B.   *Foreign Corrupt Practices Act*:   Customer shall not undertake, permit to be undertaken, or cause, any activity which (i) is illegal under any applicable laws, decrees, rules, regulations or public policies, or (ii) would have the effect of causing K-MAX to suffer a tax penalty or be in violation of any United States or other applicable laws, decrees, rules, regulations, or public policies, including, but not limited to, the U.S. Foreign Corrupt Practices Act. Customer shall not, directly or indirectly, give, offer, or

# EXHIBIT C

