# EXHIBIT 2

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

INTERNATIONA L CONNECTORS INDUSTRY, LTD., Plaintiff,
v.
LITTON SYSTEMS, INC., WINCHESTER ELECTRONICS DIVISION, Defendant.

Civ. A. No. B-88-505 (JAC).

April 25, 1995.

David C. Pite, DiPietro, Gulliver & Wright, New Haven, CT, for plaintiff.

Donald D. Brown, Jr., Spiegel, Pergament & Brown, Poughkeepsie, NY, for defendant.

*RULING ON MOTION FOR SUMMARY JUDGMENT, REFERENCE TO A SPECIAL MASTER AND RULE 11 SANCTIONS*

JOSÉ A. CABRANES, Circuit Judge [FN*]:

*1 Pending before the court is the motion of defendant Litton Systems, Inc., Winchester Electronics Division, for summary judgment, for reference of its counterclaim to a special master, and for Rule 11 sanctions. For the reasons set forth below, summary judgment is granted in part and denied in part. Reference to a special master and an award of Rule 11 sanctions are denied.

BACKGROUND
*1. Facts*

This action arose from a contractual relationship between the parties. The plaintiff, International Connectors Industry, Ltd., ("ICI") is an Israeli corporation that was engaged in the business of manufacturing and selling connectors. The defendant, Litton Systems, Inc., Winchester Electronics Division ("Winchester"), a Delaware corporation with its principal place of business in Watertown, Connecticut, was engaged in the business of manufacturing connectors. On February 1, 1985, the parties entered into two written agreements. Under the first agreement, the "Winchester Electronics-Sales Representative Agreement" ("Sales Representative Agreement"), ICI was established as Winchester's sales agent in Israel for Winchester connectors. It was to receive sales commissions for all sales of Winchester products in Israel, regardless of whether ICI made the sale.

Under the second agreement, the "Authorized Distributor Agreement," ICI was provided with the exclusive right to distribute Winchester products in the Israeli market. In its capacity as distributor, ICI could purchase Winchester products for its own inventory, and it could offer these products for direct resale to customers in Israel.

The plaintiff's amended complaint alleges, in brief, that the defendant breached these agreements by, among other things, failing to fill orders; forwarding defective and non-conforming merchandise; refusing to accept return of non-conforming merchandise; misrepresenting that conforming goods would be forthcoming to replace non-conforming goods; failing to give proper credits for defective and undelivered merchandise; failing and refusing to sell products and machinery as agreed; and failing to remit contractual commissions.

The plaintiff alleges further that, on or about March 20, 1986, and March 27, 1986, the parties agreed that the defendant would sell the plaintiff various parts and tools to be utilized for assembling functions by ICI in Israel. The plaintiff alleges that it had begun an investment and expansion program in reliance on the consummation of these sales, and that the defendant subsequently refused to deliver the merchandise. The defendant denies ever having entered into any such agreements to supply the disputed items.

*2. Procedural History*

The plaintiff's original complaint, dated May 2, 1988, stated three counts. The first cause of action asserted breach of the two written agreements. The second cause of action asserted claims of breach of the alleged March 1986 agreements. The third cause of action asserted a claim for punitive damages. The defendant counterclaimed to recover for goods allegedly sold and delivered.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

Page 2

*2 On December 28, 1990, the plaintiff sought leave to amend its complaint. Over the objections of the defendant, this court on April 15, 1991, granted leave to amend. (Doc. #104.) The amended complaint states the following nine counts: (i) negligence; (ii) breach of contract; (iii) fraud; (iv) negligent misrepresentation; (v) breach of contract/failure to pay commission; (vi) tortious interference; (vii) breach of fiduciary duty; (viii) punitive damages; and (ix) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § § 42-110a to 110q ("CUTPA").

The defendant's first summary judgment motion, filed January 22, 1991, was denied by this court on August 26, 1991, on grounds that substantial issues of material fact existed, including issues regarding (i) whether defendant breached the written agreements; (ii) whether other agreements were made which were breached; and (iii) whether plaintiff's remedies were limited. (Doc. #132.)

The defendant filed a second summary judgment motion on September 18, 1993, and response and reply memoranda followed. In these memoranda, the defendant requested the imposition of Rule 11 sanctions against the plaintiff's principal director and the plaintiff's counsel. After reviewing the standard for summary judgment, this court will consider each of the defendant's contentions in turn, as well as the requests for reference to a special master and for sanctions.

