FILED

2004 DEC 17  A 10: 37

U.S. DISTRICT COURT
HARTFORD, CT.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>Defendants. | Case No. 301 CV 1746 (AVC)<br><br>December 17, 2004 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OPPOSING KAMAN'S OCTOBER 21, 2004 REPLY MEMORANDUM AND THE FACTS ASSERTED IN THE AFFIDAVIT OF G. ROGER WASSMUTH FILED CONTEMPORANEOUSLY THEREWITH**

By Motion dated October 29, 2004, Plaintiffs, Mountain West Helicopters, LLC ("Mountain West"), Long-Line Leasing, LLC ("Long-Line"), Helog AG ("Helog") and Heli-Air Zagel Lufttransport AG ("Heli-Air"), moved the court for an order striking the October 21, 2004-affidavit of G. Roger Wassmuth ("Wassmuth Affidavit") as untimely filed or, in the alternative, for an order granting Plaintiffs a reasonable time to file opposing affidavits and/or a memorandum of law opposing factual allegations made, for the first time on these cross-motions for summary judgment, both in the Wassmuth Affidavit and in Kaman's October 21, 2004-Reply Memorandum ("Reply Memorandum"). (Kaman attached the Wassmuth Affidavit as exhibit 1 to the Reply Memorandum).

On or about November 2, 2004, the court entered its order denying Plaintiffs' Motion to Strike, but granting Plaintiffs "up to and including November 30, 2004 to file opposing affidavits and/or memorandum of law." Thereafter, by order dated December 7, 2004, the court extended Plaintiffs' deadline to and including December 17, 2004. This memorandum and the affidavits of Bryan J. Burr and Wolfgang Zagel filed contemporaneously herewith, constitute Plaintiffs' opposing affidavits and/or memorandum of law.[1]

With no supporting affidavit of any kind and **for the first time on these cross-motions for summary judgment**, Kaman's Reply Memorandum argues "the [1997] helicopter sales agreements . . . provide that replacement parts for the helicopters [including, of course, the defective clutches] would be subject to 'Kaman's then standard terms and conditions' when purchased." Reply Memorandum at 5. In other words, Kaman now contends in 1997, when plaintiffs purchased their helicopters, plaintiffs and Kaman then agreed that approximately two years later (when plaintiffs would purchase the defective clutches), those purchases would be subject to "Kaman's then standard terms and conditions" including, as Kaman alleges, the limitations of liability Kaman now argues serve to limit Plaintiffs' remedies herein.

In support of the foregoing argument, Kaman's Reply Memorandum argues "the [1997] helicopter sales agreements . . . provide that replacement parts for the helicopters would be subject to 'Kaman's then standard terms and conditions' when purchased." *Id.*, citing Helog Sales Agreement Paragraph 16.1 (Exhibit D to Kaman's Local Rule 56(a)(1) Statement)

---

[1] In order to meet the current deadline, Plaintiffs have submitted the affidavit of Bryan J. Burr bearing an original signature and notarization although the pages of the affidavit (exclusive of the certificate of service) reflect the facsimile transmission of the same from counsel to Mr. Burr. Moreover, due to the difficulty of obtaining a notarized affidavit from a European witness, the affidavit of Wolfgang Zagel is presently available only with Mr. Zagel's facsimile signature and also (exclusive of the certificate of service) reflects the facsimile transmissions to and from Mr. Zagel. When the affidavits are available with notarized signatures and without facsimile notes, Plaintiffs will file them.

2

[and] Mountain West Sales Agreement Paragraph 10.1 (Exhibit B to Kaman's Local Rule 56(a)(1) Statement). Kaman quotes only six words from the helicopter sales agreements and it does that out of context. In full context the contract paragraphs read:

> 10.1 <u>Consignment of Parts.</u> During the Overhaul Period, Kaman will consign to Buyer its then standard cabinet of spare parts. Kaman will invoice Buyer for any parts that are used. Payment and other terms shall be in accordance with Kaman's then standard terms and conditions.

See Mountain West Sales Agreement Paragraph 10.1 (Exhibit B to Kaman's Local Rule 56(a)(1) Statement).

> 16.1 <u>Consignment of Parts.</u> Kaman will consign to Buyer a standard supply of spare parts (excluding the engine and major airframe component parts). Kaman will invoice Buyer for any parts that are used. Payment and other terms shall be in accordance with Kaman's then standard terms and conditions.

