UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,: 
LONG-LINE LEASING, LLC, :
HELOG AG and HELI-AIR ZAGEL :
LUFTTRANSPORT AG, :
: 
        Plaintiffs, :
:
vs. :
:   CASE NO. 3:01-CV-1746 (AVC)
KAMAN AEROSPACE CORPORATION :
and JOHN DOES I THROUGH V, :   August 12, 2005
:
Defendants. :

## KAMAN'S OPPOSITION TO PLAINTIFFS' JULY 30 MOTION SEEKING CONSOLIDATION AND RECONSIDERATION

    Defendant Kaman Aerospace Corporation ("Kaman") objects to plaintiffs' recent attempt to derail this case. Trying the damages phase of this case before embarking on expensive liability discovery and a protracted trial is as sensible now as it was a year ago when plaintiffs and Kaman asked the Court to first resolve the damage issues in this case. Plaintiffs' desire to reverse course neither promotes judicial economy nor settlement prospects. Plaintiffs' motion should be seen for what it is – a desperate attempt to put off the day the Court hears plaintiffs' weak damage case. Kaman therefore respectfully asks the Court to deny plaintiffs' motion and reschedule the trial. In addition, plaintiffs' belated request for the Court to "reconsider" its ruling on plaintiffs' subrogation arguments is improper, contrary to well-established law, and should be rejected.

    Finally, despite ordering plaintiffs' counsel to delete all references to matters discussed during the confidential settlement conference, plaintiffs' counsel persists in

relaying (incorrectly and out of context) matters discussed at the conference. Kaman strongly objects to plaintiffs' continuing breach of the confidential nature of the settlement conference. Kaman also takes issue with the allegations that it was not acting in good faith during the conference or that it was trying to "railroad" plaintiffs in light of the upcoming trial on damages. This case is almost four years old and there is no excuse for plaintiffs not being ready to try their damages case. If the Court believes it necessary, Kaman would welcome the Court discussing with Judge Martinez what really was said during the settlement conference.

I.  **This Case Should Proceed As The Court Ordered And As The Parties Agreed.**

Over a year ago, the parties asked that the case proceed in a reverse bifurcated manner. As the parties represented to the Court, a trial on liability would be "expensive and protracted" and could be obviated by resolving the issue of what damages plaintiffs could recover in this action. See June 23, 2004 Joint Motion for Scheduling Order. The Court agreed and ordered that the case move forward just on the issue of damages. See July 1, 2004 Order. In accordance with the July 1 Order, the parties conducted discovery limited to damage issues and filed cross-motions for summary judgment.

On April 7, 2005, the Court issued its ruling on the cross-motions for summary judgment. The Court ruled that plaintiffs have only two viable claims – a "tort" claim under the Connecticut Product Liability Act ("CPLA") and a "contract" claim for breach of warranty. April 7, 2005 Ruling at 11-12, 15. The Court held that under the CPLA, plaintiffs cannot recover any of the economic damages they seek – thereby limiting plaintiffs' tort recovery to uninsured helicopter property damage (i.e., the insurance deductibles). Id. at 14.

2

On plaintiffs' contract/warranty claim, the Court found that the original helicopter sales purchase agreements between plaintiffs and Kaman disclaim any liability for the "indirect, incidental, [or] consequential" economic damages plaintiffs seek, and found also that Kaman's 1999 parts catalog similarly disclaims liability for such economic damages. Id. at 16. However, because plaintiffs claimed to have no "present recollection" of the warranty terms governing the clutches at issue in this case, the Court found that summary judgment in Kaman's favor on the contract/warranty claim was not appropriate. Id. at 16-17.

In the upcoming trial, for plaintiffs to potentially recover anything more than their insurance deductibles, they must prove that Kaman's limited warranties do not apply to the replacement clutches. Plaintiffs will also need to establish the amount of their claimed damages. These damage issues were to be resolved in the 2-3 day bench trial that was scheduled for June 13, 2005. This trial was postponed due to a Court scheduling conflict.[1]

Resolution of the damages case will determine whether plaintiffs' maximum potential recovery is the insurance deductibles (a few hundred thousand dollars) or millions in economic damages. If, as Kaman believes, plaintiffs' maximum recovery is limited to the insurance deductibles, both parties should know this now.

