## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:    
LONG-LINE LEASING, LLC,     :
HELOG AG and HELI-AIR ZAGEL     :
LUFTTRANSPORT AG,     :
    :
            Plaintiffs,     :
    :
vs.     :
    :     CASE NO. 3:01-CV-1746 (AVC)
KAMAN AEROSPACE CORPORATION     :
and JOHN DOES I THROUGH V,     :     MARCH 24, 2006
    :
Defendants.     :

## KAMAN AEROSPACE CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Timothy A. Diemand (ct 18075)
Aaron Singer (ct 25515)
Wiggin and Dana, LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail tdiemand@wiggin.com
       asinger@wiggin.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ........................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ........................................................................... 3

STATEMENT OF UNDISPUTED FACTS ........................................................................ 4

ARGUMENT.................................................................................................................... 8

I.      Plaintiffs Purchased the Replacement Clutches Pursuant to Kaman's
        Standard Terms and Conditions, Which Disclaim Any Liability
        for Economic Losses.................................................................................................. 8

II.     The Course of Dealing Between Plaintiffs and Kaman Demonstrates
        a Shared Understanding That Liability For Economic Damages
        Was Excluded ............................................................................................................12

III.    In the Commercial Helicopter Industry, Exclusions of Implied
        Warranties and Disclaimers of Economic Damages Are Customary ........................15

CONCLUSION.................................................................................................................17

\14658\2\584831.1

i

## TABLE OF AUTHORITIES

### Cases

A. Belanger & Sons, Inc. v. U.S., 275 F.2d 372 (1st Cir. 1960) ...................................... 10

Atlanta Specialty Food Dist. v. Watkins Leasing, Inc., Civ. A. No. C81-1341A, 1983 WL
    141711 (N.D. Ga. April 11, 1983) ................................................................................. 11

Clark Construction Group, Inc. v. Allglass Sys., Inc., No. Civ. A. DKC2002-1590, 2004
    WL 1778862 (D. Md. Aug. 6, 2004) ............................................................................ 11

Country Clubs, Inc. v. Allis-Chambers Manuf., 430 F.2d 1394 (6th Cir. 1970) .............. 13

Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170 (S.D.N.Y. 1989) ............. 10

Hunter v. Texas Instruments, Inc., 798 F.2d 299 (8th Cir. 1986) ..................................... 10

Kearney & Trecker Corp. v. Master Engraving Co., 107 N.J. 584, 527 A.2d 429 (N.J.
    1987) ............................................................................................................................. 16

Keeneland Assoc. v. Eamer, 830 F. Supp. 974, 984 (E.D. Ky. 1993) ............................... 11

Kincheloe v. Geldmeier, 619 S.W.2d 272 (Tex. Civ. App. 1981) ...................................... 15

LWT, Inc. v. Childers, 19 F.3d 539, 541 (10th Cir. 1994) ................................................ 10

Mack Financial Corp. v. Crossley, 209 Conn. 163, 550 A.2d 303 (1988) ........................ 9

McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341 (8th Cir. 1985), cert.
    denied, 106 S.Ct. 347 (1985) ........................................................................................ 9

Mercanti v. Persson, 160 Conn. 468, 280 A.2d 137, 141 (1971) ...................................... 15

New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 564
    A.2d 919 (1989) ............................................................................................................ 9

Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164 (D. Conn.
    1984) ............................................................................................................................. 13

Suzy Phillips Originals, Inc. v. Coville, Inc., 939 F. Supp. 1012 (E.D.N.Y. 1996), aff'd,
    125 F.3d 845 (2d Cir. 1997) ......................................................................................... 9

Western Industries, Inc. v. Newcor Canada Ltd., 739 F. 2d 1198 (7th Cir. 1984) ........... 15

## Statutes

Conn. Gen. Stat. § 42a-2-719(3) ........................................................................................ 8
Conn. Gen. Stat. § 42a-1-205(1) ...................................................................................... 12
Conn. Gen. Stat. § 42a-1-205(2) ...................................................................................... 15
Conn. Gen. Stat. § 42a-2-316(c) ................................................................................. 2, 15
Conn. Gen. Stat. 42a-2-316(3)(c) .................................................................................... 12

## INTRODUCTION

As the Court is aware, this lawsuit centers around separate accidents involving two Kaman helicopters. Plaintiffs (owners and operators of helicopters used in commercial logging operations) each purchased a helicopter from Kaman (the "Helog Helicopter" and the "Mountain West Helicopter").[1] Both helicopters were involved in accidents that Plaintiffs claim were caused by the failure of a clutch assembly replaced shortly before the accidents. Plaintiffs' hull losses were covered by insurance. In this action, Plaintiffs seek to recover their insurance deductibles and the incidental and consequential economic losses allegedly suffered as a result of the accidents.

