UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,: 
LONG-LINE LEASING, LLC,
HELOG AG and HELI-AIR ZAGEL
LUFTTRANSPORT AG,

:   Plaintiffs,

vs.

KAMAN AEROSPACE CORPORATION
and JOHN DOES I THROUGH V,

Defendants.

CASE NO. 3:01-CV-1746 (AVC)

March 24, 2006

**KAMAN AEROSPACE CORPORATION'S LOCAL RULE 56(A)(1) STATEMENT**

1. Beat Ruckli, CEO of Helog AG and President of Heli-Air Zagel Luftransport AG, testified that at the time of the accident involving the Helog Helicopter, Jurg Wyss, the head of Helog's technical service department, and Thomas Gugg, Mr. Wyss' assistant and eventual successor, were responsible for ordering parts from Kaman for the Helog Helicopter and were also responsible for dealing with warranty issues. A true and correct copy of the deposition transcript of Beat Ruckli, dated June 13, 2005, is attached hereto as Exhibit A. See Ex. A, Ruckli Dep. 61:21-63:8, 71:7-10.

2. Mr. Gugg faxed an order form to Kaman on June 11, 1999 requesting a replacement transmission assembly. Attached hereto as Exhibit B is a true and correct copy of the June 11, 1999 order form, identified as Ex. 13 to the Ruckli Deposition. See Ex. A, Ruckli Dep. at 82:5-83:16.

3. The replacement transmission assembly ordered by Helog contained the clutch at issue in this case. See Ex. A, Ruckli Dep. at 80:12-81:11.

4. In connection with the purchase of the replacement transmission, Mr. Wyss countersigned a letter from Kaman dated June 21, 1999, confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you have received as part of the Kaman 1999 Commercial Price List." Attached hereto as Exhibit C is a true and correct copy of the letter identified as Exhibit 14 to the Ruckli Deposition. See Ex. A, Ruckli Dep. 81:13-87:20.

5. Mr. Ruckli described and then identified the Kaman 1999 Commercial Price List, containing Kaman's standard terms and conditions, and confirmed that Helog used the Commercial Price List to order parts in 1999. See Ex. A, Ruckli Dep. 49:22–51:16. Attached hereto as Exhibit D is a true and correct copy of the relevant portions of the 1999 Commercial Price List identified in the Ruckli Deposition as Exhibit 7 (the section containing component prices has been omitted).

6. The Kaman Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for of sale or replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

> **EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY** . . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

Ex. D at 14.

7. Helog paid for the transmission assembly. See Ex. A, Ruckli Dep. at 87:22-24.

8. Other than the component exchange letter (Ex. C) and Kaman's Commercial Price List (Ex. D), Mr. Ruckli testified that Helog is aware of no documents providing terms governing the purchase of the transmission assembly containing the clutch at issue. See Ex. A, Ruckli Dep. at 87:25-88:3.

9. Both before and after the accident, Helog purchased numerous parts from Kaman and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages if a part malfunctions. Ex. A, Ruckli Dep. at 53:4-22. Attached hereto as Exhibit E is a true and correct copy of the invoice identified as Exhibit 8 to the Ruckli Deposition, attached hereto as Exhibit F is a true and correct copy of the letter identified as Exhibit 9 to the Ruckli Deposition, attached hereto as Exhibit G is a true and correct copy of the letter identified as Exhibit 10 to the Ruckli Deposition. See Ex. A, Ruckli Dep. at 57:10-64:15.

10. Mr. Ruckli confirmed that aside from repairing or replacing a broken part that was under warranty, Kaman provided no other remedies when a part malfunctioned. See Ex. A, Ruckli Dep. at 74:4-12, 98:1-9 (Kaman never paid lost profits when a helicopter was grounded for warranty repairs).

11. On August 5, 1999, Bryan Burr, managing member of Long-Line Leasing, LLC, a company organized to acquire and own assets that would then be leased to its operating company, Mountain West Helicopters, LLC, ordered a replacement transmission assembly, containing a free-wheeling sprag clutch (but not the clutch in the Mountain West Helicopter at the time of the accident) and countersigned a letter from Kaman confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you have

3

received as part of the Kaman 1999 Commercial Price List." A true and correct copy of the transcript of the deposition of Bryan Burr, June 14, 2005, is attached hereto as Exhibit H, attached hereto as Exhibit I is a true and correct copy of the August 5, 1999 letter identified as Exhibit 8 to the Burr Deposition. See Ex. H, Burr Dep. 47:8-18.

