

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, HARTFORD

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC, a Utah Limited Liability Company; LONG-LINE LEASING, LLC, a Utah Limited Liability Company; HELOG AG, a Foreign Corporation; and HELI-AIR ZAGEL LUFTTRANSPORT AG, a foreign corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>KAMAN AEROSPACE CORPORATION, a Delaware corporation and JOHN DOES I through V,<br><br>    Defendants. | Case No. 301 CV 1746 (AVC)<br><br>April 11, 2006 |

**PLAINTIFFS' MEMORANDUM OPPOSING KAMAN'S MARCH 24, 2006-MOTION FOR [PARTIAL] SUMMARY JUDGMENT ON CONSEQUENTIAL DAMAGES ISSUES**

Plaintiffs, Mountain West Helicopters, LLC ("Mountain West"), Long-Line Leasing, LLC ("Long-Line"), Helog AG ("Helog") and Heli-Air Zagel Lufttransport AG ("Heli-Air"), hereinafter collectively referred to as "Plaintiffs" and/or the "Helicopter Logging Companies," through counsel and by agreement with opposing counsel as to the date of filing, submit this memorandum opposing Kaman Aerospace Corporation's ("Kaman") March 24, 2006-Motion for [Partial] Summary Judgment on the Damages Issue. This memorandum is supported by exhibits A and B attached hereto and, as otherwise referenced herein, affidavits previously filed and responses to discovery requests previously made herein.

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

II. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

III. STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . iv

IV. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    a.    The Question Before the Court Is Not "What Were the Terms and Conditions Governing Kaman's Sales and Plaintiffs' Purchases of Helicopter Parts 'Over the Years'" but "What Were the Terms and Conditions Governing Kaman's Sales and Plaintiffs' Purchases of Now Undisputed Defective Clutches That Are the Subject of this Dispute" . . . . 2
    b.    Even If, as Kaman Contends, a "Course of Dealing" or "Usage of Trade" Establishes the Parties' "Agreement" to Limitations of Liability, Those Limitations Apply Not for the Benefit of the Defendant Named Herein, Kaman Aerospace Corporation, but for K-Max Corporation . . . . . . . . . . 3
    c.    Even If, as Kaman Contends, a "Course of Dealing" or "Usage of Trade" Operates to Establish the Parties' "Agreement" to Limitations of Liability, Questions of Fact Remain as to Whether Circumstances Have Caused the Alleged Exclusive or Limited Remedy to Fail of its Essential Purpose, Thus Allowing Plaintiffs the Remedies Provided in the Uniform Commercial Code Including the Recovery of Consequential Damages . . . . 6

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## II. INTRODUCTION

Kaman's present motion for partial[1] summary judgment follows an initial round of cross-motions for summary judgment on which the court issued a decision one year ago, i.e., April 7, 2005. See the court's April 7, 2005-"Ruling on Cross-Motions for Summary Judgment" (hereinafter "Ruling"). Among other things, that decision concluded: (1) "the CPLA [Connecticut Product Liability Act] bars the [plaintiffs] from recovering in tort for . . . consequential damages. . . ; [and] (2) genuine issues of material fact exist at to whether the parties intended contractual provisions to bar recovery of consequential damages in contract for breach of warranty. . . ." Ruling at 27.

For the reasons outlined below, plaintiffs respectfully submit genuine issues of material fact *still* exist as to whether contractual provisions bar recovery of consequential damages in contract because (1) genuine issues of material fact remain as to whether the parties "agreed" to limit Kaman's liability for consequential damages; and (2) assuming *arguendo* the existence of agreements limiting remedies: (a) those agreements limit the liability only of K-Max Corporation and not the liability of the defendant named herein, Kaman Aerospace Corporation; and (b) genuine issues of fact exist as to whether the limited remedy of repair or replacement of a defective helicopter part, i.e., in this instance a spare part/replacement clutch, fails of its essential purpose, within the meaning of Conn. Gen. Stat. § 42a-2-719(2), thus triggering the result that "remedy may be had as provided in this title," *Id.*, including recovery of the incidental and consequential damages contemplated by Conn. Gen. Stat. § 42a-2-715.

---

[1] Although Kaman styles its motion as a "Motion for Summary Judgment," it is evident the motion is for partial summary judgment only. "Plaintiffs seek to recover their insurance deductibles **and** consequential economic losses" and Kaman's motion seeks the dismissal only of Plaintiffs claims for consequential economic losses; not their insurance deductibles. See Kaman's March 24, 2006-Motion for Summary Judgment at 1-2 (emphasis supplied).

iii

## III. STATEMENT OF MATERIAL FACTS

The court relied upon the following facts, also material to this motion for partial summary judgment on the consequential damages issues, in its March 9, 2004 "Ruling on Defendant's [Second] Motion to Dismiss."

> This is an action for damages in which the plaintiffs, Mountain West. . . , Long-Line . . . , Helog . . . , and Heli-Air . . . , (collectively the "[Helicopter] [L]ogging [C]ompanies"), allege that a defendant, Kaman Aerospace Corporation ("Kaman"), designed, manufactured and sold a defective helicopter clutch[2] to the [Helicopter] Logging companies that caused two helicopters to crash. It is brought pursuant to the Connecticut Unfair Trade Practice Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), and common law tenets concerning strict liability, negligence, breach of warranty, and misrepresentation.

*Mountain West Helicopter v. Kaman Aerospace, Corp.*, 310 F.Supp.2d 459, 460 (D.Conn. 2004) (footnote supplied).

> On May 2, 1997, the defendant, Kaman. . . , sold a model K-1200 helicopter ("Heli-Air [H]elicopter") to Helog. . . . Heli-Air . . . operated this helicopter. On or about July 24, 1999, at the urging of Kaman, Heli-Air removed the free-wheeling sprag clutch assembly in the Heli-Air helicopter and replaced it with a new free-wheeling sprag clutch assembly ("Heli-Air [C]lutch"), that was designed and manufactured by Kaman.
>
> On September 13, 1999, during logging operations near Flirsch, Austria, the Heli-Air [H]elicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Heli-Air [C]lutch. Following the power failure, the Heli-Air [H]elicopter entered a steep descent and crashed. The crash resulted in minor personal injuries to the pilot and a total loss of the Heli-Air [H]elicopter.
>
> On or about May 20, 1997, Kaman sold a helicopter ("Mountain West [H]elicopter") to Long Line. . . . Mountain West . . . operated this helicopter. On or about September 24, 1999, at the urging of Kaman, Mountain West removed the free-wheeling sprag clutch assembly in the Mountain West [H]elicopter and replaced it with a new free-wheeling

---

[2] As noted at page 1 of the March 24, 2006-Kaman Aerospace Corporation's Memorandum of Law in Support of its Motion for Summary Judgment (hereinafter "Kaman Memo at __"), "Kaman has stipulated it will not contest liability" and, thus, for purposes of this proceeding, it is not "alleged," but, undisputed that Kaman sold to each of the Helicopter Logging Companies a defective clutch.

iv

> sprag clutch assembly ("Mountain West [C]lutch"), that was designed and manufactured by Kaman.
>
> On November 4, 1999, during logging operations near Emida, Idaho, the Mountain West [H]elicopter suffered a complete loss of power due to torsion overstress of the drive train resulting from the malfunction of the Mountain West [C]lutch. Following the power failure, the Mountain West [H]elicopter entered a steep descent and crashed. The crash resulted in minor personal injuries to the pilot and substantial damages to the Mountain West [H]elicopter requiring repairs of approximately $1,500,000.

*Id.* at 461-462 (footnote supplied).

> The complaint alleges that, in addition to the "total loss of or substantial damage" to the Heli-Air and Mountain West [H]elicopters, the crash[es] caused plaintiffs to: (1) "lose revenues and profits form their logging operations"; (2) "incur ongoing expense in the form of excess salaried personnel unable to generate revenue in the absence of the Helicopters"; (3) "lose the benefit of pilot training expense paid by plaintiff[s] to Kaman for pilots trained in the Helicopters and unable to generate revenue in the absence thereof"; (4) "lose the benefit of a portion of the annual premium paid to insure the Helicopters"; (5) "incur increased hull and liabilities and/or workers compensation insurance premiums during the years following the crashes"; (6) "incur the expense of a deductible for the portion of the insurance risk assumed by plaintiffs"; (7) "incur the expense of ongoing interest charged, with no corresponding revenue generated, during the period between the crashes and settlement of the hull claims"; (8) "incur the expense associated with investigating the crashes"; and (9) "in the case of Helog and/or Heli-Air, incur the expense associated with replacing the Helicopter at the exchange rate that had significantly worsened and cost Helog and/or Heli-Air approximately $1,000,000 more than originally paid for the Heli-Air Helicopter."

*Id.* at 462.[3]

## IV. SUMMARY OF ARGUMENT

As outlined below, it is the Plaintiffs' position the court must deny Kaman's most recent motion for summary judgment, on the consequential damages issues, because (1) issues of material fact remain with respect to whether the parties "agreed" to a disclaimer precluding

---

[3] Discovery has caused Plaintiffs to "give-up" on some of the above-described claims for consequential damages while continuing to pursue others.

1

Kaman's liability for incidental or consequential damages; and (2) even if a "course of dealing" or "usage of trade" suggests such an agreement was reached: (a) the agreement applies for the benefit of K-Max Corporation, not defendant Kaman Aerospace Corporation; and (b) genuine issues of material fact, on the question whether Kaman's limited remedy fails of its essential purpose under these circumstances, preclude granting summary judgment in favor of Kaman.

## V. ARGUMENT

a. **The Question Before the Court Is Not "What Were the Terms and Conditions Governing Kaman's Sales and Plaintiffs' Purchases of Helicopter Parts 'Over the Years'" but "What Were the Terms and Conditions Governing Kaman's Sales and Plaintiffs' Purchases of Now Undisputed Defective Clutches That Are the Subject of this Dispute"**

First and foremost, as noted above, plaintiffs continue to dispute the parties reached "agreement" to limit Kaman's liability for the sale of now uncontested and undisputed defective clutches. It is axiomatic, of course, that as the party asserting the existence of such an agreement, Kaman carries the burden of proving the same. As near as Plaintiffs can determine, the "agreement" reflecting the sale by Kaman and the purchase by Mountain West[4] of the Mountain West Clutch is attached hereto as exhibit A.[5] The "agreement" reflecting the sale by Kaman and the purchase by Helog of the Helog Clutch is attached hereto as exhibit B.[6] Exhibits A and B are simple invoices containing no terms and conditions limiting Kaman's liability for

---

[4] Plaintiffs also use "Mountain West" to refer, collectively, to Mountain West Helicopters, LLC and Long-Line Leasing, LLC and "Helog" to refer to Helog AG and Heli-Air Zagel Luftransport AG.

[5] Notably, the "agreement" is dated October 1, 1999, i.e., seven days **after** the Mountain West Clutch was installed and in use on the Mountain West Helicopter! Even the documents Kaman cites as reflecting the "agreement," attached as exhibits J and K to its Rule 56(A)(1) statement, are dated, respectively, October 1 and November 1, 1999, i.e., seven and thirty-eight days after installation!

[6] As noted in paragraph 3 of Kaman's rule 56(A)(1) statement, "[t]he replacement transmission assembly [described in exhibit B] . . . contained the [Helog] clutch at issue in this case."

2

the sale of the defective clutches. Thus, Plaintiffs continue to assert they did not "agree" to limit the liability of Kaman. Indeed, Kaman did not ask Plaintiffs to do so!

More important, for purposes of the pending motion, the resolution of a dispute whether the parties formed a contract and/or the terms of the same involves questions of fact not determinable on summary judgment. "Whether such conduct took place so as to create a contract is a question of fact." *Sandella v. Dick Corp.*, 53 Conn.App. 213, 220, 729 A.2d 813, 818 (Conn.App. 1999). "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . ." *Cheverie v. Ashcraft & Gerel*, 65 Conn.App. 425, 439, 783 A.2d 474 (Conn.App. 2001). "Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact. . . ." *Sandella v. Dick Corp.*, 53 Conn.App. 213, 219, 729 A.2d 813, 818 (Conn.App. 1999) citing *Homecare, Inc., v. Acquarulo*, 38 Conn.App. 772, 775, 663 A.2d 412 (1995). These questions become questions of law only when the court interprets contract language the parties agree on. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . ." *Pesino v. Atlantic Bank of New York*, 244 Conn. 85, 92, 709 A.2d 540, 545 (1998).

      b.      **Even If, as Kaman Contends, a "Course of Dealing" or "Usage of Trade" Establishes the Parties' "Agreement" to Limitations of Liability, Those Limitations Apply Not for the Benefit of the Defendant Named Herein, Kaman Aerospace Corporation, but for K-Max Corporation**

The essence of Kaman's argument here is "[b]oth before and after the accident, Helog [and Mountain West] purchased numerous parts from Kaman and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages. . . ." Kaman Memo at 5, ¶ 9 and 8, ¶ 8. Thus, even if the "agreement(s)"

3

governing the sale of the defective clutches herein did not include "an express disclaimer of any liability for economic damages," the court should, nevertheless, conclude such a disclaimer exists because a "course of dealing establishes Plaintiffs' understanding that Kaman would not be liable for economic losses. . . ." Kaman Memo at 12-13. Presumably, the reference to "Kaman" is to Kaman Aerospace Corporation – the defendant named herein. Yet virtually every document on which Kaman relies, as evidence of the existence of this "disclaimer agreement," references K-Max Corporation, not Kaman Aerospace Corporation![7] Indeed, Plaintiffs are unaware of a disclaimer of liability for Kaman Aerospace Corporation.

The foregoing is an important distinction. In an August 6, 2004-response to Plaintiffs' Requests for Admission, Kaman "admits that <u>K-Max Corporation</u> sold the Mountain West Clutch to Mountain West Helicopter, and that <u>K-Max Corporation</u> sold a transmission assembly, which assembly contained the Heli-Air Clutch, to Helog A.G." See Kaman's Response to Request for Admission 4. However, in response to Request for Admission 2, <u>Kaman Aerospace Corporation</u> "admits that it participated in the design[8] and sale of . . . the Heli-Air Clutch . . . and . . . the Mountain West Clutch. . . ." Moreover, during his March 21, 2006-deposition, Roger Wassmuth, who verified the truthfulness of the foregoing responses as

---

[7] The Ruling notes "[n]either party has informed the court of the relationship between K-Max and Kaman." Ruling at 4, n.1. Discovery conducted since the Ruling and Kaman's Memo now permit the court to understand that relationship. Kaman explains that "K-Max Corporation was a subsidiary of Kaman Aerospace Corporation responsible for the K-Max 1200 helicopter program." Kaman Memo at 5, n.4. Presumably Kaman offers this explanation to suggest the "agreement" of the Helicopter Logging Companies to limit the liability of K-Max Corporation serves, *ipso facto*, as their agreement to limit the liability of the parent, i.e., Kaman Aerospace Corporation. Plaintiffs are aware of no legal authority supporting such a proposition and note the absence of the same in the Kaman Memorandum.

[8] Notably, on behalf of Kaman, Roger Wassmuth testified K-Max Corporation <u>did not</u> participate in that design. See the Rough Draft of the March 21, 2006-deposition of Roger Wassmuth at page 83, lines 14 through 20 (hereinafter "Wassmuth Depo. at 83, lines 14-20").

4

of August 6, 2004, confirmed they were just as true nearly two years later. Wassmuth Depo. at 51-52. Thus, under traditional notions of product liability law, Plaintiffs could pursue claims against either K-Max Corporation or Kaman Aerospace Corporation, but the disclaimer applies only for the benefit of K-Max Corporation.

Specifically, on this issue, Kaman argues "there is no dispute that Plaintiffs received, had an opportunity to review, and in fact actively used Kaman's 1999 Commercial Price List containing the warranty and remedy provisions." It is equally undisputed the Commercial Price List disclaimer upon which Kaman Aerospace Corporation relies reads: "In no event shall **K-Max** be liable to customer or any other person or organization for any indirect, incidental, consequential, special or exemplary damages of any nature whatsoever. . . ." Kaman Memo at 5 (emphasis supplied). It is equally undisputed that the invoice disclaimer upon which Kaman Aerospace Corporation relies also reads: "In no event shall **K-Max** be liable to customer or any other person or organization for any indirect, incidental, consequential, special or exemplary damages of any nature whatsoever. . . ." Kaman Memo at 7 (emphasis supplied).[9]

Thus, even if the Court were to conclude an agreement was reached, as a matter of law, with respect to limitations of liability, by virtue of a "course of dealing" or "usage of

---

[9] Unique to Helog, Kaman also argues that Mr. Jurg Wyss, on behalf of Helog, countersigned a letter from Kaman dated June 21, 1999 acknowledging the Helog Clutch sale "was governed by Kaman's 'standard terms and conditions a copy of which you have received as part of the Kaman 1999 Commercial Price List.'" Kaman Memo at 4, ¶ 4, citing exhibit C to Kaman's Local Rule 56(A)(1) statement. The letter, in reality, reads "K-Max Corporation's terms and conditions of sale, a copy of which you have received as part of the Kaman 1999 Commercial Price List." Moreover, paragraph 11 of the affidavit of Wolfgang Zagel, filed in support of the Helicopter Logging Companies' October 4, 2004-Memorandum Opposing Kaman's Cross-Motion for Summary Judgment notes: "Mr. Wyss has never served as an officer or director of Helog and has never held authority to bind Helog to contractual agreements." And finally, Roger Wassmuth, whose signature appears on the June 21, 1999-letter in behalf of Kaman, also acknowledges he "was not a company officer" and has not held authority to bind Kaman to such agreements. Wassmuth Depo. at 43, lines 13-25.

5

trade," the agreement, at best, applies for the benefit of K-Max Corporation and not for the benefit of the defendant named herein, Kaman Aerospace Corporation.

> **c.    Even If, as Kaman Contends, a "Course of Dealing" or "Usage of Trade" Operates to Establish the Parties' "Agreement" to Limitations of Liability, Questions of Fact Remain as to Whether Circumstances Have Caused the Alleged Exclusive or Limited Remedy to Fail of its Essential Purpose, Thus Allowing Plaintiffs the Remedies Provided in the Uniform Commercial Code Including the Recovery of Consequential Damages**

Plaintiffs note they previously raised this issue at pages 7-10 of their October 4, 2004-Memorandum Opposing Kaman's Cross-Motion for Partial Summary Judgment on the Damages Issues. The Ruling, however, does not address the issue. Plaintiffs remind the court they then argued "[d]oes Kaman sincerely contend that its only responsibility, after designing, manufacturing and/or simply placing into the stream of commerce defective clutches that caused the total loss of a $3,000,000.00 helicopter and in excess of $1,000,000.00 damage to another, is to repair or replace those defective clutches for Helog and Mountain West?" See Plaintiffs October 4, 2004-Memorandum at 9. Discovery since the ruling reveals that is precisely Kaman's position. Describing the sequence of events leading to the Mountain West Helicopter crash, the following occurred during the Roger Wassmuth deposition:

> Q. . . . The clutch fails, it fractures the engine output adapter, the helicopter crashes, it costs over a million dollars to repair it, and it's Kaman's position that its obligation under the warranty is to repair or replace a $13,000 part [i.e., the defective clutch]?
>
> Mr. Diemand: Objection.
>
> A. Yes.

Wassmuth Depo. at 72, lines 18-25. The essence of Kaman's standard spare parts warranty is that the spare part will be defect-free and, thus, will not fail during the first "Five-hundred [flight] hours or one year, whatever occurs first." Wassmuth Depo. at 89, line 25. Mr. Wassmuth acknowledges both Mountain West and Helog are "entitled to expect those parts to

6

last the period of the manufacturer's warranty. . . ." Wassmuth Depo. at 103, lines 9-12. Moreover, according to Mr. Wassmuth, the remedy under the warranty "was pretty clear: Replace the part that failed, if it failed inside the warranty and it was not above and beyond normal wear and tear." Wassmuth Depo. at 90, lines 16-19. The circumstances under which these defective clutches failed, cause Kaman's limited remedy to fail of its essential purpose and permit Plaintiffs to recover damages as provided in the Uniform Commercial Code.

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Conn.Gen.Stat. § 42a-2-719. The comments to § 42a-2-719 clarify:

> . . . it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article, they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. *Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.*

Conn.Gen.Stat. § 42a-2-719, comment 1 (emphasis supplied). And what was the "substantial value of the bargain" the Helicopter Logging Companies bargained for here? If the implied warranties of the UCC apply, i.e., if Kaman fails to prove the Parties agreed upon limited warranties and remedies, then the Helicopter Logging Companies bargained for clutches that were (1) "merchantable" within the meaning of Conn. Gen. Stat. § 42a-2-314; and (2) "fit for the particular purposes" contemplated by the Helicopter Logging Companies within the meaning of Conn. Gen. Stat. § 42a-2-315. In contrast, if Kaman proves the parties agreed upon limited warranties and remedies, then the Helicopter Logging Companies bargained, of course, for

defect-free clutches, i.e., clutches that would not fail, during the first 500 hours of flight time or one calendar year whichever occurred first. At the time of the bargaining, moreover, the Helicopter Logging Companies each had a K-Max Model K-1200 helicopter. Implicit in the bargain was that a clutch that was "merchantable," "fit for particular purposes" or defect-free during the first 500 hours of flight time or one calendar year, whichever occurred first, would preserve these helicopters for continued use by the Helicopter Logging Companies. Despite the bargain, the Helicopter Logging Companies (now undisputedly) got "unmerchantable," "unfit" or defective clutches and, incidentally and/or consequently, Helog lost a $3,000,000 helicopter and Mountain West incurred a repair bill in excess of $1,000,000 in addition to all the economic losses described in the complaint. And what is their exclusive remedy? As Mr. Wassmuth testified, it is repair or replacement of a $13,000 part.[10]

In other words, the exclusive remedy purports not only to keep the Helicopter Logging Companies' from recovering their increased hull insurance premiums and other such economic losses, claims for which Kaman seeks dismissal with this motion, but also from recovering the consequential losses of the two helicopters, including the insurance deductibles, claims for which Kaman does not seek dismissal! It is these circumstances, the Plaintiffs respectfully suggest, that implicate Conn.Gen.Stat. § 42a-2-719, i.e., these circumstances cause an exclusive or limited remedy, which might be reasonable in other circumstances, to fail of its essential purpose in these circumstances. Thus, remedy may be had as provided in the UCC.

In its memorandum Kaman relies, among others, on the decision in *Damin Aviation Corp. v. Sikorsky Aircraft*, 705 F.Supp. 170 (S.D.N.Y. 1989) for the proposition that summary

---

[10] Notably, Mr. Wassmuth acknowledges he does not know whether "Kaman ever repair[ed] or replace[d] either of the failed clutches at no charge to Mountain West or to Helog." Wassmuth Depo. at 95, lines 6-9. In fact, Kaman did not!

8

judgment for a helicopter manufacturer such as Kaman is, under Connecticut law, appropriate where the sales agreement contains limited warranty provisions and excludes liability for economic damages. Kaman Memo at 10. Assuming *arguendo* the existence of agreements limiting Kaman's liability, the Helicopter Logging Companies respectfully submit that *Damin Aviation* supports the position they assert herein, i.e., that an exclusive or limited remedy, reasonable under other circumstances, is unreasonable under these circumstances.

Kaman's memorandum does not cite *McKernan v. United Technologies Corp.*, 717 F.Supp. 60 (D.Conn.1989) which, Plaintiffs respectfully submit, explains why *Damin Aviation* actually supports the position they assert herein. "Specifically, the [*Damin*] court found that the limited warranty of repair or replacement did not fail *because the plaintiff had been reimbursed the helicopter's full price*, which the plaintiff then used to purchase another [replacement helicopter]. . . ." *McKernan* at 68. In other words the *Damin* court upheld a limited remedy, purporting to limit an engine manufacturer's liability to repair or replacement of a defective engine, *because the plaintiff had been reimbursed the helicopter's full price*, not just the cost to repair or replace the defective engine. The *McKernan* court also recognized that if, because of changed circumstances, the repair or replacement remedy leaves a party without adequate remedy, then a separate consequential damages' clause, otherwise conscionable, may become unconscionable and unenforceable. See *McKernan*, 717 F.Supp. at 69-73. Compare *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F.Supp. 548, 564 (D.Conn. 1967)("Where repair or replacement of individual parts is in its nature unsatisfactory and ineffective, a court will not be bound by a literal reading of the terms").

The *McKernan* court explains and then distinguishes *Damin Aviation* as follows:

> The *Damin* court held, in a summary judgment context, that the plaintiff's commercial losses were precluded by the disclaimers in the warranty provisions. *Id.* at 178-79. Specifically, the court found that the limited

9

warranty of repair or replacement did not fail because the plaintiff had been reimbursed the helicopter's full price, which the plaintiff then used to purchase another S-76A equipped with the same model Allison engines as present in the original helicopter. *Id.* The court applied Connecticut law on the warranty issue and concluded:

> Since the defendants were able to replace the [first] [h]elicopter within a reasonable time, [the plaintiff] has not lost a substantial benefit of its bargain. A limited remedy fails of its essential purpose only where, because of circumstances that develop after the formation of the contract, the limited remedy operates to deprive a party of a substantial benefit of the bargain. . . .

*Id.* at 178-79 (citing Conn.Gen.Stat. Section 42a-2-719, comment 1). In Allison's view, the facts in Damin are indistinguishable from those before the court in this proceeding. In each instance, the helicopter owner received the substantial benefit of its bargain--in Damin, a new helicopter; here, a modified S-76A in which the engine overheating problem had been corrected. Allison's argument is not thoroughly persuasive, however. The plaintiff in Damin received a dollar amount exceeding the purchase price of the original helicopter; this amount constituted full replacement value. . . . Conversely, the plaintiffs here did not have the option afforded the Damin helicopter owner. Allison never offered the McKernans the full replacement value of the aircraft or the engines. The modifications were the only remedy offered. The alterations allegedly removed safety and performance concerns by ensuring that if an overheated engine exploded, the explosion would be contained away from other engines and steering and control mechanisms. According to the plaintiffs, the modifications removed some risks emanating from the underlying defect but did not correct the defect. If true, the plaintiffs received a remedy but possibly not the substantial benefit of their bargain. *Whether the modifications made by Allison were truly adequate to restore such benefit to the plaintiffs is a genuine issue of material fact not resolvable on the undeveloped record now before the court. Whether a limited remedy failed of its essential purpose is, in most instances, a fact-laden issue inappropriate for determination on summary judgment.* Citations omitted.

*McKernan v. United Technologies Corp., Sikorsky Aircraft Div.*, 717 F.Supp. 60, 68-69 (D.Conn. 1989) (footnote and emphasis supplied).

Here, as well, "[Kaman] never offered [Helog] the full replacement value of the aircraft" not to mention Helog's deductible, because its only obligation, under the warranty, was to repair or replace a $13,000 clutch. Nor has Kaman ever offered Mountain West the full

10

repair cost of the Mountain West Helicopter or the Mountain West deductible for the same reason. Thus, "plaintiffs receive[] a remedy but possibly not the substantial benefit of their bargain. Whether the [offers] made by [Kaman] were truly adequate to restore such benefit to the plaintiffs is a genuine issue of material fact not resolvable on the undeveloped record now before the court. Whether a limited remedy failed of its essential purpose is, in most instances, a fact-laden issue inappropriate for determination on summary judgment."

## VI. CONCLUSION

Genuine issues of material fact remain as to whether the parties "agreed" to limit Kaman's liability for consequential damages. Moreover, assuming *arguendo* the parties reached such an agreement (2) that agreement applies for the benefit of K-Max Corporation not Kaman Aerospace Corporation and (3) genuine issues of fact remain as to whether Kaman's limited remedy for breach of warranty is unreasonable, under these circumstances, and thus fails of its essential purpose permitting Plaintiffs' recovery of damages as outlined in the UCC.

DATED: April 11, 2006.

The Law Offices of Robert S. Young, L.C.

_____
Robert S. Young (ct 21935)
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101
Tel. (801) 531-8300
Fax (801) 359-7233
rsyav8rlaw@hotmail.com

11

## VII. CERTIFICATE OF SERVICE

I certify that on April 11, 2006, I caused to be filed with the court and served upon the individuals identified below, in the manner stated, the foregoing PLAINTIFFS' MEMORANDUM OPPOSING KAMAN'S MARCH 24, 2006-MOTION FOR [PARTIAL] SUMMARY JUDGMENT ON CONSEQUENTIAL DAMAGES ISSUES. The original, via United States Postal Service Priority Mail, all expenses prepaid, to "be filed with the court within a reasonable time after service," as contemplated by Rule 5(d) Fed.R.Civ.P., and addressed to:

> Clerk of the Court
> 450 Main Street
> Hartford, CT  06103

And one copy each, via first class mail, postage prepaid addressed to:

Tim Bishop, Esq.
BISHOP & JACKSON
80 Ferry Blvd.
Stratford, CT  06615

Timothy A. Diemand, Esq.
Aaron Singer, Esq.
WIGGIN & DANA
One City Place
185 Asylum Street
Hartford, CT  06103-3402

Also via facsimile to:
(860) 525-9380

_/s/ Robert_____

G:\My Files\Mt. West v. Kaman\Memo Opposing Kaman's MSJ re Consequential Damages.311.wpd

K-MAX Corporation
Bloomfield, CT 06002
(860) 243-7100

# KAMAN

TO: Mountain West
73 West 620 South
Orem, UT 84058

Invoice No: H220603

Invoice Date: 10/01/1999

TERMS: Due Upon Receipt of Invoice

| | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | ** REVISED ** | | | |
| 1 | K974002-701 OVH Spare Clutch (S/N 32 W51636375) | 1 | 8,892.00 | $8,892.00 |
| | Total Due | | | $8,892.00 |

Please make check payable to: "K-MAX Corporation"

and send to:
Robert M. Garneau
Kaman Corporation
P.O. Box 1
Bloomfield, CT 06002

*[Stamp: Garneau / EXHIBIT NO. 7 / S. TERRY 3-22-06]*

MAIL CHECK TO: KAMAN CORPORATION, 1332 BLUE HILLS AVENUE, P O BOX 1, BLOOMFIELD, CT 06002 ATTN: TREASURER

EXHIBIT A
Page 1 of 1

MHVKAMAN 025

K-MAX Corporation
Bloomfield, CT 06002
(860) 243-7100

# KAMAN

| TO | Helog A.G.<br>Heliport Haltinon<br>6403 Kussnacht<br>Switzerland | | INVOICE NO. | H100084 |
|---|---|---|---|---|
| | | | INVOICE DATE | 06/29/99 |

HELOG eingegangen -7. Juli 1999

**TERMS** DUE UPON RECEIPT OF INVOICE

| ITEM | DESCRIPTION | QUANTITY | PRICE | EXTENSION |
|---|---|---|---|---|
| 1. | Transmission exchange<br>(Reference exchange letter dated June 21, 1999) | 1 | $109,772.50 | $109,772.50 |
| | Less: Deposit received on June 16, 1999 | | | (55,000.00) |
| | Net Due | | | $ 54,772.50 |

9090

2603

bez. 1.9.99 KB/2342
bez. 15.9.99 UBS/DM

50000.-
4772.50

Please make check payable to: "K-MAX Corporation"

and send to: Robert M. Garneau
Kaman Corporation
P.O. Box 1
Bloomfield, CT 06002

MAIL CHECK TO: KAMAN CORPORATION, 1332 BLUE HILLS AVENUE, P.O. BOX 1 BLOOMFIELD, CT 06002 ATTN: TREASURER



EXHIBIT B
Page 1 of 1