# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

FILED

2006 APR 18 A 9: 11

DISTRICT COURT

| | |
|---|---|
| MOUNTAIN WEST HELICOPTERS, LLC,: <br> LONG-LINE LEASING, LLC, <br> HELOG AG and HELI-AIR ZAGEL <br> LUFTTRANSPORT AG, <br><br> Plaintiffs, <br><br> vs. <br><br> KAMAN AEROSPACE CORPORATION <br> and JOHN DOES I THROUGH V, <br><br> Defendants. | CASE NO. 3:01-CV-1746 (AVC) <br><br> April 18, 2006 |

## KAMAN AEROSPACE CORPORATION'S TRIAL MEMORANDUM

Defendant Kaman Aerospace Corporation ("Kaman") hereby respectfully submits this trial memorandum. Counsel for defendant attempted to obtain input from counsel for plaintiffs Mountain West Helicopters LLC and Long-Line Leasing LLC (collectively "Mountain West"), and counsel for plaintiffs Helog AG and Heli-Air Zagel Lufttransport AG (collectively "Helog"). Plaintiffs' counsel has not provided any information for a joint submission, therefore Kaman is submitting this trial memorandum on its own behalf. Kaman reserves the right to amend or supplement this trial memorandum if and when plaintiffs comply with the Court's pretrial order.

1. **Trial Counsel**

   *Plaintiffs – Mountain West and Helog*

   Robert S. Young
   Law Offices of Robert S. Young
   800 McIntyre Building
   68 South Main Street
   Salt Lake City, Utah 84101
   Tel.: 801-531-8300

   Timothy A. Bishop
   Bishop, Jackson and Kelly, LLC
   80 Ferry Blvd., Suite 103
   Stratford, CT 06615
   Tel.: 203-386-1282

   *Defendant -- Kaman*

   Timothy A. Diemand
   Aaron D. Singer
   Wiggin and Dana LLP
   One CityPlace
   Hartford, Connecticut 06103
   Tel.: 860-297-3700

2. **Jurisdiction**

   Jurisdiction is based upon diversity of the parties, pursuant to 28 U.S.C. § 1332.

3. **Jury/Non-Jury Trial**

   Non-jury.

4. **Length of Trial**

   Kaman estimates that this case can be tried in two to three days.

5. **Further Proceedings**

   Kaman filed a motion for summary judgment on March 24, 2006. Also, Kaman anticipates filing motions in limine after plaintiffs file their trial memorandum and designate their trial exhibits.

6. **Nature of Case**

This case relates to two separate helicopter accidents. Plaintiffs each purchased a helicopter from Kaman in 1997 for use in logging operations (the "Helog helicopter" and the "Mountain West helicopter"). Both helicopters were involved in accidents in 1999. Plaintiffs' hull losses were covered by insurance. Plaintiffs contend that the accidents resulted from the failure of replacement sprag clutches. Plaintiffs assert a tort claim under the Connecticut Product Liability Act ("CPLA") and a breach of warranty claim. Plaintiffs seek to recover amounts for damages to the helicopters not reimbursed by insurance and also seek to recover certain incidental and consequential economic damages allegedly suffered as a result of the accidents.

Kaman has stipulated that it will not to contest its liability in this action. Accordingly, the Court only needs to decide three issues: (1) whether the plaintiffs may recover certain claimed economic damages on their breach of warranty claims; (2) if plaintiffs' economic damages are recoverable, whether the damages were proximately caused by the accidents; and (3) the amount of plaintiffs' recoverable damages.

The following issues will be presented at the trial:

*CPLA Claim:*

The Court has already ruled that the plaintiffs cannot recover economic damages under the CPLA, thereby limiting plaintiffs' tort recovery to uninsured property damage to the helicopters. April 7, 2005 Ruling at 12-14. Thus, the only remaining issues regarding the plaintiffs' CPLA claims are:

    (a)    the amount of Mountain West's unrecovered property damages attributable to the accident.

    (b)    the amount of Helog's unrecovered property damages attributable to the accident.

3

*Warranty Claim:*

    (a)    whether the plaintiffs purchased the allegedly defective clutches pursuant to Kaman's standard terms and conditions, including an express disclaimer of all implied warranties and an exclusion of recovery for economic losses.

    (b)    whether the parties' course of dealing establishes a shared expectation that all parts and aircraft purchased from Kaman by Mountain West and/or Helog were subject to Kaman's standard limited warranty provisions, including an express disclaimer of all implied warranties and an exclusion of recovery for economic losses.

    (c)    whether the custom in the commercial helicopter industry establishes that parts and aircraft are customarily sold subject to a disclaimer of all implied warranties and an exclusion of recovery for economic losses.

    (d)    if plaintiffs' economic damages are recoverable, whether the claimed damages were caused by the accident and the amount of plaintiffs' damages. the amount of Mountain West's and Helog's damages attributable to the accident.

**7.    Trial by Magistrate**

Not applicable.

**8.    List of Witnesses**

Kaman intends to call the following witnesses to testify at trial. This list does not include rebuttal or impeachment witnesses.

    (a)    G. Roger Wassmuth
Former Director of K-MAX Marketing and Business Development,
Kaman Aerospace Corporation
Bloomfield, CT

               Mr. Wassmuth will testify concerning applicable warranties and the parties' course of dealing. Kaman estimates his testimony (including cross) will last four to six hours.

    (b)    Peter H. Parsinen
CEO, TPG International, Inc.
Arlington, TX

Mr. Parsinen is a recognized expert in the helicopter industry, with over thirty years of experience. Based on this experience, which has included extensive involvement with contracts and customer support, Mr. Parsinen will testify as to the industry custom and expectations concerning warranties and manufacturer liability for consequential economic losses. Kaman estimates his testimony (including cross) will last one to two hours.

9. **Kaman's Proposed Exhibits[1]**

| | |
|---|---|
| 1. | 11/17/1995 Aircraft Sales Agreement (Burr 3) |
| 2. | 5/20/1997 Aircraft Sales Agreement (Burr 4) |
| 3. | 5/29/1998 Request for Parts (Burr 5) |
| 4. | 8/27/1998 Return Parts to Kaman Form (Burr 21) |
| 5. | Kaman 1999 Commercial Price List (Burr 17) |
| 6. | 4/30/1999 Warranty exchange correspondence (Burr 6) |
| 7. | 7/22/1999 Letter from B. Burr to R. Wassmuth (Burr 7) |
| 8. | 8/5/1999 Letter from R. Wassmuth to B. Burr (Burr 8) |
| 9. | 9/10/1999 Letter from B. Burr to R. Wassmuth (Wassmuth 13) |
| 10. | 9/17/1999 Letter from S. Daniels to B. Burr (Wassmuth 14) |
| 11. | 10/1/1999 Pick Ticket for Spare Clutch (in Wassmuth 3-B) |
| 12. | 10/1/1999 Invoice for Spare Clutch (Burr 10) |
| 13. | 10/1/1999 Revised Invoice for Spare Clutch (Garneau 7) |
| 14. | 10/11/1999 Letter from B. Burr to R. Wassmuth (Burr 9) |
| 15. | 10/15/1999 Letter from R. Wassmuth to B. Burr (in Wassmuth 3-B) |
| 16. | 11/1/1999 Credit Memo (Burr 12) |

---

[1] Per the Court's Pretrial Order, copies of Kaman's proposed exhibits are being forwarded to plaintiffs' counsel.

| |
|---|
| 17. Sample 1999 Invoices (Burr 18, 19, 20) |
| 18. Additional Invoices to be produced by plaintiffs |
| 19. 3/6/1995 Aircraft Sales Agreement (Ruckli 4) |
| 20. 5/2/1997 Aircraft Installment Sale Agreement (Ruckli 6) |
| 21. 8/14/1998 Letter from R. Wassmuth to J. Wyss (Ruckli 9) |
| 22. 10/29/1998 Letter from R. Wassmuth to J. Wyss (Ruckli 10) |
| 23. 2/23/1999 Facsimile from J. Wyss to R. Wassmuth (KAMAN 561-3) |
| 24. 6/11/1999 Request for Parts (Ruckli 13) |
| 25. 6/21/1999 Letter from R. Wassmuth to J. Wyss (Ruckli 14) |
| 26. 6/23/1999 Facsimile from R. Riddell to T. Gugg (Ruckli 15) |
| 27. 6/23/1999 Pick Ticket for Exchange Transmission (in Wassmuth 3-A) |
| 28. 6/24/1999 Letter from R. Wassmuth to J. Wyss (Ruckli 11) |
| 29. 1/19/1999 Invoice (Ruckli 8) |
| 30. 3/20/2000 Aircraft Installment Sale Agreement (Ruckli 5) |
| 31. Additional Invoices |

**10.    Proposed Findings of Fact and Conclusions of Law**

*Stipulated Facts:*

Kaman has stipulated that it will not contest liability.

*Kaman's Proposed Findings of Fact and Conclusions of Law*[2]

<u>**Mountain West**</u>

1.    Mountain West purchased the Mountain West helicopter pursuant to a May 20, 1997 Aircraft Sale Agreement. Upon delivery of the helicopter, Mountain West inspected the

---

[2] Kaman reserves the right to amend and supplement these proposed findings of fact and conclusions of law based on the evidence submitted at trial.

6

subject helicopter and signed a certificate of acceptance. This was the second K-1200 helicopter Mountain West purchased from Kaman.

2.  The purchase agreement for the Mountain West helicopter expressly excludes recovery of economic damages. <u>See</u> Section 4B of the purchase agreement.

3.  On August 5, 1999, Bryan Burr managing member of Long-Line Leasing, LLC, a company organized to acquire and own assets that would then be leased to its operating company, Mountain West Helicopters, LLC, ordered a replacement transmission assembly, containing a free-wheeling sprag clutch (but not the clutch in the Mountain West Helicopter at the time of the accident) and countersigned a letter from Kaman confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you [Mountain West] have received as part of the Kaman 1999 Commercial Price List."

4.  Mountain West received a copy of Kaman's 1999 Commercial Price List and Mr. Burr had an opportunity to review it.

5.  The 1999 Kaman Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for the sale of replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

> <u>EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY</u> . . . .
> IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON

WHATSOEVER. . . .

6. After installing the new transmission, Mountain West purchased the clutch at issue in this action and installed it in the Mountain West Helicopter, on or about September 24, 1999.

7. Mr. Burr received from Kaman an invoice for the clutch at issue, and the invoice, after a credit adjustment and issuance of a new invoice, was paid.

8. The front of the invoices state that the sale of the clutch is governed by the terms on the reverse side of the invoice, "including all disclaimers of warranties."

9. The reverse of the invoice form received by Mountain West repeats verbatim the terms and conditions of sale contained in the 1999 Commercial Price List, including the disclaimer for any liability for economic losses in the event a part fails:

> EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY. . . . IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

10. On November 4, 1999, the Mountain West helicopter was involved in an accident.

11. Mountain West's insurers paid approximately $1,030,000 to repair the Mountain West helicopter.

12. Both before and after the accident, Mountain West purchased hundreds of parts from Kaman, and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages if a part malfunctions.

8

13.     At no point has Kaman ever compensated Mountain West for expenses incurred or profits lost during a period when a helicopter was out of operation for a warranty repair.

14.     Connecticut law permits contracting parties to limit their liabilities and remedies. See Conn. Gen. Stat. § 42a-2-719. Section 42a-2-719(3) of Connecticut's version of the UCC makes clear, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The Connecticut Supreme Court has explained, "[c]ommercial contracting parties have considerable freedom to determine the remedial rights that will ensue upon breach . . . [and] [a]bsent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made." Mack Financial Corp. v. Crossley, 209 Conn. 163, 168, 550 A.2d 303, 305 (1988).

15.     Liability limitation provisions similar to the provisions in Kaman's price catalog and invoices are routinely enforced in commercial contexts. See McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 348 (8th Cir. 1985), cert. denied, 106 S.Ct. 347 (1985) (consequential damages sought by purchaser of military aircraft parts were precluded because the provision in the agreement for the supply of the aircraft parts limited seller's liability to repair or replacement of defective parts and specifically excluded liability for consequential damages). See also Suzy Phillips Originals, Inc. v. Coville, Inc., 939 F. Supp. 1012, 1017-1020 (E.D.N.Y. 1996), aff'd, 125 F.3d 845 (2d Cir. 1997) (granting summary judgment in favor of defendant and finding that contract governing sale of fabric that contained clause precluding the recovery of consequential and incidental damages bars plaintiff's claim for lost profits); Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170, 176-78 (S.D.N.Y. 1989) (granting summary judgment for helicopter manufacturer, under Connecticut law, where sales agreement contained limited warranty provision and excluded liability for economic damages), Hunter v. Texas

9

Instruments, Inc., 798 F.2d 299 (8th Cir. 1986) (upholding limited warranty provisions and exclusion of liability for economic damages set out on reverse side of dealer's purchase order, where language on front of form directed reader to the terms on the reverse side).

16. Kaman's terms and conditions of sale, including its exclusion of implied warranties and disclaimer of liability for consequential losses, are conspicuously contained in its parts catalog, which both plaintiffs received and had an opportunity to review prior to their purchases of the replacement clutches at issue. See Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 353, 525 A.2d 57, 63 (1987) (concluding that seller disclaimed implied warranty of merchantability because a disclaimer was "conspicuously placed in large type on the reverse side of the purchase order"). Therefore, those terms form the basis of the purchase and sale of replacement parts, including the replacement clutches at issue. See, e.g., LWT, Inc. v. Childers, 19 F.3d 539, 541 (10th Cir. 1994) ("A limited warranty contained in a manufacturer's catalog may be considered part of the basis of the parties' bargain, so long as the purchaser received the catalog and had an opportunity to read the warranty, prior to or at the time of the sale.")

17. In addition, Mountain West was a long-standing customer of Kaman. The parties' course of dealing establishes that all parts purchased from Kaman by Mountain West were subject to Kaman's standard limited warranty provisions, including an express disclaimer of all implied warranties and an exclusion of recovery for economic losses. An exclusion on the recovery of economic damages and an exclusion of implied warranties can be based on a course of dealing or course of performance or trade usage. See Conn. Gen. Stat. § 42a-2-316(3)(c). "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for

interpreting their expressions and other conduct." C.G.S. § 42a-1-205(1). The parties' prior course of dealing plainly establishes a shared expectation that these sales, like all others preceding them, were subject to Kaman's limited warranty provisions to the exclusion of all other warranties, express or implied. See, e.g., Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164 (D. Conn. 1984)(based on prior transactions buyer was aware of seller's warranty terms and knew that they excluded implied warranties); Country Clubs, Inc. v. Allis-Chambers Manuf., 430 F.2d 1394, 1397 (6th Cir. 1970) (rejecting buyer's claim that "he did not read that portion of the order form which incorporated by reference the warranty limitations set out in the dealership agreement" and finding implied warranties excluded by course of dealing).

18. Mountain West is bound by trade practice and usage within the commercial helicopter industry, which exclude implied warranties. Under Connecticut law, implied warranties may also be excluded or modified by trade practice and usage. Conn. Gen. Stat. § 42a-2-316(c). "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." Conn. Gen. Stat. § 42a-1-205(2).

19. As Kaman's industry expert, Peter Parsinen, testified, replacement parts are customarily sold subject to a disclaimer of all implied warranties and an exclusion of recovery for economic losses. See Mercanti v. Persson, 160 Conn. 468, 475, 280 A.2d 137, 141 (1971) ("It is clear that if it was the custom or usage of the boat building trade for the boat owner to assume the responsibility for insuring work in progress against risk of loss by fire, the risk of loss would be on the plaintiff in the absence of any inconsistent terms of the agreement . . . .").

20. A plaintiff carries the burden of proving damages. See Scapa Tapes North America, Inc. v. Avery Dennison Corp., 384 F. Supp. 2d 544, 558 (D. Conn. 2005) (citing

Beverly Hills Concepts, Inc., v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 70, 717 A.2d 724 (1998) ("The plaintiff's burden is to 'present sufficiently accurate and complete evidence for the trier of fact to be able to estimate [lost] profits with reasonable certainty.'") Here, Mountain West has not provided sufficient proof of the amount of its damages or that such damages were proximately caused by the accident at issue in this case.[3]

## *Helog*

1.  Helog purchased the Helog helicopter from Kaman pursuant to a May 2, 1997 Aircraft Sale Agreement. Upon delivery of the helicopter, Helog inspected the subject helicopter and signed a certificate of acceptance.

2.  The purchase agreement for the Helog helicopter expressly excludes recovery of economic damages. See Section 4B of the purchase agreement.

3.  In 1999, Jurg Wyss, the head of Helog's technical service department, and Thomas Gugg, Mr. Wyss' assistant and eventual successor, were responsible for ordering parts from Kaman for the Helog helicopter. Mr. Wyss and Mr. Gugg were also responsible for dealing with warranty issues.

4.  On June 11, 1999, Mr. Gugg had faxed an order form to Kaman requesting a replacement transmission assembly.

5.  The replacement transmission assembly ordered by Helog contained the clutch at issue in this case.

6.  In connection with the purchase of the replacement transmission, Mr. Wyss countersigned a letter from Kaman dated June 21, 1999, confirming that the transmission

---

[3] Kaman specifically reserves the right to challenge Mountain West's claims as to certain damage categories.

assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you [Helog] have received as part of the Kaman 1999 Commercial Price List."

7. Mr. Ruckli, CEO of Helog AG and President of Heli-Air Zagel Luftransport AG, is familiar with Kaman's 1999 Commercial Price List, containing Kaman's standard terms and conditions. Helog has used the Commercial Price List to order parts in 1999.

8. The 1999 Kaman Commercial Price List – a comprehensive manual containing a list of available parts and their prices, a description of service and maintenance programs, as well as the terms and conditions for the sale of replacement parts – expressly disclaims any liability for economic losses in the event a part fails:

> EXCLUSIVE REMEDY; LIMITATIONS OF LIABILITY . . . .
> IN NO EVENT SHALL K-MAX BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ORGANIZATION FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES OF ANY NATURE WHATSOEVER . . . INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR LOST PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS OR FOR ANY INTERRUPTION IN CUSTOMER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE PRODUCTS OR SERVICES FOR ANY REASON WHATSOEVER. . . .

9. Helog paid for the transmission assembly.

10. On November 13, 1999, the Helog helicopter was involved in an accident.

11. Helog's insurers subsequently paid it approximately $2.6 million for the loss.

12. Helog has conceded that, other than the component exchange letters and Kaman's Commercial Price List, it is not aware of any documents providing different terms governing the purchase of the transmission assembly containing the clutch at issue.

13. Both before and after the accident, Helog purchased numerous parts from Kaman

and each sale was governed by Kaman's standard terms and conditions – including an express disclaimer of any liability for economic damages if a part malfunctioned.

14. Aside from repairing or replacing a broken part that was under warranty, Kaman provided no other remedies when a part malfunctioned.

15. On March 2000, Helog purchased another K-1200 helicopter from Kaman, which it sold to a third party in 2004.

16. Connecticut law permits contracting parties to limit their liabilities and remedies. See Conn. Gen. Stat. § 42a-2-719. Section 42a-2-719(3) of Connecticut's version of the UCC makes clear, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The Connecticut Supreme Court has explained, "[c]ommercial contracting parties have considerable freedom to determine the remedial rights that will ensue upon breach . . . [and] [a]bsent some cogent reason such as mistake or unconscionability, there is no reason why a court should not enforce the bargain that the parties have made." Mack Financial Corp. v. Crossley, 209 Conn. 163, 168, 550 A.2d 303, 305 (1988).

17. Liability limitation provisions similar to the provisions in Kaman's price catalog and invoices are routinely enforced in commercial contexts. See McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 348 (8th Cir. 1985), cert. denied, 106 S.Ct. 347 (1985) (consequential damages sought by purchaser of military aircraft parts were precluded because the provision in the agreement for the supply of the aircraft parts limited seller's liability to repair or replacement of defective parts and specifically excluded liability for consequential damages). See also Suzy Phillips Originals, Inc. v. Coville, Inc., 939 F. Supp. 1012, 1017-1020 (E.D.N.Y. 1996), aff'd, 125 F.3d 845 (2d Cir. 1997) (granting summary judgment in favor of defendant and finding that contract governing sale of fabric that contained clause precluding the recovery of

consequential and incidental damages bars plaintiff's claim for lost profits); Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170, 176-78 (S.D.N.Y. 1989) (granting summary judgment for helicopter manufacturer, under Connecticut law, where sales agreement contained limited warranty provision and excluded liability for economic damages), Hunter v. Texas Instruments, Inc., 798 F.2d 299 (8th Cir. 1986) (upholding limited warranty provisions and exclusion of liability for economic damages set out on reverse side of dealer's purchase order, where language on front of form directed reader to the terms on the reverse side).

18. Kaman's terms and conditions of sale, including its exclusion of implied warranties and disclaimer of liability for consequential losses, are conspicuously contained in its parts catalog, which both plaintiffs received and had an opportunity to review prior to their purchases of the replacement clutches at issue. See Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 353, 525 A.2d 57, 63 (1987) (concluding that seller disclaimed implied warranty of merchantability because a disclaimer was "conspicuously placed in large type on the reverse side of the purchase order"). Therefore, those terms form the basis of the purchase and sale of replacement parts, including the replacement clutches at issue. See, e.g., LWT, Inc. v. Childers, 19 F.3d 539, 541 (10th Cir. 1994) ("A limited warranty contained in a manufacturer's catalog may be considered part of the basis of the parties' bargain, so long as the purchaser received the catalog and had an opportunity to read the warranty, prior to or at the time of the sale.")

19. Alternatively, the parties' course of dealing establishes that all parts purchased from Kaman by Helog were subject to Kaman's standard limited warranty provisions, including an express disclaimer of all implied warranties and an exclusion of recovery for economic losses. An exclusion on the recovery of economic damages and an exclusion of implied warranties can

be based on a course of dealing or course of performance or trade usage. See Conn. Gen. Stat. § 42a-2-316(3)(c). "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." C.G.S. § 42a-1-205(1). The parties' prior course of dealing plainly establishes a shared expectation that these sales, like all others preceding them, were subject to Kaman's limited warranty provisions to the exclusion of all other warranties, express or implied. See, e.g., Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164 (D. Conn. 1984) (based on prior transactions buyer was aware of seller's warranty terms and knew that they excluded implied warranties); Country Clubs, Inc. v. Allis-Chambers Manuf., 430 F.2d 1394, 1397 (6th Cir. 1970) (rejecting buyer's claim that "he did not read that portion of the order form which incorporated by reference the warranty limitations set out in the dealership agreement" and finding implied warranties excluded by course of dealing).

20.    Helog, a sophisticated business entity experienced in the commercial helicopter industry, is bound by trade practice and usage within the industry, which exclude implied warranties. Under Connecticut law, implied warranties may also be excluded or modified by trade practice and usage. Conn. Gen. Stat. § 42a-2-316(c). "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." Conn. Gen. Stat. § 42a-1-205(2).

21.    As Kaman's industry expert, Peter Parsinen, testified, replacement parts are customarily sold subject to a disclaimer of all implied warranties and an exclusion of recovery for economic losses. See Mercanti v. Persson, 160 Conn. 468, 475, 280 A.2d 137, 141 (1971)

16

("It is clear that if it was the custom or usage of the boat building trade for the boat owner to assume the responsibility for insuring work in progress against risk of loss by fire, the risk of loss would be on the plaintiff in the absence of any inconsistent terms of the agreement . . . .").

22. A plaintiff carries the burden of proving damages. See Scapa Tapes North America, Inc. v. Avery Dennison Corp., 384 F. Supp. 2d 544, 558 (D. Conn. 2005) (citing Beverly Hills Concepts, Inc., v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 70, 717 A.2d 724 (1998) ("The plaintiff's burden is to 'present sufficiently accurate and complete evidence for the trier of fact to be able to estimate [lost] profits with reasonable certainty.'") Here, Helog has not provided sufficient proof of the amount of its damages or that such damages were proximately caused by the accident at issue in this case.[4]

**11.    Opening Statement**

Kaman wishes to make an opening statement at trial.

                        Respectfully submitted,

                        **DEFENDANT**
                        **KAMAN AEROSPACE CORPORATION**

                        By: _____
                        Timothy A. Diemand (ct 18075)
                        Aaron D. Singer (ct 25515)
                        Wiggin and Dana LLP
                        One CityPlace
                        Hartford, CT 06103-3402
                        ph. (860) 297-3700
                        fax (860) 525-9380
                        e-mail tdiemand@wiggin.com
                        asinger@wiggin.com

\14658\2\588750.1

---

[4] Kaman specifically reserves the right to challenge Helog's claims as to certain damage categories.

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Kaman Aerospace Corporation's Trial Memorandum was sent by facsimile and FedEx, on this 18th day of April, 2006 to:

Robert S. Young, Esq.
Law Offices of Robert S. Young, L.C.
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand