UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MOUNTAIN WEST HELICOPTERS, LLC,:
LONG-LINE LEASING, LLC,
HELOG AG and HELI-AIR ZAGEL
LUFTTRANSPORT AG,

        Plaintiffs,

vs.

                                    CASE NO. 3:01-CV-1746 (AVC)

KAMAN AEROSPACE CORPORATION
and JOHN DOES I THROUGH V,       April 19, 2006

        Defendants.

**REPLY IN SUPPORT OF KAMAN AEROSPACE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

Kaman Aerospace Corporation ("Kaman") submits this reply in further support of its March 24, 2006 Motion for Summary Judgment. In their opposition, Plaintiffs fail to raise any genuine issue of material fact that precludes the entry of summary judgment. The documents governing the replacement clutches at issue, the course of dealing between Plaintiffs and Kaman, and custom in the helicopter industry each independently demonstrates that Plaintiffs are barred from recovering any consequential economic damages in this case.

I.    **Plaintiffs' New Claim That Any Disclaimer of Economic Damage Provision Applies Only to K-Max Corporation, Not Kaman, Bars Plaintiffs From Asserting Any UCC Claims Against Kaman.**

Plaintiffs claim for the first time (at 3-6) that the express disclaimer of liability for economic damages regarding the clutches applies only to K-Max Corporation, and not Kaman. Plaintiffs argue that because they purchased the replacement clutches from

K-Max Corporation, and not Kaman, they are free to ignore all of the contractual limits on their ability to seek economic damages because those contractual limits apply only to K-Max. Although this new argument is outrageous, ignores the record in this case and turns on its head the long history between Plaintiffs and Kaman[1], if Plaintiffs wish to persist with this new theory then all claims seeking economic damages from Kaman must be dismissed.

As the Court already ruled, the CPLA limits the type of damages that a commercial party can recover in a products liability action and provides that "commercial loss caused by a product . . . may not be recovered by a commercial claimant in a product liability claim." April 17, 2005 Ruling at 12 (citing Conn. Gen. Stat. Sec. 52-420(c)). Therefore, as the Court explained, a plaintiff "can *only bring* causes of action for commercial loss pursuant to Connecticut's version of the UCC." Id. at 15 (emphasis added).

However, because Plaintiffs now argue that they purchased the clutches from K-Max – not defendant Kaman – any UCC claim against Kaman must be dismissed. By Plaintiffs' own admission, Kaman is not the "product seller" within the meaning of the UCC. Kaman is now being treated as a stranger to the sale of the clutches and is being sued as an up-stream party involved with the design, manufacturer and/or distribution of the clutches. This new argument is fatal to Plaintiffs' UCC claims because a

---

[1] Kaman has never sought to use any distinctions between Kaman and K-Max as a shield to limit the liability of either entity for the claims made in this case. Consistent with the relationship between the two entities (K-Max is the subsidiary of Kaman involved with the K-Max 1200 helicopter program), Kaman has treated the two entities as one and the same for purposes of this case. And, if Kaman had not done so and tried to enforce any technical corporate distinctions as a way of avoiding liability for the accidents, Plaintiffs surely would have run into Court crying foul. The bottom line is that Plaintiffs know full well that all terms and conditions of sale for any spare parts applied to any Kaman entity regardless of whether a document is issued from Kaman, K-Max or both, and regardless of whether the references to the entities in the documents is less than precise.

commercial party must be in contractual privity with the product seller to recover consequential economic damages under a UCC warranty theory. It is axiomatic that "in order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, for without a contract there [can] be no warranty." Hamon v. Digliani, 148 Conn. 710, 712, 174 A.2d 294 (1961). As the United States Supreme Court has explained:

> A warranty action also has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach. In a warranty action where the loss is purely economic, the limitation derives from the requirements of foreseeability and of privity, which is still generally enforced for such claims in a commercial setting.

East River Steamship Co. v. Transamerican Delaval, 476 U.S. 858, 874 (1986) (internal citations omitted); see also Resnick v. Sikorsky Aircraft, 660 F. Supp. 415, 418 (D. Conn. 1987) (dismissing, under Connecticut law, breach of contract claim in absence of privity); United Technologies Inc. v. Saren, No. XO6CV020173135S, 2002 WL 31319598 (Conn. Super. Ct., Sept. 25, 2002)[2] (dismissing implied warranty claim by commercial party where there was no contractual privity between plaintiff and manufacturer: "The policy noted by the United States Supreme Court [in East River] is evident in the choice by the Connecticut legislature to limit the CPLA relaxed privity requirement to non-commercial losses. The CPLA at General Statutes § 52-572n specifically places claims for commercial loss within the purview of the UCC and its privity requirements."); see also Pro Con Inc. v. Coastal Wall Sys., Inc., No. CV040085223S, 2004 WL 2289598 (Conn. Super. Ct. Sept. 13, 2004) (same).

---

[2] Unreported decisions are attached hereto at Tab 1.

Therefore, while a plaintiff need not stand in contractual privity with a manufacturer to state a CPLA claim, contractual privity *must exist* between the commercial plaintiff and the product seller in order to recover economic damages under the UCC's warranty provisions. Nothing in the UCC exempts Plaintiffs from the privity requirement. Because Plaintiffs now claim that the only "contract" they had regarding the clutches was with K-Max (the product seller), Plaintiffs have lost the ability to assert any UCC claims against Kaman.

## II. Plaintiffs Are Bound By Kaman's Disclaimers of Liability For Economic Damages.

Assuming Plaintiffs will not press a distinction between Kaman and K-Max, there simply is no genuine issue of material fact that the replacement clutches were sold pursuant to a standard disclaimer of liability for economic damages. Plaintiffs do not (and cannot) dispute anything in Kaman's Local Rule 56(a)(1) Statement.[3] And, as detailed in Kaman's opening brief, the documents and testimony regarding the sale of the clutches make clear that each was sold under the terms and conditions contained in Kaman's 1999 Commercial Price List and invoices – both of which alert Plaintiffs to the fact that they cannot recover economic damages in the event a part fails.

Plaintiffs' attempt to create a "fact dispute" by citing two exhibits is to no avail. Each exhibit is taken out of context and, when viewed in light of the complete record, further supports the conclusion that Plaintiffs knew full well that the clutches were sold pursuant to Kaman's standard terms and conditions.

---

[3] Plaintiffs did not file a Local Rule 56(a)(2) statement with their opposition. Therefore, all of the material facts in Kaman's Local Rule 56(a)(1) statement are "deemed admitted." See Local Rule 56(a)(1). Plaintiffs' counsel cannot claim ignorance of this requirement. As the Court will recall, in connection with the previously filed Motion for Partial Summary Judgment on the Issue of Damages, Plaintiffs also did not file the required Local Rule 56(a)(2) statement with their opposition papers and requested leave of court to correct this error. See Plaintiffs' Oct. 4, 2004 Opp. at n. 1.

4

A.      **Exhibit A.**

The undisputed record regarding the replacement clutch for the Mountain West helicopter is as follows:

(a)     On August 5, 1999, Mountain West ordered a replacement transmission assembly, containing a sprag clutch (but not the clutch in the Mountain West Helicopter at the time of the accident) and countersigned a letter from Kaman confirming that the transmission assembly was being replaced pursuant to Kaman's Component Exchange Program, and that the transaction was governed by Kaman's "standard terms and conditions, a copy of which you have received as part of the Kaman 1999 Commercial Price List." See Local Rule 56(a)(1) Statement ¶ 11 and Ex. I.

(b)     After installing the new transmission, Mountain West purchased the clutch at issue and installed it in the Mountain West Helicopter. See Local Rule 56(a)(1) Statement ¶ 14.

(c)     Mountain West received from Kaman an invoice (No. H220603) for the replacement clutch at issue (identified by serial number 32 W51636375). See Local Rule 56(a)(1) Statement ¶ 15 and Ex. J.

(d)     After receiving Invoice No. H220603, Mountain West asked that the price for the replacement clutch be reduced to the exchange price[4] of $8,892 as Mountain West had returned the first clutch. See Local Rule 56(a)(1) ¶ 15.

(e)     Kaman agreed to charge the exchange price for the clutch and sent Mountain West a credit memo to that effect. See Local Rule 56(a)(1) Statement Ex. K.

---

[4] Pursuant to the terms of Kaman's Component Exchange Program, major components needing service could be exchanged for replacement parts at a significant discount, because Kaman could then refurbish and resell the parts returned by the helicopter operator. Thus, for example, while the full price for the Clutch Assembly in 1999 was approximately $13,000, the exchange price was $8,892. See Local Rule 56(a)(1) Statement Ex. D, 1999 Commercial Price List, at 5.

(f) The front of the invoice and credit memo state that the sale of the clutch is governed by the terms on their reverse sides, "including all disclaimers of warranties." See Local Rule 56(a)(1) Statement Exs. J and K.

(g) The reverse of the invoice and credit memo repeat verbatim the terms and conditions of sale contained in Kaman's 1999 Commercial Price List, including the disclaimer for any liability for economic losses in the event a part fails. See Local Rule 56(a)(1) Statement ¶ 17 and Ex. M.

(h) Exhibit A (also bearing Invoice No. H220603) was sent to Mountain West merely to request payment of the revised price for the replacement clutch. Compare Plaintiffs' Opp., Ex. A with Local Rule 56(a)(1) Statement Ex. J.

**B.    Exhibit B.**

Helog fares no better citing to Exhibit B. This invoice expressly references the "exchange letter dated June 21, 1999" – the very letter which Helog countersigned to acknowledge that the purchase of the transmission (containing the clutch at issue) was governed by the terms of sale contained in Kaman's 1999 Commercial Price List. See Local Rule 56(a)(1) Statement ¶ 4 and Ex. C. And, as detailed in Kaman's opening brief, Kaman's Commercial Price List expressly disclaimed any liability for economic losses in the event a part failed. See Local Rule 56(a)(1) Statement ¶¶ 4 and 13 and Ex. D at 14.

Plaintiffs cannot now claim amnesia or confusion over the express terms that govern the sale of the clutches. See, e.g., FDIC v. National Union Fire Ins. Co., 205 F.3d 66, 75 (2d Cir. 2000) ("vague denials and memory lapses . . . do not create genuine issues of material fact"). The uncontroverted record shows that the clutches

6

were sold pursuant to Kaman's standard terms and conditions which clearly and unambiguously preclude any recovery of economic damages.

### III. Even If Kaman's Limited Warranty "Failed of Its Essential Purpose," the Disclaimer of Liability for Economic Damages Remains Enforceable.

Plaintiffs cannot avoid summary judgment by claiming that Kaman's warranty has "failed of its essential purpose." See Plaintiffs' Opp. at 6-11. Even assuming Kaman's repair/replacement warranty failed (which Kaman does not concede), Kaman's separate and independent disclaimer of liability for economic damages survives and bars the recovery Plaintiffs seek. "The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The [UCC], moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the later is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. ***The two are not mutually exclusive***." Chatlos Sys., Inc. v. NCR Corp., 635 F.2d 1081, 1086 (3d Cir. 1980) (emphasis added).

The rationale for this rule is simple – courts uphold separately bargained-for exclusions of consequential damages in recognition that the overall purpose of the UCC "is to facilitate parties' freedom to allocate risk." McKernan v. United Technologies Corp., 717 F. Supp. 60, 70 (D. Conn. 1989). As the New Jersey Supreme Court noted: "many routine business transactions would be dislocated by a rule requiring the invalidation of a consequential damage exclusion whenever the prescribed contractual remedy fails to operate as intended. . . . [T]he commercial reality is that for many

7

sellers, immunity from liability for their customers' consequential damages may be indispensable to their pricing structure and, in extreme cases, to their solvency." Kearney & Trecker Corp. v. Master Engraving Co., 107 N.J. 584, 599, 527 S.2d 429, 437-38 (N.J. 1987).

While the Connecticut Supreme Court has yet to address this issue, this Court in McKernan predicted that the Connecticut Supreme Court would follow the "better reasoned approach" and "current trend" and conclude that a limited warranty provision and a consequential damage provision are to be regarded as independent -- meaning that even if a limited warranty fails, a clause disclaiming consequential damage is valid unless the clause is unconscionable. "[T]he current trend is to characterize an exclusionary contractual provision as a discrete and independent agreement whose validity is to be judged by the standards prescribed in subsection (3) of section 42a-2-719 . . . Subsection (3) places no restrictions on the allocation of risk for absorption of commercial loss, except that such allocation must not be unconscionable." McKernan, 717 F. Supp. at 70.[5]

Since McKernan, courts throughout the country continue to follow what is referred to as the majority rule and treat consequential damage clauses independently from a repair/replacement warranty clause that fails. See , e.g., McNally Wellman Co.

---

[5] Plaintiffs have not alleged that Kaman's consequential damage exclusion is unconscionable, and, indeed, given the commercial context of these transactions, such a claim would be extraordinary. It is well-established that unconscionability is rarely found in a commercial context. See, e.g., American Dredging Co. v. Plaza Petrol., Inc., 799 F. Supp. 1335, 1339 (E.D.N.Y. 1992) ("When the contract is between two commercial entities, unconscionability must be viewed 'in light of the general commercial background and the commercial needs of the particular trade or case,' and there is a presumption of conscionability when the contract is between businessmen in a commercial setting. Courts have rarely found a clause to be unconscionable in a commercial contract."); see also Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170, 177 (D. Conn. 1989) ("Courts have rarely found limitations of consequential damages in commercial transactions to be unconscionable."). In the absence of any evidence, or even an allegation, that Kaman's unremarkable consequential damages disclaimer was somehow unconscionable, the clause must be enforced.

v. New York State Elec. & Gas Corp., 63 F.3d 1188, 1197 (2d Cir. 1995)("[A] limitation on incidental or consequential damages remains valid even if an exclusive remedy fails"); Riegel Power Corp. v. Voith Hydro, 888 F.2d 1043, 1046 (4th Cir. 1989) (noting that recent case law supports viewing 2-719(2) and 2-719(3) as separate and independent provisions); Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1046 (D.S.C. 1993) ("The court notes that even if a limited remedy fails of its essential purpose, consequential damages may still be excluded."), aff'd, 46 F.3d 1125 (4th Cir. 1994) (table); Ritchie Enters. v. Honeywell Bull, Inc., 730 F. Supp. 1041, 1047 (D. Kan. 1990) ("When a limited remedy fails of its essential purpose, 2-719(2) abrogates only the remedy limitation and not the warranty disclaimers."); Schurtz v. BMW of N. Am., Inc., 814 P.2d 1108, 1112-14 (Utah 1991) (concluding that plain language of UCC provisions, the associated Official Comments, and policy considerations support interpreting the clauses as independent); Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 548 N.E.2d 182, 184-85 (Mass. 1990) ("[W]e conclude that the disclaimer of consequential damages is enforceable even though the limited repair or replacement remedy has failed of its essential purpose.").

As explained in Kaman's opening brief (at 15-17), it is the universal custom in the commercial helicopter industry for manufacturers to disclaim liability for their customers' consequential economic damages, precisely because such losses are unknowable and potentially catastrophic, and a helicopter manufacturer logically would not sell a replacement clutch for $13,000 while potentially subjecting itself to millions of dollars of economic damages should that part fail. Therefore, regardless of whether Kaman's limited repair/replacement warranty failed, Kaman's separate and independent

disclaimer of liability for economic damages remains intact and precludes the recovery Plaintiffs seek.

## IV.  Conclusion

For the foregoing reasons and for the reasons set forth in Kaman's March 24, 2006 Motion for Summary Judgment (and supporting papers), Kaman respectfully requests that its Motion be granted in its entirety.

**DEFENDANT**
**KAMAN AEROSPACE CORPORATION**

By: _/s/ Tim D_____

Timothy A. Diemand (ct 18075)
Aaron Singer (ct 25515)
Wiggin and Dana LLP
One CityPlace
Hartford, CT 06103-3402
ph. (860) 297-3700
fax (860) 525-9380
e-mail tdiemand@wiggin.com
       asinger@wiggin.com

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Reply in Support of Kaman Aerospace Corporation's Motion for Summary Judgment was sent by facsimile and FedEx, on this 19th day of April, 2006 to:

Robert S. Young, Esq.
Law Offices of Robert S. Young, L.C.
800 McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

Timothy A. Bishop, Esq.
Bishop & Jackson, LLC
80 Ferry Blvd., Suite 103
Stratford, CT 06615

_____
Timothy A. Diemand

\14658\2\588723.2

# TAB 1

*31319598   33 Conn. L. Rptr. 127

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

**UNITED TECHNOLOGIES CORPORATION, Pratt & Whitney Division,**
v.
**SAREN ENGINEERING, INC., et al.**

No. X06CV020173135S.
Sept. 25, 2002.

ROBERT F. McWEENY, J.

**1 The plaintiff United Technologies Corporation, through its Pratt & Whitney division, maintains at its East Hartford facility a co-generation unit that generates electricity used by Pratt & Whitney to satisfy a portion of its electricity needs at its East Hartford facility. An integral component of the cogeneration unit is an ammonia storage tank system, which stores and then transfers ammonia for use in the co-generation process. The ammonia system is comprised of an ammonia storage tank and a piping system, whereby the ammonia is transferred from the storage tank to an ammonia skid.

The pipe that runs from the storage tank to the ammonia skid contains a hydrostatic relief valve, the function of which is to prevent the pressure in the pipe from reaching a critically high level which could cause the pipe to burst. The particular hydrostatic relief valve that was installed in Pratt & Whitney's ammonia system was a RegO brand hydrostatic relief valve, model number SS8021G (the RegO valve), manufactured by the defendant Engineered Controls International, Inc. (ECII). That RegO valve was sold by the defendant Victor Manufacturing, a division of F.W. Webb Company (Victor), to the defendant Connecticut Boiler Repair & Manufacturing Company, Inc. (Connecticut Boiler), and was installed in the ammonia system as the hydrostatic valve. The defendant Saren Engineering, Inc., designed the replacement ammonia system for the co-generation unit, and provided engineering services for the design of certain modifications to the ammonia systems. The defendant Connecticut Boiler fabricated the ammonia system based on Saren's design and trim schedule, which listed the parts to be used in the design of the replacement ammonia system.

The RegO valve was designed to open when the pressure in a pipe in the ammonia system reached a certain level, so as to prevent build-up of pressure that could cause the pipe to burst. Pratt & Whitney claims that the RegO valve installed in the ammonia system malfunctioned, resulting in an ammonia leak at the East Hartford facility which caused this plaintiff commercial and non-commercial damages.

In this litigation, Pratt & Whitney seeks damages as follows: from Saren for breach of contract, negligence and indemnification; from Connecticut Boiler for breach of contract and breach of warranty; and from ECII and Victor, non-commercial losses pursuant to the Connecticut Products Liability Act ( General Statutes § 52-572(m) et seq.) (CPLA), and commercial losses pursuant to article 2 of the Uniform Commercial Code (General Statutes § 42a-2-101 et seq.) (UCC).

ECII and Victor have separately moved to strike the counts of the complaint against them that allege their breach of UCC implied warranties (counts 7 and 9, respectively). The motions to strike (Ë127 and 110) are based on Pratt & Whitney's failure to allege privity of contract with either ECII or Victor. Pratt & Whitney concedes that it did not have contractual privity with either movant.

**2 The function of a motion to strike is to test the legal sufficiency of a pleading. *Ferryman v. Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a)(5). "[A motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings ..." (Citations omitted; emphasis omitted.) *Mingachos v. CVS, Inc.,* 196 Conn. 91, 108, 498 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) *Novametrix Medical Systems v. BOC Group, Inc.,* 224 Conn. 210, 215, 618 A.2d 25 (1992). "The role of the trial court is to examine the pleadings and construe the allegations in the light most favorable to the pleader in order to determine whether the pleader has stated a legally sufficient cause of action or defense." *ATC Partnership v. Windham,* 251 Conn. 597, 603, 741 A.2d 305, cert. denied, 530 U.S. 1214, 120 S.Ct. 2217, 147 L.Ed.2d 249 (1999).

The CPLA provides the exclusive remedy against product sellers for claims of personal injury, death, property damage and other damages arising from the use of a defective product. See *Winslow v.. Lewis-*

*Shepard, Inc.,* 212 Conn. 462, 471, 562 A.2d 517 (1989). The act's coverage includes, but is not limited to, actions based on strict liability in tort, negligence, breach of warranty (express or implied), breach of or failure to discharge a duty to warn or instruct, and misrepresentation or nondisclosure. General Statutes § 52-572m(b). The act eliminates the requirement of privity between the product seller and the injured party. See General Statutes § 52-572n(b). The act further provides that "commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, Title 42a, the Uniform Commercial Code." General Statutes § 52-572n(c).

The CPLA thus distinguishes commercial losses from other product-related claims. Commercial losses such as those sought in counts 7 and 9 of Pratt & Whitney's complaint against ECII and Victor must be claimed under the UCC.

Pratt & Whitney concedes that privity is essential to a warranty claim asserted pursuant to §§ 42a-2-314 and 42a-2-315. Section 42a-2-318 of the UCC sets forth limited exceptions to the privity requirement by extending the coverage of a seller's warranty to natural persons who are members of the buyer's household or guests in his home. This provision concludes as follows: "This section is neutral with respect to case law or statutory law extending warranties for personal injuries to other persons." Being neither a natural person nor a pleader seeking personal injury damages, Pratt & Whitney is not entitled to the extension of coverage under General Statutes § 42a-2-318.

In its opposition papers, Pratt & Whitney argues that the court should apply developing case law that relaxes the privity requirement when a claimant otherwise is without a remedy. Such a result would permit this plaintiff to pursue its warranty claims for commercial losses against ECII and Victor. Otherwise, Pratt & Whitney is without a remedy for recouping its commercial loss (which it believes constitutes the great majority of its damages) against ECII and Victor.

**\*3** In support of its position, Pratt & Whitney relies on federal cases applying article 2 of the UCC, including *Utica Mutual Ins. Co. v. Denwat Corp.,* 778 F.Sup. 592 (D.Conn.1991); *Quadrini v. Sikorsky Aircraft Div.,* 505 F.Sup. 1049 (D.Conn.1981); and *Drescher v. Hoffman Motors Corp.,* 585 F.Sup. 555 (D.Conn.1984). The *Drescher* and *Quadrini* cases are distinguishable from the instant case in that they both involve personal injury claims. In *Quadrini,* the plaintiffs were the estates of individuals who were killed in a helicopter crash. The plaintiffs' decedents were all employees of the company which had purchased the helicopter. The federal court applied Connecticut law, noting that Connecticut law permitted a relaxation of the privity requirement in certain cases where no alternative remedy was available. The court relied upon Connecticut decisions that relaxed the privity requirement in cases claiming damages for personal injury. A similar result in a personal injury case was reached in the *Drescher* decision, in which the privity requirement was relaxed in favor of an auto mechanic who was injured when a car he was repairing drove into him.

In both *Drescher* and *Quadrini,* unlike the instant case, the plaintiffs were seeking damages for personal injuries. Those decisions were based on Connecticut authority, *Garthwait v. Burgio,* 153 Conn. 284, 216 A.2d 189 (1965), and *Hamon v. Dagliani,* 148 Conn. 710, 174 A.2d 294 (1961), which relax the privity requirement for breach of warranty claims in personal injury cases.

The *Utica* case, like the instant case, involved commercial losses. It is distinguishable, however, because the plaintiff was the insurer in a subrogation claim for a commercial entity *that was in privity with the defendant manufacturer.* Pratt & Whitney relies on *Utica* as a decision consistent with the commentary to the UCC warranty Section 42a-2-318, which notes that: "The warranty sections of the article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."

ECII and Victor rely on the expectations that arise from the UCC with respect to the limitations on liability and warranty actions. The United States Supreme Court noted in *East River Steamship Corp. v. Transamerican Delaval,* 476 U.S. 858, 874, 106 S.Ct. 2295, 90 L.Ed 2d 865 (1986), that "[a] warranty action ... has a built-in limitation on liability ... The limitation in a contract action comes with the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach ... [W]here the loss is purely economic, the limitation derives from the requirements of forseeability and of privity ... Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer

© 2006 Thomson/West. No claim to original U.S. Govt. works.

liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." (Citations omitted.) *Id.*

**\*\*4.** The policy noted by the United States Supreme Court is evident in the choice by the Connecticut legislature to limit the CPLA relaxed privity requirement to non-commercial losses. The CPLA at General Statutes § 52-572n specifically places claims for commercial loss within the purview of the UCC and its privity requirements. The result, which is herein recognized and opposed by Pratt & Whitney, is that a plaintiff may be left without a remedy for its commercial losses.

That result, however, is not grounds for extending the exception to the UCC privity requirement. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the water, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree."

*Waters v. Autuori,* 236 Conn. 820, 828, 676 A.2d 357 (1996). A closely analogous superior court decision noted: "If [an entity] already one step removed from the transaction were permitted to recover their economic losses, then the companies that [use their services] might claim their economic losses from their delays, and their customers also might claim their economic losses, and so on. The law does not spread its protection so far." *Bosek v. Valley Transit District,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 39674 (December 10, 1993, Rush, J.) (10 Conn. L. Rptr. 503).

## CONCLUSION

The policy arguments relating to commercial predictability and limitations of liability encompassed within the legislatively enacted UCC should trump judicially devised concepts intended to create a forum for every conceivable injury or loss. Accordingly, the motion to strike by ECII (# 110) is granted as to Count 7 of the April 16, 2002 complaint. The motion to strike by Victor (# 127) is granted as to Count 9 of the April 16, 2002 complaint.

© 2006 Thomson/West. No claim to original U.S. Govt. works.

*2289598   UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Ansonia-Milford.

PRO CON INCORPORATED
v.
COASTAL WALL SYSTEMS, INC.

No. CV040085523S.
Sept. 13, 2004.

Harlow Adams & Friedman PC, Milford, for Pro Con Incorporated.

Howard Kohn Sprague & Fitzgerald, Hartford, for Coastal Wall Systems Inc.

Edwards & Angell, Hartford, for STO.

Milano & Wanat, Branford, Nuzzo & Roberts LLC, Cheshire, for Kelly Enterprises.

Williams Walsh & O'Connor LLC, North Haven, for Pecora Corporation.

Pepe & Hazard, Hartford, for MI Home Products Inc.

Cotter Cotter & Quinn LLC, Fairfield, for All Temp Hvac Corporation.

Robinson & Cole, Stamford, for GE Consumer Products Company.

Ouellette Deganis Gallagher & Wa, Cheshire, for Anderson Glass Company.

SHLUGER, J.

**1 Before the court is the defendant, General Electric Company's (GE) motion to strike count twenty-five and count twenty-nine of the plaintiff's complaint, as well as the claim for attorneys fees in the prayer for relief on the ground that they fail to state a claim upon which relief can be granted.

On May 19, 2004, the plaintiff, Pro Con Incorporated, filed a thirty-three-count complaint against nine defendants. This action arises out of a contract entered into by the plaintiff for the construction of a Courtyard Hotel in Orange, Connecticut. The underlying incident arises out of alleged "water infiltration and resultant property damage" at the Courtyard Hotel. The plaintiff entered into a settlement agreement with the owner of the Courtyard Hotel for these claims, and obtained a release on January 22, 2004.

The plaintiff alleges, *inter alia,* the following facts as to the defendant GE. GE is a business unit of General Electric Company with a principal place of business in Louisville, Kentucky, and regularly conducts business in Connecticut. The plaintiff and another defendant entered into a contract for the design and installation of HVAC systems that included the selection and installation of packaged thermal air conditioning units (PTAC) at the Courtyard Hotel. GE is the "merchant" of PTAC. GE warranted that the products it sold were free of material defects, merchantable and fit for the purpose used. GE breached its implied and express warranties, and the Connecticut Product Liability Act (CPLA), General Statutes § 52-572m et seq. As a result of GE's breaches, the plaintiff has sustained damages.

On July 28, 2004, GE filed a motion to strike counts twenty-five and twenty-nine of the plaintiff's complaint, as well as the claim for attorneys fees in the prayer for relief supported by a memorandum of law. The plaintiff filed a memorandum of law in opposition to GE's motion to strike on August 19, 2004. Thereafter, GE filed a reply memorandum of law. On August 30, 2004, the court, Shluger, J., heard oral argument. (FN1)

"Whenever any party wishes to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted ... that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book 10-39(a); see also *Fort Trumbull Conservancy, LLC v. Alves,* 262 Conn. 480, 498, 815 A.2d 1188 (2003). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co.,* 242 Conn. 375, 378, 698 A.2d 859 (1997). "[I]f facts provable in the complaint support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Bhinder v. Sun Co.,* 263 Conn. 358, 366, 819 A.2d 822 (2003).

**2 GE moves to strike count twenty-five of the plaintiff's complaint on the ground that the claims for breach of warranty are barred by the exclusive

remedy provision of the CPLA. GE also argues that the breach of warranty claims should be stricken because there was no privity of contract between the plaintiff and GE.

As a general rule, "in order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, for without a contract there [can] be no warranty." *Hamon v. Digliani,* 148 Conn. 710, 712, 174 A.2d 294 (1961). Where a product is not sold to a plaintiff, there is no privity of contract. *Garthwait v. Burgio,* 153 Conn. 284, 286, 216 A.2d 189 (1965).

In its opposition memorandum, the plaintiff acknowledges that it does not allege privity of contract with GE, but, nonetheless, argues that privity is not required in order to recover on a warranty claim. In support of its position, the plaintiff relies on General Statutes § 42a-2-318 and two Connecticut federal cases, *Utica Mutual Insurance Co. v. Denwat Corp.,* 778 F.Sup. 592 (D.Conn.1991) and *Quadrini v. Sikorsky Aircraft Division,* 505 F.Sup. 1049 (D.Conn.1981).

General Statutes § 42a-2-318 sets forth limited exceptions to the privity requirement by extending the coverage of a seller's warranty to certain natural persons who are not in privity with the seller. (FN2) Section 42a-2-318 provides that "[t]his section is neutral with respect to case law or statutory law extending warranties for personal injuries to other persons." The plaintiff relies on Comment 3 to § 42a-2-318 to argue that although it is not one of the types of parties specifically enumerated in the statute, the plaintiff is not precluded from recovery. Comment 3 of § 42a-2-318 stated that "the section ... is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." Mindful of these comments, the court nonetheless finds that the plaintiff is neither a "natural" person as used in the statute nor seeks personal injury damages that would entitle it to an extension of coverage under § 42a-2-318.

The plaintiff recognizes that Connecticut cases have required privity of contract in order to assert a breach of warranty claim. (FN3) Notwithstanding those cases, the plaintiff argues that the "more persuasive line of authority" is set forth in the federal cases of *Utica Mutual Insurance Co. v. Denwat Corp., supra,* 778 F.Sup. 592, and *Quadrini v. Sikorsky Aircraft Division, supra,* 505 F.Sup. 1049.

The *Utica* and *Quadrini* cases, however, are distinguishable from the present case because they were conditioned on a finding that no alternative remedies were available to the plaintiff. See *Utica Mutual Insurance Co. v. Denwat Corp., supra,* 778 F.Sup. 592 (court allowed breach of warranty claim for commercial losses despite lack of privity); *Quadrini v. Sikorsky Aircraft Division, supra,* 505 F.Sup. 1049 (court allowed warranty claim seeking damages for personal injuries despite lack of privity). While there is a dearth of caselaw addressing this particular issue, several Connecticut courts have distinguished *Utica* and *Quadrini.* See *Resnick v. Sikorsky Aircraft Division of United Technologies Corp.,* 660 F.Sup. 415 (D.Conn.1987); *Ferguson v. Sturm, Ruger & Co., Inc.,* 524 F.Sup. 1042 (D.Conn.1981); *United Technologies Corp. v. Saren Engineering,* Superior Court, judicial district of Waterbury, Docket No. CV 020173135 (September 25, 2002, McWeeny, J.) (33 Conn. L. Rptr. 127); *The Halsam Co. v. Everglade, Inc.,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 94 0141045 (August 13, 1996, Arnold, J.).

**\*3** Moreover, the United States Supreme Court has made clear that certain expectations arise from the Uniform Commercial Code with respect to the limitations of liability in warranty actions. "A warranty action ... has a built-in limitation on liability ... The limitation in a contract action comes with the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach ... [W]here the loss is purely economic, the limitation derives from the requirements of foreseeability and of privity ... Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." (Citations omitted.) *East River Steamship Corp. v. Transamerican Delaval,* 476 U.S. 858, 874, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

Here, while the plaintiff claims that it "may have limited recourse" against GE, the complaint contains a count in contribution against all the defendants. In light of the above, the defendant's motion to strike count twenty-five of the plaintiff's complaint is granted.

GE also moves to strike count twenty-nine that states a claim under CPLA because CPLA excludes claims for commercial loss between commercial

parties concerning reimbursement for commercial property damage. The plaintiff appears to agree with GE, stating that count twenty-nine is "subject to being stricken [because] commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim." The plaintiff has not briefed this issue beyond two sentences. Thus, because the plaintiff does not oppose the motion to strike count twenty-nine, the motion to strike is granted.

Lastly, GE moves to strike the plaintiff's claim for attorneys fees as to GE because there is no contractual or statutory basis for such relief against GE. The plaintiff claims that GE should have filed a request to revise the prayer of relief for attorneys fees rather than a motion to strike because the granting of the motion to strike would remove the request for attorneys fees with respect to all defendants.

"Connecticut case law follows the general rule, frequently referred to as the American Rule, that attorneys fees are not allowed to the prevailing party as an element of damages unless such recovery is allowed by statute or contract." (Internal quotation marks omitted.) *Original Grasso Construction Co. v. Shepherd,* 70 Conn.App. 404, 418, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). Because the court has stricken counts twenty-five and twenty-nine against GE, the only remaining count subject to this relief is count thirty-three, which is a claim for contribution. In this count, the plaintiff has alleged neither the existence of a contract nor a statute which would authorize the award of attorneys fees. Accordingly, the court strikes the prayer for relief seeking attorneys fees as to GE only.

**4.** The court therefore grants the defendant's motion to strike counts twenty-five and twenty-nine, and the prayer for relief seeking attorneys fees as to GE.

(FN1.) The court notes that while the plaintiff filed a memorandum of law, it failed to appear for oral argument.

(FN2.) General Statutes § 42a-2-318 provides, in pertinent part, that "[a] seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods ..."

(FN3.) Specifically, the plaintiff cites the following cases: *Ferguson v. Sturm, Ruger & Co., Inc.,* 524 F.Sup. 1042 (D.Conn.1981); *United Technologies Corp. v. Saren Engineering,* Superior Court, judicial district of Waterbury, Docket No. CV 02 0173135 (September 25, 2002, McWeeny, J.) (33 Conn. L. Rptr. 127); *Bosek v. Valley Transit District,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 92039674 (December 10, 1993, Rush, J.) (10 Conn. L. Rptr. 503, 9 C.S.C.R. 65).

© 2006 Thomson/West. No claim to original U.S. Govt. works.