DISCUSSION
*1. Standard for Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (Feinberg, C.J.), cert. denied, 480 U.S. 932 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Finally, "'mere conclusory allegations or denials'" in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)).

*2. Negligence, Negligent Misrepresentation, and Fraud*

*3 The defendant first argues that the plaintiff's claims of negligence, negligent misrepresentation and fraud are barred by the statutes of limitations in Connecticut. [FN2] The defendant argues that the negligence and fraud claims, which were raised for the first time in the December 1990 complaint, cannot "relate back" to the original complaint for statute of limitations purposes. The defendant contends that this result is dictated by Connecticut law, and that in this diversity case Connecticut law, rather than Rule 15(c) of the Federal Rules of Civil Procedure, governs whether an amendment to a complaint impermissibly oversteps the statute of limitations.

At the outset, it need be noted that the defendant raised the issue of a statute of limitations bar before, in the context of its opposition to the plaintiff's motion to amend the complaint. See Def.'s Aff. in Opp'n to Pl.'s Mot. for Leave to Amend the Compl., at ¶ 10 (filed Jan. 17, 1991, doc. #106.); Mem. of Law in Opp'n to Pl.'s Mot. for Leave to Amend Compl., at ¶ 9. (filed Jan. 17, 1991, doc. #106.). As the defendant introduces no change in the law or facts, the "law of the case" doctrine alone counsels that this court decline "to reopen what has been decided." See Wright v. Cayan, 817 F.2d 999, 1002 n.3 (2d Cir.), cert. denied, 484 U.S. 853 (1987).

Even without relying on that doctrine, however, this court concludes that the negligence, negligent misrepresentation and fraud counts do relate back to the original complaint and are not barred by the statute of limitations. First, contrary to the defendant's contentions, Connecticut law does not differ from Federal Rule 15(c) regarding whether an amendment to a complaint violates a statute of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

Page 3

limitations. See Sharp v. Mitchell, 209 Conn. 59, 72 (1988) ("our relation back doctrine 'is akin to rule 15(c)'") (citation omitted). Even if there were a conflict in which the state law were more restrictive than the federal rule, this court would generally adhere to the federal rule. See Contemporary Mission, Inc. v. New York Times, Co., 665 F. Supp. 248, 225 (S.D.N.Y. 1987) ("federal rule as to relation back applies even in a diversity case, since the question ... is properly a matter of practice and procedure"), aff'd, 842 F.2d 612 (2d Cir.), cert. denied, 488 U.S. 856 (1988); 6 Wright, Miller & Kane, Federal Practice and Procedure, § 1503, at 173 (1990) ( "application of the federal rule, regardless of a more restrictive state doctrine, is clearly indicated"). [FN3] Since Connecticut law is "akin" to the federal law regarding relation back, however, this court need not choose between them.

Rule 15(c)(2) provides that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As the Connecticut Supreme Court has recognized, this inquiry serves the objectives of statutes of limitations by ensuring that the original pleading gives adequate notice that a claim is being asserted based on some particular conduct, transaction or occurrence. Sharp, 209 Conn. at 72.

*4 In this case, the negligence, negligent misrepresentation and fraud counts stated in the amended complaint concern conduct explicitly at issue in the original complaint--namely, the defendant's behavior with regard to the written agreements, and representations the defendant purportedly made concerning the alleged March 1986 agreements. While the original complaint did not explicitly state counts of negligence, negligent misrepresentation and fraud, the defendant was on notice from the original complaint that claims were being asserted based on its conduct concerning those agreements and alleged agreements. Therefore, the amended pleading "relates back" to the date of the original complaint; the statute of limitations is no bar. See FDIC v. Bennett, 898 F.2d 477 (5th Cir. 1990) (discussing liberal application of Rule 15(c) and collecting cases); 6A Wright, supra, § 1497, at 94-95 ("The fact that an amendment changes the legal theory ... is of no consequence if the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading."). [FN4]

### 3. Failure to Pay Commissions

The defendant next contends that the plaintiff has put forth no proof to support the fifth count of its complaint, which contends that Winchester "refus [[[ed] to honor its agreement to pay commissions to ICI" pursuant to the written agreements. The defendant states that despite repeated interrogatories and verbal requests at depositions seeking documentation of unpaid commissions, the plaintiff has offered no specific evidence to support its allegations.

Exhibits to defendant's motions show that the defendant did make specific requests for relevant documents in interrogatories and requests for production, as well as at the deposition of Dan Zarmi, managing director of ICI. See Def.'s Reply Mem., Ex. R8, Ex. R9.

In response, the plaintiff refers the court to Zarmi's 1993 affidavit, which states that ICI has not received credits for all sales and that commissions are owed. Zarmi Aff., sworn to Oct. 1, 1993, at ¶ 49-50 ("1993 Zarmi Affidavit" or "1993 Zarmi Aff."). The 1993 Zarmi Affidavit refers to documents supposedly indicating unpaid commissions. 1993 Zarmi Aff., Ex. S. These documents appear to reflect the dollar value of orders placed by ICI salespersons. But, as the defendant points out, nowhere do these documents indicate that commissions went unpaid.

Taken alone, these documents would not overcome the defendant's summary judgment motion. The motion, however, is overcome by Zarmi's affidavit of March 1991. That document and its exhibits, submitted in response to the defendant's first summary judgment motion and incorporated by reference into Zarmi's second affidavit, detail at great length commissions that supposedly went unpaid. See Zarmi Aff. in Opp'n to Def.'s Mot. for Summ. J., sworn to March 4, 1991, Ex. 13, at 7-9 ("1991 Zarmi Affidavit" or "1991 Zarmi Aff."). The defendant offers no reason why the court should disregard those figures. The court concludes that the 1991 Zarmi Affidavit, with its exhibits, raises a genuine issue of material fact as to whether commissions went unpaid. Summary judgment on this count is denied.

### 4. Tortious Interference

*5 The defendant claims that the plaintiff has offered no facts in support of its claim that the defendant engaged in tortious interference with the plaintiff's

Case 3:01-cv-01746-AVC   Document 57-3   Filed 10/21/2004   Page 5 of 11

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

Page 4

business. To establish a claim under Connecticut law for tortious interference with business relations, a plaintiff must prove that the defendant "engaged in 'fraud, misrepresentation, intimidation, obstruction or molestation,' Skene v. Carayanis, 103 Conn. 708, 714 (1926), or that the defendant 'acted maliciously.' Jones v. O'Connell, 189 Conn. 648 (1983).'" McKeown Distrib., Inc. v. Gyp-Crete Corp., 618 F. Supp. 632, 644 (D. Conn. 1985). The plaintiff also must prove "actual loss" resulting from this conduct. Id. (quoting Busker v. United Illuminating Co., 156 Conn. 456, 461 (1968)).

Deposition testimony that the plaintiff contends raises a genuine issue of material fact as to the defendant's commission of tortious interference concerns a conversation between Yoel Mesika, a marketing manager who had purchased products from ICI, and Larry Barone, a customer service manager for Winchester. In this conversation, Barone allegedly told Mesika that he could not supply the order Mesika needed through ICI because of ICI's "financial problems," but that if Mesika placed the order directly with Winchester, it would be filled. See Def.'s Mem. of Law, Ex. LL.

While the defendant may be correct that these statements were not disparaging or malicious, and that Barone did not specifically tell Mesika not to place an order with ICI, the court must view these statements in the light most favorable to the plaintiff, the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. The court cannot conclude, as a matter of law, that this conduct did not constitute tortious interference with the plaintiff's business.

The plaintiff, however, nowhere puts forth proof on the second element of tortious interference--the actual loss suffered as a proximate result of this alleged tortious interference. See Goldman v. Feinberg, 130 Conn. 671, 675 (1944) ("[T]he tort is not complete unless there has been actual damage suffered."). The plaintiff offers no specific facts-- indeed, no facts at all-- indicating that were it not for Winchester's actions, the plaintiff would have profited from dealings with Mesika's company. The same shortcoming applies to the tortious interference alleged in paragraphs 55 and 56 of the 1993 Zarmi Affidavit. Finally, the plaintiff draws the court's attention to a letter written by a Winchester representative referring to "negative gossip" about ICI. See 1991 Zarmi Aff., Ex. W. The letter, however, in no way indicates that Winchester was responsible for this gossip. For these reasons, summary judgment in the defendant's favor is granted on the plaintiff's tortious interference claim.

### 5. Breach of Fiduciary Duty

In count seven of its complaint, the plaintiff claims that the defendant breached a fiduciary duty that it owed to the plaintiff. The defendant argues that this count must fail as a matter of law because there was no fiduciary relationship under Connecticut law between the parties.

*6 As the plaintiff points to no provision in the contracts that create fiduciary duties beyond those imposed by state law, the court must look to Connecticut law to determine whether the plaintiff states a claim for breach of fiduciary duty. See Broad v. Rockwell Int'l Corp., 642 F.2d 929, 958-59 (5th Cir.) (en banc) (where trust indenture does not create fiduciary obligations in addition to those imposed under state law, inquiry concerns applicable state law), cert. denied, 454 U.S. 965 (1981); cf. Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1083 (2d Cir. 1977) (affirming dismissal of breach of fiduciary duty count where bank had fulfilled its duties under indenture agreement).

Under Connecticut law, "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Dunham v. Dunham, 204 Conn. 303, 322 (1987).

The plaintiff contends it was "wholly dependent upon the defendant for its survival once it made the commitment to be its sole distributor and representative in ... Israel." Pl. Mem. of Law, at 18. Maybe so, but this fact in itself would not create a fiduciary duty on the part of the defendant. As the defendant points out, "[o]rdinarily, in a business transaction each party must look out for his own interests." Krupa v. Kelley, 245 A.2d 886, 889 (Conn. Cir. Ct. 1968). The plaintiff cites no authority to suggest that a sales agent or distributor arrangement creates extraordinary circumstances that would support a finding that the defendant had a fiduciary duty to represent the plaintiff's interests. Summary judgment on this count is granted.

### 6. CUTPA

The plaintiff claims that the defendant perpetrated an unfair trade practice against it, in violation of CUTPA, Conn. Gen. Stat. §§ 42-110a to 110q, which prohibits "unfair methods of competition and

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

Page 5

unfair or deceptive acts or practices in the conduct of any trade or commerce." § 42-110b(a). The statute defines "trade" and "commerce" as:

> the advertising, the sale or rent or lease, the offering for sale or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.

§ 42-110a(4). The defendant's main contention is that the last three words of this definition, "in this state," indicate that CUTPA was not meant to protect foreign corporations, such as the plaintiff. The defendant offers no authority for this position, nor does the court's research reveal any. Moreover, as the plaintiff points out, Winchester arguably offered for sale from this state to ICI things of value--namely, connectors and various other tools and parts.

The defendant further contends that the plaintiff's CUTPA claims are barred by the three-year statute of limitations [FN5] because, for reasons described in part 3 of this memorandum, *supra,* the CUTPA claim cannot "relate back" to the original complaint. The court rejects this argument for the same reasons set forth above. Summary judgment is denied on the plaintiff's CUTPA claim.

### 7. Consequential Damages

*7 The defendant contends that consequential damages, which the plaintiff seeks for the defendant's alleged breach of contract, are not recoverable. According to the defendant, the written agreements into which the parties entered, as well as the price quotation sheets utilized by the parties throughout their dealings, contained express limitations of liability for consequential damages. The plaintiff responds that genuine issues of material fact exist regarding whether it agreed to such a limitation of liability, and, if there was such an agreement, the scope of the limitation and whether any such limitation was unconscionable or otherwise unenforceable.

At the outset, it need be noted that this issue was litigated by the parties in connection with the defendant's first motion for summary judgment, and that that motion was denied. The "law of the case" doctrine again would counsel that this court decline "to reopen what has been decided." *See Wright* 817 F.2d at 1002 n.3. Upon a second full review of this issue, the court adheres to its initial decision but takes this opportunity to provide a fuller explanation.

Connecticut law provides that parties to a contract may limit their liability for consequential damages. Conn. Gen. Stat. § § 42a-2-719(3) provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The sales agreement between the parties provides as follows:

> *5. Term and Termination ....*
> C. Upon termination by either party for any reason, with or without just cause, [ICI] shall immediately cease all use of Litton trading names and trademarks, and shall return to Litton all copies of Litton drawings, technical manuals, sales brochures, price lists and other documents pertaining to the Products. Litton shall not be liable to [ICI] for compensation, reimbursement, indemnity or damages for loss of good will, loss of prospective commissions on anticipated sales, lost investments in connection with [ICI's] business, or any other type of consequential, incidental or special damage.

The defendant contends that this clause precludes consequential damages arising from the sales agreement. The plaintiff responds that the bulk of its claims for commissions in connection with the sales agreement arose before the defendant terminated the agreement. Since the provision begins "upon termination," the limitation does not apply, the plaintiff says. The defendant does not respond to this argument. The court concludes that there is at least a genuine issue of material fact regarding the parties' intent concerning the applicability of this provision to the sales preceding termination of the agreement.

The decision with respect to the distributor agreement is more complex. The defendant contends that its distributor agreement provided that all sales made by defendant to the plaintiff would be subject to the defendant's standard terms and conditions of sale, which include a limitation on liability for consequential damages. It contends further that each and every order made by the plaintiff was based on a price quotation form stating that the order was subject to these same terms and conditions. The defendant contends that the "GENERAL TERMS AND CONDITIONS" were listed on the back of the price quotation form and included a limitation on liability that provided:

> *8 13. LIMITATION OF LIABILITY: Seller shall not under any circumstances be liable for any general damages greater than the cost of the articles sold hereunder, or for any special, incidental or consequential damages whatsoever, whether arising from Seller's negligence, breach of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1995 WL 253089 (D.Conn.)  
**(Cite as: 1995 WL 253089 (D.Conn.))**

Page 6

contract, breach of expressed or implied warranty, any law giving rise to a claim of strict liability, or any other cause.

Finally, the defendant argues that this limitation on consequential damages is neither procedurally unconscionable (based on improprieties in the contract formation process), nor is it substantively unconscionable (the terms are not "overly harsh"). *See Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc.,* 31 Conn. App. 455, 464 & n.12 (1993).

The plaintiff offers several arguments in response. First, the plaintiff maintains that there is a disputed issue of fact as to whether the plaintiff agreed to the liability limitation. The plaintiff next contends that under the explicit terms of the above-quoted provision, the limitation applies only to "articles sold hereunder." Since the plaintiff's claims concern the defendant's *failure* to sell goods, this clause does not apply, the plaintiff contends. Third, the plaintiff argues that the clause "fails for its essential purpose" and that therefore the plaintiff may resort to all remedies under the Uniform Commercial Code, including consequential damages. Fourth, the plaintiff claims that material issues of fact exist as to whether the terms are unconscionable. Finally, the plaintiff contends that the clause does not protect the defendant from liability if it engaged in tortious or intentional actions. The court will consider these contentions in turn.

First, the court can find no genuine issue of material fact regarding whether the plaintiff assented to the liability limitation. To be sure, the distributor agreement itself does not appear to contain the statement of "General terms and sales conditions" that includes the liability limitation. Indeed, it states that the terms and conditions are attached to the document as "Schedule D," but the actual Schedule D is not attached to the agreement in the exhibit. *See* Def. Mem. of L., Ex. CC, at 9 (filed Sept. 18, 1993, doc. #175).

Nevertheless, the distributor agreement does state that all sales shall be subject to Winchester's standard terms and conditions. *Id.* at 8-9. The price quotation forms that the defendant submitted to the plaintiff for various orders contain these terms and conditions, including the liability limitation, on the back of the form. Language appearing on the front of the form references the existence of these terms on the back. It states: "THE RECEIPT OF ANY ORDERS RESULTING FROM THIS QUOTATION SHALL SIGNIFY ACCEPTANCE OF THE GENERAL TERMS AND CONDITIONS APPEARING ON THE REVERSE SIDE HEREOF." By affidavit, the defendant attests that these conditions were attached to "[e]ach and every one" of the standard form price quotations used by Winchester in its dealings in the 1980s. Def. Reply Mem. of L., Ex. 1, Barone Aff. (filed Oct. 19, 1993; doc. #183).

*9 The plaintiff argues that there is a factual question as to whether the defendant's price quotation forms contained general terms and conditions. It relies on the 1993 Zarmi Affidavit, which states "It is my recollection that the list of tooling which was set forth on a so-called Quotation did not include a reverse side [with the standard terms]." 1993 Zarmi Aff. at ¶ 28; *see also* ¶ 29. Exhibits to the 1993 Zarmi Affidavit include copies of price quotations with the reference on the front to the general terms and conditions on the back. Yet, no reverse side with the terms and conditions is included in the plaintiff's exhibit. *Id.,* Ex. G, H.

The court cannot treat Zarmi's recollection and the onesided exhibit as creating a genuine issue of fact as to whether the terms and conditions were attached to price quotations. The 1991 Zarmi Affidavit included as exhibits copies of precisely the same price quotation forms, and those exhibits *did* include the list of general terms and conditions, with the liability limitation. *See* 1991 Zarmi Aff., Ex. 6. The plaintiff offers no documentary evidence whatsoever to dispute the existence of these terms and conditions.

The plaintiff contends that the exhibits to the 1991 Zarmi Affidavit were mere copies of the defendant's exhibits, that they were not presented to this court as true and attested copies, and that Zarmi does not recollect seeing a list of terms and conditions. This contention is unconvincing. Where all the documentary evidence points to the existence of attached terms and conditions, the plaintiff must do more than claim a failure of recollection to overcome summary judgment. *See* Fed. R. Civ. P. 56(e) (plaintiff cannot simply rely on "mere allegations" but must set forth "specific facts" in opposition to properly supported summary judgment motion); *Quinn,* 613 F.2d at 445 (non-moving party "must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful").

In short, although the distributor agreement itself does not appear to contain the explicit liability limitation on which the defendant seeks to rely, that agreement does state that Winchester's standard terms

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

and conditions apply. The plaintiff has not provided any specific facts to cast doubt on the proposition that price quotation forms contained these terms, including the limitation on liability. The Connecticut Supreme Court has stated that when "there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties." Mongillo v. Commissioner of Transp., 214 Conn. 225, 229 (1990). All dealings under the distributor agreement involved the price quotation forms. Under these circumstances, no genuine issue of material fact exists as to the parties' intent regarding the availability of consequential damages for orders placed under the distributor agreement.

As there is no genuine issue of material fact as to whether the plaintiff entered into an agreement with a liability limitation, the next question is whether there is some factual dispute that calls into question whether the agreement applies on these facts to bar consequential damages.

*10 The plaintiff argues that because the liability clause states that it applies to "articles sold hereunder," it cannot reach instances where the defendant allegedly *failed* to sell goods to the plaintiff. The plaintiff offers no explanation, by law or fact, why the phrase should be read so narrowly. The court declines to read this phrase in such a way that would nullify the clause with regard to all sorts of workaday breaches in which a sale is not actually completed.

The plaintiff next contends that without consequential damages it will be without any remedy, and that therefore the clause limiting consequential damages "fails of its essential purpose." See Conn. Gen. Stat. § 42a-2-719(2). [FN6] The plaintiff, however, errs in applying the "essential purpose" inquiry to the consequential damages clause. The essential purpose inquiry concerns a limitation on standard contract remedies, such as a "repair or replacement warranty." Although courts have split on the issue, at least one federal decision in Connecticut has held that, in general, a consequential damages clause must be treated independently from any such limitation on standard remedies. See McKernan v. United Technologies Corp., 717 F. Supp. 60, 69-73 (D. Conn. 1989); see also Long Island Lighting Co. v. Transamerica Delaval, Inc., 646 F. Supp. 1442, 1458-59 (S.D.N.Y. 1986) ("if the plaintiff shows that the warranty to repair or replace has failed of its essential purpose, it may pursue other remedies available under the U.C.C.... but not necessarily consequential damages").

Some courts have held that if, because of changed circumstances, the remedy of repair or replacement leaves a party without an adequate remedy, then a separate consequential damages clause that is otherwise conscionable may become unconscionable and unenforceable. See Kearney & Trecker Corp. v. Master Engraving Co., 107 N.J. 584, 596, 599 (1987); McKernan, 717 F. Supp. at 69-73. In this case, however, the plaintiff does not argue that another clause in the contract limiting remedies, such as clause 12, has failed because of changed circumstances. The defendant contends--and the plaintiff does not dispute--that if the plaintiff established its claims, it could be entitled, among other things, to recover (i) the price of the goods in the case of breach of warranty, and (ii) the difference between the contract price and the cost of "cover" in the case of the defendant's non-delivery or failure otherwise to perform. The plaintiff's argument that without consequential damages it would have no remedy at all is unsubstantiated; the court cannot preclude enforcement of the clause prohibiting consequential damages on this basis.

The plaintiff next suggests that a factual issue exists as to whether the limitation of liability for consequential damages is unconscionable. The plaintiff, however, puts forth no specific facts to support such a finding. Where the parties are sophisticated business entities, and the plaintiff offers no facts to support its contention of unconscionability, the court can find no genuine issue of material fact to warrant a denial of summary judgment. See Emlee Equip. Leasing Corp., 31 Conn. App. at 464 ("Courts do not generally find contracts unconscionable where parties are businesspersons.").

*11 Finally, the plaintiff contends that the consequential damages provision must not be enforced if the defendant's actions were tortious or intentional. A variant of this argument finds support in the case law. See Long Island Lighting Co., 646 F. Supp. at 1458-59 ("A defendant may be estopped from asserting a contractual limitation of consequential damages if the defendant has acted in bad faith."); County Asphalt, Inc. v. Lewis Welding Engineering Corp., 323 F. Supp. 1300, 1308 (S.D.N.Y. 1970) (describing minimum performance by seller necessary to allow seller to assert exculpatory clause), aff'd, 444 F.2d 372, (2d Cir.), cert. denied, 404 U.S. 939 (1971). Because genuine issues of fact exist as to the defendant's performance and "good faith" therein, the court cannot now

Not Reported in F.Supp. Page 8
1995 WL 253089 (D.Conn.)
(Cite as: 1995 WL 253089 (D.Conn.))

conclude, as a matter of law, that the plaintiff's claim for consequential damages must fail. At trial, however, consequential damages stemming from dealings in connection with the distributor agreement will only be available upon a factual finding of bad faith.

In sum, with regard to liability arising from the sales agreement, genuine issues of material fact make summary judgment improper. However, with regard to conduct under the distributor agreement, consequential damages will not be recoverable unless the plaintiff can prove bad faith on the part of the defendant. Summary judgment with regard to consequential damages is denied.

*8. The Alleged March 1986 Agreements*

The defendant contends that the alleged agreements arising from the March 20, 1986, and March 27, 1986, price quotations are not enforceable contracts and that therefore the plaintiff cannot claim breach. This contention was rejected earlier by this court, and the court adheres to its denial of summary judgment regarding it.

The defendant contends that in response to two price quotations on the above dates, no "formal" order was placed by the plaintiff within the 30-day time period to which the price quotations were subject. While the plaintiff eventually did place a "formal" order, the defendant never agreed to sell all items in the original quotation, particularly items for socalled "IDC tooling," the defendant claims. The defendant relies on a clause in its "general terms and sales conditions" stating:
> 1. ACCEPTANCE OF ORDER. No purchase order shall be binding upon Seller unless and until accepted in writing by an authorized employee of Seller, or by performance....

The plaintiff claims that it submitted a verbal order in response to the March price quotations, to which the defendant agreed for all items, including the IDC tooling items. The plaintiff contends that the defendant breached its contract by subsequently failing to supply those items.

The plaintiff submits ample documentary evidence to raise a genuine issue of fact regarding the existence of the agreement. In his 1993 affidavit, Zarmi attests that he placed a verbal order. 1993 Zarmi Aff., at ¶ 30. As evidence of the defendant's acceptance, the plaintiff calls the court's attention to a fax sent to Zarmi from the defendant referring to a letter of credit for the purchase order. Def. Mem. of Law, Ex. OO. Plaintiff also notes a letter from the defendant's representative referring again to the credit line and stating "want to finalize this order." *Id.*, Ex. PP. A May 1986 letter from the plaintiff to defendant states: "You can continue with the order procedure and prepare to ship." *Id.*, Exhibit QQ. In a June 24, 1986, memo--three months after the date of the original price quotations--the defendant stated to the plaintiff: "I suggest that these items be cancelled from order." Def. Mem. of Law, Exhibit RR.

*12 The defendant insists that no formal purchase order was placed until July 1986, after the defendant indicated it would not supply the disputed items. The defendant, however, does not explain why the plaintiff's claimed verbal order was inadequate as a matter of law. The defendant also contends that its general terms and conditions specifically state that no purchase offer would be binding upon it in the absence of written acceptance or performance on its behalf. However, that provision was for the benefit of the defendant, and therefore the defendant could waive it orally or by conduct. *See Adam v. Consolini,* 135 Conn. 321, 324 (1949). This waiver rule is especially relevant in this case because the distributor agreement explicitly states that the defendant could waive the general terms and conditions of sales. *See* Distributor Agreement, ¶ 17. The documents submitted by both parties, and described above, raise a genuine issue of fact as to whether such a waiver occurred, *see Connecticut Nat'l Bank v. Douglas,* 221 Conn. 530, 545 (1992) (intention to waive rights ordinarily question of fact), and whether agreements were reached. Therefore, summary judgment on this issue is denied.

*9. The Counterclaim*

The defendant requests that its counterclaim for goods sold and delivered be referred to a special master, pursuant to Rule 53(a) of the Federal Rules of Civil Procedure. Rule 53(a) permits a district judge to appoint a "special master" where issues are too "complicated" for a jury, or, in non-jury matters, where some "exceptional circumstance" requires it or for computation of damages. [FN7] The plaintiff argues against such a reference because, among other things, the defendant's counterclaim is "intimately intertwined" with the plaintiff's claims and should be tried along with them.

Because the defendant's counterclaim is indeed so closely related to the plaintiff's claim, a reference to a special master would only duplicate efforts. It is therefore denied.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1995 WL 253089 (D.Conn.)  
**(Cite as: 1995 WL 253089 (D.Conn.))**

Page 9

*10. Rule 11 Sanctions*

The defendant has requested that the court impose sanctions under Rule 11 of the Federal Rules of Civil Procedure against Zarmi and the plaintiff's attorneys. The defendant alleges that the 1993 Zarmi Affidavit and memoranda submitted by counsel contain false statements, and that certain of the plaintiff's claims, such as tortious interference, breach of fiduciary duty, CUTPA, and its demand for consequential damages, are so lacking in factual and legal bases as to warrant the imposition of sanctions. The court disagrees. Although the court, by this ruling, has granted summary judgment on the claims of tortious interference and breach of fiduciary duty, these claims were not so unfounded as to warrant sanctions. And while the plaintiff's contentions about the existence--or lack thereof--of the statement of "general terms and conditions" on the back of the price quotations themselves do not create a disputed factual question regarding the availability of consequential damages, these contentions are not so patently baseless as to justify the imposition of sanctions. Rule 11 sanctions are denied.

SUMMARY

*13 The defendant's summary judgment motion is GRANTED in part, and DENIED in part.

1. Judgment is GRANTED in the defendant's favor on the plaintiff's tortious interference and breach of fiduciary duty counts.

2. Consequential damages arising from any proven breach of the distributor agreement will only be recoverable upon the plaintiff's proving at trial bad faith on part of the defendant.

3. In all other respects the defendant's motion for summary judgment on the plaintiff's claims is DENIED.

4. The defendant's motion for reference to a special master is DENIED.

5. The defendant's request for the imposition of Rule 11 sanctions is DENIED.

It is so ordered.

FN* Of the United States Court of Appeals for the Second Circuit, sitting by designation.

FN2. Specifically, with regard to actions to recover damages caused by negligence, the Connecticut statute of limitations provides:
No action to recover damages for injury to the person, or to real or personal property, caused by negligence ... shall be brought but *within two years* from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of ....
Conn. Gen. Stat. § 52-584.
Section 52-577 provides:
No action founded upon a tort shall be brought but *within three years* from the date of the act or omission complained of.
(Emphasis added.)

FN3. In cases where application of state law would work to save the claim, however, the state rule should be applied. *See* Fed. R. Civ. P. 15(c)(1) (1995) (amended 1991); *see also Advisory Committee Note* to the 1991 amendment to Rule 15.

FN4. The plaintiff argues further that its claims are not time-barred by reason of the defendant's "continuing tortious conduct." *See Shuster v. Buckley,* 5 Conn. App. 473, 478 (1985) (statute of limitations tolled when plaintiff alleges and presents facts "which reasonably support an inference of a continuing breach of duty by the defendant"). However, its memorandum in response to the defendant's summary judgment motion does not describe specific facts that explain the precise way in which the alleged torts "continued." Therefore, the court declines to rely on this argument for its denial of summary judgment on these counts.

FN5. *See supra* note 1.

FN6. Sec. 42a-2-719(2) provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."

FN7. Rule 53(b) of the Federal Rules of Civil Procedure provides:
A reference to a master shall be the

Not Reported in F.Supp.
1995 WL 253089 (D.Conn.)
**(Cite as: 1995 WL 253089 (D.Conn.))**

Page 10

exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Upon the consent of the parties, a magistrate judge may be designated to serve as a special master without regard to the provisions of this subdivision.

1995 WL 253089 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.