See Helog Sales Agreement Paragraph 16.1 (Exhibit D to Kaman's Local Rule 56(a)(1) Statement). Kaman's position that the foregoing language reflects the parties' agreement "that replacement parts for the helicopters would be subject to 'Kaman's then standard terms and conditions' when purchased," takes the foregoing contractual provisions entirely out of context. The Mountain West language applies to a "standard cabinet of spare parts . . . consigned to [Mountain West by Kaman] . . . [d]uring the Overhaul Period."[2] It clearly does not apply,

---

[2] Mountain West's purchase of the defective clutch occurred after the "Overhaul Period." Paragraph 5.4 of the Mountain West Aircraft Sale Agreement notes "For a period of two (2) years after the Delivery Date (the "Overhaul Period"), Kaman will pay the reasonable pro rata cost (which shall be determined in its discretion) of such overhauls of the Aircraft's major components (excluding the engine) as may be established by the FAA. . . ." Paragraph 3.1 of the same agreement notes "the Delivery Date will occur on or about May 23, 1997." Thus the "Overhaul Period" expired on or about May 23, 1999 and the "pick-ticket," now made famous by Kaman's Reply Memorandum, notes Mountain West purchased the defective clutch on or about October 1, 1999, i.e., nearly five months *after* the Overhaul Period had expired! The "standard cabinet of spare parts" Kaman consigned to Mountain West during the "Overhaul Period" and the terms and conditions of that consignment have nothing whatsoever to do with the terms and conditions of Mountain West's purchase of the defective clutch five months after the "Overhaul Period" ended.

3

despite Kaman's argument, to "replacement parts for the helicopters . . . when purchased [by Mountain West]" after the "Overhaul Period." The Wassmuth Affidavit makes no attempt to establish that the defective clutch that caused the Mountain West crash was, in fact, part of the "standard cabinet of spare parts . . . consigned to [Mountain West by Kaman] . . . [d]uring the Overhaul Period." It makes no attempt to do so because that plainly was not the case.

Although the "Overhaul Period" is not part of paragraph 16.1 of the Helog Aircraft Installment Sale Agreement, the concept of a "consignment" of parts to Helog, just as Kaman consigned parts to Mountain West, is very much a part of the Helog agreement as reflected in the titles of paragraph 10.1 of the Mountain West Agreement and 16.1 of the Helog Agreement. Again, neither the Wassmuth Affidavit nor any other form of evidence establishes that the defective clutch that caused the Helog crash was, in fact, part of the "standard supply of spare parts (excluding the engine and major airframe component parts)" supplied by Kaman to Helog at the time of entering the Helog Aircraft Installment Sale Agreement. It makes no attempt to do so because, as with the Mountain West clutch, that plainly was not the case.

The terms and conditions applicable to the "standard supply" or "standard cabinet" of spare parts consigned by Kaman to Plaintiffs in 1997, do not apply to Kaman's sales and Plaintiffs' purchases, in 1999, of the defective clutches. Plaintiffs thus ask the court to reject, as a matter of law, Kaman's argument that in the 1997 Aircraft Sales Agreements Kaman and the Plaintiffs agreed "that replacement parts for the helicopters would be subject to 'Kaman's then standard terms and conditions' when purchased."

The Wassmuth Affidavit purports to establish, **for the first time on these cross-motions for summary judgment**, that: (1) Mr. Wassmuth's June 21, 1999-letter contains "the terms and conditions of sale" governing Kaman's sale and Helog's purchase of the defective Helog clutch; and (2) A "pick-ticket" attached as exhibit C to Mr. Wassmuth's affidavit

4

establishes "the terms and conditions of sale" governing Kaman's sale and Mountain West's purchase of the defective Mountain West clutch.

As noted in paragraph nine of the December 17, 2004-Affidavit of Bryan J. Burr ("Burr Affidavit") filed contemporaneously herewith, the "pick ticket" contains no "signature of any authorized representative of Mountain West for the purpose of reflecting Mountain West's 'agreement' or assent to those terms and conditions." Moreover, as noted in paragraph eight of the Burr Affidavit, the limitation of liability language Kaman relies upon "purports to limit the liability of "K-Max" whereas the claims [Mountain West] assert[s] herein are against Kaman Aerospace Corporation."

As noted in paragraph ten of the December 17, 2004 Affidavit of Wolfgang Zagel ("Zagel Affidavit") filed contemporaneously herewith, Mr. Wassmuth's June 21, 1999-letter is signed, on behalf of Helog, by Jurg Wyss who "in June 1999, served as Helog's 'Technical Director' or 'Director of Maintenance.' Mr. Wyss has never served as an officer or director of Helog and has never held authority to bind Helog to contractual agreements." Moreover, as noted in paragraph nine of the Zagel Affidavit, the limitation of liability language Kaman relies upon also "purports to limit the liability of "K-Max" whereas the claims [Helog] assert[s] herein are against Kaman Aerospace Corporation."

Plaintiffs acknowledge that assent to the terms of an agreement can be manifested other than by an authorized signature. Under Connecticut law "parties may become bound by the terms of a contract, even though they do not sign it, *where their assent is otherwise indicated. . . .*" *Schwarzschild v. Martin*, 191 Conn. 316, 321-322, 464 A.2d 774 (1983). Here Kaman offers no signature from Mountain West, an unauthorized signature from Helog and no other evidence of Plaintiffs' manifestation of assent to the limited liability agreement Kaman now relies upon. Plaintiffs respectfully submit there is, at the very least, a question of

5

fact whether the limited liability agreement Kaman relies upon was ever agreed to. For the foregoing reasons and those cited in their prior memoranda, Plaintiffs continue to seek the court's order denying Kaman's Motion for Summary Judgment, on the damages' issues, and granting Plaintiffs' Motion for the same.

DATED: December 16, 2004.

The Law Offices of Robert S. Young, L.C.

_____
Robert S. Young (ct 21935)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax (801) 359-7233
rsyav8rlaw@hotmail.com

## CERTIFICATE OF SERVICE

I certify that on December _16_, 2004, I caused to be filed with the court and served upon the individuals identified below, in the manner stated, the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OPPOSING KAMAN'S OCTOBER 21, 2004 REPLY MEMORANDUM AND THE FACTS ASSERTED IN THE AFFIDAVIT OF G. ROGER WASSMUTH FILED CONTEMPORANEOUSLY THEREWITH.

The original, via overnight courier, all expenses prepaid, to "be filed with the court within a reasonable time after service," as outlined in Rule 5(d) Fed.R.Civ.P., addressed to:

> Clerk of the Court
> 450 Main Street
> Hartford, CT 06103

True and correct copies via first class mail, postage prepaid addressed to:

Timothy A. Diemand, Esq.
Aaron Singer, Esq.
WIGGIN & DANA
One City Place
185 Asylum Street
Hartford, CT 06103-3402

Tim Bishop, Esq.
BISHOP & JACKSON
80 Ferry Blvd.
Stratford, CT 06615

_/s/ Robert S. Young_

C:\Documents and Settings\Robert S. Young\My Documents\My Files\Mt. West v. Kaman\Memo Opposing Wassmuth Affidavit.D16.wpd

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>Defendants. | Case No. 301 CV 1746 (AVC)<br><br>December 17, 2004 |

**AFFIDAVIT OF BRYAN J. BURR OPPOSING KAMAN'S OCTOBER 21, 2004 REPLY MEMORANDUM, ON THE MOTION FOR PARTIAL SUMMARY JUDGMENT, AND THE AFFIDAVIT OF G. ROGER WASSMUTH FILED THEREWITH**

STATE OF UTAH      )
                   : ss.
COUNTY OF UTAH     )

BRYAN J. BURR, being first duly sworn upon oath, deposes and says:

1. I am a resident of Utah County, State of Utah and, if called to testify in this proceeding, would competently testify as outlined below.

2. My family and/or I own Mountain West Helicopters, LLC ("Mountain West") and Long-Line Leasing, LLC ("Long-Line").

3. Mountain West and Long-Line are Utah Limited Liability Companies now having a place of business in Alpine, Utah.

4. I have reviewed the October 21, 2004 affidavit of G. Roger Wassmuth filed, in this proceeding, with Kaman's Reply Memorandum in connection with the pending cross-motions for partial summary judgment.

5. Regarding the defective clutch that is the subject of this litigation, paragraph 7 of Mr. Wassmuth's affidavit contends that Exhibit C attached thereto "is a true and accurate copy of the 'pick ticket' documenting the sale of the clutch to Mountain West. The pick ticket states that the transaction is subject to Kaman's standard 'terms and conditions of sale.'"

6. Paragraph 8 of the same affidavit contends that "[b]efore the clutch was sold to Mountain West in October of 1999, Kaman provided Mountain West with its 1999 Commercial Price List. (Citations omitted). As noted above, the 1999 Commercial Price List contains Kaman's standard terms and conditions of sale for replacement parts (including the limitation of liability provision quoted above)."

7. The language of "the limitation of liability provision quoted above" is found in paragraph 5 of Mr. Wassmuth's affidavit and reads:

> EXCLUSIVE REMEDY: LIMITATIONS OF LIABILITY .... IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER ... INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER....

8. Notably the foregoing language purports to limit the liability of "K-Max" whereas the claims we assert herein are against Kaman Aerospace Corporation.

9. Of greater importance to our claims herein is the failure of the "pick ticket" to include a signature of any authorized representative of Mountain West for the purpose of reflecting Mountain West's "agreement" to those terms and conditions.

2

10. I reiterate, as stated in previous affidavits, it is my present recollection that no Kaman representative ever asked me, or, to the best of my knowledge, anyone else at my company, to agree to the terms and conditions of the warranty provisions, exclusions and/or limitations contained in the 1999 Kaman parts catalog as a condition of selling us the clutch.

11. Moreover, I have no present recollection of agreeing to the warranty provisions, exclusions and/or limitations contained in the 1999 Kaman parts catalog, as a condition of purchasing the clutch from Kaman.

12. Furthermore, it is my present recollection that no Kaman representative ever asked me, or, to the best of my knowledge, anyone else at my company, to agree to the terms and conditions of the 1999 Commercial Price List, or any other document, as a condition of selling us the clutch and I have no present recollection that I or anyone else at my company agreed to the terms and conditions of the 1999 Commercial Price List, or any other document, as a condition of purchasing the clutch from Kaman.

13. And finally, I am aware of no written documents outlining the terms and conditions governing Kaman's sale and our purchase of the Clutch in 1999.

DATED: December 16, 2004.

_____
Bryan J. Burr

SUBSCRIBED AND SWORN TO before me this 16 day of December 2004.

_____
NOTARY PUBLIC

My Commission Expires: 7/29/08    Residing At: 113 S. Main
                                                Alpine UT 84004

JANICE DENNISON
NOTARY PUBLIC • STATE of UTAH
113 S. MAIN STREET
ALPINE, UTAH 84004
COMM. EXPIRES 7-29-2008

3

## Certificate of Service

I certify that on December 16, 2004, I caused to be filed with the court and served upon the individuals identified below, in the manner identified, the foregoing AFFIDAVIT OF BRYAN J. BURR OPPOSING KAMAN'S OCTOBER 21, 2004 REPLY MEMORANDUM, ON THE MOTION FOR PARTIAL SUMMARY JUDGMENT, AND THE AFFIDAVIT OF G. ROGER WASSMUTH FILED THEREWITH.

The original, via overnight courier, all expenses prepaid, to "be filed with the court within a reasonable time after service," as contemplated by Rule 5(d) Fed.R.Civ.P., addressed to:

> Clerk of the Court
> 450 Main Street
> Hartford, CT 06103

And one copy each, via first class mail, postage prepaid addressed to:

Tim Bishop, Esq.
BISHOP & JACKSON
80 Ferry Blvd.
Stratford, CT 06615

Timothy A. Diemand, Esq.
Aaron Singer, Esq.
WIGGIN & DANA
One City Place
185 Asylum Street
Hartford, CT 06103-3402

_/s/ Robert S. Young_

C:\Documents and Settings\Robert S. Young\My Documents\My Files\Mt. West v. Kaman\Memo Opposing Kaman's Cross-MSJ re Damages AFF BJB.D14.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>Defendants. | Case No. 301 CV 1746 (AVC)<br><br>December 17, 2004 |

**AFFIDAVIT OF WOLFGANG ZAGEL OPPOSING THE OCTOBER 21, 2004 REPLY MEMORANDUM, ON KAMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND THE AFFIDAVIT OF G. ROGER WASSMUTH FILED THEREWITH**

HAMMERAU, GERMANY

WOLFGANG ZAGEL, being first duly sworn upon oath, deposes and says:

1.  I reside in Hammerau, Germany and, if called to testify in this proceeding, would competently testify as outlined below.

2.  My family and/or I are shareholders in Heli-Air Zagel Lufttransport AG ("Heli-Air") which operated the helicopter owned by Helog AG ("Helog").

3.  Heli-Air is a German corporation having places of business in Hersbruck and Hammerau, Germany and Helog is a Swiss corporation having a place of business in Küssnacht, Switzerland and Salzburg, Austria.

4.  I presently serve as the Chief Executive Officer ("CEO") of Helog.

5.  I have reviewed the October 21, 2004 affidavit of G. Roger Wassmuth filed, in this proceeding, with Kaman's Reply Memorandum in connection with the pending cross-motions for partial summary judgment.

6.  Regarding the defective clutch that is the subject of this litigation, paragraph 4 of Mr. Wassmuth's affidavit contends that Exhibit A attached thereto "is a true and accurate copy of [Mr. Wassmuth's] June 21, 1999 letter (including Schedule A) to Helog, wherein Helog acknowledged that the replacement transmission assembly was subject to Kaman's 'terms and conditions of sale, a copy of which [Helog had] received as part of the Kaman 1999 Commercial Price List.' This letter is countersigned by Helog's representative Jurg Wyss."

7.  Paragraph 5 of the same affidavit contends that Exhibit B attached to Mr. Wassmuth's affidavit "is a copy of the portion of Kaman's 1999 Commercial Price List containing the standard terms and conditions governing the sale of the replacement transmission assembly to Helog. Section 6 contains a limitation of liability provision. . . ."

8.  The language of the limitation of liability provision reads:

EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY . . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

9.  Notably the foregoing language purports to limit the liability of "K-Max" whereas the claims we assert herein are against Kaman Aerospace Corporation.

10.  Of greater importance to our claims herein is the failure of Mr. Wassmuth's letter to contain a signature of any authorized representative of Helog for the purpose of reflecting Helog's "agreement" to the terms and conditions specified.

2

11. Jurg Wyss, in June 1999, served as Helog's "Technical Director" or "Director of Maintenance." Mr. Wyss has never served as an officer or director of Helog and has never held authority to bind Helog to contractual agreements.

12. I reiterate, as stated in previous affidavits, it is my present recollection that no Kaman representative ever asked me, or, to the best of my knowledge, any other authorized representative of my company, to agree to the terms and conditions contained in the 1999 Kaman parts catalog as a condition of selling us the clutch.

13. Moreover, I have no present recollection that I or, to the best of my knowledge, any other authorized representative of my company agreed to the terms and conditions of the 1999 Kaman parts catalog, as a condition of purchasing the clutch from Kaman.

14. Furthermore, it is my recollection that no Kaman representative ever asked me, or, to the best of my knowledge, any other authorized representative of my company, to agree to the terms and conditions of the 1999 Commercial Price List, or any other document, as a condition of selling us the clutch and I have no present recollection that I or any other authorized representative of my company agreed to the terms and conditions of the 1999 Commercial Price List, or any other document, upon purchasing the clutch from Kaman.

15. And finally, I am aware of no written documents outlining the terms and conditions governing Kaman's sale and our purchase of the Clutch in 1999.

DATED: December _15_, 2004.

_____
Wolfgang Zagel

SUBSCRIBED AND SWORN TO before me this _15_ day of December 2004.

_____
NOTARY PUBLIC

My Commission Expires:         Residing At:

3

## CERTIFICATE OF SERVICE

I certify that on December 16, 2004, I caused to be filed with the court and served upon the individuals identified below, in the manner identified, the foregoing AFFIDAVIT OF WOLFGANG ZAGEL OPPOSING THE OCTOBER 21, 2004 REPLY MEMORANDUM, ON KAMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND THE AFFIDAVIT OF G. ROGER WASSMUTH FILED THEREWITH.

The original, via overnight courier, all expenses prepaid, to "be filed with the court within a reasonable time after service," as contemplated by Rule 5(d) Fed.R.Civ.P., addressed to:

>   Clerk of the Court
>   450 Main Street
>   Hartford, CT  06103

And one copy each, via first class mail, postage prepaid addressed to:

| | |
|---|---|
| Tim Bishop, Esq.<br>BISHOP & JACKSON<br>80 Ferry Blvd.<br>Stratford, CT  06615 | Timothy A. Diemand, Esq.<br>Aaron Singer, Esq.<br>WIGGIN & DANA<br>One City Place<br>185 Asylum Street<br>Hartford, CT  06103-3402 |

_/s/ Robert S. Young_

C:\Documents and Settings\Robert S. Young\My Documents\My Files\Mt. West v. Kaman\Memo Opposing Kaman's Cross-MSJ re Damages-AFF WZ D14.wpd

4