---

[1] It should be noted that, before the originally scheduled damage trial, plaintiffs never asked to consolidate liability and damages for trial. It was only after the settlement conference, at which time plaintiffs presumably realized how weak their damage case really was, that they asked the Court to alter the manner in which this case has been proceeding.

Plaintiffs should want to know whether it is worth investing the time, effort and resources in prosecuting a case involving two separate helicopter accidents (one in Idaho and one in Austria) if the potential payout is small. Why, for example, would plaintiffs want to incur the expense of retaining experts, taking numerous depositions here and in Europe, and reviewing and analyzing thousands of pages of technical data related to the clutches if they only can recover their insurance deductibles? On the flip side, Kaman should know now the potential exposure it faces and whether resources are better spent resolving the case or mounting a liability defense.

The reason for trying the damages phase of this case before addressing liability remains as strong today as when the parties jointly proposed reverse bifurcation a year ago. Plaintiffs offer no compelling reason why the parties and the Court should undergo the expense and time associated with discovery and trial of liability related to two separate accidents, when the damages issue can be tried to the Court without delay. Finally, as this case is almost four years old and it has been six years since the accidents at issue, it is not credible for plaintiffs to claim that they are not ready to put on their damages case or that they have yet to sort out the "proof" for their damages. The time has come for plaintiffs to put on their damages case.

Kaman therefore respectfully asks that the damages trial be rescheduled and proposes the following schedule:

(1) Damage trial during the week of October 17 or 24, 2005. If these weeks in October are not good for the Court or plaintiffs, Kaman can provide available dates in November or December. However, given how long this matter has been outstanding, Kaman respectfully asks that the damage trial take place before the end of the year.

(2) Plaintiffs to submit a pretrial memorandum thirty (30) days before trial. The original deadline for compliance with the Court's Pretrial Order was May 25, 2005. Plaintiffs did not provide information for a joint submission. Kaman therefore filed its own pretrial memorandum on May 25. Kaman believes that a joint submission to the Court would be useful and is willing to prepare a joint pretrial memorandum if plaintiffs will provide the information necessary. At a minimum, plaintiffs should be ordered to provide the Court and Kaman with the information required in the pretrial memorandum thirty (30) days before the trial.

(3) Plaintiffs to produce all outstanding documents by September 1, 2005. As the Court may recall, plaintiffs' failed to produce any documents for more than five months after the discovery deadline. Kaman was forced to file a motion to compel, and on February 11, 2005, the Court granted Kaman's motion to compel. The Court ordered plaintiffs to produce all documents by February 22, 2005 and further ordered plaintiffs to pay Kaman's costs and attorneys' fees incurred in making the motion. During the depositions of plaintiffs taken on June 13 and 14, plaintiffs admitted that, despite document requests served almost one year ago, and despite the Court's order compelling production, large volumes of documents still have not been produced. See, e.g., Deposition of B. Ruckli at 136-137 (plaintiffs counsel "stipulated" that a number of responsive documents exist and have not been produced) (**Exh. A**); Deposition of B. Burr at 104-105 (plaintiff admitted that he only provided "a partial response" and provided only "some of the documents" supporting plaintiffs' damage claim) (**Exh. B**).

II.  **Plaintiffs' Motion for Reconsideration is Untimely and Unfounded.**

The Court correctly rejected plaintiffs' attempt to recover from Kaman amounts plaintiffs already received from their insurers. After the accidents, plaintiffs submitted claims to their insurance carriers. Helog's insurer reimbursed Helog $2,591,908 for the loss of the helicopter. Mountain West's insurer paid $1,030,000 to repair the Mountain West helicopter. Plaintiffs' insurance carriers brought subrogation actions against Kaman to recover the insurance proceeds paid in connection with the accidents and these subrogation actions were settled. In this case, plaintiffs sought to recover the "difference" between the amount their insurers paid them and the amount their insurers accepted from Kaman to settle the hull claims. The Court concluded that plaintiffs' assignment of their hull claims to their insurers and bedrock principles of subrogation law barred plaintiffs from seeking this double recovery. April 7 Ruling at 18-26.

Unhappy with this ruling, plaintiffs now seek reconsideration. However, pursuant to Local Rule 7(c), motions to reconsider must be made within ***ten days*** of the ruling at issue. Plaintiffs' request for reconsideration – filed many months after the Court's April 7 Ruling – should be rejected on this basis alone.

If the Court considers plaintiffs' untimely motion, there simply is no basis for overturning the Court's ruling. Plaintiffs' persist in their misunderstanding of the doctrine of subrogation, correctly applied by the Court in its summary judgment ruling. Contrary to plaintiffs' assertion, the Court broke no new ground. As a matter of black letter law, the insurer who pays a claim stands in the shoes of its insured and can recover from the third party purportedly responsible for the loss the amounts the insurer paid out. See, e.g., Wasko v. Manella, 269 Conn. 527, 535 (2004). When plaintiffs' insurers paid

plaintiffs more than $3.5 million, the insurers became, by operation of law, entitled to stand in plaintiffs' shoes and recover from Kaman the insurance proceeds paid out. Despite the zeal of plaintiffs' argument, the Court correctly held that plaintiffs cannot now "take back" the claims the insurers already asserted (and settled) against Kaman.

## CONCLUSION

For the forgoing reasons, Kaman respectfully requests that the plaintiffs' motion be denied in its entirety and that the damage trial be rescheduled in the near future.

**DEFENDANT
KAMAN AEROSPACE CORPORATION**

By: _____
Timothy A. Diemand (ct 18075)
Aaron D. Singer (ct 25515)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail tdiemand@wiggin.com
          asinger@wiggin.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent by first class mail this 12th day of August, 2005, to:

Robert S. Young, Esq.
Law Offices of Robert S. Young
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand

\14658\2\541128.2

# EXHIBIT A

Case 3:01-cv-01746-AVC     Document 93     Filed 08/12/2005     Page 9 of 16

Page 1



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------)
WEST HELICOPTERS, LLC,        )
ET AL.                        )
          Plaintiff(s),       )
VS                            ) Civil Action No.
                              ) 3:01-CV-1746
                              )     (AVC)
KAMAN AEROSPACE CORPORATION,  )
ET AL.                        )
          Defendant(s).       )
------------------------------)
```

```
DEPOSITION Of: BEAT RUCKLI
DATE:          June 13, 2006
HELD AT:       Wiggin & Dana
               CityPlace I
                 Hartford, Connecticut
```

Reporter: JENNY C. EBNER, RPR, LSR 00030.
BRANDON SMITH REPORTING SERVICES, LLC
44 Capitol Avenue
Hartford, CT. 06106
(860) 549-1850

Brandon Smith Reporting Service
44 Capitol Avenue         Six Landmark Square, 4th Floor
Hartford, CT 06106            Stamford, CT 06901
(860) 549-1850                 (203) 316-8591
(800) 852-4589                 (800) 852-4589

Page 136

1    were selling the helicopter to Rotex in January
2    of this year; is that correct?
3        A    (Interpreter)  Correct.
4        Q    Okay.
5             MR. DIEMAND:  What I would like to
6    do, Rob is maybe take a five-minute
7    break, and I think I am done, and check
8    with my colleague and see if I have any
9    followup.  Okay?
10            MR. YOUNG:  Okay.
11            VIDEOGRAPHER:  Going off record.
12   Time is 5:01.
13
14            (Whereupon, a recess was taken from
15   5:01 o'clock p.m. until 5:15 o'clock
16   p.m.)
17            VIDEOGRAPHER:   Back on record.
18   Time is 5:15.
19            MR. DIEMAND:  All set?
20            MR. YOUNG:  Go ahead.
21            MR. DIEMAND:  I think I am through
22   with my questions.  I just want to make
23   a few notes for the record, Rob.
24            I ask this deposition remain open
25   for several reasons.

1   One, during today's deposition there
2   were a lot of documents that were
3   discussed that have not been produced to
4   us in the past, that you identified,
5   that may provide some answers we were
6   looking for.
7       MR. YOUNG: Tim, Let me state we
8   will stipulate to that.
9       MR. DIEMAND: That's fine. I also
10  want to make clear for the record these
11  are documents we requested a year ago,
12  documents subject to a court order
13  compelling production, and a court order
14  issuing sanctions against Helog and
15  Heli-Air for failure to produce the
16  documents, and we will preserve our
17  rights to again go to the court and
18  again ask for sanctions for failure to
19  having produced these documents in a
20  timely fashion.
21      Further, I would also note for the
22  record the complete failure to search
23  for and/or produce any documents subject
24  to the deposition notices that were
25  issued for the 30(b)(6) depositions.

# EXHIBIT B

Page 1

COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
----------------------------)
WEST HELICOPTERS, LLC,      )
ET AL.                      )
           Plaintiff(s),    )
VS                          ) Civil Action No.
                            ) 3:01-CV-1746
                            )     (AVC)
KAMAN AEROSPACE CORPORATION,)
ET AL.                      )
           Defendant(s).    )
----------------------------)
```

DEPOSITION Of: BRYAN BURR
DATE:          June 14, 2006
HELD AT:       Wiggin & Dana
               CityPlace I
               Hartford, Connecticut

Reporter: JENNY C. EBNER, RPR, LSR 00030.
BRANDON SMITH REPORTING SERVICES, LLC
44 Capitol Avenue
Hartford, CT. 06106
(860) 549-1850

Brandon Smith Reporting Service
44 Capitol Avenue          Six Landmark Square, 4th Floor
Hartford, CT 06106              Stamford, CT 06901
(860) 549-1850                    (203) 316-8591
(800) 852-4589                    (800) 852-4589

Page 104

1    documents supporting the damage figure claimed in

2    response to interrogatory one."

3           Do you believe you have produced all

4    documents supporting those damage figures?

5        A    Well, let me go to interrogatory one

6    here.

7               MR. YOUNG: I will object only on

8           the basis of my prior statement, and

9           request a continuing stipulation to the

10          extent that your questions follow that

11          same train of thought.

12              MR. SINGER: Understood.

13              THE WITNESS: Well, again, I think

14          what Rob says is that we wanted to put

15          together an idea of what our damages

16          were, fully knowing that we would have

17          to document them and be able to support

18          them when it came time for that.

19              That's why I have my notes in my

20          file, to give me a road map to follow

21          when that time comes. And I don't think

22          today is actually that day.

23              Although, it wouldn't take a lot of

24          effort to produce any of the documents

25          that would be needed to substantiate.

Page 105

```
 1   BY MR. SINGER:
 2       Q   Okay.  But you acknowledge that the
 3   supporting documents to date have not been
 4   produced?
 5       A   Documents that I think we have produced
 6   have been produced within that booklet.
 7       Q   Okay.
 8       A   Some of them have good substantiations.
 9   Other of them are concepts that would require a
10   more in-depth evaluation of salaries and number
11   of days somebody worked, and you know, what did
12   they get when they were laid off and all that.
13   So --
14       Q   Okay.  So I take it your response would
15   be the same?
16       A   It would be a partial response.  We've
17   supplied some of the documents.  Others could
18   still be provided if we get to that point.
19       Q   Okay.  Are you aware of -- can you give
20   me an indication of what categories of damages
21   you believe you have supporting documents that
22   have not been produced?
23       A   That have not been produced?
24       Q   Yes.
25       A   I believe that -- are we going refer to
```