The parties have completed discovery and Kaman has stipulated that it will not contest liability. Therefore, only three issues remain: (1) whether Plaintiffs are barred from recovering economic damages; (2) if Plaintiffs' economic damages are recoverable, whether the damages were proximately caused by the accidents; and (3) the amount of the damages.

Discovery has made clear that there is no genuine issue of material fact on the threshold (and now dispositive) question of whether Plaintiffs can recover economic damages. The documents and testimony show Plaintiffs purchased the clutches at issue pursuant to Kaman's standard terms and conditions contained in Kaman's invoices and price catalog – terms and conditions which clearly and unambiguously preclude recovery of any "indirect, incidental [or] consequential" economic damages. And as the Court

---

[1] Kaman refers to plaintiffs Helog AG and Heli-Air Zagel Luftransport AG collectively as "Helog" and refers to plaintiffs Mountain West Helicopters, LLC and Long-Line Leasing, LLC collectively as "Mountain West."

already held: "Pursuant to Connecticut's version of the UCC, parties can contractually agree to exclude recovery of consequential damages." April 7, 2005 Ruling at 15.

Kaman's express disclaimer of all implied warranties and exclusion of liability for any economic damages are dispositive and warrant summary judgment in Kaman's favor. Moreover, the parties' course of dealing and the custom in the commercial helicopter industry demonstrate a shared understanding that Plaintiffs cannot recover economic damages from Kaman if a part malfunctions and causes an accident. Warranties may be limited and recovery for economic losses may be excluded not only by express contract language (as here), but also through "course of dealing or course of performance or usage of trade." Conn. Gen. Stat. 42a-2-316(c). For years, Plaintiffs purchased helicopters and parts from Kaman and the documentation and testimony regarding the parties' relationship shows that Kaman always disclaimed any implied warranty or liability for economic damages. This course of dealing was not unique. As Kaman's industry expert (Peter Parsinen) explained, in his thirty-plus years of experience with several helicopter companies and hundreds of operators, implied warranties were always disclaimed and recovery of economic damages was always precluded. Plaintiffs (both sophisticated commercial helicopter operators) cannot seriously claim that they had any expectation that they could recover economic damages in the event a part malfunctioned. Summary judgment in Kaman's favor is therefore also warranted based on the parties' course of dealings and custom in the industry.

2

## RELEVANT PROCEDURAL HISTORY

On April 7, 2005, the Court issued a ruling on the parties' cross-motions for summary judgment on the issue of damages (the "April 7 Ruling").[2] As the Court held, Plaintiffs have only two viable claims – a "tort" claim under the Connecticut Product Liability Act ("CPLA") and a "contract" claim for breach of warranty. April 7 Ruling at 11-12, 15. The Court held that under the CPLA, Plaintiffs cannot recover any of the economic damages they seek – thereby limiting Plaintiffs' tort recovery to uninsured property damage to the helicopters (i.e., the insurance deductibles). Id. at 14.

Regarding Plaintiffs' breach of warranty claims, the Court further found that the original helicopter sales purchase agreements between Plaintiffs and Kaman disclaim any liability for the "indirect, incidental, [or] consequential" economic damages Plaintiffs seek. April 7 Ruling at 16. The Court also found that Kaman's 1999 parts catalog (which sets forth the terms and conditions governing the sale of replacement parts, such as the clutches at issue in this case) similarly disclaims liability for such economic damages. Id. However, because Plaintiffs asserted they had no "present recollection" of the warranty terms governing the clutches, the Court found that summary judgment in Kaman's favor on the warranty claim was not appropriate at that time. Id. at 17.[3]

---

[2] In an effort to narrow the issues in dispute early in the case, the cross-motions for summary judgment were made before depositions were taken and before paper discovery was complete.

[3] In its April 7 Ruling, the Court also held that Plaintiffs may not seek to recover amounts previously recovered from their insurers on their hull claims, as these claims were subrogated to their insurers. April 7 Ruling at 18-26.

## STATEMENT OF UNDISPUTED FACTS

### Helog

Beat Ruckli, CEO of Helog AG and President of Heli-Air Zagel Luftransport AG, testified as Helog's Rule 30(b)(6) corporate representative as follows:

(1)     At the time of the accident, Jurg Wyss, the head of Helog's technical service department, and Thomas Gugg, Mr. Wyss' assistant and eventual successor, were responsible for ordering parts from Kaman for the Helog Helicopter.  Mr. Wyss and Mr. Gugg were also responsible for dealing with warranty issues.  Local Rule 56(a)(1) Statement at ¶ 1.

(2)     Mr. Gugg faxed an order form to Kaman on June 11, 1999 requesting a replacement transmission assembly.  Id. at ¶ 2 and Ex. B.

(3)     The replacement transmission assembly ordered by Helog contained the clutch at issue in this case.  Local Rule 56(a)(1) Statement at ¶ 3.

(4)     In connection with the purchase of the replacement transmission, Mr. Wyss countersigned a letter from Kaman dated June 21, 1999, confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you have received as part of the Kaman 1999 Commercial Price List."  Id. at ¶ 4 and Ex. C.

(5)     Mr. Ruckli described and then identified the Kaman 1999 Commercial Price List, containing Kaman's standard terms and conditions, and confirmed that Helog used the Commercial Price List to order parts in 1999.  Local Rule 56(a)(1) Statement at ¶ 5 and Ex. D.

4

(6)    The 1999 Kaman Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for the sale of replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

**EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY . . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .**

Local Rule 56(a)(1) Statement at ¶ 6 and Ex. D at 14.[4]

(7)    Helog paid for the transmission assembly.  Local Rule 56(a)(1) Statement at ¶ 7.

(8)    Other than the component exchange letters (Ex. C) and Kaman's Commercial Price List (Ex. D), Mr. Ruckli testified that Helog is aware of no documents providing different terms governing the purchase of the transmission assembly containing the clutch at issue.  Id. at ¶8.

(9)    Both before and after the accident, Helog purchased numerous parts from Kaman and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages if a part malfunctions.  Id. at ¶ 9 and Exs. E, F, and G.

---

[4] As Roger Wassmuth testified, K-Max Corporation was a subsidiary of Kaman Aerospace Corporation responsible for the K-Max 1200 helicopter program.  Local Rule 56(a)(1) Statement at ¶ 21.  As Mr. Wassmuth's deposition was taken on March 21, 2006, a final transcript is not yet available.  Kaman will supplement its Local Rule 56(a)(1) statement with the final transcript when it becomes available.

(10)    Mr. Ruckli confirmed that aside from repairing or replacing a broken part that was under warranty, Kaman provided no other remedies when a part malfunctioned. Local Rule 56(a)(1) Statement at ¶ 10.

### Mountain West

Bryan Burr, managing member of Long-Line Leasing, LLC, a company organized to acquire and own assets that would then be leased to its operating company, Mountain West Helicopters, LLC, testified as follows:

(1)    On August 5, 1999, Mr. Burr ordered a replacement transmission assembly, containing a free-wheeling sprag clutch (but not the clutch in the Mountain West Helicopter at the time of the accident) and countersigned a letter from Kaman confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you have received as part of the Kaman 1999 Commercial Price List." Id. at ¶ 11 and Ex. I.

(2)    Mr. Burr confirmed that Mountain West received a copy of Kaman's 1999 Commercial Price List and that he had an opportunity to review it. Local Rule 56(a)(1) Statement at ¶12.

(3)    The Kaman 1999 Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for the sale of replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

**EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY . . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY**

6

**DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .**

Local Rule 56(a)(1) Statement at ¶ 13 and Ex. D at 14.

(4)    After installing the new transmission, Mountain West purchased the clutch at issue in this action and installed it in the Mountain West Helicopter, on or about September 24, 1999.  Local Rule 56(a)(1) Statement at ¶ 14.

(5)    Mr. Burr received from Kaman an invoice for the clutch at issue, and the invoice, after a credit adjustment and issuance of a new invoice, was paid.  Id. at ¶ 15 and Exs. J and K.

(6)    The front of the invoices state that the sale of the clutch is governed by the terms on the reverse side of the invoice, "including all disclaimers of warranties."  Local Rule 56(a)(1) Statement at ¶15 and Exs. J and K.

(7)    The reverse of the invoices repeats verbatim the terms and conditions of sale contained in the 1999 Commercial Price List, including the disclaimer for any liability for economic losses in the event a part fails:

**EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .**

Local Rule 56(a)(1) Statement at ¶ 17 and Ex. M.[5]

(8)    Both before and after the accident, Mountain West purchased hundreds

other parts from Kaman and each sale was governed by Kaman's standard terms and

conditions – including an express disclaimer of any liability for economic damages if a

part malfunctions.  Local Rule 56(a)(1) Statement at ¶ 18 (Mountain West purchased

"hundreds" of Kaman parts over the course of a typical year, in a typical amount of

between $300,000 and $600,000) and Ex. M.

(9)    Mr. Burr confirmed that at no point has Kaman ever compensated

Mountain West for expenses incurred or profits lost during a period when a helicopter

was out of operation for a warranty repair.  Local Rule 56(a)(1) Statement at ¶ 19.

## ARGUMENT

**I.     Plaintiffs Purchased the Replacement Clutches Pursuant to Kaman's
Standard Terms and Conditions, Which Disclaim Any Liability for
Economic Losses.**

As detailed above, there can be no dispute that the replacement clutches are

subject to the provisions in Kaman's 1999 parts catalog and invoices – which clearly

disclaim any liability for the economic damages Plaintiffs seek.  These provisions are

unremarkable, and plainly enforceable.  Connecticut law permits contracting parties to

limit their liabilities and remedies.  Section 42a-2-719(3) of Connecticut's version of the

UCC makes clear, "[c]onsequential damages may be limited or excluded unless the

limitation or exclusion is unconscionable."  And as the Connecticut Supreme Court has

explained, "[c]ommercial contracting parties have considerable freedom to determine the

---

[5] Exhibit M consists of representative samples of invoices sent from Kaman to Mountain
West in 1999 as kept by Mr. Burr.  Mountain West did not produce the original invoice
for the clutch at issue in this case (only a copy without the reverse side).  See Local Rule
56(a)(1) Statement Exs. J and K.

8

remedial rights that will ensue upon breach . . . [and] [a]bsent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made." Mack Financial Corp. v. Crossley, 209 Conn. 163, 550 A.2d 303, 305 (1988).

Courts have no difficulty enforcing liability limitation provisions similar to the provisions in Kaman's price catalog and invoices. For example, in New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 564 A.2d 919 (1989), the buyer of a turbine generator brought suit against the seller for the recovery of lost profits and the cost of purchasing replacement energy when the generator was down for repairs. Id. at 539-44. The sales agreement contained language that limited the seller's liability, which language was incorporated by reference into subsequent maintenance agreements. Id. at 541-43. The Pennsylvania Supreme Court upheld the lower court's granting of summary judgment in favor of the engine manufacturer, holding that "contractual provisions limiting warranties, establishing repair or replacement as the exclusive remedy for breach of warranty and excluding liability for special, indirect and consequential damages in a commercial setting are generally valid and enforceable." Id. at 548.

Similarly in McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 348 (8th Cir. 1985), cert. denied, 106 S.Ct. 347 (1985) consequential damages sought by purchaser of military aircraft parts were precluded because the provision in the agreement for the supply of the aircraft parts limited seller's liability to repair or replacement of defective parts and specifically excluded liability for consequential damages. See also Suzy Phillips Originals, Inc. v. Coville, Inc., 939 F. Supp. 1012, 1017-1020 (E.D.N.Y. 1996), aff'd, 125 F.3d 845 (2d Cir. 1997) (granting summary judgment in favor of

defendant and finding that contract governing sale of fabric that contained clause precluding the recovery of consequential and incidental damages bars plaintiff's claim for lost profits); Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170 (S.D.N.Y. 1989) (granting summary judgment for helicopter manufacturer, under Connecticut law, where sales agreement contained limited warranty provision and excluded liability for economic damages), Hunter v. Texas Instruments, Inc., 798 F.2d 299 (8th Cir. 1986) (upholding limited warranty provisions and exclusion of liability for economic damages set out on reverse side of dealer's purchase order, where language on front of form directed reader to the terms on the reverse side).

Moreover, Kaman's terms and conditions of sale, including its exclusion of implied warranties and disclaimer of liability for consequential losses, are conspicuously contained in its parts catalog, which both plaintiffs acknowledged having received and having had an opportunity to review prior to their purchases of the replacement clutches at issue, (Local Rule 56(a) Statement at ¶¶ 5 and 12), and those terms thus form the basis of the purchase and sale of replacement parts. See, e.g., LWT, Inc. v. Childers, 19 F.3d 539, 541 (10th Cir. 1994) ("A limited warranty contained in a manufacturer's catalog may be considered part of the basis of the parties' bargain, so long as the purchaser received the catalog and had an opportunity to read the warranty, prior to or at the time of the sale. Defendant need not establish that the plaintiff had actual knowledge of the limited warranty" (internal citations omitted)), A. Belanger & Sons, Inc. v. U.S., 275 F.2d 372 (1st Cir. 1960) (upholding district court's finding that warranty disclaimer in price catalog formed part of the parties' agreement, and reviewed cases: "The principle expressed in the above cases as determining whether or not the conditions set forth in the

catalog are incorporated into the contract is whether or not it appears obvious from the catalog that the buyer's attention is drawn to the terms announced and that the terms apply to the purchase the buyer proposed to make"). See also Clark Construction Group, Inc. v. Allglass Sys., Inc., No. Civ. A. DKC2002-1590, 2004 WL 1778862 at *13 (D. Md. Aug. 6, 2004) (Ex. 1 hereto) (granting summary judgment to manufacturer where proposal referenced "[Manufacturer's] Standard Warranty and Terms and Conditions of Sale included in [Manufacturer's] current product and price catalogs" – buyer's purchase orders constituted a confirmation of its acceptance of these terms); Keeneland Assoc. v. Eamer, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (granting summary judgment for seller because terms of auction catalog, including disclaimer of all implied warranties, formed basis of parties' agreement); Atlanta Specialty Food Dist. v. Watkins Leasing, Inc., Civ. A. No. C81-1341A, 1983 WL 141711 (N.D. Ga. April 11, 1983) (Ex. 2 hereto) (finding repair and replacement warranty and disclaimer of liability for economic damages part of contract where buyer "reviewed and relied on" a specifications sheet stating: "Warranty: Complete unit warranted for 1 year parts and labor; see warranty details and limitations listed in Form No. M-4330 (7-78)," even though buyer did not receive limited warranty details until it received the units one year after ordering them).

Here, there is no dispute that Plaintiffs received, had an opportunity to review, and in fact actively used Kaman's 1999 Commercial Price List containing the warranty and remedy provisions. See Local Rule 56(a)(1) Statement at ¶¶ 5, 12, 22 and Ex. D at 13-20. In addition, both plaintiffs routinely purchased parts and returned parts to Kaman for warranty repairs pursuant to the Terms and Conditions contained in the Price List. Local Rule 56(a)(1) Statement at ¶¶ 4, 11 and 18 and Exs. C, E, F, G, I and M. Indeed,

11

just days before ordering the replacement clutch at issue, Bryan Burr received a letter from Kaman reminding him that losses incurred as a result of the helicopter being out of service were not covered by Kaman's warranty. Local Rule 56(a)(1) Statement at ¶ 20 and Exs. O and P.

With no evidence suggesting that the replacement clutches were purchased under terms different than those set forth in Kaman's price catalog and invoices, there is no basis for departing from the express terms governing the sale of the clutches – and these provisions preclude Plaintiffs' recovery of economic damages in this case.

## II. The Course of Dealing Between Plaintiffs and Kaman Demonstrates a Shared Understanding That Liability For Economic Damages Was Excluded.

Implied warranties may be excluded not only by express contract language (as here), but also through "course of dealing or course of performance or usage of trade." Conn. Gen. Stat. 42a-2-316(3)(c). A course of dealing is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Conn. Gen. Stat. § 42a-1-205(1). Having conducted numerous transactions on Kaman's forms containing its standard terms and conditions – all expressly excluding any implied warranties or liability for economic losses – Plaintiffs cannot now claim that they purchased the replacement clutches on different terms.

Mountain West and Helog were long-standing Kaman customers, who collectively purchased several helicopters and scores of replacement parts from Kaman. Helicopters, by nature, require frequent maintenance and replacement parts, and Plaintiffs maintained a continuous relationship with Kaman after they purchased their helicopters. This course of dealing establishes Plaintiffs' understanding that Kaman would not be

12

liable for economic losses Plaintiffs might incur should their helicopters be out of service during, for example, a warranty repair. See, e.g. Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164 (D. Conn. 1984) (based on prior transactions buyer was aware of seller's warranty terms and knew that they excluded implied warranties); Country Clubs, Inc. v. Allis-Chambers Manuf., 430 F.2d 1394 (6th Cir. 1970) (rejecting buyer's claim that "he did not read that portion of the order form which incorporated by reference the warranty limitations set out in the dealership agreement" and finding implied warranties excluded by course of dealing).

Both the documents and Plaintiffs' deposition testimony reveal Plaintiffs' knowledge and acceptance of Kaman's standard terms and conditions governing replacement parts; especially the exclusion of economic losses. For example:

(1)    Bryan Burr testified that Kaman never compensated him for lost profits or other expenses incurred during helicopter downtime. Local Rule 56(a)(1) Statement at ¶ 19. See also id. at Exs. O and P.

(2)    Beat Ruckli similarly acknowledged that before the purchase of the clutch at issue, there were times when a Kaman helicopter was grounded for warranty service, and Kaman never compensated Helog for any losses associated with the downtime. Id. at ¶ 10.

(3)    Before the accidents at issue, both Mountain West and Helog countersigned a number of letter agreements related to the purchase of parts and each letter stated "[t]his exchange is subject to K-Max Corporation's terms and conditions of sale, a copy of which you have received as part of the Kaman . . . Commercial Price List." Id. at Exs. C, F, G and I.

(4)    Kaman's Commercial Price List (which Plaintiffs received each year)[6] contains express and conspicuous language, in bold and in all capitals, excluding liability for economic damages and the price lists were delivered to Kaman's customers each year. See Local Rule 56(a)(1) Statement at ¶¶ 6, 13 and Ex. D at 13-15.

(5)    The invoices accompanying parts purchased from Kaman also set forth Kaman's standard warranty terms and clearly state that Kaman will not be liable for any economic losses in the event a part malfunctions.  See, e.g., Local Rule 56(a)(1) Statement Exs. E, J, K and M.

(6)    As the Court noted in the April 7 Ruling (at 16), "[i]t is undisputed that the original helicopter purchase agreements between the logging companies and Kaman disclaim liability for any 'indirect, incidental [or] consequential' damages.'"

As a matter of common sense, there is simply no rational basis for Plaintiffs to claim that they purchased multi-million dollar helicopters from Kaman under contracts expressly disclaiming all implied warranties and precluding the recovery of economic damages yet, on the other hand, argue that they subsequently purchased replacement clutches with no such limitations.  Plaintiffs' central assertion lacks any real-world credibility and is belied by the parties' course of dealing.  Summary judgment in Kaman's favor is therefore warranted.

---

[6] See Local Rule 56(a)(1) Statement at ¶ 22.

**III.    In the Commercial Helicopter Industry, Exclusions of Implied Warranties and Disclaimers of Economic Damages Are Customary.**

Under Connecticut law, implied warranties may also be excluded or modified by trade practice and usage. Conn. Gen. Stat. § 42a-2-316(c). "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." Conn. Gen. Stat. § 42a-1-205(2). See Mercanti v. Persson, 160 Conn. 468, 475, 280 A.2d 137, 141 ("It is clear that if it was the custom or usage of the boat building trade for the boat owner to assume the responsibility for insuring work in progress against risk of loss by fire, the risk of loss would be on the plaintiff in the absence of any inconsistent terms of the agreement . . . ."). See also Western Industries, Inc. v. Newcor Canada Ltd., 739 F. 2d 1198, 1203 (7th Cir. 1984) (Posner, J) (reversing district court's exclusion of proffered witnesses, as they "were experienced executives in the trade, and the existence of an alleged custom was a matter they would infer from their own observations and experience, since each had negotiated many sale contracts such as the one in issue in this case."); Kincheloe v. Geldmeier, 619 S.W.2d 272 (Tex. Civ. App. 1981) (held that testimony by witness, who had owned a cattle auction for thirteen years, that a buyer at a cattle auction buys livestock "as is" was sufficient to support finding that the implied warranty of merchantability was excluded or modified by such "usage of trade" where such practice is fully accepted by auction buyers).

There can be no doubt that implied warranties and liability for economic losses are customarily excluded from agreements governing the sale of helicopter spare parts. As the report of Kaman's industry expert Peter Parsinen (a thirty year veteran in the

commercial helicopter industry who has held high level sales, marketing, customer support, and management positions)[7] explains, it is commonly understood in the industry that helicopter spare parts warranties are limited to repair and replacement and he has never seen a helicopter spare parts agreement that would permit the recovery of economic damages. Local Rule 56(a)(1) Statement at ¶ 23 and Ex. Q at 1-2. Helicopters, by nature, require constant maintenance and replacement parts and "[i]t would make no economic sense for a helicopter manufacturer to subject itself to the potential of unknowable losses for loss of profits a customer may incur while its aircraft is being serviced, for example, or millions of dollars of potential losses upon the failure of a replacement part." Local Rule 56(a)(1) Statement Ex. Q at 2. As courts recognize:

> As a general matter, consequential damages exclusions are hands down the most significant limitation of liability in a contract for the sale of goods. Potential liability for consequential damages in commercial contexts, usually in the form of the buyer's lost profits from the use or resale of the goods in its business, is enormous in comparison to the contract price of the goods. On the other hand, the general or direct damages that a buyer may suffer upon a seller's breach are finite and can be gauged at a maximum amount either in terms of the contract price or market price of the goods to be sold. Potential consequential losses are a much different proposition. They can exceed, and most likely will exceed, the value of the goods by an unknown quantum, depending not so much on the actions and machinations of the seller as on the individual operating structure of the buyer and on the buyer's contracts and relationships with third parties.

Kearney & Trecker Corp. v. Master Engraving Co., 107 N.J. 584, 592, 527 A.2d 429, 433

---

[7] Mr. Parsinen has held various management positions rising to senior vice president at Bell Helicopters Textron and president of Enstrom Helicopter Company. His responsibilities included, among other things and most relevant to this matter, contract administration, customer and product support, procurement, worldwide sales and marketing and program management. Mr. Parsinen also is currently on the Board of Directors of Helicopter Association International ("HAI"), the leading worldwide helicopter trade organization. Local Rule 56(a)(1) Statement at ¶ 23 and Ex. Q at Ex. 1.

(N.J. 1987).

Mr. Parsinen examined Kaman's standard terms and conditions in Kaman's price catalogs and invoices and found them to be entirely consistent with the exclusion of warranties and limitations on available remedies found in similar material from other major manufacturers. Local Rule 56(a)(1) Statement Ex. Q at 2-3.

Plaintiffs cannot seriously claim ignorance of the wide-spread exclusion of implied warranties and liability for consequential losses customary in the commercial helicopter industry. And they cannot claim to have had a different understanding or expectation concerning the replacement clutches at issue in this case. For this reason alone, summary judgment in Kaman's favor should be granted.

## CONCLUSION

Kaman respectfully submits that it is entitled to summary judgment for three independent reasons:

(1)    The documentary evidence and testimony conclusively establishes that Kaman's standard terms and conditions, including the exclusion of implied warranties and disclaimer of liability for economic losses, governed Plaintiffs' purchases of the replacement clutches at issue.

(2)    The course of dealing between Plaintiffs and Kaman reveals a consistent exclusion of liability for economic losses. As Plaintiffs acknowledged, Kaman has never reimbursed them for such losses. For years, Plaintiffs have conducted numerous transactions with Kaman subject to Kaman's standard terms and conditions of sale.

(3)    Custom and usage within the commercial helicopter industry uniformly excludes manufacturer liability to commercial customers for economic losses.

Respectfully submitted,

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: _____
Timothy A. Diemand (ct 18075)
Aaron Singer (ct 25515)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail: tdiemand@wiggin.com
          asinger@wiggin.com

\14658\2\578764.6

18

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Kaman Aerospace Corporation's

Memorandum of Law in Support of its Motion for Summary Judgment was mailed,

postage prepaid, this 24th day of March, 2006, to:

      Robert S. Young, Esq.
      Law Offices of Robert S. Young, L.C.
      800 McIntyre Building
      68 South Main Street
      Salt Lake City, UT 84101

      Timothy A. Bishop, Esq.
      Michael Casey, Esq.
      Bishop & Jackson, LLC
      80 Ferry Blvd., Suite 103
      Stratford, CT 06615

Timothy A. Diemand