12. Mr. Burr confirmed that Mountain West received a copy of Kaman's 1999 Commercial Price List and that he had an opportunity to review it. See Exhibit H, Burr Dep. 44:8-20. Mr. Burr identified the 1999 Commercial Price list. See Exhibit H, Burr Dep. at 94:17-95:3.

13. The Kaman Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for the sale of replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

> **EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY . . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER . . . .**

Ex. D at 14.

14. After installing the new transmission, Mountain West purchased the clutch at issue in this action and which was installed in the Mountain West Helicopter, on or about September 24, 1999. See Exhibit H, Burr Dep. 55:3-21.

15. Mr. Burr received from Kaman an invoice for the clutch at issue, and the invoice, after a credit adjustment and issuance of a new invoice, was paid. attached hereto as Exhibit J is a true and correct copy of the invoice identified as Exhibit 10 to Burr Deposition, attached hereto

4

as Exhibit K is true and correct copy of the invoice identified as Ex. 12 to the Burr Deposition. See Exhibit H, Burr Dep. 55:13-21; 56:8-57:17.

16. The front of the invoices state that the sale of the clutch is governed by the terms on the reverse side of the invoice, "including all disclaimers of warranties." See Exs. J and K.

17. The reverse of the invoices repeats verbatim the terms and conditions of sale contained in the 1999 Commercial Price List, including the disclaimer for any liability for economic losses in the event a part fails:

> **EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .**

Attached as Exhibit L is a true and correct copy of the rough deposition transcript of Brian Burr, March 17, 2006. Attached hereto as Exhibit M is a true and correct copy of 1999 invoices identified as Exhibits 18, 19, and 20 to the continued Burr Deposition, March 17, 2006. Mountain West has not produced the original invoice governing the clutch at issue, and Exhibit K is a representative sample of invoices sent from Kaman to Mountain West in 1999. The deposition transcript from the continuation of Mr. Burr's deposition is not yet available, and Kaman will supplement the record when it becomes available. See Exhibit L, Burr Dep. March 17, 2006 at 2:21-4:7 and Ex. M.

18. Both before and after the accident, Mountain West purchased hundreds of other parts from Kaman and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages if a part malfunctions.

See Exhibit H, Burr. Dep. at 27:8-18 (Mountain West purchased "hundreds" of Kaman parts over the course of a typical year, in a typical amount of between $300,000 and $600,000).

19. Mr. Burr confirmed that at no point has Kaman ever compensated Mountain West for expenses incurred or profits lost during a period when a helicopter was out of operation for a warranty repair. See Exhibit H, Burr. Dep. 34:25-36:15, 38:13-17.

20. Just days prior to Mr. Burr's purchase of the clutch at issue, he received a letter from Kaman expressly reminding him that Kaman's warranty did not permit the recovery of economic losses incurred because the helicopter was out of service. Attached hereto as Exhibit N is a true and correct copy of the rough deposition transcript of Roger Wassmuth, March 21, 2006. Exhibits O and P are true and correct copies of the correspondence identified as Exhibits 13 and 14 to the Wassmuth deposition. See Ex. N, Wassmuth Dep. at 123:3 – 125:2. The final deposition transcript is not yet available and Kaman will supplement the record when it becomes available.

21. K-Max was a subsidiary of Kaman Aerospace Corporation responsible for the K-Max 1200 helicopter program. See Ex. N, Wassmuth Dep. at 80:6-83:5.

22. Kaman's Commercial Price List was delivered to Kaman's customers each year. See Exhibit N, Wassmuth Dep. at 122:1-11.

23. It is the custom in the commercial helicopter industry that implied warranties are disclaimed, that warranty remedies are limited to repair and replacement, and that manufacturer's disclaim liability for economic damages. Attached hereto as Exhibit Q is a true and correct copy of the Expert Report of Peter H. Parsinen. See Ex. Q at 1-3.

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: /s/ Timothy A. Diemand
Timothy A. Diemand (ct 18075)
Aaron Singer (ct 25515)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail tdiemand@wiggin.com
        asinger@wiggin.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Kaman Aerospace Corporation's Local Rule 56(A)(1) Statement was mailed, postage prepaid, this 24th day of March, 2006, to:

Robert S. Young, Esq.
Law Offices of Robert S. Young, L.C.
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Michael Casey, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand